UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


In Re:  UnitedHealth Group         Master File No.:  06-CV-1216
Incorporated Shareholder
Derivative Litigation


_____


STATE OF MINNESOTA                              DISTRICT COURT

COUNTY OF HENNEPIN                      FOURTH JUDICIAL DISTRICT

In Re:  UnitedHealth Group      Case Type:  Other
Incorporated Shareholder        Court File No.:  27 CV 06-8085
Derivative Litigation           Honorable George F. McGunnigle


_____


ORDER FOR PRELIMINARY SETTLEMENT APPROVAL


This matter has been jointly considered by the United States District Court for the District of Minnesota and the District Court for the Fourth Judicial District of the State of Minnesota, Hennepin County (the "Courts"), on the parties' motion for preliminary approval of a settlement.  The motion is granted.

I.   Background

More than two years ago, a Wall Street Journal article reported that certain executives, some of whom were employed at UnitedHealth Group, Inc. ("UnitedHealth"), had received advantageously-timed stock options, dated to correspond to low points in the company's share price.  These allegations led to a

number of state and federal lawsuits, including shareholder derivative actions against UnitedHealth, charging its current and former leadership with breach of fiduciary duty, gross mismanagement, waste of corporate assets, unjust enrichment, and breach of contract.

The UnitedHealth board of directors' initial public response to these disclosures was to appoint a committee of independent directors, who then retained the firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") to investigate the allegations. The law firm's investigators interviewed officers and directors of UnitedHealth, with the exception of Dr. William McGuire, the company's president and chief executive officer, and Mr. David Lubben, its secretary and general counsel. After investigating, WilmerHale issued an October, 2006, report which concluded that many option grants to UnitedHealth officers and employees were "likely backdated." (Report of Wilmer Cutler Pickering Hale and Dorr LLP to the Special Committee of the Board of Directors of United Health Group, Inc., at 13 (October 15, 2006)). Following the issuance of the WilmerHale report, defendants McGuire, Lubben, and William Spears, a board member, resigned.

In further response to the shareholder derivative actions, UnitedHealth's board established a special litigation committee ("SLC") in June, 2006. The SLC was charged with investigating and deciding whether to pursue the action on the company's behalf.

Nearly two and a half years later, the SLC recommended that the action be settled.  The proposed settlement was tendered to the Courts in December, 2007.  <u>See</u> Report of the Special Litigation Committee (December 6, 2007) ("SLC Report").

The settlement consisted largely of transfers of UnitedHealth stock and options.  When first proposed to the Courts, UnitedHealth shares traded at $54.33, rendering a settlement value between $499.3 million (Black Scholes) and $495.1 million (intrinsic).  The corporation's shares are now trading in the low-$20 range, reducing the settlement value to a range approximating $250 million, as of the date of this Order, and subject to market vagaries.

Having received the proposed settlement, the U.S. District Court certified a question to the Minnesota Supreme Court, seeking guidance regarding the degree of deference afforded an SLC's settlement decisions under Minnesota's business judgment doctrine. That question has been answered.  <u>In re UnitedHealth Group Incorporated Shareholder Derivative Litigation</u>, 754 N.W.2d 544, 559 (Minn. 2008).

With the Supreme Court's answer in hand, the SLC, and each named party, now moves for preliminary approval of the proposed settlement.  As the proposed settlement encompasses both the state and federal claims, the undersigned judges have jointly considered these matters and have independently found the proposed settlements fall within the range of possible settlements of these claims, and

a full hearing ought to be set to consider their fairness and adequacy in accord with Federal Rule of Civil Procedure 23.1 and Minnesota Rule of Civil Procedure 23.09.

## II.  Analysis

A special litigation committee has the power to terminate a derivative action to the extent allowed by the state of incorporation.  See Burks v. Lasker, 441 U.S. 471, 486 (1979); see also Smith v. Sperling, 354 U.S. 91, 95 (1957).  As UnitedHealth is incorporated in Minnesota, the Courts looks to Minnesota law, as elucidated by the Minnesota Supreme Court.

