# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 06-1216 JMR/FLN |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT OF DERIVATIVE ACTION

# **TABLE OF CONTENTS**

I. HISTORY OF THE LITIGATION ................................................................................ 2

II. THE TERMS OF THE SETTLEMENT .................................................................... 2

    A. THE MONETARY COMPONENT OF THE SETTLEMENT ................................... 2

    B. CORPORATE GOVERNANCE REFORMS ......................................................... 3

III. THE SETTLEMENT MERITS FINAL APPROVAL ............................................. 5

    A. THE COURT HAS ALREADY CONCLUDED THAT THE SLC IS INDEPENDENT, ACTED IN GOOD FAITH, AND IS ENTITLED TO DEFERENCE ................................................................................................... 5

    B. LEAD PLAINTIFFS AND THE SLC HAVE CONCLUDED THAT THE SETTLEMENT IS FAIR AND REASONABLE ....................................................... 7

        1. THE MERITS OF LEAD PLAINTIFFS' CASE, WHEN WEIGHED AGAINST THE TERMS OF THE SETTLEMENT, ALSO FAVOR FINAL APPROVAL OF THE SETTLEMENT ........................................... 8

        2. THE EXPERIENCE AND OPINION OF COUNSEL SUPPORTS FINAL APPROVAL OF THE SETTLEMENT ........................................... 9

        3. THE REACTION OF UNITEDHEALTH SHAREHOLDERS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT. ........................ 11

IV. CONCLUSION ............................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases:**

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
    100 F.3d 1041 (1st Cir. 1996) ............................................................................... 10

*Cohn v. Nelson,*
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................... 8

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ................................................................................... 11

*DeBoer v. Mellon Mortgage Co.,*
    64 F.3d 1171 (8th Cir. 1995) ............................................................................ 9, 11

*In re Fleet/Norstar Sec. Litig.,*
    935 F. Supp. 99 (D.R.I. 1996) .............................................................................. 10

*In re NASDAQ Market-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................... 12

*In re UnitedHealth Group Inc. S'holder Deriv. Litig.,*
    __ F. Supp. 2d __, __, No. 06-CV-1216,
    2008 WL 5422616 (D. Minn. Dec. 24, 2008) ..................................................... 5-7

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
    396 F.3d 922 (8th Cir. 2005) ................................................................................ 11

*In re Xcel Energy Inc., Sec., Deriv. & ERISA Litig.,*
    364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................... 7

*Kamen v. Kemper Fin. Servs. Inc.,*
    500 U.S. 90 (1991) ................................................................................................. 7

*Knieriem v. Group Health Plan, Inc.,*
    434 F.3d 1058 (8th Cir. 2006) ................................................................................ 8

*Maher v. Zapata Corp.,*
    714 F. 2d 436 (5th Cir. 1983) ................................................................................. 7

**Page(s)**

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .............................................................................. 11

**State Cases**

*In re UnitedHealth Group S'holder Inc. Deriv. Litig.*,
    754 N.W. 2d 544 (Minn. 2008) ............................................................................ 5, 7

*Schumacher v. Schumacher,*
    627 N.W.2d 725 (Minn. Ct. App. 2001) ................................................................... 8

**Other Authority**

5 James William Moore, et al., *Moore's Federal Practice*
    ¶ 23.1.10[2][a] (3d ed. 1999) .................................................................................. 7

The Court-appointed Lead Plaintiffs in this shareholder derivative action (the "Federal Derivative Action")[1] submit this memorandum of law in support of their motion for final approval of the proposed settlements (the "Settlement"). This Court preliminarily approved the Settlement by Order dated December 24, 2008 (the "Preliminary Approval Order"). [Docket No. 381.]

The Settlement represents an excellent result that includes ground-breaking monetary recoveries and corporate governance reforms for the benefit of Nominal Defendant UnitedHealth Group Incorporated ("UnitedHealth," or the "Company"). This Settlement is the product of the vigorous prosecution of the Federal Derivative Action and a unique collaboration between Lead Plaintiffs and a thoroughly engaged special litigation committee appointed by the Board of Directors of UnitedHealth (the "SLC"). The proposed Settlement was reached only after intense arm's-length negotiations, including a mediation involving Lead Plaintiffs, Defendants, UnitedHealth, and the SLC before the Honorable Layn R. Phillips, a former United States District Judge, and a subsequent arbitration where Judge Phillips presided that involved Defendant William G. Spears.

