**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION | Master File No. 06-1216 JMR/FLN |

**JOINT DECLARATION IN SUPPORT OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.   OVERVIEW ........................................................................................................ 1

II.  THE TERMS OF THE SETTLEMENT CONFERRED A SUBSTANTIAL BENEFIT TO
     UNITEDHEALTH ................................................................................................ 4

III. THE HISTORY OF THE LITIGATION ...................................................................... 8

     A.   SUMMARY OF THE ALLEGATIONS ................................................................ 10

     B.   LEAD PLAINTIFFS' PROSECUTION OF THE ACTION ...................................... 11

          1.   LEAD PLAINTIFFS DILIGENTLY COMMENCED THIS ACTION, WHICH
               LED TO THE APPOINTMENT OF THE SLC .......................................... 12

          2.   LEAD PLAINTIFFS SUCCESSFULLY DEFENDED AGAINST
               DEFENDANTS' MOTION TO DISMISS .................................................. 14

          3.   LEAD PLAINTIFFS FILED A MOTION FOR PARTIAL SUMMARY
               JUDGMENT ...................................................................................... 15

          4.   LEAD PLAINTIFFS OBTAINED A PRELIMINARY INJUNCTION
               PROHIBITING THE EXERCISE OF VALUABLE UNITEDHEALTH STOCK
               OPTIONS .......................................................................................... 16

          5.   LEAD PLAINTIFFS ENGAGED IN EXTENSIVE DISCOVERY AND
               SUCCESSFULLY OPPOSED INTERVENTION EFFORTS BY PARTIES IN
               RELATED PROCEEDINGS .................................................................. 17

          6.   LEAD PLAINTIFFS WORKED COOPERATIVELY WITH THE SLC ......... 21

          7.   LEAD PLAINTIFFS INITIATED AND ACHIEVED A MEDIATED
               SETTLEMENT OF THE DERIVATIVE CLAIMS ...................................... 22

          8.   LEAD PLAINTIFFS RESEARCHED, PROPOSED, AND ACHIEVED
               EXTENSIVE CORPORATE GOVERNANCE REFORMS ........................... 24

          9.   LEAD PLAINTIFFS' COUNSEL PARTICIPATED IN THE SPEARS
               ARBITRATION ................................................................................... 27

          10.  LEAD PLAINTIFFS' COUNSEL ENGAGED IN EXTENSIVE LITIGATION
               BEFORE THE MINNESOTA SUPREME COURT ...................................... 27

i

11. LEAD PLAINTIFFS OBTAINED PRELIMINARY APPROVAL OF THE SETTLEMENT ....................................................................................... 28

IV. THE REQUESTED ATTORNEYS' FEES AND EXPENSES ............................................ 29

    A. THE FEE REQUEST IS FAIR, ADEQUATE AND REASONABLE ........................ 29

    B. THE REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES IS FAIR, ADEQUATE AND REASONABLE ..................................................................... 31

V. THE REACTION OF UNITEDHEALTH SHAREHOLDERS ............................................ 32

VI. CONCLUSION ......................................................................................................... 32

We, Karl L. Cambronne, Michelle H. Blauner, Chad Johnson, Michael J. Barry and Brian F. Rice, hereby declare as follows:

## I.   OVERVIEW

1.     Karl L. Cambronne is a member and the President of the law firm of Chestnut & Cambronne, P.A., and was appointed Lead Counsel in the above-captioned consolidated federal shareholder derivative action (the "Federal Derivative Action").

2.     Michelle H. Blauner is a member of the law firm of Shapiro Haber & Urmy, LLP which serves on the Court-appointed Coordinating Committee in this action.

3.     Chad Johnson is a member of the law firm of Bernstein Litowitz Berger & Grossmann LLP, which serves on the Court-appointed Coordinating Committee in this action.

4.     Michael J. Barry is a member of the law firm of Grant & Eisenhofer, P.A., which serves on the Court-appointed Coordinating Committee in this action.

5.     Brian F. Rice is a member of the law firm of Rice, Michels & Walther, LLP, which serves on the Court-appointed Coordinating Committee in this action.

6.     The law firms of Chestnut & Cambronne, P.A.; Shapiro Haber & Urmy, LLP; Bernstein Litowitz Berger & Grossmann LLP; Grant & Eisenhofer, P.A.; and Rice, Michels & Walther, LLP are sometimes collectively referred to in this Declaration as "Lead Plaintiffs' Counsel."

7.     Unless otherwise indicated, the statements in this Declaration are made based upon our own personal knowledge.

8.     We respectfully submit this Joint Declaration in support of the proposed settlement of this derivative action, which resulted in significant monetary benefits to Nominal Defendant UnitedHealth Group Incorporated ("UnitedHealth" or the "Company") valued at over $900 million on December 6, 2007, and which are now valued at $658.0 million (Black Scholes) or $718.0 million (intrinsic) according to the special litigation committee appointed by UnitedHealth's Board (the "SLC").  The proposed settlement also resulted in far-reaching corporate governance reforms achieved for the benefit of UnitedHealth and its shareholders.  We further make this Declaration in support of Motion of the Lead Plaintiffs' Counsel for Approval of an Award of Attorneys' Fees and Reimbursement of Litigation Expenses on behalf of all Lead Plaintiffs' Counsel who contributed to the prosecution of this action.

9.     Lead Plaintiffs' Counsel respectfully submit that the instant settlement is an excellent result that fully warrants approval by the Court.  This settlement represents the largest derivative settlement in the history of the United States.  It has also resulted in far-reaching corporate governance reforms at UnitedHealth.  In addition to the size and scope of the settlement, this recovery is also extraordinary in light of the significant risks faced by Lead Plaintiffs in establishing liability and damages.

10.     This action was one of the first – if not the very first – options backdating derivative lawsuits brought after the Wall Street Journal exposed the practice of option backdating.  Charles Forelle and James Bandler, *The Perfect Payday*:  *Some CEOs Reap Millions by Landing Stock Options When They Are Most Valuable, Luck—or Something*

2

*Else*, The Wall Street Journal, March 15, 2006, at A1.  Thus, at the time Lead Plaintiffs commenced this now consolidated action, we were litigating in uncharted territory. There was no precedent in this area under Minnesota law, or even under Delaware law, and derivative actions in Minnesota were routinely being dismissed.

11.     This case presented novel questions of law, and the novel application of law to facts, and we litigated this case on a strictly contingent basis.  Lead Plaintiffs' Counsel knew from the outset that they might expend a considerable amount of time in pursuing this complex shareholder derivative action, with no guarantee of receiving any compensation whatsoever if the action ultimately proved unsuccessful.  In undertaking this responsibility, Lead Plaintiffs' Counsel were obligated to assure that sufficient resources were dedicated to the prosecution of this litigation and to advance the out-of-pocket expenses associated with it.

