# EXHIBIT G
# PART 2

**EXHIBIT B**

**Monster Stage I Recovery**

| Name | Grants Being Repriced | Number of Options Being Repriced | Settlement: Change in Price | Number of Options Canceled | Settlement: Cash | Total Recovered Value(i) |
|---|---|---|---|---|---|---|
| **Bonica** | — | — | — | **86,727(ii)** | — | $ **2,691,956(iii)** |
| **Camara** | — | **286,844** | — | — | — | $ **8,882,299** |
| | Dec. 9, 1998 | 73,384 | From: $12.589 To: $28.8637 | — | — | $ 1,194,302 |
| | Aug. 5, 1999 | 213,460 | From: $20.665 To: $56.6811 | — | — | $ 7,687,997 |
| **Collison** | — | **21,346** | — | — | — | $ **161,061** |
| | Dec. 1, 1999 | 10,673 | From: $44.50 To: $57.1357 | — | | $ 134,861 |
| | Feb. 22, 2002 | 10,673 | From: $25.462 To: $27.9168 | — | — | $ 26,200 |
| **Dolphin** | — | **35,380** | — | — | — | $ **948,715** |
| | Dec. 28, 2004 | 35,380 | From: $33.64 To: $60.455 | — | — | $ 948,715 |

| Name | Grants Being Repriced | Number of Options Being Repriced | Settlement: Change in Price | Number of Options Canceled | Settlement: Cash | Total Recovered Value(i) |
|---|---|---|---|---|---|---|
| Eisele | — | — | — | — | $ 12,109 | $ 12,109 |
| Farrey | — | — | — | — | $ 100,124 | $ 100,124 |
| Hosokawa | — | — | — | — | $ 97,299 | $ 97,299 |
| Kaufman | — | 10,673 | — | — | — | $ 130,104 |
| | April 4, 2001 | 10,673 | From: $28.69 To: $40.88 | | | |
| Kramer | — | 10,673 | — | — | — | $ 130,104 |
| | April 4, 2001 | 10,673 | From: $28.69 To: $40.88 | | | |
| A. McKelvey | — | — | — | — | $ 8,000,000 | $ 8,000,000(iv) |
| McLaughlin | — | 46,694 | — | — | — | $ 800,688 |
| | Dec. 1, 1999 | 13,341 | From: $44.501 To: $78.1192 | — | — | $ 448,500 |
| | Feb. 22, 2002 | 33,353 | From: $25.462 To: $36.0214 | — | — | $ 352,188 |

2

| Name | Grants Being Repriced | Number of Options Being Repriced | Settlement: Change in Price | Number of Options Canceled | Settlement: Cash | Total Recovered Value(i) |
|---|---|---|---|---|---|---|
| **Noonan** | — | **43,758** | — | — | — | $ **1,168,232** |
| | Dec. 1, 1999 | 37,622 | From: $44.50 To: $72.0285 | — | — | $ 1,035,677 |
| | April 4, 2001 | 3,468 | From: $28.69 To: $56.4534 | — | — | $ 96,283 |
| | Nov. 1, 2001 | 2,668 | From: $25.762 To: $39.3571 | — | — | $ 36,272 |
| **O'Connell** | — | **18,677** | — | — | — | $ **412,925** |
| | April 4, 2001 | 13,341 | From: $28.69 To: $54.2035 | — | — | $ 340,375 |
| | Nov. 1, 2001 | 5,336 | From: $25.762 To: $39.3583 | — | — | $ 72,550 |
| **Olesnyckyj** | — | — | — | 229,355(v) | — | $ **6,491,572**(vi) |
| **Pogorzelski** | — | **53,365** | — | — | — | $ **450,000** |
| | Aug. 2, 2000 | 53,365 | From: $63.825 To: $72.2575 | — | — | $ 450,000 |
| **Previty** | — | — | — | — | $ 420,000 | $ **420,000** |

3

| Name | Grants Being Repriced | Number of Options Being Repriced | Settlement: Change in Price | Number of Options Canceled | Settlement: Cash | Total Recovered Value(i) |
|---|---|---|---|---|---|---|
| Rooney | — | 5,336 | — | — | | $ 146,900 |
| | Dec. 1, 1999 | 5,336 | From: $44.501 To: $72.031 | — | — | $ 146,900 |
| Sileck | — | — | — | — | $ 750,000 | $ 750,000 |
| Swann | — | — | — | — | $ 50,000 | $ 50,000 |
| Taylor | — | — | — | — | $ 437,500 | $ 437,500 |
| | | | | | ESTIMATED TOTAL: | $ 32,281,588(iv) |

(i)  The settlement amount includes contributions in cash, canceled options, canceled restricted stock units, and repriced options. For the purpose of this chart, the recovered value for repriced options is measured as the difference between the original and the repriced strike price; the recovered value for canceled options is measured as the Black-Scholes value on the date of cancellation.

(ii)  Includes 3,200 canceled restricted stock units.

(iii) In addition to the value recovered through canceling Mr. Bonica's stock options and restricted stock units, the Monster SLC has reserved its right to pursue additional recovery.

(iv) In addition to the significant value from the conversion of Andrew McKelvey's Class B Common Stock to Class A Ordinary Common Stock.

(v)  Includes 17,000 canceled restricted stock units.

(vi) This value was calculated by Lead Plaintiffs and the Monster SLC for the purpose of this Exhibit using the Black-Scholes model. Mr. Olesnyckyj takes no position with respect to the value of the securities.

4

**EXHIBIT C**

**McKelvey Terms**

Lead Plaintiffs, Monster, the Monster SLC, and Andrew J. McKelvey ("McKelvey") agree to the following additional terms, which reflect the parties' intention that McKelvey's settlement compensation includes consideration for these provisions:

A.　　Within ten (10) days of the execution of this Settlement Agreement, McKelvey will transfer to Monster's Counsel by certified check or wire transfer the sum of $8 million (Eight Million Dollars) to be deposited into a Dechert LLP attorney escrow account. Within three (3) business days of the Effective Date, Monster's Counsel will transfer the $8 million (Eight Million Dollars), plus all interest accrued thereon, to the Company by certified check or wire transfer. If the Effective Date cannot occur, or if this Settlement Agreement is not approved by the State Court or the Settlement set forth in this Settlement Agreement is terminated or fails to become effective in accordance with its terms, Monster's Counsel will return the $8 million and all accrued interest thereon to McKelvey.

B.　　Within five (5) days of the execution of this Settlement Agreement, McKelvey will execute a conversion notice, in the form to which he previously agreed, to convert (the "Conversion") all of the issued and outstanding shares of Class B Common Stock, $.001 par value per share (the "Class B Stock") of the Company held by McKelvey into shares of Class A Common Stock, $.001 par value per share (the "Common Stock"), of the Company and will deliver such executed document (the "Executed Conversion Document") to Monster's Counsel as escrow agent. The Conversion shall be effective on the date on which the last of the following has occurred (the "Effective Conversion Date"):  (a) the Effective Date; (b) the Executed Conversion Document has been delivered to the

Company; and (c) all of the certificates representing the shares of Class B Stock have been delivered to the Company. Within three (3) business days of the Effective Date, Monster's Counsel shall release the Executed Conversion Document from escrow and deliver it by hand to the Company. The effect of the Conversion shall be the extinguishment of any supervoting rights presently held by McKelvey pursuant to his ownership of shares of Class B Stock.

    C.  If, at any time after this Settlement Agreement is executed, McKelvey is in possession of the certificate(s) representing all of the shares of Class B Stock, he shall promptly (and in any event within five (5) business days) surrender and deliver such certificates to the Company in exchange for simultaneous delivery by the Company to him of certificates representing an equal number of shares of Common Stock. If, however, on the Effective Date, the certificate(s) representing all of the shares of Class B Stock are in the possession of Morgan Stanley, McKelvey will take all reasonable steps, including providing written instruction to Morgan Stanley, to facilitate the immediate delivery by Morgan Stanley of the Class B Stock certificates to the Company in exchange for the simultaneous delivery by the Company to Morgan Stanley of certificates representing an equal number of shares of Common Stock. To facilitate the exchange with Morgan Stanley, McKelvey agrees that he shall, within five (5) days of executing this Settlement Agreement, execute written instruction to Morgan Stanley authorizing the foregoing exchange in the form to which he previously agreed. McKelvey will use good faith efforts and take all actions reasonably necessary to obtain Morgan Stanley's Acknowledgement and Agreement to the written instruction and thereafter agrees that the written instruction shall be held in escrow by Monster's Counsel pending the Effective Date. Upon the Effective Date, Monster's Counsel

2

shall release the written instruction from escrow in order to fulfill the requirements of this paragraph.

