# Exhibit A

LEXSEE


Cited
As of: Feb 04, 2009

LAWRENCE F. BARTELS, et al., Plaintiffs, v IRVING NEWIRTH, et al.,
Defendants.

75 Civ. 5664

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1976 U.S. Dist. LEXIS 13311; 22 Fed. R. Serv. 2d (Callaghan) 970; Fed. Sec. L. Rep.
(CCH) P95,718

September 9, 1976

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff shareholders filed a derivative action and a shareholder's claim against defendant corporations and individuals. The individuals filed a motion to dismiss the derivative actions pursuant to Fed. R. Civ. P. 23.1, and two individual defendants filed a motion for summary judgment on the same actions.

**OVERVIEW:** The shareholders purchased a great deal of the corporate stock before it went public and were officers of the corporation at one point. The individuals asserted that the shareholders did not have standing to bring a derivative action against the corporation on behalf of other shareholders because they participated in the actions upon which they based their claim. The basis of the derivative claim was that the individuals and corporate officers did not disclose relevant aspects of the purchase of two similar corporations. The court agreed and granted the motion to dismiss the derivative claims, holding that the individuals and the corporation had met their burden of showing that the shareholders had a conflict of interest with other shareholders, in light of their own participation in the transactions. The court held that if the shareholders had not directly participated in the transactions as claimed, it was clear that they had exhibited a reckless disregard for the truth.

**OUTCOME:** The court granted the motions to dismiss the shareholders derivative claims, leaving the shareholders' individual claims.

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Derivative Actions > Enforcement of Corporate Rights*
*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Derivative Actions > Procedures*
*Civil Procedure > Class Actions > Certification*
[HN1]The text of Fed. R. Civ. P. 23.1 does not require a judicial certification of a derivative action, as is the case with class claims, but the rule does provide that a derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders in enforcing the right of the corporation.

Case 0:06-cv-01216-JMR-FLN   Document 399-1   Filed 02/04/09   Page 3 of 6

1976 U.S. Dist. LEXIS 13311, *; 22 Fed. R. Serv. 2d (Callaghan) 970;
Fed. Sec. L. Rep. (CCH) P95,718

*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > General Overview*
*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Class Actions > Derivative Actions > General Overview*

[HN2]A stockholder who has acquiesced or participated in the acts giving rise to his claim has no standing to vindicate the rights of the corporation in a derivative action.

**COUNSEL:** [*1] LEON B. LIPKIN, ESQ., JOSEPH ARONAUER, ESQ., LIPKIN & WEISBERG, 225 Broadway, New York, New York 10007 For Plaintiffs

HERMAN, MC GINNIS & KASS, P.C., 149 Madison Avenue, New York, New York 10016 For defendants Natural Resources Development, Inc. and Ultrason International, Inc.

HOWARD J. GOLDSTEIN, ESQ., 1250 Broadway, New York, New York 10001 For defendant Inflo Systems, Inc., and certain individual defendants

GARY B. WOLFF, ESQ., 67 Wall Street, New York, New York 10005 For defendants Irving and Rosalyn Newirth

**OPINION BY:** PIERCE

**OPINION**

LAWRENCE W. PIERCE, District Judge

OPINION AND ORDER

Derivative defendant Natural Resources Development, Inc. ("NRDI"), defendants Ultrason International, Inc. ("Ultrason"), Inflo Systems, Inc. ("Inflo"), and six individual defendants move to dismiss the derivative counts of the complaint pursuant to Rule 23.1 Fed.R.Civ.P. Defendants Irving and Rosalyn Newirth also move for summary judgment dismissing the same counts as against them. The ground of the Rule 23.1 motions is defendants' claim that plaintiffs do not fairly and adequately represent the interests of NRDI shareholders in enforcing the derivative claims asserted in Counts One through [*2] Four of the complaint.

