# Exhibit B

**Westlaw.**

Slip Copy
Slip Copy, 2008 WL 4755834 (D.Minn.)
**(Cite as: 2008 WL 4755834 (D.Minn.))**

Page 1

►Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.
Kevin BORES, et al., Plaintiffs,
v.
DOMINO'S PIZZA LLC, Defendant.
**Civ. No. 05-2498 (RHK/JSM).**

Oct. 27, 2008.

West KeySummary
**Federal Civil Procedure 170A ☞2737.5**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2737 Attorneys' Fees
            170Ak2737.5 k. Particular Types of Cases. Most Cited Cases

**Federal Civil Procedure 170A ☞2742.5**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2742 Taxation
            170Ak2742.5 k. Attorney Fees. Most Cited Cases

A prevailing party's request to recover attorney fees and costs incurred in connection with a breach of contract action in the amount of $1.2 million was not reasonable under the parties' franchise agreements, and thus, the party was entitled to $450,000 in attorneys' fees and costs. The hourly rates charged by some of the prevailing party's attorneys was excessive when compared to the reasonable hourly rate in the relevant legal community for similar services provided by lawyers of comparable skill, experience, and reputation. The prevailing party made no attempt to justify the use of out-of-town counsel with very high rates to assist it in this matter. Further, many of the time records submitted by the prevailing party lacked sufficient detail to ascertain if the time expended was reasonably necessary, redundant or excessive, as the records were replete with vague entries such as "gather information and respond to client's requests," "identify and prepare documents," and other similarly vague entries.

J. Michael Dady, Scott E. Korzenowski, Dady & Garner, P.A., Minneapolis, MN, Thomas W. Pahl, Joseph M. Barnett, Foley & Mansfield, Minneapolis, MN, for Plaintiffs.
Michael R. Gray, Quentin R. Wittrock, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for Defendant.

**MEMORANDUM OPINION AND ORDER**

RICHARD H. KYLE, District Judge.

**INTRODUCTION**

*1 This matter is before the Court on the Motion of Defendant Domino's Pizza LLC ("Dominos")[FN1] for Entry of Judgment and Determination of the Amount of Attorneys' Fees and Costs Pursuant to Section 22.2 of the Franchise Agreements (Doc. No. 336). Dominos seeks an award of slightly over $1.2 million in attorneys' fees and costs incurred in connection with this case. For the reasons set forth below, Dominos' Motion will be granted in part and denied in part.

> FN1. The Court will refer to the Defendant as "Dominos" in order to avoid the odd appearance of the possessive "Domino's'."

**BACKGROUND**

The factual background of this case is set forth in detail in the Court's prior opinion, see *Bores v. Domino's Pizza LLC*, 489 F.Supp.2d 940 (D.Minn.2007), and will not be repeated here; familiarity with the Court's prior opinion is assumed.

Dominos appealed the Court's grant of summary judgment on Plaintiffs' breach-of-contract claim to the Eighth Circuit.[FN2] The appellate court reversed and remanded with instructions that this Court "grant Domino's motion to dismiss and enter judgment in its favor." Having now obtained a Judgment dismissing all of Plaintiffs' claims, Dominos seeks to recover the attorneys' fees and costs it incurred in connection with this action, totaling $1,226,065.54. It relies on Section 22.2 of Plaintiffs' Franchise Agreements, which provides:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 0:06-cv-01216-JMR-FLN   Document 399-2   Filed 02/04/09   Page 3 of 10

Slip Copy
Slip Copy, 2008 WL 4755834 (D.Minn.)
(Cite as: 2008 WL 4755834 (D.Minn.))

Page 2

> FN2. Following the Court's summary-judgment ruling, Dominos settled with Plaintiffs Christopher McCormick, Galleons Inc., Try Our Pizza, Inc., M & M Pizza, J Triple T, Inc., and FBN, Inc. As a result, only Blue Earth Enterprises, Inc., Mid America Pizza LLC, Rising Dough, Inc., RJ Inc., and their principals, Kevin Bores and Jennifer Huber, remain as Plaintiffs in this case. The Court refers to those parties collectively herein as "Plaintiffs" or the "remaining Plaintiffs."

