# Exhibit C

LEXSEE


Caution
As of: Feb 04, 2009

FTR CONSULTING GROUP, INC., derivatively on behalf of CEL-SCI
CORPORATION, Plaintiff, -against- ADVANTAGE FUND II LTD., GENESEE
INTERNATIONAL, INC., DONALD R. MORKEN, KOCH INVESTMENT
GROUP LIMITED, AND CEL-SCI CORPORATION, Defendants.

02 Civ. 8608 (RMB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2005 U.S. Dist. LEXIS 20013

September 13, 2005, Decided
September 14, 2005, Filed

**DISPOSITION:** [*1] Global Settlement approved and Fee Application granted in part and denied in part. Matter dismissed with prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consulting group filed an action on behalf of defendant corporation, alleging that defendants, a mutual fund, an investment group, and others, violated § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78p(b), when they realized short-swing profits on purchases and sales of the corporation's stock. The consulting group asked the court to approve a global settlement and for an award of attorneys' fees.

**OVERVIEW:** The parties engaged in settlement negotiations after the consulting group filed its lawsuit, and defendants agreed to pay the corporation $ 850,000 and the consulting group's attorneys $ 305,000 and $ 12,028 in expenses to settle the case. The consulting group asked the court to approve that settlement. The court applied the factors which the U.S. Court of Appeals for the Second Circuit outlined in City of Detroit v. Grinnell Corporation, noted that parties who had the right to object to the settlement had not objected, and found that the proposed settlement was fair and reasonable. However, the court found that records submitted by the consulting group's attorneys showed duplication of effort between two law firms, that work which was billed by partners could have been performed by associates, and that a substantial amount of counsel's work pertained to a claim the court dismissed. Moreover, it noted that the trend in the Second Circuit was to determine attorneys' fees using the percentage method, while relying on the lodestar method as a crosscheck, and it held that 25 percent of the amount of the global settlement amount, or $ 212,500, was a fair and reasonable fee.

**OUTCOME:** The court approved the global settlement and dismissed the consulting group's action with prejudice. It also awarded the consulting group $ 212,500 in attorneys' fees and $ 12,028 in expenses.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Appeals > Standards of Review > De Novo Review > General Overview*

Page 1

Case 0:06-cv-01216-JMR-FLN   Document 399-3   Filed 02/04/09   Page 3 of 8

2005 U.S. Dist. LEXIS 20013, *1
Fed. Sec. L. Rep. (CCH) P95,718

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Insider Trading > General Overview*

[HN1]Federal district courts have an independent role to review settlements for fairness and consistency with statutory purposes. The criteria include the factors enumerated initially by the U.S. Court of Appeals for the Second Circuit in City of Detroit v. Grinnell Corporation: (1) the risks of establishing liability; (2) the risks of proving damages; (3) the complexity, expense, and likely duration of the litigation; (4) the stage of proceeding and the amount of discovery completed; (5) the ability of the defendants to withstand a greater judgment; (6) the range of reasonableness in light of the maximum possible recovery and range of reasonableness in light of all the attendant risks of the litigation; and (7) the reaction of other shareholders to the settlement. In actions filed under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78p(b), courts also consider the congressional purpose to cause disgorgement of short-swing trading profits by corporate insiders in favor of the corporation of which they are fiduciaries, even when the corporation is unwilling to prosecute such a suit and a derivative plaintiff brings suit instead.

*Antitrust & Trade Law > Private Actions > Costs & Attorney Fees > Clayton Act*
*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Costs & Attorney Fees*
*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stockholders > Short Swing Trading*

[HN2]A stockholder who is successful in maintaining an action under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78p(b), is entitled to reimbursement for reasonable attorney's fees on the theory that the corporation which has received the benefit of the attorney's services should pay the reasonable value thereof. The party seeking attorney's fees bears the burden of establishing entitlement to an award.

*Civil Procedure > Settlements > Settlement Agreements > General Overview*
*Estate, Gift & Trust Law > Wills > Handwritten & Oral Wills > General Overview*

[HN3]The lack of objections to a settlement agreement may well evidence the fairness of the settlement, and an absence of objections carries considerable weight in the fairness determination.

