# Exhibit E

Westlaw.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
**(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))**

**H**Only the Westlaw citation is currently available.
District Court of Minnesota.
Monique R. HAWKINS; Terry Hohn and Delores Hohn, husband and wife; Anthony Fallon and Maureen Fallon, husband and wife; Robert Blume and Rochelle Blume, husband and wife; Doris Jones; Bonnie Baker; RaNaye Sikorski; Colleen Norberg; Steve Cochrane; Timothy Werner; and Louis Groenheim and Marilyn Groenheim, husband and wife; on behalf of themselves and all others similarly situated, Plaintiff,
v.
THORP LOAN AND THRIFT COMPANY, a/k/a Thorp Credit and Finance Company, a/k/a ITT Financial Services; Thorp Credit and Thrift Company, a/k/a ITT Financial Services, a Minnesota corporation; ITT Corporation f/k/a International Telephone and Telegraph Corporation, a Delaware corporation; ITT Consumer Services Corporation, a Delaware corporation, ITT Consumer Financial Corporation, a Delaware corporation; ITT Life Insurance Corporation, a Wisconsin corporation; ITT Lyndon Life Insurance Company, a Missouri corporation; American Bankers Life Assurance Company of Florida, a Florida corporation; and ITT Lyndon Property Insuance, a Missouri corporation. Defendants.
**No. 85-6074.**

Feb. 21, 1992.

Mansfield & Tanick, Reinhardt & Anderson, Richard Nadler & Associates and the Legal Aid Soc. of Minneapolis by Mark Reinhardt, of Reinhardt & Anderson, for plaintiff.
Lindquist & Vennum, Dorsey & Whitney, Mackall Crounse & Moore, and Faegre & Benson by Richard Ihrig, of Lindquist & Vennum for defendants.

ORDER APPROVING SETTLEMENT OF CLASS ACTION AND SETTING OF ATTORNEYS' FEES AND EXPENSES OF PLAINTIFFS' CLASS COUNSEL

GARY LARSON, District Judge.
*1 Plaintiffs' class counsel requested that if this Court elects to award attorney's fees in excess of what was previously awarded by Judge Lebedoff that that amount be given to a charitable entity.

Now, therefore, after considering the proposed Settlement Agreement, all the memoranda of the parties, the arguments of counsel, and all the files, records and proceedings herein, the Court makes the following findings of fact and conclusions of law:

*Findings of Fact*

1. That on March 8, 1985, Monique Hawkins, on behalf of herself and all other persons similarly situated, commenced a class action in Hennepin County District Court against Thorp Credit and Thrift Company and American Bankers Life Assurance company of Florida, claiming that the sale to plaintiff class of SPT-5 life insurance and membership in the ITT Consumer Thrift Club was in violation of Minnesota and federal law.

2. That in June, 1989, the Minnesota Supreme Court reversed an award of partial summary judgment in favor of Defendants and remanded the case to the District Court for further proceedings.

3. That on December 5, 1989, the Hennepin County District Court certified the above matter as a class action and the case was continued for further discovery and presentation of damages.

4. That the parties to the above-captioned litigation entered into a Settlement Agreement dated June 12, 1991 (Settlement Agreement) providing for a settlement of the litigation on the terms and conditions set forth therein, subject to the approval of this Court.

5. That by Order dated July 10, 1991, this Court certified five classes for settlement purposes and directed that the Joint Notice of State Court Hearing on Proposed Settlement and Federal Court Hearing on Proposed Dismissal should be provided to class members by mail and by publication as required by the Settlement Agreement.

6. That the Joint Notice of State Court Hearing on Proposed Settlement and Federal Court Hearing on

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
**(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))**

Proposed Dismissal was mailed and published as set forth in paragraph 16 of the Settlement Agreement. The notice was mailed to 246,306 persons. Also, the notice was published one time in each of the 28 daily newspapers published in the State of Minnesota.

**\*2** 7. That the class member notice stated that the plaintiffs' attorneys could request up to 20% of the total settlement fund as attorney fees.