Under Minnesota law, a board of directors may create a special litigation committee "consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued."  Minn. Stat. § 302A.241, subd. 1 (2006).  Once formed, the special litigation committee is "not subject to the board's direction and control."   In re UnitedHealth Group Incorporated Shareholder Derivative Litigation ("UnitedHealth"), 754 N.W.2d 544 (Minn. 2008), at 550.  Thus, the special litigation committee allows the corporation to retain control of the litigation when one or more board members may have a conflict of interest.

A derivative action "belongs to the corporation, but the shareholders . . . bring the action where the corporation has

failed to take action for itself." <u>UnitedHealth</u>, at 559, citing <u>Janssen v. Best & Flanagan</u>, 662 N.W.2d 876, 882 (Minn. 2003). The SLC's substantive decision to pursue the claims implicates a "careful balancing" of "legal, ethical, commercial, promotional, public relations, fiscal, and other factors familiar to the resolution of many if not most corporate problems." <u>Janssen</u>, 662 N.W.2d at 883. This balance "is best [struck] by the board of directors, which is familiar with the appropriate weight to attribute to each factor given the company's product and history." <u>Id.</u>

Minnesota law requires a court to "defer to an SLC's decision to settle a shareholder derivative action if (1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." <u>UnitedHealth</u>, 754 N.W.2d at 559. In making this choice, Minnesota explicitly adopted the New York Court of Appeals' business judgment rule set forth in <u>Auerbach v. Bennett</u>, 47 N.Y.2d 619, 393 N.E.2d 994 (N.Y. 1979). While <u>Auerbach</u> involved a corporate motion to dismiss, rather than a proposal to settle a shareholder derivative litigation, the Minnesota Supreme Court made clear its rule applies with equal force in the context of settlement. <u>UnitedHealth</u>, <u>id.</u> at 559.

Applying this test, the state and federal courts are constrained to defer to the SLC's decision settling this matter on

the terms set forth in the SLC Report.

Considering the totality of the circumstances, including the eleven factors noted by the Minnesota Supreme Court, see UnitedHealth, id. at 560 & n. 11, the SLC is clearly disinterested and independent.  When UnitedHealth's board established the SLC, it delegated "complete power and authority to investigate" the claims in the derivative litigation "and analyze the legal rights or remedies of the Company and determine whether those rights or remedies should be pursued."  Board Resolution of June 26, 2006, SLC Report at Appendix B; contrast Janssen, 662 N.W.2d at 888 (finding lack of independence and good faith where initial board resolution restricted scope of SLC investigation).

The SLC's members were each former justices of the Minnesota Supreme Court.  The members had no connection to UnitedHealth prior to accepting appointment to the SLC.  Neither was a defendant in the shareholders' suits, nor did they face any potential liability under the complaints.  The SLC retained independent experts in accounting and corporate governance and received advice from well-respected independent counsel.  These factors strongly suggest the SLC is in a position to base its decision on the merits.

The board's resolution creating the SLC retained its authority to add members to the SLC.  While potentially a problem, the Courts find the retained power to be trivial in this case.  The board retained a theoretical ability to add new members, which could have

been used to dilute the original SLC members' votes. That eventuality was neither threatened, nor did it occur. All parties agreed, and these Courts concur, that the expansion clause is not a factor worthy of consideration. Ultimately, any risk that the expansion provision could have influenced the SLC's decision in this case is far outweighed by the factors suggesting independence. The Courts find the SLC to be disinterested and independent, as required by Minnesota law.

Having established the SLC's independence, the Courts consider its investigative procedures and methodology. Whether an SLC's methods demonstrate good faith depend on the nature of the particular investigation. See Drilling v. Berman, 589 N.W.2d 503, 509 (Minn. Ct. App. 1999), citing Auerbach, 47 N.Y.2d at 634, 393 N.E.2d at 1003. Again, the Courts look to the totality of the circumstances. See Drilling, id. Factors underlying this decision include (1) the length and scope of the investigation; (2) the committee's use of independent counsel or experts; (3) the corporation's or the defendants' involvement, if any, in the investigation; and (4) the adequacy and reliability of the information supplied to the committee. Id. (internal quotation omitted). Evidence that "the investigation has been so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham . . . would raise questions of good faith." Auerbach, 47 N.Y.2d at 634-35, 393

7

N.W.2d at 1003.