In light of the substantial recovery obtained, as well as the potential risks and difficulties that Lead Plaintiffs would need to overcome to recover damages at trial, the

---

[1] Lead Plaintiffs are Public Employees' Retirement System of Ohio; State Teachers' Retirement System of Ohio; St. Paul Teachers' Retirement Fund Association; Public Employees' Retirement System of Mississippi; Jacksonville Police & Fire Pension Fund, Louisiana Municipal Police Employees' Retirement System; Louisiana Sheriffs' Pension & Relief Fund, Fire & Police Pension Association of Colorado; Connecticut Retirement Plans and Trust Funds; and Jan Brandin.

Settlement should be approved as it conferred a substantial benefit on UnitedHealth. Lead Plaintiffs and their counsel believe that the proposed Settlement is in the best interests of UnitedHealth and its shareholders.

## I.     HISTORY OF THE LITIGATION

The Joint Declaration thoroughly sets forth the factual and procedural history of the Federal Derivative Action and the efforts of Lead Plaintiffs' Counsel in prosecuting this matter from inception through a successful negotiated conclusion. To avoid repetition, Lead Plaintiffs incorporate the Joint Declaration here as the statement of facts and procedure.

## II.    THE TERMS OF THE SETTLEMENT

The filing, prosecution, and settlement of the Federal Derivative Action have created significant benefits for UnitedHealth and its shareholders.

### A.     THE MONETARY COMPONENT OF THE SETTLEMENT

The monetary component of the Settlement is complex and involves both the payment of cash and the repricing of UnitedHealth stock options, the forfeiture of options, and the forfeiture of various employment benefits. As explained in Exhibit B to the Cambronne Affidavit, filed by Lead Plaintiffs in support of preliminary approval of the Settlement, the value of the monetary remediation ranged from $887.9 million to $922.7 million as of the time the respective settlement agreements were entered into (depending on the method of valuation used).[2] [Docket No. 373.] This total value

---

[2] The Black Scholes option pricing model calculates the present value of a stock option based on specific information about the terms of the option (*e.g.*, the stock price,

2

changes (and has changed) with fluctuations in the stock price of UnitedHealth. As of the close of the market on January 29, 2009, the value was $658.0 million (Black Scholes) and $718.0 million (intrinsic). (Joint Decl. ¶¶ 13-20.)[3] The monetary value of the Settlement will remain a "moving target" until it is finally approved and consummated in accordance with its terms. In any event, notwithstanding the significant share price drop since December 2007 (when the settlement package was first presented to the Court), the value of the Settlement remains not only significant, but historic. Lead Plaintiffs believe that no other derivative action has recovered anywhere near as much money for the benefit of a company and its shareholders as this case.

### B. CORPORATE GOVERNANCE REFORMS

In addition to the monetary relief obtained through this litigation, extraordinary and far-reaching governance reforms at UnitedHealth have been achieved in large part as a result of this litigation and through direct negotiations between Lead Plaintiffs' counsel and counsel for UnitedHealth. (*Id.* ¶¶ 20, 54-56.) The reforms included addressing the following issues and concerns:[4]

    (i)    Lead Independent Director Position;

---

exercise price and expected term). An alternative stock option value, termed "intrinsic value," is determined by taking the excess of the market price over the option exercise price as of a given date.

[3] The Joint Declaration in Support of Proposed Settlement of Derivative Action and Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Decl.") is authored by Karl L. Cambronne, Michelle H. Blauner, Chad Johnson, Michael J. Barry, and Brian F. Rice.

[4] The specific reforms are detailed in Exhibit C to the Affidavit of Karl L. Cambronne submitted in support of the Motion for Preliminary Approval. [Docket No. 373.]

    (ii)  Shareowner Nominated Director;

    (iii)  Enhanced Independence Standards;

    (iv)  Executive Compensation Policy;

    (v)  Board Structure;

    (vi)  Shareowner Meetings;

    (vii)  Stock Retention Requirements; and

    (viii)  Shareowner Nominating Advisory Committee.

(*Id.* ¶ 57.)