12.     As discussed more fully below, our investigation, prosecution and settlement of this action added substantial value to the Company and its shareholders. Our important efforts included:  (a) investigating Lead Plaintiffs' claims in connection with filing the initial and amended complaints; (b) retaining and consulting with experts in several areas, including damages, statistics (concerning the overwhelming likelihood of options backdating at UnitedHealth) and corporate governance; (c) successfully prosecuting numerous complex discovery motions; (d) reviewing, reorganizing and carefully analyzing over 16.4 million pages of documents produced by Defendants; (e) moving for partial summary judgment against Defendants William W. McGuire

3

("McGuire") and Stephen J. Hemsley ("Hemsley"); (f) successfully seeking injunctive relief against Defendant McGuire for the creation of a constructive trust holding his backdated options; (g) working cooperatively with the SLC; and (h) initiating and actively participating in the complex mediation and arbitration process overseen by former U.S. District Judge Layn R. Phillips over the course of several months.  Indeed, our significant contributions to this action in the area of corporate governance were recognized by the SLC in its report issued on December 6, 2007 (the "SLC Report"). (*See infra* ¶¶ 49-50, 56).

II.    **THE TERMS OF THE SETTLEMENT CONFERRED A SUBSTANTIAL BENEFIT TO UNITEDHEALTH.**

13.    We believe that the Settlement provides substantial benefits to UnitedHealth and its shareholders.  Among other things, the Settlement provides that in consideration for the full settlement and dismissal with prejudice of the Federal Derivative Action and the state derivative action captioned *In re UnitedHealth Group Incorporated Derivative Litigation*, No. 27 CV 06-8050, pending before The Honorable George F. McGunnigle ("State Derivative Action"; collectively, the "Lawsuits"), Defendants McGuire, Lubben, and Spears, and additional UnitedHealth executives, have agreed to the following:

14.    McGuire's Settlement Contributions.  Following the initiation of the Federal Derivative Action, McGuire agreed in 2006 to re-price certain UnitedHealth stock options.  The value to the Company of these option re-pricings was approximately

4

$181.0 million (Black Scholes)[1] or $198.8 million (intrinsic).[2]  In addition, pursuant to

the mediated settlement of the Lawsuits, announced by the Company on December 6,

2007, McGuire has also agreed to:  (i) surrender to the Company all right, title and

interest in stock options on 9,223,360 shares of Company stock; (ii) surrender to the

Company any and all rights he has under the Company's Supplemental Executive

Retirement Plan; (iii) surrender to the Company his rights to $8.1 million of the funds in

his Executive Savings Plan Account; and (iv) relinquish any claim for post-employment

benefits, such as the use of Company airplanes, office, secretarial and administrative

support and Company-paid life and health insurance.  When added to the value of the re-

priced options in 2006, the total value of rights relinquished by McGuire was

approximately $602.3 million (Black Scholes) or $618.5 million (intrinsic) as of

December 6, 2007.

     15.   <u>Lubben's Settlement Contributions</u>.  Following the initiation of the Federal

Derivative Action, Lubben (UnitedHealth's former General Counsel and Secretary)

agreed in 2006 to the re-pricing of certain UnitedHealth stock options.  The economic

value relinquished by Lubben from the re-pricing of these options was approximately

$2.7 million (Black Scholes) or $3.6 million (intrinsic).  Additionally, pursuant to the

---

[1]  The Black Scholes option pricing model calculates the present value of a stock option based on specific information about the terms of the option (e.g., the stock price, exercise price and expected term).

[2]  The intrinsic value of a stock option is determined by taking the excess of the market price over the option exercise price as of a given date.

mediated settlement of the Lawsuits, Lubben has agreed, among other things, to:  (i) repay to the Company $20.55 million of the compensation he realized in 2007 from the exercise of options; (ii) relinquish rights to severance benefits in the amount of $1.95 million; and (iii) surrender to the Company all right, title and interest in stock options on 273,000 shares of Company stock.  The total economic value relinquished by Lubben under the Lubben Agreement is approximately $28.0 million (Black Scholes) or $25.4 million (intrinsic).  When added to the value of the re-priced options in 2006, the total value of rights relinquished by Lubben is approximately $30.7 million (Black Scholes) or $29.0 million (intrinsic) as of December 6, 2007.  A press release issued by the Company on December 6, 2007 confirmed these figures:  "These amounts, combined with a previous repricing of stock options awarded to Mr. Lubben, result in a total value relinquished by Mr. Lubben of approximately $30 million."  (Joint Decl. Ex. A.)

16.   <u>Spears's Settlement Contribution</u>.  In connection with the mediated settlement of this action, Defendant Spears (a former member of UnitedHealth's Board of Directors and the head of its Compensation Committee) agreed to participate in binding arbitration to determine the fair value of the claims against him.  This arbitration resulted in an award on behalf of the Company valued at $7.25 million.

17.   <u>Additional Remediation</u>.  In 2006, after the Lawsuits were filed, thirteen other UnitedHealth executives (including Defendants Stephen Hemsley, Robert Sheehy and Jeannine Rivet) voluntarily agreed to re-price certain UnitedHealth stock options and provided other remediation with a value of approximately $204.9 million (Black Scholes)

or $225.2 million (intrinsic), with Hemsley contributing between approximately $177.5 million (Black Scholes) or $189.1 million (intrinsic) of that value.  In 2007, Hemsley took further steps to remedy past practices relating to stock option grants by increasing the exercise price on other outstanding UnitedHealth stock options, resulting in $50 million of additional value on an intrinsic-value basis.

18.     According to the SLC Report, the total monetary value of the actions taken by McGuire, Lubben, other UnitedHealth executives, and Spears, all of which resulted from the Lawsuits, is approximately $895 million (intrinsic) or $930 million (Black Scholes) as of December 6, 2007, of which $388.6 million (Black Scholes) or $427.6 million (intrinsic) resulted from voluntary actions taken in 2006, and $499.3 million (Black Scholes) or $495.1 million (intrinsic) resulted from 2007 settlements.

19.     On December 6, 2007, the day the SLC issued its report, UnitedHealth issued a press release that aggregated the total amounts of the December 2007 settlements with the total value of the prior re-pricings.  The press release stated: "The SLC has valued the total amounts to be relinquished pursuant to these settlement agreements, together with the value previously and voluntarily relinquished by current and former executives through the surrender and repricing of options, to be *approximately $900 million*."  (Joint Decl. Ex. A) (emphasis added).