    D.  From January 22, 2008 through the Effective Conversion Date, McKelvey hereby agrees that (i) he shall be entitled to vote one-tenth of the shares of all of the Class B Stock beneficially owned by him in any manner he desires and (ii) the remaining nine-tenths of the shares of Class B Stock beneficially owned by him (the "Relinquished Voting Shares") shall be voted in the same percentage(s) as the aggregate votes cast by the holders of shares of Common Stock (other than McKelvey). McKelvey's entitlement to vote only one-tenth of the shares of all of the Class B Stock beneficially owned by him shall not be affected by McKelvey's failure to surrender to the Company after the Effective Date the certificates representing each of the shares of Class B Stock. McKelvey's entitlement to cast only one-tenth of the shares of all of the Class B Stock beneficially owned by him shall remain in effect until the Effective Conversion Date. If the Effective Date cannot occur, or if this Settlement Agreement is not approved by the State Court or the Settlement set forth in this Settlement Agreement is terminated or fails to become effective in accordance with its terms, and McKelvey has complied in good faith with his obligations under this Settlement Agreement, McKelvey's entitlement to vote only one-tenth of the shares of all of the Class B Stock beneficially owned by him and the corresponding proxy granted herein shall terminate.

    E.  To effectuate paragraph D, McKelvey hereby grants to the Chief Executive Officer of the Company a proxy to vote the Relinquished Voting Shares on any matter presented to the holders of Common Stock for their vote, approval, waiver or consent (other than matters to which the holders of Class B Stock are not entitled to vote) in the same percentage(s) as the aggregate votes cast by the holders of shares of Common Stock (other

3

than McKelvey) on such matter. Such proxy is coupled with an interest, is perpetual and is irrevocable (unless terminated as set forth in paragraph D above), and bestows on the Chief Executive Officer of the Company full power to vote and act for McKelvey with respect to the aforementioned matters.

F.      McKelvey hereby revokes any and all previous proxies granted with respect to the Relinquished Voting Shares. McKelvey represents and warrants that he has not entered into any voting agreement or voting trust, or made any other agreement, or issued, granted or given a proxy with respect to the Relinquished Voting Shares that is currently in effect (or upon the happening of an event or the passage of time or both will be in effect). McKelvey agrees, unless and until this Settlement Agreement is terminated, not to: (a) grant any other proxy or power of attorney, enter into or make any voting arrangements with respect to the Relinquished Voting Shares, other than as provided for in this Settlement Agreement; or (b) pledge, enter into any other forward contract (including any amendment, restatement or modification of the existing prepaid forward contract with Morgan Stanley) or otherwise convey any interest in the Class B shares to any person, unless and until McKelvey has provided the Company with a letter signed by the proposed counterparty in the form to which he previously agreed, in which the proposed counterparty agrees, upon receipt of a written request from the Company in accordance with the terms of this Settlement Agreement, to deliver immediately the Class B certificates to the Company in exchange for the simultaneous delivery by the Company to it of certificates representing an equal number of shares of Common Stock. McKelvey represents and warrants that he has all necessary power, authority and capacity to grant the proxy and undertake the other obligations set forth in this Settlement Agreement.

4

G.    Lead Plaintiffs, Monster, the Monster SLC, and McKelvey agree that the Conversion is of substantial monetary and corporate process value to the Company.

H.    In addition, nothing herein alters any rights that McKelvey may have for advancement of legal fees or indemnification under Delaware law or other agreement, including but not limited to any indemnity agreement with the Company, except that McKelvey hereby agrees to waive any indemnification rights he may have with respect to the fees and expenses incurred in connection with his retention of any entity retained to provide him with advice with respect to communications strategy or public relations. In addition, McKelvey hereby acknowledges that hereinafter he is not entitled to indemnification from the Company with respect to legal and other fees and expenses incurred in connection with his September 2007 prepaid forward contracts relating to his shares of Class B Stock. McKelvey further agrees to reduce his indemnification demands by $10,000, which represents previously incurred fees and expenses related to his prepaid forward contracts.

I.    Upon the Effective Date, the Company shall release and be deemed to release any claims whatsoever that the Company may have against McKelvey arising out of the grant, or proposed grant, by the Company of any stock options, including, but not limited to, the following individuals: Ted Button, Gerard Roeting, Steve Szalczinger, and Jim Wolfe. The Company will not seek from McKelvey any contribution or damages that the Company might otherwise claim against McKelvey in connection with the litigations captioned *In re Monster Worldwide, Inc. Securities Litigation*, 07 CV 2237 (S.D.N.Y.) (JSR), and *Taylor* v. *Monster Worldwide, Inc. et al.*, 06 CV 8322 (S.D.N.Y.) (AKH), or any other action arising out of or relating to the allegations in the State Action or the Federal Action. Upon the Effective Date, the Company releases McKelvey from all other potential claims or

5

causes of action relating to any subject matter whatsoever except for potential claims or causes of action currently unknown to the Company's Board of Directors that involve intentional, fraudulent, or criminal conduct.

6

EXHIBIT D

Proposed Preliminary Approval Order

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x
- - -
                        :
IN RE MONSTER WORLDWIDE, INC.     :  Index No. 06-108700
DERIVATIVE LITIGATION         :
                        :
------------------------------------------- x
- - -

### PRELIMINARY ORDER IN CONNECTION
### WITH SETTLEMENT PROCEEDINGS

       WHEREAS, as of May 7, 2008, lead plaintiffs Louisiana Municipal Police Employees' Retirement System and Retirement Board of Allegheny County ("State Lead Plaintiffs"), Monster Worldwide, Inc. ("Monster" or the "Company"), the Special Litigation Committee formed by the Monster Board of Directors (the "Monster SLC"), and defendants Brad Baker, Paul Camara, Thomas Collison, Peter Dolphin, George Eisele, Brian Farrey, John Gaulding, David Hosokawa, Michael Kaufman, Ronald Kramer, John McLaughlin, Robert O'Connell, Andrew J. McKelvey, Myron Olesnyckyj, Steve Pogorzelski, Chris Power, Michael Sileck, David Stein, John Swann, and Jeffrey Taylor (collectively, the "Settling Defendants"), by and through their respective counsel, have entered into a Stipulation and Agreement of Settlement (the "Settlement Agreement"), which is subject to review under Section 626(d) of the New York Business Corporation Law, and which, together with the exhibits thereto, sets forth the terms and conditions of the proposed settlement (the "Settlement") of the claims alleged in the above-captioned shareholder's derivative action (the "Action"), with prejudice upon the terms and conditions set forth in the

Settlement Agreement; and the Court having read and considered the Settlement Agreement and the accompanying documents; and the parties to the Settlement Agreement having consented to the entry of this Order; and all capitalized terms used herein having the meanings defined in the Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED, this _____ day of _____, 2008, that:

1.    Pursuant to Section 626(d) of the New York Business Corporation Law, and for the purposes of Settlement only, the Court finds that the above-captioned action was properly brought as a derivative action for and on behalf of Monster Worldwide, Inc., and that Lead Plaintiffs Louisiana Municipal Police Employees' Retirement System and Retirement Board of Allegheny County fairly and adequately represent the interests of the shareholders similarly situated in enforcing the rights of Monster.

2.    The terms of the Settlement are preliminarily approved, subject to further consideration thereof at the Settlement Hearing described in this Order.

3.    A final hearing (the "Hearing") is hereby scheduled to be held before the Court on _____, 2008, at _____ .m., for the following purposes:

a.    to determine whether the proposed Settlement is fair, reasonable, adequate, and in the best interests of Monster and its current stockholders and whether the Settlement should be finally approved by the Court;

b.    to determine whether the Judgment as provided under the Settlement Agreement should be entered;

c.    if the Settlement is approved, to consider the appropriate award to be made to Lead Plaintiffs' Counsel for attorneys' fees and expenses;

2

d.    to rule upon such other matters as the Court may deem appropriate.