This action was commenced by eight NRDI shareholders, two of whom are former officers and directors of the company. Each of the eight derivative plaintiffs acquired significant interests in NRDI prior to the company's first public offering in June of 1971. The acts complained of herein occurred beginning in December 1971, during the period in which plaintiff Bartels was president and director and plaintiff Harward was vice-president and director of NRDI. Neither Bartels nor Harward still holds any management or board position with NRDI, and certain of NRDI's current officers are named as parties defendant.

Of the complaint's five counts, four seek a derivative recovery for NRDI and one seeks recovery directly for the plaintiff stockholders. All five counts grow out of the same series of transactions, involving the purchase by NRDI of interests in Ultrason and Inflo. The plaintiffs seek redress for alleged non-disclosure and alleged false and misleading statements made in violation of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rule 10b-5.

Count One asserts that defendant Inflo and the individual defendants associated therewith [*3] schemed to defraud NRDI in its purchase of Inflo stock. Defendants allegedly failed to disclose that Inflo had sold other shares of its stock less than one month before the NRDI transaction for 1/36th of the price paid by NRDI. Count Two asserts a very similar claim against Ultrason and the defendants associated with that firm, and charges a fraudulent dilution of NRDI shareholders' interests. Count Three claims that the Inflo defendants had working control of NRDI during the Inflo purchases, and that the purchases were in violation of defendants' fiduciary duties to plaintiffs. Count Four makes a similar charge against the Ultrason defendants. Finally, in Count Five, plaintiffs seek recovery for themselves against all defendants except NRDI on an alleged scheme, encompassing all the foregoing acts, to diminish the value of plaintiffs' holdings in NRDI. Count Five seeks no recovery for the derivative corporation.

While the record on this motion consists essentially of rambling and contradictory affidavits of the parties, there exist sufficient undisputed facts concerning the plaintiffs to permit a finding on the question of adequate representation under Rule 23.1 Fed.R.Civ.P. [*4] It is not disputed that prior to NRDI's first public issue, the eight plaintiffs acquired a majority stock interest in NRDI. Plaintiffs Bartels and Harward were at that time

Case 0:06-cv-01216-JMR-FLN   Document 399-1   Filed 02/04/09   Page 4 of 6

1976 U.S. Dist. LEXIS 13311, *4; 22 Fed. R. Serv. 2d (Callaghan) 970;
Fed. Sec. L. Rep. (CCH) P95,718

NRDI's principal officers, in legal control of the company's management. Following NRDI's June 1971 public offering, plaintiffs and their associates retained 41.22% of NRDI, the remainder of the issue having been sold to the public at three cents per share. The NRDI offering was labeled as a "speculation" involving a "high risk of loss." (See Ex. B to NRDI Notice of Motion). The offering statement revealed that NRDI's principal holdings consisted of oil, gas and mineral leases as well as certain mining properties acquired from plaintiffs and their associates. A cursory review of the circular reveals statements to the effect that NRDI "believes that it has legal title to its properties, but has not obtained legal opinion," and that the financial statements included in the offering were prepared "without audit or verification."

Despite this beginning founded on something less than financial bedrock, NRDI proceeded to acquire significant share ownership in Inflo and Ultrason, issues which were of a character [*5] somewhat similar to NRDI. The Inflo purchases in December 1971 amounted to 450,000 shares, and the Ultrason acquisition resulted in that company becoming a NRDI subsidiary. It is undisputed that during the period of these acquisitions, plaintiffs Bartels and Harward were principal officers of NRDI, plaintiffs or their nominees held all directorships in NRDI, and plaintiffs referred to themselves as the NRDI "insiders."

Accordingly, plaintiffs do not dispute that Bartels and Harward participated in the purchases upon which they now bring suit. However, plaintiffs aver that they were victims of, rather than parties to, the alleged frauds set forth above. Although plaintiffs retain significant investments in NRDI, they are no longer officers or directors. Thus, the "insiders" are now on the outside, suing their successors in control.