If any legal or equitable action is commenced, either to challenge, interpret, or to secure or protect our rights under or to enforce the terms of this Agreement, in addition to any judgment entered in our favor, [Dominos] shall be entitled to recover such reasonable attorney's fees as [Dominos] may have incurred together with court costs and expenses of litigation.[FN3]

> FN3. The Franchise Agreements of two Plaintiffs use slightly different language (*see* Mem. in Opp'n at 19 n. 6), but the differences are immaterial to the Court's resolution of the instant Motion.

Plaintiffs argue that Dominos is not entitled to recover fees or costs and that, were the Court to render such an award, the amount sought by Dominos must be reduced.

## ANALYSIS

### I. Dominos is entitled to recover fees and costs

At the outset, there can be little doubt that this case falls within Section 22.2 of the Franchise Agreements-that is, the action is a "legal ... action ... commenced ... to challenge [or] interpret ... [Dominos'] rights under" the Franchise Agreements. Indeed, Plaintiffs admit that the crux of their case was their breach-of-contract claim, in which they asserted that the Franchise Agreements "prohibited Dominos from requiring the Plaintiffs to purchase one computer hardware system from one designated source (IBM) and one computer software system from one designated source (Domino's)." (Mem. in Opp'n at 7.) Accordingly, Section 22.2 of the Franchise Agreements, on its face, entitles Dominos to recover its reasonable fees and costs.

Nevertheless, Plaintiffs raise several arguments why Dominos cannot recover. None is persuasive.

### A. Plaintiffs had sufficient notice that Dominos would be seeking fees

Plaintiffs first argue that Dominos cannot recover because fees and costs are "special damages" that must be pleaded under Federal Rule of Civil Procedure 9(g). (Mem. in Opp'n at 16-18.) Specifically, Plaintiffs note that Dominos failed to plead an entitlement to attorneys' fees in connection with its first counterclaim (seeking a declaration that it could force Plaintiffs to install PULSE), but *did* plead such an entitlement in connection with its second counterclaim (for breach of contract). Because Dominos only succeeded on the former claim and not the latter, Plaintiffs argue that Dominos is barred from recovering its litigation expenses. There are several flaws with this argument.

*2 First, what Dominos did or did not plead in connection with its counterclaims is irrelevant under the express language of Section 22 .2. In fact, had Dominos not asserted counterclaims at all and, instead, simply defended Plaintiffs' claims, it still would have been entitled to recover its fees because the nature of this case would have been the same: a "legal ... action ... commenced ... to challenge [or] interpret ... [Dominos'] rights under" the Franchise Agreements.[FN4]

> FN4. For this same reason, the Court rejects Plaintiffs' argument that Dominos cannot recover fees because Section 22.2 "does not expressly apply to a claim for declaratory judgment."(Mem. in Opp'n at 18-20.)

Second, even if Dominos technically violated Rule 9(g), it nevertheless complied with the spirit of that rule. While the Eighth Circuit has recognized that attorneys' fees "are 'special damages' that parties are required to plead under Rule 9(g)," *Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916 (8th Cir.1997),[FN5] the purpose of the rule "is to guard against unfair surprise," *Bowles v. Osmose Utils. Servs., Inc.*, 443 F.3d 671, 675 (8th Cir.2006). Plain-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 0:06-cv-01216-JMR-FLN   Document 399-2   Filed 02/04/09   Page 4 of 10

Slip Copy                                                                          Page 3
Slip Copy, 2008 WL 4755834 (D.Minn.)
(Cite as: 2008 WL 4755834 (D.Minn.))

tiffs cannot reasonably claim surprise from Dominos' attempt to recover its fees here. Indeed, Dominos' second counterclaim alerted Plaintiffs that Dominos sought to recover all of its fees and litigation expenses under Section 22.2. (*See* Answer and Counterclaims (Doc. No. 4) ¶ 23.) In the absence of surprise, Dominos' alleged failure to comply with Rule 9(g) is harmless and must be overlooked by the Court. *See*Fed.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

> FN5.*But see* Wiley v. Mitchell, 106 Fed. Appx. 517, 522-23 (8th Cir.2004) (attorneys' fees sought pursuant to contract are not element of damages that must be pleaded under Rule 9(g)).

**B. Dominos' release of certain Plaintiffs does not undermine its Motion**

Plaintiffs next argue that because Dominos has settled its claims with certain Plaintiffs (*see* note 2, *supra* ), it is barred from seeking fees and costs from the remaining Plaintiffs. The Court does not agree.