*Antitrust & Trade Law > Private Actions > Costs & Attorney Fees > Clayton Act*
*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Directors, Officers & Principal Stockholders > Short Swing Trading*
*Securities Law > U.S. Securities & Exchange Commission > Transaction Fees*

[HN4]Courts assessing attorneys' fee applications in actions brought under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78p(b), commonly employ the same criteria employed in common fund actions, in which attorneys are entitled to a reasonable fee, set by the court, to be taken from the fund. Under the lodestar method, a federal district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. The lodestar may be increased by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys. Under the percentage method, the court sets some percentage of the recovery as a fee, but looks to the same less objective factors that are used to determine the multiplier for the lodestar.

*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > General Overview*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*

[HN5]The trend in the United States Court of Appeals for the Second Circuit is toward using the percentage method to determine attorneys' fees in common fund actions. The lodestar remains useful as a baseline even if the percentage method is eventually chosen, although where the lodestar is used as a mere crosscheck, the hours documented by counsel need not be exhaustively scrutinized. No matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations.

**COUNSEL:** For FTR Consulting, Inc., derivatively on

Case 0:06-cv-01216-JMR-FLN   Document 399-3   Filed 02/04/09   Page 4 of 8

2005 U.S. Dist. LEXIS 20013, *1
Fed. Sec. L. Rep. (CCH) P95,718

behalf of CEL-SCI Corporation, Plaintiff: Glenn F. Ostrager, Ostrager, Chong, Flaherty & Broitman, P.C., New York, NY; Paul D. Wexler, Bragar, Wexler, Eagel & Morgenstern, P.C.., New York, NY.

For Advantage Fund II LTD., Genesee International, Inc., Donald R. Morken, Defendants: Mark J. Hyland, Seward & Kissel, L.L.P., New York, NY; Catherine E. Palmer, Latham & Watkins LLP, New York, NY.

For Mooring Capital Fund, L.L.C., John M. Jacquemin, Defendants: Michelle R. Parker, Hunton & Wiliams, New York, NY.

For CEL-SCI Corporation, Defendant: Catherine E. Palmer, Latham & Watkins LLP, New York, NY; Mark Joseph Hyland, Seward & Kissel LLP, New York, NY.

For Koch Investment Group Limited, Defendant: Alexandra A. E. Shapiro, Catherine E. Palmer, Daiske Yoshida, Latham & Watkins LLP, New York, NY; Mark Joseph Hyland, Seward & Kissel LLP, New York, NY.

JUDGES: RICHARD M. BERMAN, U.S.D.J.

OPINION BY: RICHARD M. BERMAN

OPINION

*DECISION AND ORDER*

I. Introduction

FTR Consulting Group, Inc. ("Plaintiff") brought [*2] this action (derivatively) on behalf of defendant Cel-Sci Corporation ("Cel-Sci" or "Company") against Advantage Fund II Ltd. ("Advantage"), Genesee International, Inc., investment manager for Advantage ("Genesee"), Donald R. Morken, the President of Genesee ("Morken"), Koch Investment Group Limited ("Koch"), Mooring Capital Fund, LLC ("Mooring"), and John M. Jacquemin, director and founder of Mooring and a Cel-Sci director ("Jacquemin") (collectively, "Defendants"), alleging that Defendants violated Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p *et seq.*, because they realized "short-swing" profits on purchases and sales of Cel-Sci stock within a six-month period during which they collectively owned more than 10% of Cel-Sci's common stock. (*See* Amended Complaint, dated Sept. 22, 2003.)

On or about July 1, 2005, Plaintiff moved for final approval of: (1) proposed settlements dated January 16, 2004 ("2004 Settlement") and June 30, 2005 ("2005 Settlement") providing for payment of $ 850,000 to Cel-Sci (together, "Global Settlement"), and (2) Plaintiff's counsel's fees in the amount of $ 305,000 along with $ 12,028 [*3] in expenses ("Fee Application"). (*See* Paul D. Wexler's Letter to the Court, dated July 1, 2005 ("Wexler Letter").) No objections to the Global Settlement or the Fee Application have been filed.