8. That plaintiffs' attorneys have requested 16.5% of the total settlement fund as attorney fees.

9. That as a result of said mailing and publication, a total of 14 objections to the settlement were received by the Court. Some objections raised issues not involved in the litigation and others raised concerns, such as the consequences of a class member's prior bankruptcy, which are explicitly addressed by the Settlement Agreement. Other objections raised concerns about the use of scrip certificates to settle the so-called "insurance packing" claims and the amount of attorneys' fees to be awarded to plaintiffs' class counsel.

10. That plaintiffs' counsel on behalf of the plaintiffs have negotiated a settlement providing a total settlement fund of $47,750,000.00 for five class. This settlement included $17,750,000 in cash for class 1 members and $30,000,000 in script for classes 2-5. The script can be used for the future purchase of products from ITT.

11. That plaintiffs' counsel are asking this Court for an award of fees and reimbursement of litigation expenses from the cash portion of the fund.

12. That since this case resulted in the creation of a common fund on behalf of the plaintiff class, plaintiff's counsel request attorneys' fees under the "common fund" doctrine.

13. That plaintiffs' counsel have negotiated a substantial common benefit upon the plaintiff class by zealously pursuing and funding this litigation.

14. That the amount recovered is directly attributable to plaintiffs' counsel's continued effort, ability, tenacity, and devotion to this case for the past eight years.

15. That class members were served well by able attorneys who, at great cost and difficulty, overcame several obstacles throughout the litigation and obtained a substantial recovery for their clients.

16. That other law firms, experienced in the class action arena, refused the opportunity to become co-counsel in this case because of the novel claims presented in an area not often litigated by the traditional class action bar and because of the presence of a formidable and well funded adversary.

17. That several members of the class action bar feel that the effort and outcome in this particular case is deserving of a award of attorney's fees as requested.

18. That public policy is served by encouraging the pursuit of small but important consumer claims by effecting the enforcement of regulatory statutes.

19. That the most efficient procedure to present the large number of relatively small individual consumer claims is by the class action vehicle.

20. That the Supreme Court decision in this case has been recognized by consumer groups as a landmark decision for Consumer rights. The injunction included as part of the settlement has been viewed as a model consumer credit injunction.

**\*3** 21. That the Court finds that an award of attorneys' fees of 25% from the cash portion of the fund of $17.75 million is fair and reasonable. In making this determination, the Court has considered among other things, the value of the entire common fund, the results achieved, difficulty and complexity of the case, time and effort expended, and risk taken by class counsel and any other benefit of the settlement. In particular, the Court has noted the following:

a. Because most individual members of classes 2, 3, 4 or 5 are also a member of class 1, the payment of attorneys' fees from the cash settlement to be distributed to class 1 plaintiffs, fairly represents a contribution by all classes.

b. The class 1 recovery of over 65% of the SPT-5 premiums is well above the average 5% to 35% recovery in other class actions.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
**(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))**

c. The ultimate effect of the disbursement of script to classes 2-5 will be the provision of low cost, or in many cases, free insurance to class members who would otherwise pay for such insurance.

d. The settlement provides monetary benefits to the class and society in three ways:

i. Savings to the class and society as a whole of premium amounts and interest not spent on the purchasing and financing of SPT-5 policies. This estimated premium savings alone amounts to over $14 million dollars.

ii. $17.75 million (less fees and costs) in cash reimbursement to the SPT-5 policy purchasers;

iii. $30 million in scrip to the remaining class members.

e. In many class action settlements, any unclaimed amount is returned to the defendants, making the final settlement's actual value less than the stated amount which results in a benefit to the defendants. However, the settlement in this litigation provides that any undelivered or uncashed checks will be placed in a *Cy-Pres* fund which will be used to fund programs (scholarship and legal aid funding) aimed at further aiding the plaintiff class. This arrangement effectively assures that the plaintiff class will receive the benefit of the full settlement.