Applying the <u>Drilling</u> factors, the Courts find the SLC's procedures were adequate, appropriate, and performed in good faith. Counsel for the SLC presented evidence showing the investigation's comprehensive scope.  The SLC was granted, and exercised, "complete power and authority" to investigate.  It quite properly decided to conduct its own independent investigation, rather than rely on the WilmerHale investigation.  It began doing so in July, 2006, concluding its work in December, 2007.  Each SLC member personally prepared for and interviewed 50 witnesses; reviewed thousands of pages of documents, including materials submitted by plaintiffs; and reviewed cases and other materials to develop an understanding of the law governing the derivative claims.  As noted, the SLC employed independent counsel and independent financial experts.

Defendants' involvement was limited to responding to requests for information and participating in interviews.  The SLC had full access to documents it requested, including those subject to a claim of attorney-client or attorney work product privilege. Current and former directors and officers, and many other company employees, appeared for interviews and provided additional documents.  The SLC developed a database of more than 66 million pages of documents.  It sought and received information directly from plaintiffs' counsel, and interviewed all named defendants, except McGuire and Lubben, who again declined.

After its investigation, the SLC concluded settlement was in the company's best interest. Accordingly, the SLC, along with plaintiffs' and defendants' counsel, participated in several months of mediation leading to a global settlement of all derivative claims. The SLC, thereafter, generated its 75-page report with exhibits, discussing its methodology in detail.

The SLC opted against explicitly reciting the facts supporting its conclusions concerning the merits of the company's claims against individual defendants. It concluded doing so would be contrary to the company's best interests and might reveal facts which might be used in other litigation against the company.

Minnesota's law does not compel the state and federal courts to inquire further into the SLC's findings. Under Auerbach, the corporation need only show "that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects. What has been uncovered and the relative weight accorded in evaluating and balancing the several factors and considerations are beyond the scope of judicial concern." Drilling, 589 N.W.2d at 508, quoting Auerbach, 47 N.Y.2d at 1003, 393 N.E.2d at 1003. "[A]ny information regarding the committee's reasoning is not relevant to [the Courts'] review." Drilling, 589 N.W.2d at 510-11.

The Courts have considered whether the SLC's investigation is adequate and appropriate absent testimony or a Fifth Amendment

claim by McGuire and Lubben.  The SLC acknowledged the difficulty in assessing McGuire's and Lubben's potential defenses caused by its lack of access to the individuals.  <u>See</u> SLC Report at 59 n. 35, and 63 n. 42.  This fact, however, is not fatal to the  Courts' conclusion that the SLC's investigation was adequate and appropriate under the circumstances.

An SLC is not required to interview every possible witness in order to conduct a thorough and appropriate investigation.  <u>See</u> <u>Drilling</u>, 589 N.W.2d at 510.  While the conduct of McGuire and Lubben was undoubtedly central to the investigation, their testimony was not - because the SLC could, and did, obtain the information by other means.  McGuire, for example, as part of his settlement with the Securities and Exchange Commission ("SEC"), explicitly agreed he would not dispute the allegations in the SEC complaint.  The Courts find the SEC settlement agreement is equivalent to an admission, upon which the SLC would have been entitled to rely.

Had this matter gone to trial, and if McGuire and Lubben declined to testify, the trier of fact would have been entitled to infer that their testimony would have been unfavorable.  <u>See</u> <u>Cowens</u> <u>v. Siemens-Elema AB</u>, 837 F.2d 817, 825 (8th Cir. 1988); <u>In re</u> <u>Marriage of Crockarell</u>, 631 N.W.2d 829, 833-34 (Minn. Ct. App. 2001), citing <u>Parker v. Hennepin County</u>, 285 N.W.2d 81, 82-83 (Minn. 1979).  Such an inference would support the conclusion that

the allegations against both defendants may be true – the very conclusion the SLC reached.

The SLC's work is also in full accord with Federal Rule of Civil Procedure 23.1(c) and Minnesota Rule of Civil Procedure 23.09.  The Federal Rule provides:

> A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court directs.