  These corporate governance reforms adopted by UnitedHealth are the result of extensive negotiations (both in Minneapolis and Washington, D.C.) between plaintiffs' counsel and UnitedHealth representatives. As Peter Carter stated in his letter to Karl Cambronne of August 20, 2008:

> Together we can proudly state that no public company has ever made such substantial meaningful changes in such a short period of time. We look forward to presenting this to the Courts as we work together to obtain final approval of the historic settlements.

(Cambronne Decl. Ex. C [Docket No. 373].)

  In total, the settlement relief obtained for the benefit of UnitedHealth is extraordinary. In return for the significant monetary and non-monetary recovery achieved for the benefit of UnitedHealth through the joint efforts of Lead Plaintiffs and the SLC, Lead Plaintiffs will voluntarily dismiss with prejudice the claims in the Federal Derivative Action subject to Court approval of this Settlement.

4

## III.     THE SETTLEMENT MERITS FINAL APPROVAL

### A.     THE COURT HAS ALREADY CONCLUDED THAT THE SLC IS INDEPENDENT, ACTED IN GOOD FAITH, AND IS ENTITLED TO DEFERENCE

As noted above, the Court has already concluded that the SLC is and was disinterested and independent, performed its duties in good faith, and is entitled to deference in its decision to settle the Federal Derivative Action. *In re UnitedHealth Group Inc. S'holder Deriv. Litig.*, __ F. Supp. 2d __, __, No. 06-CV-1216, 2008 WL 5422616, at **3-5 (D. Minn. Dec. 24, 2008).  In the Preliminary Approval Order, the Court cited the decision of the Minnesota Supreme Court on the certified question posed in this case, and held that "Minnesota law requires a court to 'defer to an SLC's decision to settle a shareholder derivative action if (1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith.'" *Id.* at *2 (quoting *In re UnitedHealth Group S'holder Inc. Deriv. Litig.*, 754 N.W. 2d 544, 559 (Minn. 2008)).  Thus, the Court acknowledged that Minnesota has "explicitly adopted the New York Court of Appeals' business judgment rule set forth in *Auerbach v. Bennett*." *Id.*  The Court then concluded, after "applying this test" that "the state and federal courts are constrained to defer to the SLC's decision settling this matter on the terms set forth in the SLC Report." *Id*. at **5-6.

As to the first part of the *Auerbach* test, the Court held that "the SLC is clearly disinterested and independent." *Id*. at *6.  In support of its conclusion, the Court noted that, among other things, the SLC (1) was given complete power and authority to

5

investigate; (2) was comprised entirely of two members, each a former justice of the Minnesota Supreme Court; (3) was comprised of members having no prior connection to UnitedHealth; (4) was comprised of members who were not defendants and faced no potential liability; (5) retained independent experts in accounting and corporate governance; and (6) retained and received advice from well-respected independent counsel. *Id*. The Court further held that even though the Board's authority to add members to the SLC was "potentially a problem" this issue was "trivial" because the addition of new members "was neither threatened, nor did it occur." *Id*. at \*\*6-7.

As to the second part of the *Auerbach* test, the Court held that "the SLC's procedures were adequate, appropriate, and performed in good faith." *Id*. at \*8. In support of this conclusion, the Court explained that the SLC "quite properly decided to conduct its own investigation, rather than rely on the WilmerHale investigation." *Id*. The Court added that each SLC member "personally interviewed 50 witnesses; reviewed thousands of pages of documents, including materials submitted by plaintiffs; and reviewed cases and other materials to develop an understanding of the law governing derivative claims." *Id*. Moreover, Defendants' involvement in the process "was limited to responding to requests for information and participating in interviews" while the SLC "had full access to documents" and "developed a database of more than 66 million pages of documents." *Id*.

Lead Plaintiffs do not contest the independence or good faith of the SLC in this case. Indeed, for the reasons set forth below, Lead Plaintiffs share the SLC's

6

determination that the proposed Settlement is fair, reasonable, in the best interest of UnitedHealth and its shareholders, and merits final approval by the Court.