20.     Because the settlement and other remediation involve the cancellation, relinquishment and repricing of UnitedHealth stock options, the value of the settlement changes as the value of UnitedHealth common stock changes.  As of the close of the

7

market on January 29, 2009, the value was $658.0 million (Black Scholes) or $718.0 million (intrinsic) according to the SLC.

21.    In addition to the monetary relief obtained through this litigation, Lead Plaintiffs' Counsel secured substantial governance reforms at the Company.  These corporate governance reforms, discussed more fully below, have been achieved in large part as a result of this litigation and through direct negotiations between Lead Plaintiffs' Counsel and counsel for UnitedHealth.

22.    The settlement was preliminarily approved by this Court and the Court in the State Derivative Action on December 19, 2008, as set forth in the Order for Preliminary Settlement Approval (the "Preliminary Approval Order").  *In re UnitedHealth Group, Inc. S'holder Deriv. Litig.,* ___ F. Supp. 2d ___, ___, No. 06-CV-1216, 2008 WL 5422616 (D. Minn. Dec. 24, 2008).  Pursuant to the Preliminary Approval Order, the Courts:  (i) preliminarily approved the proposed settlement; (ii) approved, in form and content, the Notice of Proposed Settlement and Dismissal of Derivative Lawsuits, Joint Settlement Hearing and Right to Appear (the "Notice"); and (iii) ordered UnitedHealth to publish and mail the Notice within 14 business days after the entry of the Preliminary Approval Order to all record holders of UnitedHealth common stock as of the date of entry of the Order.  *Id.* at **5-6.

## III.    THE HISTORY OF THE LITIGATION

23.    Beginning on March 29, 2006, eleven derivative lawsuits were filed in this Court by UnitedHealth shareholders asserting claims against certain of the Company's

officers and directors arising from alleged stock option "backdating" and other alleged improper awards of stock options to certain UnitedHealth officers and directors.

24.     On July 7, 2006, this Court consolidated the eleven related lawsuits into the single, consolidated Federal Derivative Action, and appointed Public Employees' Retirement System of Ohio, State Teachers' Retirement System of Ohio, St. Paul Teachers' Retirement Fund Association, Public Employees' Retirement System of Mississippi, Jacksonville Police & Fire Pension Fund, Louisiana Municipal Police Employees' Retirement System, Louisiana Sheriffs' Pension & Relief Fund, Fire & Police Pension Association of Colorado, Connecticut Retirement Plans and Trust Funds, and Jan Brandin as Lead Plaintiffs.  This Court also appointed Karl L. Cambronne Lead Counsel in the action, and appointed attorneys from the law firms of Shapiro Haber & Urmy, LLP; Bernstein Litowitz Berger & Grossmann LLP; Grant & Eisenhofer, P.A.; and Rice, Michels & Walther, LLP as members of the Plaintiffs' Coordinating Committee.

25.     The operative complaint in the action is Lead Plaintiffs' Amended and Consolidated Verified Derivative and Class Action Complaint (the "Complaint"), filed on September 21, 2006.  [Docket No. 134.]  The Complaint alleges claims derivatively on behalf of the Company, which include violations of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, and state law claims for breach of fiduciary duty, rescission and unjust enrichment.  More specifically, the Complaint alleges the Defendants engaged in a fraudulent scheme to grant, obtain,

9

approve, and/or acquiesce in the issuance of unlawfully backdated stock options to officers of UnitedHealth with the express intent and purpose of providing those individuals with windfall compensation at the direct expense of the Company.[3]  The Complaint included detailed charts and statistical analysis demonstrating why numerous, specific stock option grants to the Defendants were likely backdated.

### A.   SUMMARY OF THE ALLEGATIONS

26.     The Federal Derivative Action alleges that, since at least 1996, UnitedHealth's Board of Directors permitted or otherwise engaged in a fraudulent scheme to grant stock options with strike prices based on the dates with the lowest closing share price of the year or at other relative low points or troughs throughout the relevant time period.  UnitedHealth's Board of Directors also allegedly delegated to McGuire, UnitedHealth's former Chairman and Chief Executive Officer, the ability to unilaterally set the grant dates for his own UnitedHealth stock option grants and option grants to the other corporate officers, in violation of the stated terms of the Company's stock option plans.  McGuire allegedly backdated option grants to dates on which the stock price was at an especially low point during the quarter or fiscal year, providing the

---

[3] Defendants named in this action were the members of the UnitedHealth Board of Directors at the time the lawsuit was commenced (William W. McGuire, Stephen J. Hemsley, William C. Ballard, Jr., Richard T. Burke, James A. Johnson, Thomas H. Kean, Douglas W. Leatherdale, Mary O. Mundinger, Robert L. Ryan, Donna E. Shalala, William G. Spears and Gail R. Wilensky) and certain current and former officers of the Company who were not members of the Board of Directors (Travers H. Wills, David P. Koppe, Thomas P. McDonough, David J. Lubben, Jeannine M. Rivet, R. Channing Wheeler, Arnold H. Kaplan and Robert J. Sheehy) (collectively, "Defendants").

recipients with in-the-money options carrying an immediate "paper profit."  The Federal

Derivative Action alleges that, among other things, such conduct violated UnitedHealth's

shareholder-approved stock option plans, constituted a breach of the fiduciary duties

owed to the Company by its officers and directors under Minnesota law, resulted in

unjust enrichment, and also violated certain provisions of the federal securities laws.

27.    The Complaint also made numerous allegations regarding the conflicts of

interest held by the individuals serving on the UnitedHealth Board of Directors, in order

to demonstrate that those individuals were not disinterested and independent and would

have been unable to independently assess a shareholder demand.  Those allegations

included that Defendant Spears had a financial conflict of interest resulting from acting as

McGuire's money manager while simultaneously approving McGuire's employment

agreement with the Company.  The Complaint further alleged that McGuire's

employment agreement (which granted McGuire millions of backdated UnitedHealth

stock options) was likely backdated.

### B.    LEAD PLAINTIFFS' PROSECUTION OF THE ACTION

28.    Since news first broke of potential backdating at UnitedHealth, Lead

Plaintiffs have aggressively litigated this matter and have devoted significant time and

expenses in furtherance of this litigation.  As described more fully below, we have

worked cooperatively to vigorously and successfully prosecute this lawsuit.  We have

maintained daily control and monitoring of the work performed by lawyers at our firms

on this case, and retained experts necessary to prosecute it, including experts in statistics,

damages, and corporate governance.  The following is a summary of our work on behalf of UnitedHealth and its shareholders:

### 1.   LEAD PLAINTIFFS DILIGENTLY COMMENCED THIS ACTION, WHICH LED TO THE APPOINTMENT OF THE SLC

29.     Our firms independently engaged in extensive pre-suit investigations into UnitedHealth's option granting practices, including extensive factual and legal analysis into potential claims and defenses.  Based upon our extensive review and analysis of UnitedHealth's public filings and disclosures, as well as news reports about UnitedHealth, we concluded that UnitedHealth backdated stock options to its most senior executives, including Defendants McGuire, Lubben and Hemsley.