4.    The Court reserves: (a) the right to approve the Settlement, with such modifications as may be agreed to by counsel for the parties to the Settlement consistent with such Settlement, without further notice to Monster stockholders; and (b) the right to continue or adjourn the Hearing from time to time, by oral announcement at the Hearing or at any adjournment thereof, without further notice to the Monster stockholders.

5.    The Court approves the form, substance, and requirements of (a) the Summary Notice of Shareholder Derivative Litigation (the "Summary Notice") annexed hereto as Exhibit      and (b) the Notice of Settlement of Derivative Litigation (the "Full Notice") annexed hereto as Exhibit    .

6.    The Court orders that:

a.    the Summary Notice shall be published by Monster once in a nationwide business publication within fourteen (14) business days of the entry of this Order; and

b.    the Full Notice shall be published by Monster in a Monster Current Report on Form 8-K within fourteen (14) business days of the entry of this Order.

7.    The form and method set forth herein of notifying current Monster stockholders of the Settlement and its terms and conditions meet the requirements of Section 626(d) of the New York Business Corporation Law and due process and shall constitute due and sufficient notice to all persons and entities entitled thereto.

8.    Any current Monster stockholder may appear at the Hearing and show cause, if he, she, or it has any, why (a) the Settlement of the Action embodied in the

3

Settlement Agreement should not be approved as fair, reasonable, and adequate, (b) a judgment should not be entered thereon, or (c) Lead Plaintiffs' Counsel should not be awarded the requested attorneys' fees and expenses. No Monster stockholder shall be heard or entitled to contest the approval of the foregoing, unless such stockholder, no later than thirty (30) days prior to the Hearing, has caused to be filed written objections, stating all supporting bases and reasons, with:

> Hon. Norman Goodman
> County Clerk of New York County
> 60 Centre Street, Room 161
> New York, New York 10007

and has served copies of all such papers at the same time upon the following by first-class mail:

Salvatore J. Graziano
BERNSTEIN, LITOWITZ BERGER
    & GROSSMANN LLP
1285 Avenue of the Americas
New York, New York 10019

*Counsel for the Special Litigation*

Andrew J. Levander
DECHERT LLP
30 Rockefeller Plaza
New York, New York 10112

*Counsel for Monster Worldwide, Inc.*

Stacey R. Friedman
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

*Co-Lead Counsel for State Plaintiffs
    Committee of Monster Worldwide, Inc.*

Lawrence P. Kolker
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 100016

*Co-Lead Counsel for Federal Plaintiffs*

Attendance at the Hearing is not necessary in order for the objection to be considered by the Court; however, persons wishing to be heard orally in opposition to the approval of the Settlement are required to indicate in their written objection their intention to appear at the hearing. Thus, every objection must contain: (a) the person's name, address, and telephone

4

number; (b) the number of shares of Monster common stock the person owns; (c) the date(s) of purchase of such shares; (d) a detailed statement of the basis for the person's objections or comments upon the Settlement, Lead Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses, or any other matter before the Court; (e) any supporting papers, including all documents and writings that the person desires the Court to consider; and (f) a representation as to whether the person intends to appear at the Hearing.

9.       Any current Monster stockholder who does not make his, her, or its objection in the manner provided in the preceding paragraph of this Order shall be deemed to have waived such objection and shall forever be foreclosed from making objections to the fairness, adequacy, or reasonableness of the Settlement.

10.      If the Settlement Agreement is not approved or cannot become effective or final for any reason, including as a result of modification of the Judgment on appeal, the Settlement Agreement and all proceedings held in connection therewith shall be null and void and vacated, and the Action shall proceed completely without prejudice to the *status quo ante* rights of the Parties as to any matter of law or fact, all parties shall be returned to their positions as of the date of the Settlement Agreement and all documents executed pursuant to the Settlement Agreement shall be revoked and canceled.

11.      Any current Monster stockholders shall be bound by the applicable determinations and orders, and by the Judgment, whether favorable or unfavorable to any of them.

12.      The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

5

13.     Institution or prosecution of any and all proceedings in this Court or any other court relating to the Claims, as that term is defined in the Settlement Agreement, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement or the responsibilities related or incidental thereto, shall be barred.

14.     The Settlement Agreement and all negotiations, statements, proceedings, and documents related to it are not, and shall not be construed to be, an admission by any of the Parties concerning the validity or invalidity of any of the Claims asserted in this Action.

Dated: _____


_____
                                              J.S.C.

6

**EXHIBIT E**

Proposed Summary Notice of Settlement

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
-
                                :

IN RE MONSTER WORLDWIDE, INC.         :    Index No. 06-108700
DERIVATIVE LITIGATION                 :
                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

                               x
                               :

IN RE MONSTER WORLDWIDE, INC.      :
STOCK OPTION DERIVATIVE LITIGATION   :    INDEX NO.  1:06-CV-04622 (NRB)
                               :
                               x

**SUMMARY NOTICE OF SETTLEMENT OF
SHAREHOLDER DERIVATIVE ACTION**

TO:     ALL CURRENT SHAREHOLDERS OF MONSTER WORLDWIDE, INC. COMMON STOCK

        YOU ARE HEREBY NOTIFIED, pursuant to Section 626(d) of the New York Business Corporation Law and an Order of Supreme Court of the State of New York, New York County (the "State Court"), and pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and an Order of the U.S. District Court for the Southern District of New York (the "Federal Court"), that a proposed settlement (the "Settlement") has been reached in the above-captioned shareholder derivative actions, *In re Monster Worldwide, Inc. Derivative*

*Litigation*, 06-108700 pending in the Supreme Court of the State of New York (the "State Action"), and *In re Monster Worldwide, Inc. Stock Option Derivative Litigation*, 06-cv-04622 pending in the U.S. District Court for the Southern District of New York (the "Federal Action," collectively the "Actions"), with defendants Brad Baker, Paul Camara, Thomas Collison, Peter Dolphin, George Eisele, Brian Farrey, John Gaulding, David Hosokawa, Michael Kaufman, Ronald Kramer, John McLaughlin, Andrew J. McKelvey, Robert O'Connell, Myron Olesnyckyj, Steve Pogorzelski, Chris Power, Michael Sileck, David Stein, John Swann, and Jeffrey Taylor (collectively, the "Settling Defendants"), subject to court approval.

        A hearing will be held before the Honorable Eileen Bransten of the New York State Supreme Court, at the New York County Courthouse. 60 Centre Street, Room 442, New York, New York 10007, on _____, 2008, at ____.m. (the "Hearing"), to determine whether the proposed settlement of the Actions should be approved by the Court as fair, reasonable, and adequate and in the best interests of Monster Worldwide, Inc. ("Monster" or the "Company"), and to consider the application of plaintiffs' counsel for attorneys' fees and expenses. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement of Derivative Litigation (the "Settlement Agreement"), dated   May 7, 2008, which was filed in the Actions on _____, 2008.