In support of their motions, defendants make a series of allegations against plaintiffs. Defendants note the positions held by Bartels and Harward at NRDI, and urge that those plaintiffs should have been named parties defendant to this action; certain defendants indicate an intention to file counter-claims charging Bartels and Newirth with breaches [*6] of fiduciary duty to NRDI. The principal allegation by defendants is that this lawsuit is part of a continuing campaign by plaintiffs to coerce NRDI into buying out their shares, and that plaintiffs are not pursuing the best interests of NRDI, but rather that plaintiffs' only true interest is a monetary recovery for themselves, such as is sought in Count Five.

While plaintiffs deny the substance of these allegations, their attempts to avoid being entangled in the acts sued upon have resulted in rather curious allegations and arguments by counsel. For instance, plaintiffs have argued that although Bartels and Harward participated in the management decisions to buy Inflo, they were at the time under the "control" of defendant Newirth and victims of his alleged fraud. For example, plaintiff Harward avers that he participated in the Inflo purchases despite Newirth's failure to supply him with an Inflo financial statement. Further, in order to demonstrate that he opposed the questionable aspects of certain Inflo transactions, Harward presents "minutes" of a NRDI board meeting at which he and Bartels apparently protested the lack of full disclosure concerning Inflo contained in Inflo's [*7] draft registration statement. However, it is not disputed that following this meeting Harward did nothing to hinder the July 1972 Inflo offering. Further, unless the Court was to conclude that there is no liability on the part of a director who is under the "control" of another, there remains the possibility that plaintiffs participated in the fraud allegedly perpetrated by Newirth. Upon a review of the record, the Court concludes that nothing more than plaintiffs' bare allegations of innocence in the transactions distinguish them from the persons they state have incurred liability under the securities laws and for breach of fiduciary duty. Accordingly, this case presents serious questions concerning whether these plaintiffs may employ the device of the derivative lawsuit.

Prior to 1966, derivative suits were governed by subdivisions (b) and (c) of former Rule 23 Fed.R.Civ.P. [HN1]The text of present Rule 23.1 does not require a judicial certification of a derivative action, as is the case with class claims, but the Rule does provide as follows:

"The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests [*8] of the shareholders... in enforcing the right of the corporation...." (Rule 23.1 Fed.R.Civ.P.)

It has been suggested that a derivative plaintiff occupies the position of a fiduciary with respect to the company's shareholders; it is ultimately for their benefit, as well as for the corporation's benefit, that he sues; see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 549 (1949); Albert Fried & Co. v. The Seeburg Corp.

1976 U.S. Dist. LEXIS 13311, *8; 22 Fed. R. Serv. 2d (Callaghan) 970;
Fed. Sec. L. Rep. (CCH) P95,718

[1974-75]CCH Fed. Sec.L.Rep. P94,969 (S.D.N.Y. January 24, 1975). Accordingly, the standard by which the adequacy of a derivative plaintiffs' representation should be assessed is comparable to that governing class action plaintiffs, Rule 23(a)(4). See Ash v. Brunswick Corp. [1974-75]CCH Fed.Sec.L.Rep. P95,109 (D.Del. May 27, 1975). However, the principal distinction between derivative and direct or class action is that in the former any recovery goes solely to the issuer, while in the latter the shareholder seeks a person recovery; see Smith v. Sperling, 354 U.S. 91, 99 (1957) (Frankfurter, J. dissenting). It should be noted that plaintiffs here seek both types of relief.

On this motion, defendants have the burden of demonstrating that a serious [*9] conflict of interest exists between plaintiffs and other shareholders and that plaintiffs cannot be expected to act in the shareholders' interest in light of their own position. In the alternative, defendants may carry their burden by showing that plaintiffs participated in the wrongs complained of, or a least acquiesced in the wrongdoing. See Wright & Miller, Federal Practice & Procedure: Civil § 1833 at 394, § 1834 at 398. While Professor Moore has questioned the soundness of the rule barring a participant from being a derivative plaintiff, he notes that "there is considerable federal and non-federal authority that if plaintiff has acquiesced or participated in the act or acts made the basis of the alleged cause of action, he is persona non grata as a [derivative] plaintiff." 3B Moore's Federal Practice P23.1.17 at 23.1-155.