Plaintiffs cite several decisions in support of their argument, most of which are tort cases involving joint tortfeasors. (*See* Mem. in Opp'n at 21-24.) "The general rule of law is that a release of one joint tortfeasor releases all others." Frey v. Snelgrove, 269 N.W.2d 918, 921 (Minn.1978). The reason for this rule is clear: the obligations owed by parties jointly liable cannot be separated from one another, so a release as to one necessarily must serve as a release as to all. Where parties are jointly and *severally* liable, however, their obligations *can* be separated and, as a result, the release of one generally will not release the others. Hence, "the release of one joint and several party does not discharge any other party to [a] contract." Holland v. United States, 74 Fed. Cl. 225, 252 n. 16 (2006); *accord*Restatement (Second) of Contracts § 294(1)(b) (1981) (where a promisor under a contract is "discharge[d] ... by release[,] ... co-promisors who are bound by joint and several duties ... are not discharged"); Bank One Trust Co. NA v. Alma Prods. I, Inc., 137 Fed. Appx. 68, 69-70 (9th Cir.2005) (release in exchange for partial payment of attorneys' fees did not preclude plaintiff from seeking fees against other, jointly and severally liable party).

*3 Here, Plaintiffs concede that they are jointly and severally liable for any fees to which Dominos might be entitled. (*See* Mem. in Opp'n at 22.) Accordingly, Dominos' release of certain Plaintiffs does not impair its ability to seek fees from those Plaintiffs remaining in this case. *See also*Minn.Stat. § 548.20 (noting that jointly and severally liable parties "may be sued jointly, or separate actions may be brought against each or any of them, and judgment rendered in each, *without barring an action against any of those not included in such judgment, or releasing any of those not sued* ") (emphasis added).

Plaintiffs also argue that even if the aforementioned settlement does not preclude Dominos from recovering its fees and costs, the amount thereof must be reduced by an amount equal to what Dominos received from the settling Plaintiffs. (*See* Mem. in Opp'n at 23-24.) Plaintiffs are correct that they are entitled to such a reduction, lest Dominos double recover. *See*Restatement (Second) of Contracts § 294(3) (1981) ("Any consideration received ... for discharge of one promisor discharges the duty of each other promisor ... to the extent of the amount or value received ."). This rule is of no benefit to the remaining Plaintiffs, however, because the released Plaintiffs paid nothing to Dominos to settle. (*See* Graziani Decl. ¶ 7.)

**C. Dominos' request for fees does not violate its contractual obligations**

Plaintiffs next argue that the Motion should be denied because Dominos, "by asserting its claim for attorneys' fees, is violating its contractual obligation to 'exercise reasonable judgment with respect to all determinations to be made by [it] under the terms of' " the Franchise Agreements. (Mem. in Opp'n at 24-25.) Specifically, Plaintiffs argue that the fee request is "unreasonable" because (1) it is unnecessarily large, given the simple nature of the claims in this case, (2) Dominos is attempting to deny Plaintiffs the benefit of their bargains, and (3) there existed a legitimate dispute concerning whether Dominos could mandate PULSE. (*Id.* at 27-32.)Although the Franchise Agreements do require Dominos to exercise "reasonable judgment" in enforcing the terms thereof, the Court finds no merit to Plaintiffs' arguments.

First, in the Court's opinion, the allegedly unreason-

able manner in which Dominos litigated this case does not provide a proper basis to deny fees *in their entirety.*Rather, that alleged unreasonableness only requires the Court to reduce the amount of fees Dominos may recover (which the Court has done, *see infra* at 10-20). That conclusion is consistent with Section 22.2 of the Franchise Agreements, pursuant to which Dominos may only recover its "*reasonable* attorney's fees[,] court costs and expenses of litigation."

Second, the Court discerns no basis upon which to conclude that Dominos is attempting to deny Plaintiffs the benefit of their bargains. According to Plaintiffs, Dominos knows that they are unable to pay even a small portion of the fees it seeks. (Mem. in Opp'n at 30.) Hence, Plaintiffs believe that Dominos is using its fee request as an effort to drive Plaintiffs out of business, thereby depriving them of the benefit of the Franchise Agreements. Yet, Plaintiffs (who are long-time Dominos franchisees) willingly signed the Franchise Agreements, fully aware that by litigating with Dominos, they ran the risk that they might be required to reimburse the company for its litigation expenses. Having taken that gamble and lost, Plaintiffs cannot now claim penury to avoid the consequences of their decision. Moreover, to deny fees to Dominos would be to deny the company the benefit of *its* bargain, since the parties contractually agreed that Dominos could recover fees and costs in the event of litigation. Plaintiffs' purported inability to pay does not change that result.