**For the reasons set forth below, the Global Settlement is approved and the Fee Application is granted in part and denied in part.**

II. Background

On September 16, 2003, the Court denied Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, holding that "the Court cannot say that Defendants have established that Plaintiff can prove no set of facts to support its claims that: (i) Defendants acted as a group for the purposes of Section 16(b), . . . and (ii) Defendants engaged in prohibited 'short-swing' transactions . . . ." (Order, dated Sept. 16, 2003 ("Motion to Dismiss Opinion"), at 2.) Pursuant to the 2004 Settlement, Mooring and Jacquemin settled with Plaintiff for $ 250,000 and were dismissed from the case with prejudice pursuant to a Stipulation of Settlement and Order, dated January 16, 2004. The Court deferred final approval of the 2004 Settlement until all claims against the remaining Defendants were resolved. (2004 Settlement [*4] P6.)

Pursuant to decisions dated March 8, 2005 and April 6, 2005, the Court granted summary judgment dismissing claims relating to Cel-Sci "reset warrants" ("Reset Warrant Claims") and denied summary judgment as to claims relating to Defendants' Exchange Agreement with Cel-Sci, dated August 15, 2001 ("Exchange Agreement Claims"). (*See* Order, dated April 1, 2005, at 4-5 ("factual issues remain warranting a trial, including, among other things: (1) whether Defendants entered into the Exchange Agreement voluntarily; and (2) whether the Exchange Agreement and subsequent conversion of Defendants' preferred stock 'presented the potential for speculative abuse of inside information.'").)

In June 2005, Plaintiff, Cel-Sci, Advantage, Genesee, Morken, and Koch engaged in settlement negotiations before Magistrate Judge Theodore H. Katz, culminating

Case 0:06-cv-01216-JMR-FLN   Document 399-3   Filed 02/04/09   Page 5 of 8

2005 U.S. Dist. LEXIS 20013, *4
Fed. Sec. L. Rep. (CCH) P95,718

in the execution of the (proposed) Settlement Agreement and Releases, dated June 30, 2005 ("2005 Settlement"), which provided that: (1) the entire action would be dismissed in exchange for Defendants' payment of an additional $ 600,000 to Cel-Sci (raising the Global Settlement value to $ 850,000); and (2) Plaintiff's counsel's Fee Application [*5] was "not to exceed $ 317,028." (*See* 2005 Settlement PP2-3.)

By order, dated July 26, 2005, the Court preliminarily approved the 2005 Settlement ("Preliminary Approval Order"), ordered that notice of both the 2004 and 2005 Settlements (*i.e.*, the Global Settlement) be published on Cel-Sci's website ("Notice"), and scheduled a hearing for September 7, 2005 regarding the motion for final approval of the Global Settlement and the Fee Application ("Fairness Hearing"). On August 19, 2005 and September 6-7, 2005, Plaintiff filed supplemental papers in support of the Global Settlement and Fee Application. (*See* Plaintiff's Memorandum of Law in Support of Motion to Approve the Settlement and Award of Attorney's Fees and Expenses, dated Aug. 19, 2005 ("Pl. Mem.").)

Although upwards of 15,000 Cel-Sci security-owners had standing to object to the Global Settlement and/or the Fee Application (Affidavit of Geert Kersten, dated Sept. 6, 2005, P3), no objections were filed (Supplemental Declaration of Paul D. Wexler, dated September 6, 2005 ("Wexler Supp. Decl."), P2) and no objectors appeared at the September 7, 2005 Fairness Hearing. On September 12, 2005, Plaintiff's counsel submitted [*6] to the Court, *in camera*, written time records supporting their Fee Application.

Plaintiff estimates the value of the remaining Exchange Agreement Claims at approximately $ 545,000 (Pl. Mem. at 3, 10), and estimates the value on appeal of the dismissed Reset Warrant Claims at "no more than $ 300,000" (Wexler Supp. Decl. P3).[1]

> 1  It is unclear whether these estimates include the value of the claims against Mooring and Jacquemin that were settled pursuant to the 2004 Settlement.

### III. Legal Standard

[HN1]District courts "have an independent role to review settlements for fairness and consistency with statutory purposes." *Levy ex rel. Mktg. Servs. Group, Inc. v. GE Capital Corp.*, 2001 U.S. Dist. LEXIS 13099, No. 99 Civ. 10560, 2001 WL 987873, at *5 (S.D.N.Y. Aug. 30, 2001). The criteria include the following factors enumerated initially in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) risks of establishing liability; (2) risks of proving damages; (3) [*7] complexity, expense and likely duration of the litigation; (4) stage of proceeding and the amount of discovery completed; (5) ability of defendants to withstand a greater judgment; (6) range of reasonableness in light of the maximum possible recovery and range of reasonableness in light of all the attendant risks of the litigation; and (7) reaction of other shareholders to the settlement.