f. The injunction included in the settlement agreement provides benefits to the plaintiff class and society as a whole by delineating selling methods, specific transactions, and behavior that will not be allowed in further loan transactions by defendants. These benefits granted by the injunctive relief, although of great value, cannot be valued at a specific dollar amount.

g. The case has been before this Court for eight years. Plaintiffs' attorneys have spent nearly 15,000 hours in this litigation; this time represents approximately 45 court appearances, preparation of about 80 memoranda, conduction or more than 50 depositions in several states and review of 200,000 to 300,000 documents.

h. The case involved issues of first impression not only for this state but also the rest of the country. Through plaintiffs' counsel's efforts new law was created in Minnesota. The Supreme Court's ruling on the SPT-5 benefits class members and other Minnesota consumers.

*4 i. Plaintiffs' counsel assumed great risk by agreed to represent the class members for the past eight years in a case involving such novel issues. They assumed risk that several other firms specifically declined. Plaintiffs' counsel were forced to decline other opportunities due to committed time and resources in this case. In addition to the eight years of uncompensated work, they have incurred costs of $118,463.09, none of which has been reimbursed.

22. That the total of plaintiff attorneys' fees at a reasonable hourly rate of $150.00 per hour for 14,487 hours, rounded to 15,000 hours, is $2,250,000.00.

23. That the benchmark for the award of percentage fees in common fund cases is 20-30%.

*Conclusions of law*

1. That the settlement of this action provided for in the Settlement Agreement is fair, reasonable and adequate.

2. That parties to a lawsuit may negotiate a settlement where defendants make a lump-sum payment including both monetary relief to the plaintiffs and attorneys' fees if, and to the extent, attorneys' fees are awarded by the Court.

3. That the settlement of this case resulted in the creation of a common fund on behalf of plaintiff class, and plaintiffs' counsel's request for attorneys' fees under the "common fund" doctrine is therefore appropriate.

4. That the percentage of the recovery method is equitable and appropriate in this case.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That the objections to the settlement submitted by class members are overruled.

2. That pursuant to Rule 23.05 of the Minnesota

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))

Rules of Civil Procedure, the settlement of this action as provided for in the Settlement Agreement is approved.

3. That 25% of the cash portion of the settlement for a total of $4,437,500 as attorneys' fees be paid to the firms of Reinhardt & Anderson, Mansfield and Tanick and Richard G. Nadler & Associates, payable from the cash portion of the settlement fund. As directed by the Court of Appeals, the total amount of the common fund was considered in the determination of the attorney fee award as well as how it may impact the various classes.

4. That $118,463.09 is hereby awarded to plaintiffs' counsel for expenses.

5. That Plaintiffs' counsel shall be entitled to, and shall receive, interest on the attorney's fees and expenses in accord with paragraph 19 of the Settlement Agreement, as amended, until the date of payment pursuant to paragraph 20 of the Settlement Agreement.

6. That the amount of the cash portion of the settlement fund remaining after the deduction of the attorneys' fees and expenses pursuant to paragraph 3 and 4 of this Order and after the deduction of all other costs and expenses of administration as provided in the Settlement Agreement, shall be distributed in accordance with the terms and procedures set forth in the Settlement Agreement.

7. That when this Order becomes final and non-appealable, this Court, upon ex parte application by plaintiffs' class counsel, will sign, and thereby enter, the Stipulated Injunction attached to the Settlement Agreement as Exhibit J. When the injunction is entered, plaintiffs' class counsel shall immediately notify defense counsel of such fact.

*5 8. That this Order shall not become effective and shall not be filed until the stay of the January 3, 1992 Order in Hohn, et al v. Thorp, et al, United States District Court File No. 4-87-808 is lifted.