Fed. R. Civ. P. 23.1(c).  In contrast to the rule governing class actions, which provides detailed procedures for approving a settlement, see Fed. R. Civ. P. 23(e)(1)-(5), the rule governing derivative actions merely requires that settlement be approved by the court after notice to shareholders.

Similarly, Minnesota Rule 23.09 provides in part:

> The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Minn. R. Civ. P. 23.09.

Accordingly, the SLC's motion for preliminary approval is granted.

WHEREFORE, IT IS ORDERED THAT:

1.  The settlement of these actions on the terms outlined in the proposed Notice to shareholders attached as Exhibit A is preliminarily approved.  The Courts shall hold a final settlement

approval hearing ("Final Hearing") on February 13, 2009, at 11:00 a.m., in Courtroom 14E of the United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415 to:

      a.  Determine whether to finally approve the settlement and direct consummation of the settlement in accordance with its terms;

      b.  Determine whether to enter judgment dismissing these actions with prejudice;

      c.  Determine whether to grant the applications of plaintiffs' counsel for awards of attorneys' fees and expenses;

      d.  Consider such other matters as may properly come before the Courts.

2.  The Courts reserve the right to adjourn all or any part of the Final Hearing without further notice of any kind other than oral announcement at the hearing.

3.  The Courts reserve the right to approve or reject the settlement at or after the Final Hearing without further notice.

4.  The Courts approve, in form and content, the Notice of Proposed Settlement and Dismissal of Derivative Lawsuits, Joint Settlement Hearing and Right to Appear (the "Notice"), and find that the giving of notice as specified in this Order (i) meets the requirements of due process, Federal Rule of Civil Procedure 23.1 (c), and Minnesota Rule of Civil Procedure 23.09; (ii) is the best notice practicable under the circumstances; and (iii) shall

constitute due and sufficient notice to all persons and entities entitled to receive notice.

5.   UnitedHealth shall, within 14 business days after the entry of this Order, cause Notice of the Final Hearing in substantially the form attached hereto as Exhibit A to be mailed by First Class U.S. Mail, postage pre-paid, to all record holders of UnitedHealth common stock as of the date of entry of this Order, at their last known address appearing in the stock transfer records maintained by or on behalf of UnitedHealth.  All record holders who are not also the beneficial owners of the shares they hold are requested to forward the Notice to the beneficial owners. UnitedHealth shall use reasonable efforts to notify beneficial owners by (i) providing copies of the Notice to any record holder who, prior to the Final Hearing, requests copies to distribute to beneficial owners; or (ii) mailing the Notice to beneficial owners as identified, and requested, by record holders.

6.   Plaintiffs' and defendants' counsel shall forthwith establish a website as stated in the Notice, and cause all material, pleadings, and orders in these cases to be posted thereon so that shareholders may access them.

7.   Plaintiffs' counsel shall respond promptly to all calls directed to the toll free numbers given in the Notice.

8.   Any shareholder may object to the settlement, the judgment, and/or plaintiffs' application for attorneys' fees and

13

expenses, or otherwise request to be heard, in person or by counsel, concerning any matter properly before the Courts at the Final Hearing, provided, however, that no person or entity (other than counsel for the parties and the SLC) shall be heard, and no documents submitted will be considered unless the procedure outlined in the Notice is followed.

9.  Plaintiffs' counsel shall, at least 14 days before the Final Hearing, submit their applications for fees and expenses to the Courts.

10.  All parties who desire to submit further briefing to the Courts shall do so at least 14 days before the Final Hearing.

11.  In the event the Courts disapprove the settlement or decline to enter final judgment, or the Courts' final approval is reversed or substantially modified on appeal, then the settlement agreement is null and void, except that the Company shall not be entitled to reimbursement of funds spent complying with paragraphs 5 and 6 of this Order.  A disallowance or modification of the fees sought by plaintiffs' counsel shall not be considered a disallowance or modification of the settlement.

Dated:  December 19, 2008


                              s/ JAMES M. ROSENBAUM
                              JAMES M. ROSENBAUM
                              United States District Judge


Dated:  December 19, 2008



                              s/ GEORGE F. MCGUNNIGLE
                              GEORGE F. MCGUNNIGLE
                              Hennepin County District Court
                                Judge