  **B. LEAD PLAINTIFFS AND THE SLC HAVE CONCLUDED THAT THE SETTLEMENT IS FAIR AND REASONABLE**

  "Under both Minnesota and federal law, the purpose of a derivative action is 'to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of the 'faithless directors and managers.'" *In re Xcel Energy Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) (quoting *Kamen v. Kemper Fin. Servs. Inc.,* 500 U.S. 90, 95 (1991)). Moreover, "[s]ettlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable." *Id*. (quoting *Maher v. Zapata Corp.*, 714 F. 2d 436, 455 (5th Cir. 1983)); *see also* 5 James William Moore, et al., *Moore's Federal Practice* ¶ 23.1.10[2][a] (3d ed. 1999) ("Because derivative actions are often difficult and costly to litigate, settlements of these types of actions are particularly favored.")).

  The lens through which the Court must view the settlement was declared by this Court in its December 24, 2008 Order. *UnitedHealth Group Inc.*, ___ F. Supp. 2d at __, 2008 WL 5422616, at *2 (quoting *UnitedHealth Group Inc.*, 745 N.W.2d at 559)). But further support is found in assessing the claims made in the Amended Complaint to the relief obtained, the views of counsel, and the absence of any opposition to the settlement.

>    **1.    THE MERITS OF LEAD PLAINTIFFS' CASE, WHEN WEIGHED AGAINST THE TERMS OF THE SETTLEMENT, ALSO FAVOR FINAL APPROVAL OF THE SETTLEMENT**

Historically, the most important criterion in evaluating a settlement is the merits of a plaintiff's claims balanced against the settlement terms. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) (citations omitted). This factor clearly favors final approval of the Settlement Lead Plaintiffs and the SLC reached with Defendants.

The operative Complaint [Docket No. 134] undoubtedly asserted meritorious claims. The Complaint sought, *inter alia*, equitable rescission of all executory options contracts unlawfully granted to Defendants, disgorgement of the profits Defendants realized from the exercise of illicitly granted options,[5] the imposition of a constructive trust[6] over the unexercised option contracts, and a permanent injunction voiding and rescinding such option grants. Furthermore, the Complaint sought money damages for Defendants' breaches of fiduciary duty and *ultra vires* acts. (Joint Decl. ¶¶ 25-27.)

Even after a trial, Lead Plaintiffs' sought-after remedies might not include a significant monetary recovery or might not provide for the cancellation of backdated stock option grants, and perhaps most significantly would not have provided for the type of corporate governance improvements included in the Settlement. Lead Plaintiffs only

---

[5] To establish a claim for unjust enrichment, a plaintiff "must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher,* 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).

[6] A constructive trust "is imposed when a defendant has possession of particular funds or property that in good conscience belong to the plaintiff." *Knieriem v. Group Health Plan, Inc.,* 434 F.3d 1058, 1064 (8th Cir. 2006).

agreed to the Settlement after a realistic evaluation of the SLC's views and the prospects of success at trial.  (*Id.* ¶¶ 49-53.)

Lead Plaintiffs shared their views of the possible settlement scenarios with the SLC.  In addition, Lead Plaintiffs believe that the relative merits of the claims and the terms of the Settlement favor final approval because of all counsel's experience in these matters and the stage of  litigation at which the Settlement was reached.

### 2. THE EXPERIENCE AND OPINION OF COUNSEL SUPPORTS FINAL APPROVAL OF THE SETTLEMENT

The opinion of experienced counsel is significant in determining whether the merits of a case justify a proposed settlement.  *See, e.g., DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (affirming District of Minnesota approval of class action lawsuit against bank and stating that "[t]he views of the parties to the settlement must also be considered.  As noted by the district court, class counsel is experienced in this type of litigation.") (citations omitted)).  Counsel for Lead Plaintiffs have significant experience in securities and other complex derivative litigation, and have negotiated many other substantial derivative settlements throughout the country.  (*See* separate Declarations submitted in support of the request for fees and expenses.)  Based upon their investigation into the claims and the underlying events and transactions alleged in the Complaint, legal research and consultations with experts, Lead Plaintiffs and their counsel have concluded that the terms and conditions of the Settlement conferred a substantial benefit to UnitedHealth, is fair, reasonable and adequate, and is in the best interests of the Company and its shareholders.