30.     Our firms filed separate derivative action complaints on behalf of UnitedHealth beginning on March 29, 2006, when Lead Plaintiff Jan Brandin filed the first of the derivative actions on behalf of the Company.  Along with their Complaint, filed on May 18, 2006, Lead Plaintiffs St. Paul Teachers' Retirement Fund Association, Public Employees' Retirement System of Mississippi, Jacksonville Police & Fire Pension Fund, Louisiana Municipal Police Employees' Retirement System, Louisiana Sheriffs' Pension & Relief Fund and the Fire & Police Pension Association of Colorado also filed a motion for a preliminary injunction, seeking to enjoin McGuire and Hemsley from exercising the backdated stock options that were the subject of their lawsuit.

31.     According to a UnitedHealth Board of Directors resolution dated June 26, 2006, the Board formed the SLC in response to the filing of the instant litigation.  The resolution noted that the Company had received a shareholder demand seeking to have

the Company pursue claims against various officers and members of the Board (the "Derivative Claim") and that, as of that time, several derivative actions, including those comprising the instant consolidated federal derivative action (the "Derivative Actions"), had also been filed.  Pursuant to Minn. Stat. § 302A.241, the Board resolution granted to the SLC the "complete power and authority to investigate the Derivative Claim and the claims raised in the Derivative Actions and analyze the legal rights and remedies of the Company and determine whether those rights or remedies should be pursued."  The Board resolution also stated that, while a committee of directors had recently retained the law firm of Wilmer Cutler Pickering Hale and Dorr, LLP ("WilmerHale") to review the Company's stock option practices, the SLC had the ability to consider the results of that review and "conduct any additional investigation or analysis [the SLC] deems appropriate."  (Joint Decl. Ex. B.)

32.    On July 7, 2006, following briefing and oral argument, this Court consolidated the related federal derivative actions, appointed Lead Plaintiffs and Lead Counsel, and established the Plaintiffs' Coordinating Committee.  [Docket Nos. 107, 108 and 129.]  Following the consolidation of the derivative actions, Lead Plaintiffs' Counsel continued to investigate and research claims on behalf of the Company.  This included consultation with experts, including Dr. Richard E. Goldberg, a principal at the Brattle Group, who performed a statistical analysis of the likelihood that certain UnitedHealth stock options had been improperly backdated.  Dr. Goldberg has a Master's degree and a Ph.D in physics from Stanford University and a Bachelor's degree from Princeton, and

13

the Brattle Group is a consulting firm based in Cambridge, Massachusetts that specializes in complex finance and economic issues.  Lead Plaintiffs' Counsel worked closely with Dr. Goldberg throughout the drafting process and continuously discussed the analysis of the options at issue.  Following several weeks of research and drafting, including an all-day in-person drafting session in New York City, Lead Plaintiffs filed the Complaint on September 21, 2006.

33.    On October 15, 2006, UnitedHealth released the report of the stock options investigation conducted by WilmerHale (the "WilmerHale Report"), which confirmed the factual underpinnings of the Complaint, *i.e.*, that stock options routinely were backdated at UnitedHealth, that Defendant McGuire exercised control over the stock option granting process at UnitedHealth and that Defendant Spears had a significant conflict of interest related to his managing assets for McGuire while serving on the Company's Compensation Committee (including as its Chairman from 1997 to 2004).  That same day, the Company also announced Defendants McGuire and Hemsley had "voluntarily" re-priced UnitedHealth stock options granted to them.  The Company's October 15 press release also announced the departures from UnitedHealth of Defendants McGuire, Lubben, and Spears.  (Joint Decl. Ex. C.)

### 2.    LEAD PLAINTIFFS SUCCESSFULLY DEFENDED AGAINST DEFENDANTS' MOTION TO DISMISS

34.    On October 5, 2006, Defendants filed a motion to dismiss the Complaint [Docket No. 136], which was supported by memoranda filed on November 22, 2006 [Docket No. 161] and January 19, 2007 [Docket No. 192].  Defendants argued, *inter alia*,

that Lead Plaintiffs' derivative claims should be dismissed because Lead Plaintiffs

purportedly failed to sufficiently plead demand futility, particularly in light of the

Board's appointment of a special litigation committee.  Alternatively, Defendants argued

that all aspects of the Federal Derivative Action, including discovery, should be stayed

until the completion of the SLC investigation.

35.     Lead Plaintiffs' Counsel analyzed, researched, and prepared an opposition

to the Defendants' Motion to Dismiss, which was filed January 11, 2007.  [Docket No.

174.]  A hearing was held on February 14, 2007, and by Order dated March 14, 2007

[Docket No. 224], this Court denied Defendants' motion to dismiss.  Although the Court

stayed this lawsuit until the earlier of the completion of the SLC investigation or July 30,

2007, it permitted discovery to go forward.

### 3.     LEAD PLAINTIFFS FILED A MOTION FOR PARTIAL SUMMARY JUDGMENT

36.     On October 11, 2006, Lead Plaintiffs filed a Motion for Partial Summary

Judgment against Defendants William W. McGuire and Stephen Hemsley [Docket No.

148], which was supported by a legal memorandum filed on November 22, 2006.

[Docket No. 157.]  Lead Plaintiffs argued that the undisputed facts demonstrated that

McGuire and Hemsley received backdated and *ultra vires* stock options, and that as a

matter of law they breached their fiduciary duties to UnitedHealth and were unjustly

enriched by accepting those options.

37.     On January 25, 2007, Defendants McGuire and Hemsley, and Nominal

Defendant UnitedHealth opposed the motion.  [Docket Nos. 205, 208, 210.]  Defendants

McGuire and Hemsley argued, *inter alia*, that: (i) the authority to litigate on behalf of UnitedHealth was vested in the Board of Directors until Plaintiffs proved that the Board was incapable of representing UnitedHealth's best interests, and that Lead Plaintiffs were unable to meet this burden because the Board had established the SLC to investigate and decide whether to press Lead Plaintiffs' claims; (ii) Lead Plaintiffs' motion was purportedly based on double hearsay; (iii) Defendants did not engage in illegal backdating because Minnesota law permits written actions of directors to be effective on the date specified in the written action, even where the corporate formalities are not completed until later; and (iv) Lead Plaintiffs' motion was premature prior to discovery.