**IF YOU ARE A CURRENT SHAREHOLDER OF MONSTER WORLDWIDE, INC., YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THE ACTIONS.**

        This is a summary notice only. For additional information about the allegations of the complaint and the terms of the proposed settlement (including a detailed description of the corporate governance changes to be implemented as a result of the

2

settlement), shareholders are directed to [link to 8-K on the internet], or shareholders without access to the Internet can obtain a copy of this document by contacting:

> Robert Jones
> Monster Worldwide, Inc.
> 622 Third Avenue
> New York, New York 10017

If you are a current shareholder of Monster Worldwide, Inc., you have the right to appear in these Actions. Unless otherwise ordered by the State Court, however, no Monster stockholder or any person shall be heard or shall be entitled to contest the approval of the Settlement, or Lead Plaintiffs' Counsel's fee application, and no papers, briefs, pleadings or other documents submitted by any Monster stockholder or any other person shall be received and considered, unless, no later than thirty (30) days prior to the Hearing that person has caused to be filed written objections, stating all supporting bases and reasons, with:

> Hon. Norman Goodman
> County Clerk of New York County
> 60 Centre Street, Room 161
> New York, New York 10007

and has served copies of all such papers at the same time upon the following by first-class mail:

| | |
|---|---|
| Salvatore J. Graziano | Stacey R. Friedman |
| BERNSTEIN LITOWITZ BERGER | SULLIVAN & CROMWELL LLP |
| & GROSSMANN LLP | 125 Broad Street |
| 1285 Avenue of the Americas | New York, New York 10004 |
| New York, New York 10019 | |
| | *Counsel for the Special Litigation* |
| *Co-Lead Counsel for State Plaintiffs* | *Committee of Monster Worldwide, Inc.* |

3

Andrew J. Levander
DECHERT LLP
30 Rockefeller Plaza
New York, New York 10112

*Counsel for Monster Worldwide, Inc.*

Lawrence P. Kolker
WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 100016

*Co-Lead Counsel for Federal Plaintiffs*

     Every objection must contain:  (a) the person's name, address, and telephone number; (b) the number of shares of Monster common stock the person owns; (c) the date(s) of purchase of such shares; (d) a detailed statement of the basis of the person's objections to or comments upon the Settlement, Lead Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses, or any other matter before the Court; (e) any supporting papers, including all documents and writings that the person desires the Court to consider; and (f) a representation as to whether the person intends to appear at the Hearing.

     Any Monster stockholder who does not make his, her, or its objection in the manner provided for in the preceding paragraph shall be deemed to have waived such objection and shall forever be foreclosed from making any objections to the fairness, adequacy, or reasonableness of the Settlement, or Lead Plaintiffs' Counsel's fee application.

     DO NOT CONTACT THE COURT REGARDING THIS NOTICE.

By Order of the Court

Dated:            , 2008

4

**EXHIBIT F**

**Proposed Full Notice of Settlement**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE MONSTER WORLDWIDE, INC.              :     Index No. 06-108700
DERIVATIVE LITIGATION                      :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____  x
                                  :
IN RE MONSTER WORLDWIDE, INC.     :     INDEX NO. 1:06-CV-04622 (NRB)
STOCK OPTION DERIVATIVE LITIGATION :
                                  :
_____  x

**NOTICE OF SETTLEMENT OF
SHAREHOLDER DERIVATIVE ACTION**

TO:     ALL CURRENT SHAREHOLDERS OF MONSTER WORLDWIDE, INC. COMMON STOCK

      YOU ARE HEREBY NOTIFIED, pursuant to Section 626(d) of the New York Business Corporation Law and an Order of Supreme Court of the State of New York, New York County (the "State Court"), and pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and an Order of the U.S. District Court for the Southern District of New York (the "Federal Court"), that a proposed settlement (the "Settlement") has been reached in the above-captioned shareholder derivative actions, *In re Monster Worldwide, Inc. Derivative*

*Litigation,* 06-108700 pending in the Supreme Court of the State of New York (the "State Action"), and *In re Monster Worldwide, Inc. Stock Option Derivative Litigation.* 06-cv-04622 pending in the U.S. District Court for the Southern District of New York (the "Federal Action," collectively the "Actions"), with defendants Brad Baker, Paul Camara, Thomas Collison, Peter Dolphin, George Eisele. Brian Farrey, John Gaulding, David Hosokawa, Michael Kaufman, Ronald Kramer, John McLaughlin, Andrew J. McKelvey, Robert O'Connell, Myron Olesnyckyj. Steve Pogorzelski, Chris Power, Michael Sileck, David Stein, John Swann, and Jeffrey Taylor (collectively, the "Settling Defendants"), subject to court approval.

A hearing will be held before the Honorable Eileen Bransten of the New York State Supreme Court, at the New York County Courthouse, 60 Centre Street, Room 442, New York, New York 10007, on                , 2008, at        .m. (the "Hearing"), to determine whether the proposed settlement of the Actions should be approved by the Court as fair, reasonable, and adequate and in the best interests of Monster Worldwide, Inc. ("Monster" or the "Company"), and to consider the application of plaintiffs' counsel for attorneys' fees and expenses. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement of Derivative Litigation (the "Settlement Agreement"), dated   May 7, 2008, which was filed in the Actions on               , 2008.

This notice was prepared by the parties to the Settlement, who are requesting that the State Court approve the Settlement after the Hearing noticed herein and that both the State Court and the Federal Court issue orders of judgment dismissing certain claims with prejudice upon such approval in accordance with the Settlement Agreement. and is being

2

disseminated pursuant to the Order entered by the State Court on _____ , 2008, and the Order entered by the Federal Court on _____ , 2008.

**IF YOU ARE A CURRENT SHAREHOLDER OF MONSTER WORLDWIDE, INC., YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT OF THE ACTIONS.**

**BACKGROUND OF THE LITIGATION**

     1.     By order dated September 15, 2006, three shareholder derivative actions filed in the Supreme Court of the State of New York in New York County—*Currie* v. *Camara, et al.*, 06-108700, *Ret. Bd. of Allegheny County* v. *Camara, et al.*, 06-602205 and *Louisiana Mun. Police Employees' Ret. Sys.* v. *McKelvey, et al.*, 06-602549—were consolidated and re-captioned *In re Monster Worldwide, Inc. Derivative Litigation*, 06-108700. The Court appointed Louisiana Municipal Police Employees' Retirement System and Retirement Board of Allegheny County as co-lead plaintiffs ("State Lead Plaintiffs") and designated the law firms of Bernstein Litowitz Berger & Grossmann LLP and Schiffrin Barroway Topaz & Kessler, LLP as co-lead counsel for the Lead Plaintiffs ("State Lead Plaintiffs' Counsel").

     2.     By order dated October 20, 2006, three shareholder derivative actions filed in the U.S. District Court for the Southern District of New York—*Parnes, et al.* v. *McKelvey, et al.*, 06-cv-04622, *Philadelphia Bd. of Pensions and Ret.* v. *McKelvey, et al.*, 06-cv-05763 and *Nat'l Roofing Indus. Pension Plan* v. *McKelvey, et al.*, 06-cv-06093—were consolidated and re-captioned *In re Monster Worldwide, Inc. Stock Option Derivative Litigation*, 06-cv-04622 (the "Federal Action"). The Court appointed Ruthy Parnes, City of Philadelphia Board of Pensions and Retirement, and National Roofing Industry Pension Plan ("Federal Lead Plaintiffs" and together with the State Lead Plaintiffs, "Lead Plaintiffs"). The

3

Court also appointed Wolf Haldenstein Adler Freeman & Herz LLP, Barrack. Rodos & Bacine, and Coughlin Stoia Geller Rudman & Robbins LLP as co-lead counsel for the Lead Plaintiffs ("Federal Lead Plaintiffs' Counsel" and together with State Lead Plaintiffs' Counsel, "Lead Plaintiffs' Counsel").

        3.      On December 1, 2006, State Lead Plaintiffs filed an Amended and Consolidated Verified Shareholder Derivative Complaint (the "State Complaint") in the State Action. The State Complaint alleges claims against certain Monster directors, officers and employees, including the Settling Defendants, for granting, obtaining, approving and/or involvement in the issuance of backdated stock options. The State Complaint asserts claims for an accounting, breach of fiduciary duties, aiding and abetting a breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, and rescission. State Lead Plaintiffs allege that Monster suffered damages as a result.

        4.      On December 21, 2006, Federal Lead Plaintiffs filed a Consolidated and Amended Verified Derivative Action Complaint (the "Federal Complaint") was filed in the Federal Action, which similarly alleges claims against certain Monster directors, officers and employees, including the Settling Defendants, for granting, obtaining, approving, and/or involvement in the issuance of backdated stock options. The Federal Complaint asserts claims for violations of Sections 14(a) and 10(b) of the Securities Exchange Act of 1934, an accounting, breach of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, rescission, and for a constructive trust.

        5.      The litigation efforts of the Company, the Monster SLC and its counsel, and Lead Plaintiffs and their counsel, were a material cause of each of the reforms and monetary recoveries agreed to in the Settlement.