In light of the high management positions held by plaintiffs Bartels and Harward and their admitted participation in the Inflo and Ultrason purchases, as well as the "insider" status of all eight plaintiffs, the Court must conclude that those persons are estopped from taking up the sword of the derivative claim. Even putting aside the possibility that [*10] Bartels and Harward could be liable for breach of fiduciary duty or statutorily liable under certain provisions of the securities laws, Harward's allegations concerning what he and Bartels knew about the Inflo situation prior to the filing of Inflo's July 1972 registration statement raise the possibility of a reckless disregard for the truth, if not actual aiding and abetting of the alleged fraud or the continued concealment thereof. In sum, it appears that if Bartels and Harward had not instituted this action as plaintiffs, they might well have been named as defendants.

"It is generally recognized that [HN2]a stockholder who has acquiesced or participated in the acts giving rise to his claim has no standing to vindicate the rights of the corporation in a derivative action....The rule is designed, among other things, to prevent speculation by the stockholder on the results of corporate transactions, with the object of accepting the advantages if they turn out well or challenging them if they are not beneficial." ( Rosenfeld v. Schwitzer Corp., 251 F.Supp. 758, 762 (S.D.N.Y. 1966) (citations omitted)).

Other decisions indicate that this case constitutes an appropriate situation in [*11] which to apply the above rule, see Dimpfel v. Ohio & Mississippi R.R., 110 U.S. 121 (1884); Goldboss v. Reimann, 51 F.Supp. 811, 819 (S.D.N.Y. 1943), aff'd mem., 143 F.2d 594 (2d Cir. 1944), rather than one where participation in the acts may be disregarded; see Mayer v. Development Corp. of America, 396 F.Supp. 917 (D.Del. 1975).

Accordingly, the Court concludes that plaintiffs are estopped from suing as derivative plaintiffs in light of their previous participation in the acts complained of. Further, the presence of Count Five in the same lawsuit with the derivative claims raises the possibility of a conflict of interest between plaintiffs and other NRDI shareholders.

The possibility of a conflict of interest may arise where a derivative shareholder also brings a direct shareholder claim on the same transaction; see Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 737 (3d Cir. 1970), cert. denied, 401 U.S. 974 (1971); Cf. Levine v. American Export Industries, Inc., 473 F.2d 1008, 1009 (2d Cir. 1973). Since Count Five seeks a direct recovery on the same transactions and from the same defendants (excepting NRDI) as is sought in the derivative counts, the conflict of interest goes [*12] "to the subject matter of the suit" and under the circumstances, presents an "antagonism" between plaintiffs and other shareholders. See GA Enterprises, Inc. v. Leisure Living Commodities, Inc., 517 F.2d 24, 26-27 (1st Cir. 1975). Accordingly, for all the foregoing reasons, the Court concludes that Counts One through Four must be dismissed as to each of these plaintiffs since they do not meet the requirements of Rule 23.1 Fed.R.Civ.P.

In light of the dismissal of the derivative counts, the motion for summary judgment made by Irving and Rosalyn Newirth, addressed solely to those same counts, is denied as moot. Further, the application by plaintiffs

1976 U.S. Dist. LEXIS 13311, *12; 22 Fed. R. Serv. 2d (Callaghan) 970;
Fed. Sec. L. Rep. (CCH) P95,718

for an order pursuant to Rule 23.1 directing notice to the shareholders and setting down a hearing on the fairness of the proposed discontinuance of the action against defendant Popkoff also is denied as moot. Since it appears that plaintiffs desire to discontinue Count Five as against Popkoff, counsel should submit an appropriate stipulation of discontinuance pursuant to Rule 41(a) Fed.R.Civ.P.

The motions of the various defendants to dismiss the derivative claims for failure to comply with Rule 23.1 are hereby granted. Counts [*13] One through Four are dismissed.

SO ORDERED.

LAWRENCE W. PIERCE U.S.D.J.