*4 Third, the reasonableness of Plaintiffs' claims is simply irrelevant to Dominos' fee request. Section 22.2 of the Franchise Agreements does not state that Dominos may recover its fees only for "unreasonable" or "unfounded" claims. Rather, it entitles Dominos to recover fees and costs expended in *any*"action ... commenced ... to challenge [or] interpret ... [Dominos'] rights under" the Franchise Agreements. It is not unreasonable for Dominos to seek to enforce its bargained for, contractual rights.[FN6]

> FN6. The attorney-fee provision in the Franchise Agreements is extremely broad-so broad, in fact, that if read and applied literally, Dominos likely need not even demonstrate that it is a prevailing party in order to recover fees.

### D. The *Noerr-Pennington* doctrine is inapplicable

Plaintiffs next argue that the *Noerr-Pennington* doctrine bars Dominos' Motion. (Mem. in Opp'n at 32-34.) Derived from the Supreme Court cases *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the *Noerr-Pennington* doctrine generally shields from damages those who petition the government for redress, including those who file lawsuits. *E.g., Hinshaw v. Smith,* 436 F.3d 997, 1003 (8th Cir.2006); *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1080 n. 4 (8th Cir.1999). The doctrine is predicated on First Amendment concerns; because individuals and entities enjoy the right to petition the government for redress, the doctrine holds that no penalties may be imposed when that right is exercised by the commencement of an action, lest the exercise thereof be chilled in the future. *See, e.g., Schneck v. Saucon Valley Sch. Dist.,* 340 F.Supp.2d 558, 573 (E.D.Pa.2004).

An understanding of the concerns underpinning the *Noerr-Pennington* doctrine lays bare why it cannot assist Plaintiffs here. While it may be true that an award of fees to Dominos would, in some sense, be tantamount to penalizing Plaintiffs for seeking redress from the courts, such a penalty would not implicate Plaintiffs' First Amendment rights because they *contractually agreed to pay such a penalty in the event of litigation.*In other words, Plaintiffs bargained away any protection *Noerr-Pennington* may have offered them. Taken to its logical conclusion, Plaintiffs' argument would mean that attorney-fee provisions in contracts would in all cases be invalid under the First Amendment, which is clearly not the law. *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.,* 814 F.2d 358, 373 (7th Cir.1987) ("The proposition that the first amendment precludes the award of the costs of litigation as damages implies the startling result that fee-shifting rules are unconstitutional.... The exercise of rights may be costly, and the first amendment does not prevent ... requiring a person to pay the costs incurred in exercising a right."). Plaintiffs have cited no authority suggesting that *Noerr-Pennington* precludes a court from awarding fees in accordance with the terms of a valid contract, and the Court has found none.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 0:06-cv-01216-JMR-FLN   Document 399-2   Filed 02/04/09   Page 6 of 10

Slip Copy
Slip Copy, 2008 WL 4755834 (D.Minn.)
(Cite as: 2008 WL 4755834 (D.Minn.))

Page 5

**II. The Court will reduce the amount of fees and costs that Dominos seeks**

*5 Having concluded that Dominos is entitled to an award of fees and costs, the Court must next determine the appropriate amount to be awarded under the Franchise Agreements, which provide for an award of "reasonable attorney's fees" to Dominos. In order to calculate a "reasonable" fee, the Court will apply the lodestar method, which requires the Court to multiply the reasonable number of hours expended by a reasonable hourly rate for each attorney performing work in connection with this case. *City of Burlington v. Dague*, 505 U.S. 557, 559-60, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). The Court may then adjust the lodestar amount upward or downward based on "other considerations" to achieve a more reasonable fee under the circumstances. *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[FN7]

> FN7. Because the Court is sitting in diversity, it must apply state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The award of attorneys' fees is a substantive issue to which the Court must apply state law. *E.g., Bannister v. Bemis Co.*, Civ. No. 07-1662, 2008 WL 2002087, at *1 (D.Minn. May 6, 2008) (Kyle, J.), *appeal docketed*, No. 08-1634 (8th Cir. Mar. 21, 2008). Here, the remaining Plaintiffs are located in Minnesota, Maine, and Missouri, and hence the amount of fees to be awarded must be determined in accordance with the law of those states. *See Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674 (8th Cir.2008). Yet, courts in both Minnesota and Maine have endorsed the use of the lodestar method in setting a reasonable fee, *see Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 620 (Minn.2008); *Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884-85 (Me.1984), and Missouri courts set fees by analyzing factors similar to those used under the lodestar method. *Compare Higgins v. McElwee*, 680 S.W.2d 335, 344 (Mo.Ct.App.1984) (factors analyzed under Missouri law) with *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n. 3 (8th Cir.2007) (factors analyzed under lodestar method). Accordingly, the Court concludes that application of the lodestar method is appropriate here.