*Levy*, 2001 U.S. Dist. LEXIS 13099, 2001 WL 987873, at *5 (applying *Grinnell* factors to § 16(b) settlement); *see* Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide*, § 9.02[7][a] (2d ed. 2004) (*"Romeo"*).[2] Courts also consider "the congressional purpose to cause disgorgement of short-swing trading profits by corporate insiders in favor of the corporation of which they are fiduciaries, even when the corporation is unwilling to prosecute such a suit and a derivative plaintiff brings suit instead." *Id.*

> 2  The *Grinnell* Court also considered "the risks of maintaining the class action through the trial," *Grinnell*, 495 F.2d at 463, which is not a factor in this § 16(b) action.

[*8] [HN2]"[A] stockholder who is successful in maintaining [a Section 16(b)] action is entitled to reimbursement for reasonable attorney's fees on the theory that the corporation which has received the benefit of the attorney's services should pay the reasonable value thereof." *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241 (2d Cir. 1943); *accord, e.g., Lewis v. L. B. Nelson Corp.*, 1980 U.S. Dist. LEXIS 12214, No. 79 Civ. 3708, 1980 WL 1419, at *2-3 (S.D.N.Y. June 25, 1980). The party seeking attorneys' fees bears the "burden of 'establishing entitlement to an award . . . .'" *Savoie v. Merchants Bank*, 166 F.3d 456, 463 (2d Cir. 1999) (citation omitted).

### IV. Analysis

Case 0:06-cv-01216-JMR-FLN   Document 399-3   Filed 02/04/09   Page 6 of 8

2005 U.S. Dist. LEXIS 20013, *8
Fed. Sec. L. Rep. (CCH) P95,718

### A. The Global Settlement Should Be Approved

The Court has no reason to question that the Global Settlement was the product of arm's-length negotiations between experienced counsel. *See New York v. Nintendo of America, Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991) (deeming settlement fair because it was reached "only after spirited arms-length negotiations by the parties"). The Global Settlement thus "enjoy[s] a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), [*9] aff'd sub nom *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The *Grinnell* factors enumerated above also favor approval of the Global Settlement. The first and second *Grinnell* factors -- i.e., the risks of establishing liability and damages -- favor settlement. Plaintiff recognizes that the Court "dismissed the major claim in the case," and that Plaintiff faces the possibility of "winning at trial and then perhaps losing" on appeal. (Pl. Mem. at 10.)

The third *Grinnell* factor -- the "complexity, expense and likely duration of the litigation" -- favors the Global Settlement because significant additional time, effort, and expense would be incurred were the case to go forward to trial and possibly an appeal (*see* Pl. Mem. at 7). *See, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003) (describing potential for "enormous expense" in proceeding to trial), aff'd sub nom *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

The fourth *Grinnell* factor -- the "stage of the proceeding and the amount of discovery completed" -- weighs in favor of approving [*10] the Global Settlement because the investigation, discovery, and motion practice conducted to date provide Plaintiff with "sufficient information to make an informed judgment on the reasonableness of the settlement proposal." *Diamond v. Fogelman*, 1992 U.S. Dist. LEXIS 9734, No. CV-90-0900, 1992 WL 167271, at *4 (E.D.N.Y. June 26, 1992). [3]

> 3  The fifth factor -- i.e., the ability of defendants to withstand a greater judgment -- does not appear to be relevant. (*See* Pl. Mem. at 10.)

The Global Settlement is also strongly supported by the sixth *Grinnell* factor -- the "range of reasonableness in light of the maximum possible recovery and range of reasonableness in light of all the attendant risks of the litigation." Plaintiff estimates the values of the remaining claims and the dismissed claims (on appeal) at no more than $ 545,000 and $ 300,000, respectively -- less than the $ 850,000 Global Settlement fund. (*See* page 4, *supra*.) Although it is difficult accurately to assess the value of Plaintiff's claims, [*11] the Global Settlement appears reasonable in light of Plaintiff's best possible recovery and the risks of litigation going forward. *See Romeo* § 9.02[7][b] (surveying settlements as percentages of "amounts claimed" in other approved § 16(b) settlements).