MEMORANDUM

The present matter comes before the court for final approval of the settlement and pursuant to the Minne-

sota Court of Appeals' opinion dated December 31, 1991 in which the court remanded this case. The Court of Appeals stated that the trial court should consider the total amount of the common fund when determining the attorney fee award and how it may impact on the various classes. After considering the total amount of the common fund amassed by class counsel, its potential impact on various classes as well as several other factors, this court finds an award of attorneys' fees in the amount $4,437,500, 25% of the cash portion of the settlement fund ($17,750,000), to be fair, reasonable and adequate.

Although an indepth look back at the history of the common fund fee doctrine and the rationale entitling counsel to a percentage of the common fund would be helpful, this Court, to avoid the lengthy repetition of a comprehensive review prepared by the 11th circuit in *Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th Cir.1991)*, adopts their historical analysis of the method of computing a common fund fee award. The Court in *Camden* concluded that attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. *Id.,* at 744. Several circuits have moved toward the percentage of the recovery as a method of calculating fee awards in common fund cases. *Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir.1989); Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.); cert. denied, 488 U.S. 822 (1988); Bebchick v. Washington Metro. Area Transit Comm'n, 805 F.2d 396, 407 (D.C.Cir.1986). See also* Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985). The courts of Minnesota are also awarded percentage fees in common fund cases. *Streich v. American Family Mutual Ins. Co., 399 N.W.2d 210 (Minn.1987)* (30% awarded as attorney fees in unpublished opinion, File No. 456247, Ramsey Dist. Ct.)

The Court in *Camden,* stated that "there is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case. "[I]ndividualization in the exercise of a discretionary power [for fee awards] will alone retain equity as a living system and will save it from sterility." " *Id.* at 744, citing *Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184, (1939)*. A

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d                                           Page 5
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))

large number of courts have recognized that in awarding a percentage of the common fund, 20%-30% should be the benchmark. *See, Camden, 946 F.2d at 775, (11th Cir.1991); Paul, 886 F.2d at 271 (9th Cir.1989); Bebchick, 805 F.2d at 407 (D.C.Cir.1986).*

**\*6** Notwithstanding the benchmark of 20%-30%, the percentage of a common fund awarded by a court must be reasonable, and the court must "articulate specific reasons for fee awards to give [the reviewing court] an adequate basis [to review the award]." *Brown v. Phillips Petroleum Company,* 838 F.2d 451, 454 (10th Cir.1988), citing, *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983). To determine reasonableness, federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), in calculating and reviewing attorneys' fees awards. The *Johnson* factors are:

(1) the time and labor involved;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) any prearranged fee-this is helpful but not determinative;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Id.,* 488 F.2d at 717-19.

In the present case, this Court has considered all of the above factors as well as other factors unique to this matter in reaching its decision. The most important factors in this Court's opinion were:

1. The lack of substantial objections by class members to either the settlement terms or to the fee requested by class counsel;

2. The novelty of the claims and issues involved and the results obtained;

3. The non-monetary benefit conferred and its effect on future consumer class actions;

4. The total amount of the common fund and how the award of attorneys' fees may impact the various classes; and,

5. The fact that although the settlement fund amounts to $47,750,000 the fee will be paid solely from the $17,750,000 cash portion of the settlement.

These factors will now be discussed individually.

1. The lack of substantial objections to the settlement and to the requested fee.

One measure of the reasonableness of the fees is the reaction of the class itself to the proposed fee award. The notice which went to the class presented the class counsels' request of $7,878,750, and the preliminary award of $4,437,500, and stated that "... these amounts are subject to adjustment ... but ... in no event will there request for attorneys' fee exceed 20% of the $47,750,000 settlement fund or $9,550,000 ..." The class members were provided an opportunity to comment on the fee issue. The notice gave the class members the opportunity to either appear personally at a hearing on January 10, 1992 before this Court or file a written statement containing any reasons for their objection.

**\*7** In November 1991 a total of 246,306 notices were mailed to individual class members of record and it was also published one time in each of the 28 daily

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
**(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))**

newspapers in Minnesota. Of the nearly one quarter of a million notices only one member primarily objected to the fees requested. Based on this response it can be determined that the class, as a whole, would approve the fee award of $4,437,500.