In addition, Defendants in this matter are also represented by very sophisticated and experienced counsel with well-developed expertise in areas of corporate litigation, which likewise favors final approval of the Settlement. *Id.*

Lead Plaintiffs actively prosecuted the Federal Derivative Action for over two and a half years, which lends credence to the requirement that any settlement must be the product of a good-faith investigation. (Joint Decl. ¶ 12.) During this time, among other things, Lead Plaintiffs obtained and reviewed millions of pages of documents, Lead Plaintiffs achieved a preliminary injunction preventing certain backdated stock options from being exercised, the parties fully briefed a motion to dismiss the Complaint and the Court entered an Order thereon, and Lead Plaintiffs filed a motion for partial summary judgment. Thus, all parties were fully aware of the relative merits of Lead Plaintiffs' claims at the time of the Settlement, a fact which is probative of the Settlement's fairness. *See, e.g., In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 106 (D.R.I. 1996) (approving class action settlement where "[t]he timing of the agreement indicate[d] that counsel for both sides were sufficiently apprised of all theories and defenses").

Moreover, the Settlement was the result of extensive arm's-length negotiations under the close supervision and direction of a skilled and independent mediator and arbitrator. Where, as here, a settlement is reached after arm's-length negotiations among experienced counsel, there is an initial presumption that the proposed settlement is fair and reasonable. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (approving class action and derivative settlement and noting that "[w]hen sufficient discovery has been provided and the parties have bargained at arms-

length, there is a presumption in favor of the settlement"). In addition, the presence of an experienced mediator demonstrates that negotiations were free of collusion. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). Thus, the timing of the Settlement, after extensive discovery and hard-fought mediation before an experienced mediator, favors final approval of the Settlement.

### 3. THE REACTION OF UNITEDHEALTH SHAREHOLDERS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT

The Notice mailed to UnitedHealth shareholders informed them that the deadline for postmarking objections was Friday, January 23, 2009. Lead Plaintiffs' Counsel has received no objection from shareholders—whether individual or institutional. (Joint Decl. ¶ 69.) The overwhelmingly favorable reaction of UnitedHealth shareholders provides substantial support that the Settlement is fair, reasonable and adequate. *See, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (granting final approval of class action settlement where "the amount of opposition to the settlement is miniscule" and noting that "[t]he District Court has a duty to the silent majority as well as the vocal minority") (citing *DeBoer*, 64 F.3d at 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor.")); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (affirming approval of class action settlement where "fewer than 4 percent of the class members objected to the settlement, significantly fewer than the number of objectors to

other settlements that have been approved") (citations omitted).  Courts have also noted that a lack of objections by institutional investors, who have the largest stake in the litigation and settlement, weighs in favor of the proposed settlement.  *See*, *e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) (approving settlement of antitrust class action where "none of the thousands of institutional Class members, who have the largest financial stake, have objected to the Proposed Settlement").  Here, no institutional investors (large or small) have objected to the Settlement.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of UnitedHealth and its shareholders, and respectfully request that the Court grant final approval of the Settlement.

Dated:  January 30, 2009                               **CHESTNUT & CAMBRONNE, P.A.**


By s/Karl L. Cambronne
    Karl L. Cambronne #14321
    Jack L. Chestnut #16378
    Jeffrey D. Bores #227699
    3700 Campbell Mithun Tower
    222 South Ninth Street
    Minneapolis, MN 55402
    Telephone: (612) 339-7300
    Fax: (612) 336-2940

SHAPIRO HABER & URMY LLP
Thomas G. Shapiro
Edward F. Haber
Michelle H. Blauner
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Fax: (617) 439-0134

BERNSTEIN LITOWITZ BERGER &
 GROSSMANN LLP
Chad Johnson
Beata Farber
Adam Wierzbowski
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Fax: (212) 554-1444

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer
Michael Barry
45 Rockefeller Center, 15th Floor
New York, NY  10111
Telephone: (646) 722-8500
Fax:  (646) 722-8501


RICE, MICHELS & WALTHER LLP
Brian Rice, #14468X
Ann Walther, #21369X
Karin E. Peterson, #185048
206 East Bridge, Riverplace
10 Second Street Northeast
Minneapolis, MN  55413
Telephone: (612) 676-2300
Fax: (612) 676-2319

*Counsel for Lead Plaintiffs*

KLAUSNER & KAUFMAN, P.A.
Robert D. Klausner
10059 N.W. First Court
Plantation, FL  33323
Telephone:  (954) 916-1202
Fax:  (954) 916-1232

*Additional Counsel for Jacksonville Police*
*& Fire Pension Fund and Louisiana*
*Sheriffs' Pension & Relief Fund*