38.     Lead Plaintiffs faced the risk that their motion would be unsuccessful. However, as Lead Plaintiffs pointed out in their reply brief, filed February 7, 2007 [Docket. No. 220], the motion had placed a burden on Hemsley and McGuire to come forward with facts and arguments to rebut the evidence Lead Plaintiffs had developed up to that time, but Defendants failed to do so. Lead Plaintiffs' motion was pending at the time the settlement was reached.

**4.      LEAD PLAINTIFFS OBTAINED A PRELIMINARY INJUNCTION PROHIBITING THE EXERCISE OF VALUABLE UNITEDHEALTH STOCK OPTIONS**

39.     In November 2006, following certain Lead Plaintiffs' initial filing of a motion for preliminary injunction, as discussed above, Lead Plaintiffs drafted a Motion for Preliminary Injunction to prevent the exercise of stock options by Defendants during the pendency of the litigation. Then, together with counsel for the California Public

Employees Retirement Systems ("CalPERS") – the lead plaintiff in the consolidated federal securities class action filed against UnitedHealth and certain of its officers and directors proceeding under the caption, *In re UnitedHealth Group Incorporated PSLRA Litigation,* Master File No. 06-01691 JMR/FLN (the "Federal Securities Action") – Lead Plaintiffs' Counsel negotiated an agreed-upon Joint Motion and Order for Preliminary Injunctive Relief against Defendant McGuire, which was entered by the Court on November 29, 2006.  [Docket No. 169.]

40.     Pursuant to that Order, McGuire was enjoined from exercising any stock options and UnitedHealth and McGuire were precluded from making payments to McGuire under his Supplemental Employee Retirement Plan, until 30 days after the completion of the SLC investigation, or July 30, 2007, unless otherwise extended by the Court.  At the request of Lead Plaintiffs, CalPERS, McGuire and UnitedHealth, the Preliminary Injunction was extended on four occasions.  [Docket Nos. 272, 291, 297, 300.]  This preliminary injunction preserved McGuire's assets (including assets used for the settlement) during the pendency of the Federal Derivative Action.

### 5.     LEAD PLAINTIFFS ENGAGED IN EXTENSIVE DISCOVERY AND SUCCESSFULLY OPPOSED INTERVENTION EFFORTS BY PARTIES IN RELATED PROCEEDINGS

41.     In October 2006, we prepared and served discovery on Defendants, including requests for production of documents, interrogatories and requests for admission, as well as discovery requests to other third parties, including WilmerHale. When Defendants refused to respond, we drafted and filed a motion to compel on January

15, 2007 [Docket Nos. 181-183, 191], which Defendants and UnitedHealth opposed. [Docket Nos. 198-199, 201-202, 204.]  Defendants and UnitedHealth argued, *inter alia*, that: (i) discovery was stayed automatically pursuant to the PSLRA because this action asserted claims under the securities laws; (ii) discovery should be stayed pending the SLC's investigation; and (iii) discovery was stayed in the Federal Securities Action and the State Derivative Action.

42.     At the same time, Defendants also moved to consolidate discovery in this action with discovery in the Federal Securities Action [Docket Nos. 177-179], which Lead Plaintiffs opposed as a delaying tactic and on the ground that the two actions were substantially different.  [Docket No. 197.]  A hearing was held on January 31, 2007. [Docket No. 216.]  Although the Court denied Lead Plaintiffs' motion to compel [Docket No. 217], holding that discovery was stayed until the motion to dismiss was decided, the Court also denied Defendants' motion to consolidate discovery.  [Docket No. 219.]

43.     Soon after this Court denied Defendants' motion to dismiss, Lead Plaintiffs resumed their efforts to obtain discovery from Defendants.  In April 2007, UnitedHealth agreed to produce a limited set of hand-selected documents (approximately 18,000 pages) to Lead Plaintiffs.  However, the Company refused to produce the vast majority of documents requested by Lead Plaintiffs in Lead Plaintiffs' document requests, including notes of interviews by WilmerHale, resulting in additional motion to compel briefing. [Docket Nos. 226, 228, 253-254.]  On May 30, 2007, the Court granted Lead Plaintiffs' motion to compel discovery [Docket No. 267], and directed UnitedHealth to turn over 26

18

million pages of documents.  On May 31, 2007, however, the Court denied Lead Plaintiffs' motion to compel the WilmerHale interview notes.  [Docket No. 268.]

44.    Following the Court's ruling on Lead Plaintiffs' motion to compel, Defendants began their production of documents.  In connection with the document production, we negotiated a protective order governing the confidentiality of documents, held numerous in-person and telephonic meetings with UnitedHealth, its counsel and IT professionals to discuss the production of documents, including the electronic format (including metadata) in which the documents would be produced.  We then assembled a team of twenty-nine legal professionals to review the documents – including, at our invitation, lawyers who represented the plaintiffs in the State Derivative Action, even though discovery in that case had been stayed.  The document review was supervised by Lead Counsel and other members of the Coordinating Committee, who held weekly conference calls regarding status of the review and relevant documents.  In total, Lead Plaintiffs' Counsel reviewed in excess of 16.4 million pages of documents.  We also obtained transcripts of and summarized 65 depositions of UnitedHealth personnel conducted in the Federal Securities Action, which included the depositions of Defendants McGuire, Hemsley, Lubben and Spears, as well as other UnitedHealth officers and directors.

45.    Over the course of this litigation, we also closely monitored related court proceedings and other investigations, including the State Court Derivative Action, the Federal Securities Action, the Federal ERISA Action, the Securities and Exchange

Commission ("SEC") investigation into UnitedHealth's option practices, the State of Minnesota's investigation into UnitedHealth's option practices, and the United States Attorney's criminal investigation into UnitedHealth's option practices.

46.     In April 2006, the State of Minnesota had moved to intervene in this action in order to "monitor the litigation and participate in selected matters of interest to the general public in this litigation."  Lead Plaintiff Jan Brandin opposed the State of Minnesota's motion on May 31, 2006, arguing that the State's interest in protecting the citizens of Minnesota and serving the general public could be adequately served by requiring the parties to serve their papers upon the Attorney General through the ECF filing system, and granting general leave to the State to file *amicus* briefs on matters of public interest, without the necessity of formal intervention.  On June 6, 2006, the State of Minnesota withdrew its motion for intervention and substituted a request that the State be permitted to appear in this case as an *amicus curiae*.  On June 23, 2006, Magistrate Judge Noel denied the State of Minnesota's motion, stating that:

> All parties are represented by able counsel and the Court has no need at the moment for the general assistance of an *amicus curiae*.  If particular issues arise in this litigation as to which the State of Minnesota has an articulable interest, the Attorney General may return to this Court and request to participate in the briefing and hearing of that issue as an *amicus curiae*.