4

## CERTAIN DEFINITIONS

      6.      As used herein, the following terms have the meanings specified below:

      (a)      "Claims" means any and all claims (including for costs, expenses, and attorneys' fees), demands, rights, indemnities counter-claims, cross-claims, or causes of action that were asserted in the State Action and the Federal Action, or that could have been asserted, whether as claims, counter-claims, or cross-claims, whether such claims are known or unknown, which arise out of or are based upon or relate to the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the State Complaint or in the Federal Complaint, or that relate to the prosecution of the State Action and the Federal Action, the Monster SLC, or actions taken by the Company at the direction of the Monster SLC, but does not include non-derivative claims asserted in *In re Monster Worldwide, Inc. Securities Litigation*, 07 CV 2237 (S.D.N.Y.) (JSR), any claims, counter-claims, cross-claims, or causes of action that were asserted in *Taylor* v. *Monster Worldwide, Inc.*, No. 06-cv-8322 (S.D.N.Y.) (AKH), or that could have been asserted based upon claims relating to the administration and management of the Monster Worldwide, Inc. 401(k) Savings Plan, or any claims by Settling Defendants for advancement of legal fees, expenses or indemnification as discussed in paragraph 8 of the Settlement Agreement.

      (b)      "Effective Date" means the first date by which all of the events and conditions specified in paragraph 24 of the Settlement Agreement have been met and have occurred.

5

(c)    "Final" means: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal of any appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for filing or noticing any appeal from the State Court's Judgment approving the Settlement Agreement. Any proceeding or order, or any appeal pertaining solely to an application for attorneys' fees, costs, or expenses, shall not in any way delay or preclude the Judgment from becoming Final.

(d)    "Hearing" means the settlement hearing in State Court to consider the fairness of the Settlement Agreement.

(e)    "Stage I Recovery" means the recovery by the Company from the Settling Defendants as set forth on Exhibits B and C. This includes the recovery from Settling Defendant Andrew J. McKelvey, constituting $8,000,000 plus the conversion of his shares of Class B Common Stock into shares of Class A Common Stock, plus the cancellation of Anthony Bonica's options and restricted stock, and the recovery from three non-defendants: Margaretta Noonan, Roxane Previty, and Nancy Rooney.

(f)    "Stage II Legal Claims" means all Claims on behalf of Monster against defendants Stuart McKelvey and James Treacy, as well as against any additional persons, other than the Settling Defendants, that the Monster SLC deems appropriate.

## REASONS FOR THE SETTLEMENT

7.    The Settlement is intended fully, finally and forever to resolve, discharge and settle the Claims with prejudice among and between Monster, the Monster SLC, Lead Plaintiffs, and the Settling Defendants (collectively, the "Parties").

6

8.      The Parties recognize that the Actions have been filed by the Lead Plaintiffs and defended by the Settling Defendants and Monster in good faith and with adequate basis in fact, that the Actions are being voluntarily settled after advice of counsel and that the terms of the Settlement Agreement are fair, adequate and reasonable. The Settlement Agreement shall not be construed or deemed to be evidence of or an admission or concession of any liability, negligence, fault or wrongdoing of any of the Parties. The Settlement Agreement shall not be construed or deemed to be evidence of or an admission or concession on the part of any of the Settling Defendants with respect to any of the Claims or of any fault or liability or wrongdoing whatsoever, or any infirmity in the defenses that the Settling Defendants have or could have asserted. The Settlement Agreement also shall not be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiffs, Monster or the Monster SLC of any infirmity in the Claims.

9.      The Monster SLC and Lead Plaintiffs have made comprehensive and thorough investigations of all of the claims and allegations asserted in the State Action and the Federal Action. While the Monster SLC and Lead Plaintiffs believe that the claims asserted have merit, they also believe that the Settlement provides reasonable and fair compensation to the Company and is in the best interests of the Company. In agreeing to the Settlement, the Monster SLC and Lead Plaintiffs have considered: (a) the facts developed through their investigation and evaluation of the relevant law; (b) the attendant risks and uncertainty of litigation, as well as the burdens and delay inherent in such litigation; (c) Settling Defendants' defenses; (d) the substantial cost to the Company of continuing any litigation; and (e) the conclusion of the Monster SLC and Lead Plaintiffs that, under the

7

circumstances, the terms and conditions of the Settlement as set forth in the Settlement Agreement are fair, reasonable, adequate and in the best interests of the Company.

        10.      The Settling Defendants have vigorously denied, and continue to deny, any and all liability with respect to the Actions, deny that they engaged in any wrongdoing, deny that they committed any violation of law, deny that they breached any fiduciary duties, deny that they acted improperly in any way, and deny liability of any kind to the Company. (1) The Settling Defendants have agreed to the Settlement to: (a) avoid further expense; (b) dispose of potentially burdensome and protracted litigation; (c) finally put to rest all claims the Company may have arising from or relating to the State Action and the Federal Action; and (d) permit the Company and its officers and directors to pursue the Company's business without collateral involvement in ongoing litigation.

        11.      In light of these considerations, the Parties, through their counsel, engaged in arm's-length negotiations and have agreed the Settlement, whose terms are entirely set forth in the Settlement Agreement.  As such, the Settlement, which provides immediate, material benefits to the current Monster shareholders and Monster, is in the Company's best interests.

---

        (1)      Settling Defendant Myron Olesnyckyj does not join this sentence of the Notice.  On the advice of counsel, Mr. Olesnyckyj asserts his right against self-incrimination contained in the Fifth Amendment to the Constitution of the United States and declines to make any representations regarding the allegations in the State Action or the Federal Action in this sentence or elsewhere in this Notice.  Settling Defendant Andrew J. McKelvey joins this portion of the Settlement Agreement only to the extent that it is consistent with a Deferred Prosecution Agreement between him and the United States Attorney's Office for the Southern District of New York dated January 23, 2008.

8

---

12.     No Court has determined the merits of the Claims or the defenses thereto.  This notice does not imply that there has been or would be any finding of violation of law or that recovery could be had in any amount if the Actions were not settled.

### TERMS OF THE SETTLEMENT

13.     As a result of the filing, prosecution and Settlement of the State Action and the Federal Action, Lead Plaintiffs, the Monster SLC, and the Board of Directors of Monster (the "Board") have agreed that the Board shall adopt and/or cause the Company to implement (to the extent not already implemented) via amendments to the Company's charter, bylaws, and/or committee charters, the following corporate governance practices:

A.    <u>Stock Option Grants</u>

1.    Except as provided below, Monster stock options shall only be granted at regularly scheduled, quarterly meetings of the Compensation Committee.  The dates of the quarterly meetings shall be set by the Compensation Committee at least sixty days prior to the meeting.  In exceptional circumstances, such as an acquisition or the hire of a new employee, the Compensation Committee may permit the granting of stock options on other dates.  The Compensation Committee's approval of any exceptional circumstances grant must be in writing and include a reasonable description of the exceptional circumstances.

2.    Monster stock option grants shall be limited to a reasonable size with limits to be set by the Compensation Committee.

3.    Monster stock option grants shall have a minimum vesting period of two years and vest ratably.  At least 25 percent of all stock option grants shall vest in no less than three years.  The Compensation Committee may, however, allow for shorter vesting periods in exceptional circumstances, such as an acceleration event or a change in control.

4.    All actions required to effect the grant of a stock option by the Company's governance provisions, stock option plans, and applicable laws, shall be completed, executed, and documented in writing.

5.    All stock option grant recipients shall be identified on the date of the

9

option grant, as well as the strike price and number of options received by each individual.

6.     Any future oral grant of stock options shall be null and void.

7.     All records relating to the award of stock options shall be maintained for at least ten years, and in no event shall the records be destroyed prior to the exercise or expiration of all options which are the subject of those records.

8.     Monster's Forms 10-Ks shall each include a list of the names of all persons awarded 100,000 or more stock options during the relevant period of each Form 10-K, the number of stock options awarded per person, the date of each award, the strike price, and the vesting period.