Dominos calculates the lodestar amount at slightly under $1.1 million for 2200 hours of work, and it also seeks approximately $200,000 in costs. Having carefully reviewed the voluminous records submitted by Dominos' counsel in support of its Motion, the Court determines that those fees and costs must be reduced.[FN8]

> FN8. The Court pauses to note that Dominos has made very little effort to justify the amount of fees and costs it seeks. It is axiomatic that a fee applicant "bears the burden of establishing entitlement to an award [of fees] and documenting the appropriate hours expended and hourly rates." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991) (quoting *Hensley*, 461 U.S. at 437). Here, Dominos has (inappropriately) opted to dump on the Court the voluminous time records of its counsel, with little explanation concerning the hourly rates charged and even less explanation of the propriety of the hours expended. As one court has noted, "[t]here is a practical limit to what a busy trial judge may be expected to do with the massive fee detail engendered by protracted litigation.... Miscellaneous fee data cannot just be dumped on the bench for the judge to sort through and resolve." *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir.1985); *accord FMC Corp. v. Varonos*, 892 F.2d 1308, 1316 (7th Cir.1990) ("the party seeking fees should not stack a pile of time sheets on the bench for the district court to analyze"). Although the Court could have denied the Motion in its entirety on this basis, *see Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 284 (4th Cir.2006) ("A party seeking attorneys' fees must present a request from which the correct amount may be computed with reasonable dispatch. The failure to do this justifies a rejection of the request."), or could have required further submissions from Dominos supporting its request, *see FMC Corp.*, 892 F.2d at 1316, it has opted instead to reduce

the amount of fees and costs sought. *See Morris*, 448 F.3d at 284 (district court need not provide applicant with opportunity to submit more detailed fee application, because doing so would encourage "satellite litigation over fees"); *see also Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

**A. Reasonable hourly rates**

The Court first determines that the hourly rates charged by some of Dominos' attorneys are excessive.

A reasonable hourly rate is the prevailing market rate in the *relevant legal community* for similar services provided by lawyers of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)."Generally, when determining a reasonable hourly rate, the relevant legal community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.2008); *accord Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir.2002). Here, Dominos seeks reimbursement for work performed, *inter alia*, by lawyers from the Washington, D.C. office of the law firm Latham & Watkins, many of whom charge rates substantially out of line with rates charged in the Twin Cities area. For example, an associate at Latham & Watkins with 5 years' experience, Alexander Maltas, charged $480 per hour, while Dominos' lead local counsel-Quentin Wittrock, a partner with the law firm Gray, Plant, Mooty, Mooty & Bennett who has over 20 years' experience, specializing in franchise disputes-billed no more than $425 per hour over the course of this case. In some instances Dominos seeks reimbursement for Latham & Watkins lawyers charging over $800 per hour, nearly double that charged by local counsel. (*See* Graziani Decl. at 12-13.) Dominos also seeks reimbursement for work performed by lawyers in the Chicago office of DLA Piper and the Dallas office of Haynes and Boone, often at well over $500 per hour. (*See id.* at 5, 10.)

Although parties may be reimbursed for work performed by out-of-town lawyers charging out-of-town rates, generally this is permitted only when in-town counsel with expertise in a particular area cannot be located. *See, e.g., Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir.1982); *Howard Johnson Int'l, Inc. v. Inn Dev., Inc.*, Civ. No. 07-1024, 2008 WL 2563463, at *1 (D.S.D. June 23, 2008). Dominos has made no attempt to justify the use of out-of-town counsel (with very high rates) to assist it in this matter. *See Avalon*, 689 F.2d at 140-41 (burden rests with party seeking fees to show why out-of-town counsel was necessary). Nor does the Court believe that these hourly rates are in line with those charged by lawyers of similar skill and experience in the Twin Cities area.