The seventh *Grinnell* factor -- the "reaction of other shareholders to the settlement" -- strongly favors approval as no objections were filed. *See In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) [HN3]("the lack of objections may well evidence the fairness of the Settlement"); *Berman v. Entm't Mktg., Inc.*, 901 F. Supp. 113, 117 (E.D.N.Y. 1995) ("An absence of . . . objections carries considerable weight in the fairness determination.").

Thus, taking into account the *Grinnell* factors, the Court finds the Global Settlement to be fair, reasonable, and adequate to the Class.

### B. Fee Application

Plaintiff's counsel (the law firms of Ostrager Chong Flaherty & Broitman P.C. and Bragar Wexler Eagel & Morgenstern, P.C.) request fees totaling $ 305,000 along with $ 12,028 in expenses, i.e., nearly 36% of the $ 850,000 Global Settlement fund (but less [*12] than counsel's claimed lodestar of $ 354,508.75). (*See* Declaration of Glenn Ostrager, dated Aug. 19, 2005 ("Ostrager Decl."), P2; Declaration of Paul Wexler, dated Aug. 18, 2005 ("Wexler Decl."), P2.) Plaintiff argues that the Fee Application should be granted because, among other reasons: "courts in this Circuit have routinely awarded fees . . . in common fund cases . . . ranging from a third of the recovery to over fifty percent" (Pl. Mem. at 15-18); "the fee [was] agreed upon with the Company" (*id.* at 18); "plaintiff was single-handedly responsible for discovering the facts that led to the case" and "absent plaintiff's insistence on pursuing this matter, there would have been no lawsuit and no recovery" (*id.*); "plaintiff filed the case and litigated it . . . at substantial economic risk, virtually through the eve of trial against excellent defendants' counsel" (*id.*); "the policy to award legal fees is especially strong in § 16(b) cases" (*id.* at 19);

Case 0:06-cv-01216-JMR-FLN   Document 399-3   Filed 02/04/09   Page 7 of 8

2005 U.S. Dist. LEXIS 20013, *12
Fed. Sec. L. Rep. (CCH) P95,718

"plaintiff's [counsel's] lodestar substantially exceeds the fees sought" (*id.* at 20); and "as neither Cel-Sci nor its shareholders have suffered a nickel in actual damages, the fees paid to plaintiff's counsel [*13] will not in any way reduce compensation to an injured party" (*id.* at 21).

Cel-Sci does not object to the Fee Application, the other Defendants take no position (Wexler Letter at 6), and no objections have been filed.

[HN4]Courts assessing § 16(b) fee applications commonly employ the same criteria employed in "common fund" actions, *Klein ex rel. SICOR, Inc. v. Salvi*, 2004 U.S. Dist. LEXIS 4844, No. 02 Civ. 1862, 2004 WL 596109, at *4-7 (S.D.N.Y. March 30, 2004), *aff'd*, 115 Fed. Appx. 515 (2d Cir. Dec. 17, 2004); *Romeo*, § 9.02[9], in which attorneys are entitled to "a reasonable fee--set by the court--to be taken from the fund," *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* The lodestar may be increased "by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (citations omitted). Under the percentage method, the "court sets some [*14] percentage of the recovery as a fee," but "look[s] to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.*

[HN5]"The trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (internal quotations and citations omitted). "The lodestar remains useful as a baseline even if the percentage method is eventually chosen," although where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. "No matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Id.* (citation omitted).

Employing the percentage method of fixing attorney compensation (while relying upon the lodestar method as a "cross-check"), [*15] the Court finds, for the reasons that follow, that 25% of the Global Settlement amount, or $ 212,500, is a fair and reasonable fee under *Goldberger* and related cases.

The first *Goldberger* factor relates to "the time and labor expended by counsel." Because the Court is awarding fees on a percentage basis, the Court has not "exhaustively scrutinized" counsel's hourly submissions or their efficiency at performing specific tasks. *Goldberger*, 209 F.3d at 49-50 (district courts need not "undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation" (citation omitted)). (*But see* pages 10-11, *infra*.)