**2. The novelty of the claims and issues involved and the results obtained.**

Plaintiff class members have received outstanding results due to class counsels' effort, tenacity and continued devotion to the litigation of this case despite the high risks involved. Class counsel pursued this matter to achieve the optimal settlement for their clients. Along with the cash portion, the settlement provided for scrip certificates for those who had purchases certain insurance products before. As it turns out, approximately 50% of those who will receive credit life scrip, will be entitled to their insurance at no cost. In addition to the common fund of $47,750,000 class counsel also negotiated a comprehensive injunction that has been noted as a model for consumer injunctions across the country. The settlement reached in this matter has been labeled as a landmark decision in the area of consumer protection by the The National Consumer Law Center in Boston, Massachusetts. The injunction will result in a direct savings of approximately $14 million over the next five years to the plaintiff class. Class counsels' efforts should be appropriately rewarded for their accomplishments on behalf of the class members they represented. Most class actions include an injunction in their prayer for relief, however, when a case is settled, either no injunction is entered, or, if there is an injunction, it is often simple and limited in scope. The injunction in the present case is comprehensive and elaborate.

**3. The non-monetary benefit conferred and its effect on future consumer class actions.**

The consumer rights area is, often an undesirable area for most law firms. Although successful consumer actions can potentially aid a large number percentage of society, the economic reality is that the costs to litigate such actions can be outweighed by limited chances for success. Success in both monetary reward for the class counsel and monetary and/or injunctive, etc., relief for the class members. These factors must be taken into consideration when determining the appropriate fee award.

Class counsel spent a considerable amount of time over eight years to obtain the settlement. Other firms, familiar with the enormous amount of time involved in a class action, were not willing to undertake the risks inherent in this action involving questions of first impression in the consumer class action area. It is important to award attorneys' fees commensurate with the risk, time and expertise involved to encourage the representation of consumers in actions such as this that can potentially benefit society as a whole. As noted in _Muehler v. Land O' Lakes, Inc.,_ 617 F.Supp. 1370, 1377 (D.C.Minn.1985): "The concern should be to provide class action plaintiffs' lawyers with incentives enough to adequately and vigorously represent clients within the bounds of professional responsibility."

**\*8** As a public policy issue, the voice of the consumer should be encouraged. This Court would like to encourage the future pursuit of consumer issues adequately and vigorously by awarding attorneys' fees commensurate with the risks undertaken, novelty of the issues of law and the recovery accomplished.

**4. The total amount of the common fund and how the award of attorneys' fees may impact the various classes.**

The fee award of 25% of the cash settlement is fair to all of the different classes established by the settlement agreement. The total amount of the common fund amassed for the benefit of the class is $47,750,000. Of that amount, 17,750,000 is a cash settlement and 30,000,000 is in the form of scrip certificates. At all times during the settlement it was clear to all involved that the cash portion of the fund included both fees and an award to SPT-5 class members. During the settlement negotiations class counsel set aside up to $9,500,000 to be used as attorneys' fees. Class counsel knew that sum was subject to adjustment by this Court, however they did not want any of the nine and one-half million dollars to be returned to the defendants. Therefore plaintiffs' counsel provided for any sums not paid as attorney fees to be distributed to the SPT-5 class. This Court's fee award of $4,437,500 means that over four million additional dollars set aside for fees will go to the class.

The return on the dollar for the SPT-5 class is con-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))

siderably higher than the normal recovery in other class actions. Affidavits submitted to this Court by members of the bar familiar with class action suits indicate that the majority of class actions are resolved with a recovery for the class plaintiffs in the range of 5% to 35%. A recovery to class plaintiffs of 50% or more is above the normal levels. After the award of $4,437,500 in attorneys' fees, the return to the SPT-5 class members is over 65% of the SPT-5 premiums paid.