[Docket No. 100 at 4.]

47.     In April 2007, the United States of America (which, as mentioned above, was conducting a parallel criminal investigation into UnitedHealth option practices) also

moved to intervene in the Federal Derivative Action for the purpose of seeking a partial and indefinite stay of discovery.  [Docket Nos. 243, 245.]  In response, Lead Plaintiffs argued that they did not oppose the Government's motion to intervene, but that staying a civil action such as this one, or any part of it, pending the outcome of a criminal investigation is a drastic measure that may only be invoked when absolutely necessary to avoid injustice.  [Docket No. 258.]  On May 31, 2007, the Court denied the United States of America's motion to intervene and for a partial stay of discovery.  [Docket No. 268.]

48.    Although we successfully opposed efforts by other parties to intervene in this action where such intervention would be disruptive to our discovery efforts and the efficient administration of this case, when appropriate, we coordinated activities with counsel in related cases.  For instance, although we successfully opposed Defendants' efforts to consolidate this lawsuit with the Federal Securities Action for discovery purposes, we jointly negotiated with CalPERS in the Federal Securities Action to obtain the injunction against McGuire.  We additionally invited counsel for the State Court Plaintiffs to participate in the mediation of this action and the review of documents in the interests of efficiency, even though the State Derivative Action was entirely stayed by the State Court.

## 6.    LEAD PLAINTIFFS WORKED COOPERATIVELY WITH THE SLC

49.    As discussed above, on June 26, 2006, UnitedHealth's Board of Directors appointed the SLC pursuant to Minn. Stat. § 302A.241 to investigate the claims raised in the Federal Derivative Action and the State Derivative Action and to analyze the legal

rights or remedies of the Company and determine whether those rights or remedies should be pursued.  The Board of Directors appointed former Minnesota Supreme Court Chief Justice Kathleen Blatz and former Minnesota Supreme Court Justice Edward Stringer as the two members of the SLC.

50.     After the appointment of the SLC, Lead Plaintiffs opened lines of communication with the SLC by participating in multiple meetings with the SLC, or its legal representatives, to discuss the progress of the litigation and the ways that Lead Plaintiffs' Counsel could best work with the SLC in connection with our ongoing investigations.  We had continuing discussions with the SLC, or its legal representatives, regarding the prosecution of this action, and our common interest in protecting UnitedHealth and its shareholders.  We were invited to make a formal presentation to the SLC as part of its investigation, which occurred on April 26, 2007.  During the presentation, we presented the SLC with (i) expert statistical analysis of backdated UnitedHealth options, (ii) proposed corporate governance reforms, (iii) a damages analysis, and (iv) legal analysis on certain issues.  Also during that presentation, and in subsequent meetings and telephone conferences with the SLC's counsel, we discussed the strength of the Company's claims against Defendants, as well as Lead Plaintiffs' and the Company's interests in seeking full and appropriate remedies.

### 7.     LEAD PLAINTIFFS INITIATED AND ACHIEVED A MEDIATED SETTLEMENT OF THE DERIVATIVE CLAIMS

51.     In June 2007, we proposed to UnitedHealth and Defendants that the parties engage in mediation.  At our initiative, we also proposed that the SLC be invited to

participate in the mediation.  All parties, including the SLC, agreed to a mediation with former United States District Court Judge Layn R. Phillips, an experienced and independent mediator.  We also invited counsel for the State Court Plaintiffs to participate.  We prepared a Mediation Statement in advance of the mediation, which was submitted to Judge Phillips and contained detailed and extensive analysis of the derivative claims asserted in this action.  Numerous mediation sessions were held, starting with a session held on July 27, 2007, in New York and Minneapolis.

52.     We subsequently had multiple telephone conferences as well as meetings with Judge Phillips, Defendants' counsel and counsel for the SLC regarding settlement efforts.  To assist in the settlement negotiations, we prepared and submitted to Judge Phillips and counsel for the SLC detailed memoranda summarizing insights from our review of UnitedHealth's documents, as well as legal analysis concerning the liability of various Defendants and groups of Defendants.

53.     On December 5, 2007, as a direct result of the mediation, the SLC, Lead Plaintiffs, State Court Plaintiffs and certain Defendants agreed to settle the Federal Derivative Action and the State Derivative Action on the terms described above.  On December 6, 2007, the SLC issued its report (the "SLC Report"), which determined, among other things, that settlements with Defendants McGuire, Lubben, and Spears and other remediation that occurred during the course of this litigation were in the best interests of the Company.  As noted above, Lead Plaintiffs' Counsel initiated and actively

23

participated in the negotiations leading to the mediated settlements and other remediation and approved them.

### 8.   LEAD PLAINTIFFS RESEARCHED, PROPOSED, AND ACHIEVED EXTENSIVE CORPORATE GOVERNANCE REFORMS

54.     In connection with our extensive investigation in this action, Lead Plaintiffs' Counsel retained and worked closely with a world-renowned expert in corporate governance, Professor Lucian A. Bebchuk, the William J. Friedman and Alicia Townsend Friedman Professor of Law, Economics, and Finance, and Director of the Program on Corporate Governance at Harvard Law School.  Trained in both law and economics, Professor Bebchuk holds an LL.M. and S.J.D. from Harvard Law School and an M.A. and Ph.D. in Economics from the Harvard Economics Department.  Professor Bebchuk's research focuses on corporate governance, law and finance, and law and economics, and he has published more than seventy research articles in academic journals in law, economics, and finance.  Professor Bebchuk has been a frequent contributor to policy making and public discourse in the areas of corporate governance and law and finance both in the United States and abroad.  He has testified before the Senate Finance Committee, the House Committee of Financial Services and the SEC.

55.     As reflected in the SLC Report, in approximately mid-2006, after the filing of this action, the Board and management of the Company began to institute a series of corporate governance reforms aimed at remedying weaknesses in the Company's stock option policies and practices, as well as other compensation and corporate governance policies and practices.  During the course of the mediation, Lead Plaintiffs' Counsel

provided the SLC and the Company with a series of additional corporate governance

proposals that we prepared in consultation with Professor Bebchuk, which they urged the

Company and the Board to adopt, and which were later specifically adopted by the

Company.