9.     All stock option plans shall be approved by a majority of the shareholders of Monster.

10.    In the event the Company institutes a share repurchase program specifically intended to repurchase shares upon exercise of outstanding options issued under any of the Company's option plans, then the Company shall promptly disclose such share repurchase program, as well as the number of shares that the Company intends to purchase in connection with the exercise of such options. The Company will continue quarterly to disclose the number of shares year to date that were repurchased pursuant to any share repurchase program, as well as the number of shares that were issued by the Company in connection with the exercise of stock options granted by the Company under any of its option plans.

B.   The Board of Directors

1.     Monster shall implement the NASDAQ standard for director independence.

2.     An "independent director" shall be defined as a director who is not, or in the past three years has not been, employed by the Company, its subsidiaries or affiliates; does not, or in the past three years has not, received any material remuneration as an advisor, consultant, or legal counsel to the Company, its subsidiaries, or affiliates or to a member of the Company's senior management; does not have, and in the past three years had no, material contracts with the Company, its subsidiaries, or affiliates pursuant to which the director himself or herself directly performed personal services for the Company; is not, and in the past three years has not been, affiliated with or employed by an accounting firm that has acted as independent auditor of the

10

Company, its subsidiaries, or affiliates during that three-year time period; and has not, in the past three years, had any material business relationship or engaged in any significant transaction with the Company, or its subsidiaries or affiliates, other than for service as a director.

3.     At least two-thirds of the Board shall be comprised of "independent directors."

4.     Each independent director shall certify, in writing, his or her "independence," as defined above, and immediately inform, in writing, the Chairman of the Board of any change in status.

5.     Unless approved by a majority vote of independent directors, the acting Chairman of the Board shall be someone other than the CEO.

6.     The independent directors shall meet separately from the rest of the Board at least once per quarter.

7.     The independent directors shall annually elect or reaffirm by majority vote a "Lead Independent Director." The position of Lead Independent Director shall rotate at least once every three years. In addition to the duties of all Board members, which shall not be limited or diminished by the Lead Independent Director's role, the specific responsibilities of the Lead Independent Director shall include:

a.     advising the Board as to an appropriate schedule of Board meetings, seeking to ensure that the independent directors can perform their duties responsibly while not interfering with the flow of the Company's operations;

b.     providing the Board with input as to the preparation of agendas for Board and Committee meetings;

c.     advising the Board as to the quality, quantity, and timeliness of the flow of information from the Company's management that is necessary for the independent directors to effectively and responsibly perform their duties; and, although the Company's management is responsible for the preparation of materials for the Board, the Lead Independent Director may specifically request the inclusion of certain materials;

d.     recommending to the Board the retention of consultants who report directly to the Board;

e.     coordinating, developing the agenda, and presiding at

11

executive sessions of the independent directors, which shall be held at least quarterly; and

    f.    acting as principal liaison between the independent directors and the Chairman of the Board on sensitive issues.

8.    Directors shall be limited to serving on the boards of no more than four public companies, including Monster Worldwide.

C.    Election of Directors

1.    All directors shall stand for election annually unless such a provision is changed by the shareholders.

2.    Any director who does not obtain an affirmative shareholder vote of greater than 50 percent of those shares voting shall offer to resign. The Board may accept or reject the offer of resignation.

D.    The Compensation and Audit Committees

1.    The Audit Committee of the Board shall include a minimum of three independent directors, as defined above, and the Compensation Committee of the Board shall include a minimum of two independent directors, as defined above.

2.    The Chairman of the Compensation Committee shall not serve as the Chairman of the Audit Committee.

3.    The Audit and Compensation Committees shall have plenary authority to retain independent, outside counsel, which shall be available to, among other things, review the award of stock option grants, and to discharge any such counsel. The Company shall also have the right to retain independent, outside counsel to review such matters.

4.    At least one member of the Audit Committee shall qualify as an "audit committee financial expert" as defined by item 401(h) of Regulation S-K of the Securities Exchange Act of 1934, as amended.

5.    The Audit Committee shall have exclusive authority to retain the Company's external auditor (subject to ratification by the affirmative vote of a majority of the shareholders) and to discharge any such firm.

6.    The Audit Committee shall meet:

    a.    with the Company's external auditor, at least annually, outside of the presence of Company employees, to review the results of

12

each external audit of the Company, the report of the audit, any related management letter, management's responses to recommendations made by the external auditor in connection with the audit, all significant reports of the internal auditing department, and management's responses to those reports; and

b. separately with management and the Company's external auditor prior to the filing with the SEC of each Form 10-K and 10-Q to discuss, among other things, the appropriateness of the Company's accounting policies.

7. The Compensation Committee shall select and retain an expert independent consultant, once every two years, to evaluate the Company's stock option grants and stock option program (if any exists).

E. The Corporate Governance and Nominating Committee

1. The Nominating Committee shall be renamed the Corporate Governance and Nominating Committee, which, in addition to its current responsibilities, shall have principal responsibility for recommending revisions to this Corporate Governance Plan. In particular, the Corporate Governance and Nominating Committee shall:

a. Periodically review the governance structure of the Board;

b. Recommend to the Board the director nominees to serve on Board committees;

c. Periodically review the size of the Board; and

d. Conduct an annual review of the independence of all directors pursuant to the independence guidelines set forth above.

2. The Corporate Governance and Nominating Committee shall include a minimum of two members of the Board of Directors who shall all be independent.

F. Corporate Control and Compliance

1. There shall be a Senior Vice President of Risk and Internal Audit who shall head Internal Audit and report directly to the Chief Financial Officer and to the Chairperson of the Audit Committee. The Senior Vice President of Risk and Internal Audit shall be responsible for examining and evaluating the adequacy and effectiveness of the

13

Company's internal control procedures, shall have no other significant Company responsibilities, and shall not have any Company responsibilities incompatible with responsibility for the Company's internal control procedures. Such officer may only be removed with the approval of the Audit Committee.

2. The annual report on internal controls mandated by § 404 of the Sarbanes-Oxley Act of 2002 shall assess the compliance of the Company's future stock option grants with the terms of the stock option plan.

G. Adoption and Amendment of Corporate Governance Plan

1. Any proposed amendment(s) to this Corporate Governance Plan must be approved by a vote of two-thirds of the Independent Directors.

Monster, the Monster SLC, and Lead Plaintiffs agree that these corporate governance measures are in the best interests of Monster and Monster's shareholders.

14. Monster, the Monster SLC, and the Lead Plaintiffs agree that the Settlement, pursuant to the terms of the Stage I Recovery set forth on Exhibits B and C attached to the Settlement Agreement, including one or more cash payments to Monster, cancellation of outstanding Monster stock options and restricted stock units, and/or repricing of outstanding Monster stock options, in exchange for a release of liability from all Claims is in the best interests of the Company and provides a substantial benefit to Monster and its shareholders. In addition, Monster, the Monster SLC, and the Lead Plaintiffs further agree that Monster receives significant corporate process benefits from the corporate governance practices set forth in paragraph 13 and the conversion of Andrew J. McKelvey's shares of Class B Common Stock into shares of Class A Common Stock.

15. It is an important element to each of the Parties' participation in this Settlement that they obtain the fullest possible release from further liability to anyone relating to the Claims. It is the intention of the Parties that this Settlement eliminate all

14

further risk and liability of the Parties to the Claims, and that the Settlement shall be a final and complete resolution of all disputes asserted or which could be or could have been asserted with respect to the Claims, whether known or unknown.

16.     Upon the Effective Date, the Monster SLC, Lead Plaintiffs, and Monster and their subsidiaries, affiliates, members, directors, officers, employees, partners, agents, attorneys, heirs, administrators, successors and assigns, shall release and be deemed to release and forever discharge, and shall forever be enjoined from prosecuting, the Claims against each and all of the Settling Defendants and their respective heirs, executors, administrators, successors, assigns, affiliates, employees, partners, and agents.

17.     Upon the Effective Date, each and all of the Settling Defendants, on their own behalf and on behalf of their respective heirs, executors, administrators, successors, assigns, affiliates, employees, partners, agents, and attorneys, shall release and be deemed to release and forever discharge, and shall be forever enjoined from prosecuting, the Claims against the Monster SLC, Lead Plaintiffs, and Monster and their subsidiaries, affiliates, members, directors, officers, employees, partners, agents, attorneys, heirs, administrators, successors, and assigns, except the rights described in paragraph 8 of the Settlement Agreement. Upon the Effective Date, Andrew J. McKelvey will also be released from all other potential claims or causes of action relating to any subject matter whatsoever except for potential claims or causes of action currently unknown to the Company's Board of Directors that involve intentional, fraudulent, or criminal conduct in consideration for the recovery obtained from him.