*6 In addition, the billing records submitted by Dominos indicate that more than 20 lawyers and paralegals have billed time in connection with this case, [FN9] but Dominos has not submitted sufficient evidence to justify the hourly rates charged by them. *See, e.g., Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the ... rates claimed."). Typically, such evidence would include affidavits from other lawyers opining on the reasonableness of the rates or citations to similar cases in which fees were awarded. *E.g., Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988) ("Evidence of [reasonable hourly] rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence."); *Dye v. Bellsouth Telecomms., Inc.*, 462 F.Supp.2d 845, 855 (W.D.Tenn.2006) (noting that fee applicant should submit "affidavits of other attorneys, case precedents, [or] fee studies" to justify hourly rates sought). Dominos has not submitted such evidence here. Nor has it proffered evidence concerning the background or qualifications of many of the attorneys who worked on this case. For instance, the Declaration of Dominos' in-house counsel, Joel Graziani, sets forth the experience and background of Michael Gray and Quentin Wittrock, two attorneys with the Gray Plant Mooty law firm. (*See* Graziani Decl. ¶¶ 8(A)-(B).) But Dominos seeks fees for work performed by at least six other lawyers (in addition to several paralegals) at that firm. While the Court can glean some general information about those attorneys and paralegals from the Gray Plant Mooty website, it cannot locate sufficient information to determine whether their hourly rates are reasonable.[FN10] The same is true of lawyers working for other law firms who expended time on Dominos' behalf-the dearth of information submitted leaves the Court unable to determine the reasonableness of their requested hourly rates.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

> FN9. Legal work performed by a paralegal generally is compensable as part of an attorney-fee award. *See* Missouri v. Jenkins, 491 U.S. 274, 284-89, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

> FN10. In fact, in some instances the Court cannot even discern whether the individual billing time is a paralegal or an attorney.

For all of these reasons, an hourly rate reduction is appropriate.[FN11]

> FN11. In reducing the hourly rates, the Court in no way suggests that the rates charged were senseless or irrational. As Judge Mary Beck Briscoe of the Tenth Circuit has noted, the phrase "reasonable hourly rate" would appear "to imply that, by definition, any other rate actually charged to a client is somehow unreasonable or unfair. That, of course, is not the case." Robinson v. City of Edmond, 160 F.3d 1275, 1288 n. 4 (10th Cir.1998) (Briscoe, J., concurring in part and dissenting in part). Private parties, like Dominos, may agree to whatever rates with their lawyers that they choose. *Id.* Those rates, however, must be circumscribed when the prevailing party seeks to shift its litigation expenses onto the its opponent. In other words, the "selection of counsel is generally within the sound discretion of the client; however, where the fee for that counsel is to be shifted to another party, that discretion must be carefully exercised." In re Valley Historic Ltd. P'ship, 307 B.R. 508, 517 (Bankr.E.D.Va.2003).

**B. Reasonable number of hours**

The Court next determines that the number of hours claimed by Dominos must be reduced.

In calculating the reasonable number of hours expended by a lawyer, the Court must exclude "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434. The burden rests with Dominos to demonstrate that the hours its counsel expended were reasonable. *Id.* at 437; H.J. Inc. v. Flygt Corp.., 925 F.2d 257, 260 (8th Cir.1991). In this case, there exist several reasons why the Court will reduce the hours claimed by Dominos' counsel.

First, many of the submitted time records lack sufficient detail to permit the Court to ascertain if the time expended was reasonably necessary, redundant, or excessive. The records are replete with vague entries such as "[g]ather information and respond to client's request," "[i]dentify and prepare documents," "appeal communications," "correspondence," "review memos," "review documents and issues," "review background materials," "maintenance of pleading documents for electronic clip," "document research," etc. It is appropriate to reduce the compensable number of hours on this basis. *See* Miller v. Woodharbor Molding & Millworks, Inc., 174 F.3d 948, 950 (8th Cir.1999) (noting that inadequate documentation may result in a reduced fee). Similarly, Dominos' counsel has heavily redacted the time sheets submitted with the Motion, and those redactions generally leave the Court in the dark as to the precise nature of the work performed. Courts routinely reduce fee requests where redactions leave it impossible to discern the appropriateness of counsel's work. *See, e.g.,* Strand v. Auto. Machinists Pension Trust, Civ. No. 06-1193, 2007 WL 2029068, at *6 (D.Or. July 11, 2007); Synagro Techs., Inc. v. GMP Haw., Inc., Civ. No. 04-509, 2007 WL 851271, at * 13 (D.Haw. Mar. 15, 2007); Okla. Natural Gas Co. v. Apache Corp., 355 F.Supp.2d 1246, 1258 (N.D.Okla.2004).[FN12]