As to the second *Goldberger* factor -- "the magnitude and complexities of the litigation" -- the Court finds that the case was neither unusually large nor unusually complex. *See, e.g., In re Bristol-Myers Squibb Secs. Litig.*, 361 F. Supp. 2d 229, 234 (S.D.N.Y. 2005) ("Among securities class actions, this case as a whole was neither unique nor complex."). Nor does counsel benefit from the third *Goldberger* factor -- the risk of the litigation -- as this case was not unusually risky to pursue. Although the [*16] Court granted summary judgment against Plaintiff as to the key Reset Warrant Claims, "it is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55; *accord Bristol-Myers*, 361 F. Supp. 2d at 234. Similarly, the fourth *Goldberger* factor -- *i.e.*, "the quality of representation" -- does not support an exceptional fee, although the Court in no way seeks to disparage the attorneys in this case.

With respect to the fifth *Goldberger* factor -- *i.e.*, "the requested fee in relation to the settlement" -- the Court finds that a 25% fee is reasonable under the circumstances of this case which include, among other factors, modest risk, and is commensurate with fees granted in other § 16(b) cases. *See Romeo* § 9.02[9][c] (surveying fee percentages in other § 16(b) cases); *see also Klein*, 2004 U.S. Dist. LEXIS 4844, 2004 WL 596109, at *9-11 (awarding the same plaintiff's counsel -- Bragar Wexler and Ostrager Chong -- fees amounting to 8% of $ 10,750,000 settlement in § 16(b) action). This result balances the "overarching concern for moderation," *Goldberger*, 209 F.3d at 53, with [*17] the public policy encouraging the enforcement of § 16(b), *see Klein*, 2004 U.S. Dist. LEXIS 4844, 2004 WL 596109, at *10-11.

The reasonableness of a 25% award, or $ 212,500, is

Case 0:06-cv-01216-JMR-FLN  Document 399-3  Filed 02/04/09  Page 8 of 8

2005 U.S. Dist. LEXIS 20013, *17
Fed. Sec. L. Rep. (CCH) P95,718

supported by a lodestar analysis "cross-check." *Goldberger,* 209 F.3d at 50. Without "exhaustively scrutinizing" counsel's time records, the Court observes that 95.41% of counsel's lodestar reflects the work of two senior partners -- Glenn F. Ostrager, billing at $ 525 per hour (Ostrager Decl. P2), and Paul D. Wexler, billing virtually all his time at $ 550 per hour (Wexler Decl. P2). It would appear that a substantial amount of this work could have been performed by associates or paralegals at significantly lower rates. *See Klein;* 2004 U.S. Dist. LEXIS 4844, 2004 WL 596109, at *9 (lowering the same counsel's lodestar in another case because of, *inter alia,* "inadequate delegation of work to younger lawyers of tasks commonly performed by younger lawyers at lower rates, and too much work being performed at relatively higher hourly rates than should have been the case," as "senior lawyers, Paul D. Wexler and Glenn F. Ostrager performed the great bulk of the work . . . at $ 550 and $ 525 per hour respectively"); [*18] *see also In re Dreyfus Aggressive Growth Mut. Fund Litig.,* 2001 U.S. Dist. LEXIS 8418, No. 98 CV 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) ("senior partners performed virtually all of the work"). The Court's review of counsel's time records also reveals duplication of effort between the two plaintiff law firms. *See Klein,* 2004 U.S. Dist. LEXIS 4844, 2004 WL 596109, at *9 (criticizing duplication of effort by lead counsel Glenn Ostrager and Paul Wexler). In addition, a substantial amount of counsel's lodestar relates to work on the (unsuccessful) Reset Warrant Claims, which involved legal issues largely absent from the surviving Exchange Agreement Claims. (*See* Plaintiff's Letter to the Court, dated March 23, 2005, at 3 (Plaintiff's "Exchange Agreement claim . . . is distinct and independent of the analysis of the [Reset] Warrants.").) Thus, the portion of the lodestar reflecting legal research and briefing on the Reset Warrant Claims could be reduced. *See, e.g., Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir. 1996).

Finally, the Court finds that Plaintiff's counsel's request for the reimbursement of $ 12,028 in expenses is reasonable.

[*19]

For the foregoing reasons, the Global Settlement is approved and the Fee Application is granted in part and denied in part. This matter is hereby dismissed with prejudice and the parties are directed to carry out the terms of the Global Settlement. The Court respectfully requests that the Clerk close this case, although the Court retains jurisdiction for purposes of enforcing the terms of the Global Settlement.

Dated: New York, New York

September 13, 2005

**RICHARD M. BERMAN, U.S.D.J.**