It is important to note the although there are different classes provided for in the settlement agreement, the five subclasses overlap. For example, named plaintiff Terry Hohn is a member of the SPT-5, Credit Disability, Credit Life and Thrift Club classes, as is Colleen Norberg. Monique Hawkins is a member of the SPT-5, Thrift Club and Credit Life classes. Bonnie Baker is a member of all five classes. In fact every named plaintiff who is a member of class 2, 3, 4 or 5 is also a member of class 1, the SPT-5 class. As named plaintiffs, they are typical of and represent the rest of the members. Further, over the course of this litigation, class counsel has not encountered a person who had an SPT-5 policy without also being in one of the other classes. Therefore, the attorney fee award is shared by all the class members and not borne entirely by the members of class 1, the SPT-5 class.

5. The fee will be paid from the $17,750,000 cash portion of the settlement.

Class counsel have made no pretense to this Court concerning the fact that they request their fee by paid in cash out of the $17,750,000 cash portion of the settlement. Although this Court can find no case law directly on point discussing a fund that is created for a class consisting of both cash and scrip certificates there are cases in which a fund is created for a class consisting of cash and securities of a corporation. By analogy, one can address the issue in the present case.

**\*9** One court stated when discussing the issue of whether the attorneys' fee should be awarded solely out of the cash or should consist of a mix of cash and securities, stated that "when the fund consists of property or property plus cash, a judge can award the fees wholly in cash ..." *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679, 696 (M.D.Ala1988), *see also, Bleznak v. C.G.S. Scientific Corp.,* 387 F.Supp. 1184, 1191 (E.D.Pa.1974).

The Court in *Mashburn* reasoned that if class counsel are given their fee partly in cash and partly in securities, they would be required to give up much of their cash to the Government to pay the tax on the securities and, in essence, would be left with no cash compensation whatsoever. If the stock were then to lose its value due to bankruptcy, market conditions, or otherwise, class counsel will have received no fee. *Mashburn,* at 696. Although the present case does not involve securities and their corresponding risk of sudden devaluation, the scrip certificates are currently of no value to the plaintiff class counsel. Thus, as in *Mashburn,* the class counsel would essentially would be left uncompensated for their efforts.

The Court in *Mashburn,* reasoned that another important factor in allowing the class counsel to be compensated from the cash portion of the settlement was that the preferred stock issued to the class does have an immediate liquid value. *Id.,* at 696. Similarly, in the present case, the scrip has an immediate value to each class member. They can be redeemed for additional services with the defendant companies.

The fee award represents 25% of the cash portion of the settlement and is within the benchmark of 20%-30%. Further, as discussed above, the burden of paying the fee award will be borne by all class members, paying the class counsel in scrip would be of no value to them and the script certificates have an immediate value to the class.

After reviewing the fees and percentages of funds awarded by various Courts throughout this country, it is apparent to this Court that 25% of the cash portion of the settlement fund created for the class is fair, reasonable and commensurate with the risks undertaken and the reward attained.

6. Class Counsels' request regarding attorneys' fees.

Class counsel has requested an award of attorneys' fees in an amount of 16.5% of the total settlement fund or $7,878,750. This request is $3,441,125 more than what was previously awarded by Judge Lebedoff. However, Class counsel informed this Court that if this Court were to award attorneys' fees in an amount greater than $4,437,500, that they were committed to donating said additional amount charity. This request is reasonable, meritorious and appropriate and this Court did intend awarding attor-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)
**(Cite as: 1992 WL 589727 (Minn.Dist.Ct.))**

neys' fees in an amount greater than $4,437,500. Upon further reflection and insight into the composition of the class members it became apparent that they are themselves a charitable entity. After taking all factors into consideration, it is clear that by leaving the attorney fee award at $4,437,500, a larger cash amount will be directed toward the class members. Therefore, this Court elects to leave the attorney fee award untouched with the intention that it will be in the best interests of the class members.

Minn.Dist.Ct.,1992.
Hawkins v. Thorp Loan and Thrift Co.
Not Reported in N.W.2d, 1992 WL 589727 (Minn.Dist.Ct.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.