     56.     In its report, the SLC praised Lead Plaintiffs' Counsel, their efforts, and

their clients' involvement in this action, and reminded the Company to take Lead

Plaintiffs' corporate governance proposals seriously:

> [T]he SLC … believes that additional steps should be
> considered to ensure that [UnitedHealth] is, and remains, at
> the very forefront of corporate responsibility and
> transparency.  The institutional plaintiffs in the Federal
> Derivative Actions, through their counsel, have provided the
> SLC with a thoughtful and wide-ranging series of proposals
> aimed at achieving that result.  The SLC has provided
> plaintiffs' proposal to the Company and urges the Company's
> directors and management to give serious consideration to the
> proposals, and to adopt or to recommend the adoption of
> those proposals that the Company deems to be in the best
> interests of [UnitedHealth's] shareholders.

(SLC Report at 30 [Docket No. 298] (citation omitted).)

     57.     The corporate governance reforms adopted by the Company address, and

were responsive to, many of the concerns raised by Lead Plaintiffs.  The reforms

included, among many others, the following:

    a.   The positions of Chairman of the Board and CEO have been
       separated;

    b.   The Board initiated a process of electing five new independent
       directors within the next three years;

    c.   Director independence standards were strengthened to exceed the
       standards of the SEC and the New York Stock Exchange;

d. Equity awards were discontinued for certain of the Company's most senior and longest-tenured executives;

e. The delegation to management of the authority to approve stock option grants to non-executive employees and the delegation to the Chair of the Compensation Committee of the authority to approve stock option grants to executive officers were eliminated;

f. Broad-based equity award grants will be considered once a year, at a Compensation Committee meeting held on the pre-established date of the annual shareholders' meeting;

g. Equity compensation payable to existing directors was reduced by 40% and initial one-time grants of stock options to new directors were reduced by approximately 57%;

h. The Board adopted a claw back policy that subjects 30 senior managers to the claw back of their entire annual and long-term cash incentive payments if any financial restatement (caused in whole or in part by their fraud or misconduct) would have originally caused the executive to have received a lower incentive payment;

i. Shareholders have voted in favor of a Board proposal to eliminate from the articles of incorporation supermajority provisions for the removal of directors and for the approval of certain business combinations;

j. UnitedHealth has agreed to a process that will require its Board to approve, subject to its fiduciary duties, a shareowner-nominated candidate to the Board;

k. UnitedHealth agreed to amend its bylaws to provide that if the Chairman of the Board is not an Independent Director, a Lead Independent Director shall be elected annually; and

l. The Company agreed that no members of its Board may sit on more than three additional public company boards (with an exception for one of its current directors).

58.    Moreover, these proposals benefited the Company in that, among other things, UnitedHealth was able to use them to negotiate a settlement CalPERS, the Lead Plaintiff in the Federal Securities Action.

26

### 9.  LEAD PLAINTIFFS' COUNSEL PARTICIPATED IN THE SPEARS ARBITRATION

59.     Following the disclosure of the settlement and issuance of the SLC Report, the claims against Defendant Spears were arbitrated through a one-day binding arbitration overseen by Judge Phillips.  Both Lead Plaintiffs' Counsel and counsel for the SLC made presentations to Judge Phillips in connection with the Spears arbitration, reflecting the collaborative manner in which Lead Plaintiffs' Counsel and the SLC worked together.  As noted above, the Spears arbitration resulted in a recovery in the amount of $7.25 million for the benefit of the Company.

### 10.  LEAD PLAINTIFFS' COUNSEL ENGAGED IN EXTENSIVE LITIGATION BEFORE THE MINNESOTA SUPREME COURT

60.     After the parties notified the Court of the settlement, this Court certified a question to the Minnesota Supreme Court.  By Order dated December 26, 2007 [Docket No. 316], this Court certified the following question to the Minnesota Supreme Court: "Does Minnesota's business judgment rule foreclose a court from a) examining the reasonableness of, or b) rejecting on the merits, a settlement of a derivative action proposed by a Special Litigation Committee duly constituted under Minnesota Statutes § 302A.241 subd. 1?"  By Order dated February 1, 2008, the Minnesota Supreme Court accepted the question, which it reformulated as follows:  "To what extent does the business judgment rule as recognized in Minnesota law require a court, in deciding whether to approve a proposed settlement of a shareholder derivative action, to defer to

27

the decision of a Special Litigation Committee duly constituted under Minn. St.

§302.241, subd. 1 (2006), that a derivative action should be settled on specific terms?"

61.     On behalf of Lead Plaintiffs, we researched, analyzed, and prepared initial

and responsive briefs to the Minnesota Supreme Court on the question certified, and

Plaintiffs' Lead Counsel Karl L. Cambronne argued the case before the Minnesota

Supreme Court.  On August 15, 2008, the Minnesota Supreme Court answered the

certified question, as follows:  "Under the Minnesota business judgment rule, a court

must defer to an SLC's decision to settle a shareholder derivative action if the proponent

of that decision demonstrates that (1) the members of the SLC possess disinterested

independence and (2) the SLC's investigative procedures and methodologies were

adequate, appropriate and pursued in good faith."  [Docket No. 343.]

### 11.     LEAD PLAINTIFFS OBTAINED PRELIMINARY APPROVAL OF THE SETTLEMENT

62.     Following the Minnesota Supreme Court's decision, on behalf of Lead

Plaintiffs, we worked with counsel for Defendants, UnitedHealth, the State Derivative

Plaintiffs, and the SLC to gain preliminary approval of the settlement.  We conducted

multiple in-person and telephonic meetings with such counsel regarding approval of the

settlement and issues regarding final judgment.  We drafted and negotiated the form of

order and notice to shareholders with counsel for all parties.  We also presented the Court

with detailed preliminary approval papers explaining why the proposed settlement is fair,

reasonable, and in the best interests of UnitedHealth and its shareholders, and should be

approved pursuant to Fed. R. Civ. P. 23.1.  [Docket Nos. 370, 372.]  Following a hearing

on December 12, 2008, the Court granted Lead Plaintiffs' Motion for Preliminary

Approval of the Settlement, and directed that notice be sent to current UnitedHealth

shareholders.  [Docket No. 381.]

## IV.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES

### A.    THE FEE REQUEST IS FAIR, ADEQUATE AND REASONABLE

63.    Lead Plaintiffs' Counsel seek an award of attorneys' fees and expenses in

the amount of $47 million, which includes $803,591.78 in expenses.  Lead Plaintiffs'

Counsel respectfully submit that the fee award and reimbursement of expenses should be

approved by the Court because it is well within the range of fees that courts award in

comparable class and derivative actions.