15

18.     The Monster SLC will use its best efforts to seek prompt resolution of the Federal Action as against each of the Settling Defendants consistent with the terms of the Settlement Agreement.

19.     The Monster SLC will assume the pending Stage II Legal Claims.  If the Monster SLC reaches any proposed resolution of the pending Stage II Legal Claims (including the potential dismissal of such claims), the Monster SLC shall provide Lead Plaintiffs' Counsel with notice of such proposed resolution seven (7) days before the SLC approves the proposed resolution, and Lead Plaintiffs shall be afforded the opportunity to comment on the terms of the proposed resolution during that seven-day period.  Lead Plaintiffs agree that the Monster SLC will have the exclusive right to investigate, assert, pursue, and settle future Stage II Legal Claims, if any, that Monster may have against any parties or non-parties if such claims arise from or are related to the allegations in the State Complaint or the allegations in the Federal Complaint.

20.     The Monster SLC and Lead Plaintiffs conclude that there is no basis for the Claims against Brad Baker, Chris Power, and David Stein and that those Claims should be dismissed with prejudice.  Nonetheless, the Monster SLC, Monster, Lead Plaintiffs, Brad Baker, Chris Power and David Stein agree to settle any Claims in consideration of mutual releases as described in paragraphs 15-17 above.

## LEAD PLAINTIFFS' COUNSEL ATTORNEYS' FEES AND EXPENSES

21.     Lead Plaintiffs' Counsel have agreed to apply to the State Court for an award of attorneys' fees and expenses not to exceed $4.9 million (the "Attorneys' Fees").

22.     The fee application shall be in accordance with the terms detailed in paragraphs 17-20 of the Settlement Agreement and Monster has agreed not to oppose that

16

application if so limited.  Payment by Monster of any Attorneys' Fees shall not be made prior to, and is contingent upon, the Effective Date.

23.       To date. Lead Plaintiffs' Counsel have not received any payment for their services in prosecuting these Actions, nor have they been reimbursed for their out-of-pocket expenses.  The Attorneys' Fees would compensate counsel for their efforts in achieving the benefits described herein and in the Settlement Agreement, and for their risk in undertaking this representation on a contingency basis.

## SETTLEMENT HEARING

24.       The Hearing will be held on               , 2008, at        .m., before the Honorable Eileen Bransten, of the New York State Supreme Court, at the New York County Courthouse 60 Centre Street, Room 442, New York, NY 10007.  The purpose of the Hearing will be to determine whether the proposed Settlement should be approved by the State Court as fair, reasonable and adequate and to consider the application of Lead Plaintiffs' Counsel for attorneys' fees and expenses.  The State Court will also rule on any other matters before it.  Pursuant to the Federal Court's Conditional Order of Dismissal, all current Monster shareholders will be bound by the applicable determinations and orders of the State Court, and by the Judgment in the State Action.

25.       The State Court may adjourn the Hearing by oral announcement at such hearing or at any adjournment without further notice of any kind.  The State Court may approve the Settlement with or without modifications, enter a Judgment, and order the payment of the Attorneys' Fees without further notice of any kind.

17

## RIGHT TO APPEAR AND OBJECT

26.      Any current Monster shareholder may appear at the Hearing, in person or through counsel of his, her or its choice, to show cause why (a) the Settlement should not be approved, (b) a Judgment on the terms contained in the Settlement Agreement should not be entered, or (c) Lead Plaintiffs' Counsel should not be awarded the requested attorneys' fees and expenses. Unless otherwise ordered by the State Court, however, no Monster shareholder shall be heard or shall be entitled to contest the approval of the Settlement, or Lead Plaintiffs' Counsel's fee application, and no papers, briefs, pleadings or other documents submitted by any Monster shareholder or any other person shall be received and considered, unless, no later than thirty (30) days prior to the Hearing that person has caused to be filed written objections, stating all supporting bases and reasons, with:

> Hon. Norman Goodman
> County Clerk of New York County
> 60 Centre Street, Room 161
> New York, New York 10007

and has served copies of all such papers at the same time upon the following by first-class mail:

| | |
|---|---|
| Salvatore J. Graziano | Stacey R. Friedman |
| BERNSTEIN LITOWITZ BERGER | SULLIVAN & CROMWELL LLP |
| & GROSSMANN LLP | 125 Broad Street |
| 1285 Avenue of the Americas | New York, New York 10004 |
| New York, New York 10019 | |
| | *Counsel for the Special Litigation* |
| *Co-Lead Counsel for State Plaintiffs* | *Committee of Monster Worldwide, Inc.* |

18

Andrew J. Levander
DECHERT LLP
30 Rockefeller Plaza
New York, New York 10112

*Counsel for Monster Worldwide, Inc.*

Lawrence P. Kolker
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 100016

*Co-Lead Counsel for Federal Plaintiffs*

27.    Every objection must contain: (a) the person's name, address and telephone number; (b) the number of shares of Monster common stock the person owns; (c) the date(s) of purchase of such shares; (d) a detailed statement of the basis of the person's objections to or comments upon the Settlement, Lead Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses, or any other matter before the Court; (e) any supporting papers, including all documents and writings that the person desires the Court to consider; and (f) a representation as to whether the person intends to appear at the Hearing.

28.    **Any Monster shareholder who does not make his, her, or its objection in the manner provided for herein shall be deemed to have waived such objection and shall forever be foreclosed from making any objections to the fairness, adequacy, or reasonableness of the Settlement, or Lead Plaintiffs' Counsel's fee application.**

29.    Monster shareholders do not need to take any action to indicate their approval of the Settlement and the Settlement Agreement.

### FURTHER INFORMATION

30.    This Notice does not describe all of the details of the Settlement Agreement. For additional information about the allegations of the complaint and the terms of the proposed settlement, shareholders are directed to [link to 8-K on the internet], or shareholders without access to the Internet can: (a) review the Settlement Agreement filed

19

with the Court, which may be inspected during business hours, at the office of the County Clerk, 60 Centre Street, New York, NY 10007; or (b) obtain a copy of this document by contacting:

        Robert Jones
        Monster Worldwide, Inc.
        622 Third Avenue
        New York, New York 10017

**DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

DATED:          , 2008

## EXHIBIT G

### Proposed Order and Judgment

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- -
                                :

IN RE MONSTER WORLDWIDE, INC.     :    Index No. 06-108700
DERIVATIVE LITIGATION         :
                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- -

### ORDER AND JUDGMENT

       A Hearing having been held before this Court on         , 2008, pursuant to this Court's Preliminary Approval Order, dated         , 2008, on the Settlement set forth in the Stipulation and Agreement of Settlement of Derivative Litigation. dated May 7, 2008 (the "Settlement Agreement"), and on the application for an award of attorneys' fees and expenses to Lead Plaintiffs' Counsel as set forth in the Settlement Agreement (the "Fee Application"); and given that due notice (the "Notice") of the Hearing was provided in accordance with the Preliminary Approval Order; the respective parties having appeared by their respective attorneys, and such attorneys having been heard; [no person having objected] to the Settlement and Fee Application; the matters having been considered by the Court; all parties having consented to the entry of this Order; and the Court having made its findings of fact and conclusions of law as set forth below:

       IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

       1.      For purposes of this Order and Judgment (the "Judgment"), the Court adopts and incorporates the definitions contained in the Settlement Agreement.  Capitalized

terms used herein and not otherwise defined shall have the same meaning as set forth in the Settlement Agreement.

      2.      This Court has jurisdiction over the subject matter of the State Action, and over all parties to the State Action.

      3.      Pursuant to Section 626(d) of the New York Business Corporation Law and for the purposes of the Settlement only, the Court finds that the State Action was properly brought as a derivative action for and on behalf of Monster, and that State Lead Plaintiffs are adequate derivative representatives of Monster who adequately represent the interests of the shareholders similarly situated in enforcing the rights of Monster in the State Action.