> FN12. Although the time entries were redacted to protect attorney-client privileged material, the Court believes that they could have been redacted in such a fashion as to preserve their general subject matter. For example, instead of stating "review and analyze comments regarding [REDACTED]," an entry could have stated "review and analyze comments regarding summary judgment brief."*See* Signature Networks, Inc. v. Estefan, Civ. No. 03-4796, 2005 WL 1249522, at *8 (N.D.Cal. May 25, 2005) (reducing amount of fees sought where party redacted time entries and omitted "a general description of the subject matter" of items billed). In any event, Dominos could have submitted unredacted time records under seal for *in camera* review by the Court, but it failed to do so. *See* Chamberlain Mfg.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 0:06-cv-01216-JMR-FLN Document 399-2 Filed 02/04/09 Page 9 of 10

Slip Copy
Slip Copy, 2008 WL 4755834 (D.Minn.)
(Cite as: 2008 WL 4755834 (D.Minn.))

Page 8

*Corp. v. Maremont Corp.*, No. 92-C-356, 1995 WL 769782, at *7 (N.D.Ill.Dec. 29, 1995) (noting that party seeking fees had submitted unredacted version of attorney time records for *in camera* review).

*7 Second, there are several billing entries in the records submitted by Dominos' counsel that involve tasks for which Dominos cannot reasonably request compensation under the Franchise Agreements. For example, Dominos' counsel billed for time spent responding to inquiries from Dominos' auditors. Such time is tangential to this action and must be excluded. *See, e.g., Trustees of Univ. of Penn. v. Lexington Ins. Co.*, Civ. No. 84-1581, 1986 WL 2785, at *3 (E.D.Pa. Feb.27, 1986), *aff'd in part, rev'd in part on other grounds*, 815 F.2d 890 (3rd Cir.1987). Similarly, the time records include entries for matters such as "[a]nalyze issue regarding domain registrations" and "[a]nalyze tax returns and other financial documents for underreporting issues" that have no obvious connection to this case.

Third, the time records contain a bevy of entries for ministerial and/or secretarial tasks, such as making and sending copies, organizing files, preparing case binders, retrieving documents, and the like. Purely clerical or secretarial tasks are not compensable. *See, e.g., Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1222 (8th Cir.1997); *Gorman v. Easley*, Civ. No. 95-0475, 1999 WL 34808611, at *5 (W.D.Mo. Oct.28, 1999). Likewise, the Court will not reimburse Dominos for time spent reviewing simple documents, such as notices of appearance and similar items. "The court does not expect counsel to bill for reviewing every simple document." *Barnes v. Sec'y of Health & Human Servs.*, No. 90-1101V, 1999 WL 797468, at *4 (Fed.Cl. Sept. 17, 1999). Instead, counsel is expected to exercise "billing judgment," which in the Court's view does not include seeking reimbursement for *de minimis* tasks. *Hensley*, 461 U.S. at 437.

Fourth, as noted above, no fewer than twenty attorneys and paralegals have billed time in connection with this case. While the Court is cognizant that this action has been pending for almost three years and has involved extensive discovery, motion practice, and an appeal, it is nevertheless left with the impression that Dominos and its counsel have "over-lawyered" this case. Dominos has nowhere explained why it required the services of so many different lawyers. And, the involvement of so many "cooks in the kitchen" has resulted in a significant amount of redundancy and overlapping billing. As the *Gorman* court noted, "[i]t may be reasonable to expect a client to pay the cost of having several lawyers ..., and of course a client can elect to pay an unreasonable sum for his or her representation. However, the issue deserves scrutiny when the prevailing party asks the losing party to assume that extra financial burden." 1999 WL 34808611, at *5.