64.    The fee requested is fair, adequate and reasonable because of the significant

risks faced by Lead Plaintiffs in pursuing this action.  Indeed, liability here was far from

assured.  As set forth above, Lead Plaintiffs faced significant risks, including the risk of

dismissal posed by the Board's appointment of the SLC and the SLC's ongoing

investigation, the Defendants' motion to dismiss or to stay discovery, Defendants'

refusals to produce documents and the oppositions they filed in response to Lead

Plaintiffs' motions to compel, Defendants' opposition to Lead Plaintiffs' motion for

partial summary judgment, the U.S. Attorney's Office's motion to intervene and stay the

litigation, as well as an attempt to consolidate this action with the Federal Securities

Action.  In large part as a result of Lead Plaintiffs' Counsel's hard work, persistence and

skill, Lead Plaintiffs' Counsel were able to overcome these risks (and others) to achieve this settlement.

65.     Absent Lead Plaintiffs' Counsel's efforts and our initiating a complex mediation involving dozens of participants, this action might have continued for many more years or recovered far less on behalf of the Company than it has.  Lead Plaintiffs' Counsel also received no compensation during the two and a half years that this litigation has been pending, their fees and expenses being entirely contingent and dependent upon a successful result and an award by this Court.  Indeed, Lead Plaintiffs' Counsel expended 34,737.40 hours in the prosecution and investigation of this action.  The hours invested by counsel are a testament not only to the complexity and large scale of the case, but to Lead Plaintiffs' Counsel's commitment to obtain the best possible result for the Company.  Having demonstrated exceptional perseverance and skill, coupled with an outstanding recovery, Lead Plaintiffs' Counsel respectfully submit that Lead Plaintiffs' Counsel performed a valuable service for UnitedHealth.  Thus, the fee requested fairly and reasonably rewards Lead Plaintiffs' Counsel's performance.

66.     The fee request represents a lodestar multiplier of 2.948, which is well in line with the standard range awarded in complex derivative and class actions, as discussed more fully in Lead Plaintiffs' Counsel's Memorandum of Law in Support of the Motion for Approval of Award of Attorneys' Fees and Reimbursement of Litigation Expenses, filed concurrently herewith.  The multiplier reflects litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the

30

attorneys, and other factors.  Courts have also recognized that a multiplier is appropriate

to compensate for the risk inherent in contingency fee arrangements.

67.     Summaries of the work conducted by Lead Plaintiffs' Counsel are set forth

in the separate Declarations of Lead Plaintiffs' Counsel.  Attached to this Joint

Declaration is Exhibit D, which shows a schedule summarizing the lodestars and

expenses of all Lead Plaintiffs' Counsel.  It was prepared from the data contained in each

of Lead Plaintiffs' Counsel's Declarations that are filed with this motion.  The Lead

Plaintiffs' Counsel Declarations outline the experience and qualifications of the attorneys

and their respective firms who worked on the action, the time expended in rendering their

services, and the attorneys' standard hourly rates.  As the firm resumes attached to the

Declarations attest, Lead Plaintiffs' Counsel individually and collectively have decades

of experience in representing shareholders in shareholder class and derivative actions in

federal securities actions across the country.  The firms are well known for their ability to

litigate cases from inception through resolution, including trial.

**B.      THE REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES IS FAIR, ADEQUATE AND REASONABLE**

68.     Lead Plaintiffs' Counsel also request reimbursement of the expenses

incurred by all Lead Plaintiffs' Counsel in connection with this action.  Each firm

requesting reimbursement of expenses has submitted a Declaration that states that the

expenses are reflected in the books and records maintained by the firm, are an accurate

recording of the expenses incurred, and that the expenses incurred are reasonable and

were necessary for the successful prosecution of the case.  In total, counsel incurred

reimbursable expenses in the amount of $803,591.78.

## V.   THE REACTION OF UNITEDHEALTH SHAREHOLDERS

69.     Pursuant to the Preliminary Approval Order, UnitedHealth mailed the

Notice to shareholders and advised them of the terms of the settlement and that Lead

Plaintiffs' Counsel would request up to $47 million for attorneys' fees and litigation

expenses combined.  The Notice provided that the deadline for post-marking objections

was Friday, January 23, 2009.  As of January 30, 2009, not a single shareholder –

whether individual or institutional – objected to the settlement or the requested attorneys'

fees and expenses.  This demonstrates widespread approval of the settlement, the results

achieved, and the efforts of Lead Plaintiffs' Counsel.  Courts regard the fact that there are

few or no objections to a settlement as an important factor in approving a settlement and

awarding fees.  *DeBoer v. Metton Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995); *see*

*also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999).

## VI.   CONCLUSION

70.     In view of the significant recovery on behalf of the Company, the

substantial risks of this litigation, the enormous efforts of Lead Plaintiffs' Counsel, the

quality of the work performed, the contingent nature of the fee, the complexity of the

case, and the standing and experience of Lead Plaintiffs' Counsel, Lead Plaintiffs'

Counsel respectfully submit that the settlement should be approved and that attorneys'

fees and expenses in the amount of $47 million should be awarded to Lead Plaintiffs' Counsel.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on January 30, 2009.

s/Karl L. Cambronne_____
Karl L. Cambronne
Chestnut & Cambronne, P.A.


s/Michelle H. Blauner_____
Michelle H. Blauner
Shapiro Haber & Urmy, LLP


s/Chad Johnson_____
Chad Johnson
Bernstein Litowitz Berger & Grossmann LLP


s/Michael J. Barry_____
Michael J. Barry
Grant & Eisenhofer, P.A.


/s Brian Rice_____
Brian Rice
Rice, Michels & Walther, LLP

CITED AUTHORITY

The following cases are cited by Lead Plaintiffs' Counsel and are not available in published form or on computer-assisted legal research sites such as Westlaw or LEXIS. We have attached true and correct copies of:

Exhibit E:     *City of Pontiac General Employees' Ret. Sys. v. Langone, et al.,* No. 2006-cv-122302 (Findings of Fact in Support of Order and Final Judgment) (Ga. Sup. Ct. June 10, 2008) ($14.5 million fee in action resulting in corporate governance reforms which alleged, *inter alia*, stock option backdating at The Home Depot, Inc.)

Exhibit F:     *In re Cablevision Systems Corp. Options Backdating Litig.*, Index No. 06/12743 (Sup. Ct. N.Y.) (Final Order and Stipulation of Settlement) (partial settlement valued at $34.4 million)

Exhibit G:     *In re Monster Worldwide, Inc. Deriv. Litig.*, No. 06-108700 (Sup. Ct. N.Y.) (Final Order and Stipulation of Settlement) (monetary component of partial settlement valued at $32.3 million).

34