      4.      The Court finds that the Notice was given in accordance with the Preliminary Approval Order and such notice was reasonable and constituted the most practicable notice under the circumstances, constituted valid, due, and sufficient notice to all persons entitled to receive such notice, and complied fully with the requirements of due process and any other applicable law.

      5.      The Court finds that the Monster SLC was comprised of independent and disinterested members.

      6.      The Court finds that the Monster SLC and Lead Plaintiffs' Counsel conducted comprehensive, independent investigations to assess the merits of claims arising from or relating to allegations in the State Action and the related Federal Action.

      7.      This Court hereby approves the Settlement as set forth in the Settlement Agreement and finds, in accordance with Section 626(d) of the New York Business Corporation Law, that said Settlement is, in all respects, fair, reasonable, adequate,

2

and in the best interests of Monster and its shareholders and directs the consummation and implementation of the Settlement in accordance with the terms and provisions of the Settlement Agreement.

       8.      This Court further finds that the Settlement has been entered into and made in good faith, and that Lead Plaintiffs' Counsel and the Monster SLC have fairly and adequately represented the interests of Monster and its shareholders in connection with the Actions and the settlement of the Actions.

       9.      Monster is realigned as plaintiff to allow the Monster SLC to prosecute the Stage II Legal Claims.

      10.      The Lead Plaintiffs, Monster, and the Monster SLC, on their own behalf and on behalf of their respective predecessors, successors, affiliates, heirs, agents, executors, administrators, assigns, subsidiaries, members, directors, officers, employees, partners, agents, and attorneys, and any person they represent, are hereby permanently barred and enjoined from prosecuting the Claims against the Settling Defendants and their respective successors, heirs, executors, administrators, assigns, and affiliates, except for the rights described in paragraph 8 of the Settlement Agreement.

      11.      The Settling Defendants, on their own behalf and on behalf of their respective successors, affiliates, heirs, agents, executors, administrators, and assigns, are permanently barred and enjoined from prosecuting the Claims against the Lead Plaintiffs, Monster, and the Monster SLC and their respective predecessors, successors, affiliates, heirs, agents, executors, administrators, assigns, subsidiaries, members, directors, officers, employees, partners, agents, and attorneys, except for the rights described in paragraph 8 of the Settlement Agreement.

3

12.    The Claims are hereby compromised, settled, released, discharged, and dismissed with prejudice as against the Parties and their respective predecessors, successors, affiliates, heirs, agents, executors, administrators, assigns, subsidiaries, members, directors, officers, employees, partners, agents, and attorneys.

13.    This Court hereby decrees that neither the Settlement Agreement, nor this Judgment, nor the fact of the Settlement, is an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Settling Defendants or of the truth of any of the claims or allegations alleged in the Actions. This Judgment is not a finding of the validity or invalidity of any claims in the Actions or of any wrongdoing or lack thereof by any of the Parties. The Settlement Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Settling Defendants, or of the truth of any of the claims or allegations, or of any alleged defense, or of the absence of any wrongdoing or limitation of damage or injury, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, by any person, in any other proceeding.

14.    Without affecting the finality of this Judgment in any way, this Court retains continuing jurisdiction: (a) over the implementation, administration, and consummation of this Settlement; (b) over the State Action until the Judgment contemplated hereby has become Effective and each and every act agreed to be performed by the parties to the Settlement Agreement shall have been performed pursuant to the Settlement Agreement; (c) over all parties to the State Action and all parties to the Settlement Agreement for the purpose of taking such other actions as may be necessary to conclude and administer this

4

Settlement and to implement and enforce the Settlement Agreement; and (d) over the non-settling Defendants and the Stage II Legal Claims.

       15.     The Fee Application is granted and Lead Plaintiffs' Counsel are hereby awarded the sum of $ as and for their reasonable attorneys' fees and expenses incurred in connection with the Actions.

       16.     The Court finds that no just reason exists for delay in entering judgment in accordance with the Settlement Agreement.  Accordingly, the Clerk is hereby directed to enter this Judgment forthwith.

Dated:_____

_____
                                  J.S.C.

5

## EXHIBIT H

### Proposed Conditional Order of Dismissal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| | : | |
| IN RE MONSTER WORLDWIDE, INC. | : | INDEX NO. 1:06-CV-04622 (NRB) |
| STOCK OPTION DERIVATIVE | : | |
| LITIGATION | : | |
| | x | |

### CONDITIONAL ORDER OF
### VOLUNTARY DISMISSAL WITH PREJUDICE

The Federal Lead Plaintiffs and State Lead Plaintiffs (together the "Lead Plaintiffs") seek entry of this Conditional Order of Voluntary Dismissal with Prejudice (the "Order") voluntarily dismissing the Federal Lead Plaintiffs' causes of action in the above-captioned action against the Settling Defendants (the "Action") contingent upon the judgment approving the settlement in the parallel state derivative action, *In re Monster Worldwide, Inc. Derivative Litigation*, 06-108700, currently pending in the New York State Supreme Court, New York County (the "Judgment" in the "State Action"), becoming Final. For the purposes of this Order, the Court adopts the meaning of the term "Final" as it has been defined in the Stipulation and Agreement of Settlement of Derivative Litigation, which has been appended to the Order as Exhibit 1 ("Settlement Agreement"). Upon review and consideration of Lead Plaintiffs' request, it is ORDERED AND ADJUDGED THAT:

1.     Lead Plaintiffs' request is HEREBY GRANTED.

2.     The terms of the Settlement Agreement are preliminarily approved, subject to further consideration thereof at the Settlement Hearing by the State Court.

3.      The form and manner of the proposed notice to shareholders of Monster Worldwide, Inc. provided for in the Settlement Agreement in the State Action constitutes due and sufficient notice to all persons entitled to receive such notice for purposes of Rule 23.1 of the Federal Rules of Civil Procedure.

4.      A final hearing (the "Hearing") shall be held before the State Court for the following purposes:

(a)      to determine whether the proposed Settlement is fair, reasonable, adequate, and in the best interests of Monster and its current stockholders and whether the Settlement should be finally approved;

(b)      to determine whether the Judgment as provided under the Settlement Agreement should be entered;

(c)      if the Settlement is approved, to consider the appropriate award to be made to Lead Plaintiffs' Counsel for attorneys' fees and expenses; and

(d)      to rule upon such other matters as the State Court may deem appropriate.

5.      Lead Plaintiffs' Counsel shall notify this Court once the Judgment in the State Action has become Final and shall promptly submit an affidavit that the notice to shareholders has been given.

6.      This Action shall be stayed pending the notice called for in paragraph 5 above. Lead Plaintiffs' Counsel shall notify this Court of the status of the proceedings in the State Action concerning final approval of the Settlement Agreement on or about every 60 days, until the notice called for in paragraph 5 above is filed.

2

7. Upon receipt of the notification called for in paragraph 5 above by the Clerk of the Court:

 (a) This Action and all claims raised therein against Settling Defendants Brad Baker, Paul Camara, Thomas Collison, Peter Dolphin, George Eisele, Brian Farrey, John Gaulding, David Hosokawa, Michael Kaufman, Ronald Kramer, John McLaughlin, Andrew J. McKelvey, Robert O'Connell, Myron Olesnyckyj, Steve Pogorzelski, Chris Power, Michael Sileck, David Stein, John Swann, and Jeffrey Taylor shall automatically be adjudged dismissed with prejudice and on the merits.

 (b) Any current Monster stockholder shall be bound by the applicable determinations and orders of the State Court, and by the Judgment in the State Action, whether favorable or unfavorable to any of them.

 (c) Monster is realigned as plaintiff in this Action to allow the Monster SLC to prosecute the Stage II Legal Claims.

 (d) Any stay of this Action shall be lifted.

8. Lead Plaintiffs' Counsel may be awarded attorneys' fees and expenses by the State Court. No attorneys' fees, expenses or other costs shall be awarded upon dismissal of this Action pursuant to this Order.

SO ORDERED:

Dated: , 2008

        _____

        Naomi R. Buchwald
        United States District Judge

3