Moreover, in the overall context of this case, many of these attorneys had, at most, a *de minimis* impact on its outcome. More than 2200 hours have been billed by Dominos' lawyers in this action, but the records submitted in connection with the instant Motion include entries from some attorneys who billed only a handful of hours. (*See, e.g.*, Sheyka Decl. (noting *inter alia* 3.6 hours expended by Sonya Braunschweig); Mazero Decl. (noting *inter alia* 1.2 hours expended by Denise Stilz).) The Court does not believe that such time should be compensated. *See, e.g., Rodriguez ex rel. Kelly v. McLoughlin*, 84 F.Supp.2d 417, 424 (S.D.N.Y.1999) (excluding request for reimbursement for four attorneys who billed 1.0 hour, 1.0 hour, .5 hour, and .5 hour, respectively, because "it is unlikely that counsel could have made a meaningful contribution to the case in such a brief period of time"); *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 21 F.Supp.2d 1255, 1260 (D.Kan.1998) (declining to award fees for attorneys who billed less than forty hours on case, since their role in lawsuit could be "characterized as minimal"; "There is a difference between assistance of co-counsel which is merely comforting or helpful and that which is essential to proper representation."), *aff'd in part, rev'd in part on other grounds*, 205 F.3d 1219 (10th Cir.2000).

*8 Fifth, and finally, but perhaps most importantly, the Court concludes that the overall number of hours expended in this action was excessive. As Dominos concedes, this case, at its core, has always been a simple contract dispute concerning the terms of contracts (the Franchise Agreements) that both sides agree are unambiguous. (*See* Def. Mem. at 3 ("As this Court correctly recognized, both sides' claims ultimately turned on the plain language of the Franchise Agreements.").) The parties engaged in (often acrimonious) discovery for more than a year, and yet

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

at the end of the day that discovery turned out to be largely unnecessary to resolve the case, since the interpretation of an unambiguous contract is a legal question, not a factual one. Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir.2008). Dominos could have-and should have-short-circuited all of that discovery by simply moving for summary judgment at an early stage of the case, based on its (and Plaintiffs') assertion that the Franchise Agreements are unambiguous. Dominos, and its counsel, should not be rewarded for the failure to do so. While the Court recognizes that "it takes two to tango" and that Plaintiffs are also guilty of driving up Dominos' fees (and presumably their own), under the circumstances a substantial reduction is appropriate for the hundreds of thousands of dollars in fees devoted to ultimately unnecessary discovery.[FN13]

> FN13. The costs and other expenses sought by Dominos shall be reduced for this same reason-if the hours expended on discovery were largely unnecessary, then the costs incurred during that discovery were also largely unnecessary.

**C. Amount to be awarded**

Because Dominos has failed to justify the hourly rates it seeks, has failed to provide adequate fee documentation to the Court, and has sought significant fees (and costs) for "excessive, redundant, and unnecessary" work, the Court concludes that a substantial reduction of the amount it seeks for attorneys' fees and costs is warranted. Having taken into consideration all of the "other considerations" set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974),[FN14] and having carefully reviewed the time sheets submitted by Dominos' counsel, the Court concludes that an appropriate award, given the nature and length of the case and the required time and labor, is $450,000 for attorneys' fees and costs.

> FN14. In Easley v. Anheuser-Busch, Inc., the Eighth Circuit noted that it has "adopted the guidelines for determining attorneys' fees set forth in Johnson." 758 F.2d 251, 264 n. 25 (8th Cir.1985). Those factors include, among other things, the time and labor required, the novelty and difficulty of the questions presented, the amount involved, the results obtained, and the nature

and length of the case. Id.

**III. The fee judgment will be entered against all of the remaining Plaintiffs**

Plaintiffs argue that any fee judgment should be entered against only the corporate entities remaining in this case-in other words, not against Plaintiffs Bores and Huber. The Court rejects this argument because Bores and Huber admitted in their Reply to Dominos' Counterclaims that they have personally guaranteed their corporate franchisees' obligations. (See Plaintiffs' Reply (Doc. No. 9) ¶ 1 (admitting that Bores and Huber "have personally guaranteed the franchisees' performance of the [F]ranchise [A]greements").)

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Entry of Judgment and Determination of the Amount of Attorneys' Fees and Costs Pursuant to Section 22.2 of the Franchise Agreements (Doc. No. 336) is **GRANTED IN PART** and **DENIED IN PART** as follows: Defendant Domino's Pizza LLC shall recover of Plaintiffs Blue Earth Enterprises, Inc., Mid America Pizza LLC, Rising Dough, Inc., RJ Inc ., Kevin Bores, and Jennifer Huber, jointly and severally, the sum of $450,000 in attorneys' fees and costs.

**\*9 LET JUDGMENT BE ENTERED ACCORDINGLY.**

D.Minn.,2008.
Bores v. Domino's Pizza LLC
Slip Copy, 2008 WL 4755834 (D.Minn.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.