# Exhibit N
# Part 1

LEXSEE

Caution
As of: Feb 04, 2009

RYAN RODRIGUEZ, REENA B. FRAILICH, LOREDANA NESCI, JENNIFER BRAZEAL, and LISA GINTZ, on behalf of themselves and all others similarly situated, Plaintiffs, vs. WEST PUBLISHING CORPORATION, a Minnesota Corporation d/b/a BAR/BRI, and KAPLAN, Inc., a Delaware Corporation, Defendants. AND CONSOLIDATED ACTION

CASE NO. CV05-3222 R (MCx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2007 U.S. Dist. LEXIS 74767; 2007-2 Trade Cas. (CCH) P75,927

September 10, 2007, Decided
September 10, 2007, Filed

**PRIOR HISTORY:** Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74849 (C.D. Cal., Aug. 10, 2007)

**COUNSEL:** [*1] For Ryan Rodriguez, on behalf of himself and all others similarly situated, Plaintiff: Charles A Sturm, LEAD ATTORNEY, Steele Sturm, Wells Fargo Plaza, Houston, TX; Colleen M Regan, LEAD ATTORNEY, Sidney K Kanazawa, LEAD ATTORNEY, Van Etten Suzumoto & Becket, Los Angeles, CA; Douglas N Silverstein, LEAD ATTORNEY, Kesluk and Silverstein, Los Angeles, CA; Eliot G Disner, LEAD ATTORNEY, Disner Law Corporation, Los Angeles, CA; Jia-Ming Shang, LEAD ATTORNEY, Noah E Jussim, LEAD ATTORNEY, Tracy Evans-Moyer, LEAD ATTORNEY, McGuire Woods, Los Angeles, CA; Jon M Zimmerman, LEAD ATTORNEY, Jon M Zimmerman Law Offices, Seattle, WA; Joanna Shally, Shearman and Sterling, New York, NY.

For Reena B Frailich, on behalf of herself and all others similarly situated, Jennifer Brazeal, Plaintiffs: Charles A Sturm, LEAD ATTORNEY, Steele Sturm, Wells Fargo Plaza, Houston, TX; Colleen M Regan, LEAD ATTORNEY, Sidney K Kanazawa, LEAD ATTORNEY, Van Etten Suzumoto & Becket, Los Angeles, CA; Eliot G Disner, LEAD ATTORNEY, Disner Law Corporation, Los Angeles, CA; Jon M Zimmerman, LEAD ATTORNEY, Jon M Zimmerman Law Offices, Seattle, WA; Noah E Jussim, LEAD ATTORNEY, Tracy Evans-Moyer, LEAD ATTORNEY, McGuire Woods, [*2] Los Angeles, CA; Joanna Shally, Shearman and Sterling, New York, NY.

For Lisa Gintz, Loredana Nesci, Plaintiffs: Charles A Sturm, LEAD ATTORNEY, Steele Sturm, Wells Fargo Plaza, Houston, TX; Colleen M Regan, LEAD ATTORNEY, Sidney K Kanazawa, LEAD ATTORNEY, Van Etten Suzumoto & Becket, Los Angeles, CA; Eliot G Disner, LEAD ATTORNEY, Disner Law Corporation, Los Angeles, CA; Jia-Ming Shang, LEAD ATTORNEY, Noah E Jussim, LEAD ATTORNEY, Tracy Evans-Moyer, LEAD ATTORNEY, McGuire Woods, Los Angeles, CA; Jon M Zimmerman, LEAD ATTORNEY, Jon M Zimmerman Law Offices, Seattle, WA; Joanna Shally, Shearman and Sterling, New York, NY.

Lorraine Rimson, Plaintiff, Pro se.

2007 U.S. Dist. LEXIS 74767, *2; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

Pamela Collins Dunmore, Movant, Pro se, Gainsville, Fl.

For Pamela Collins Dunmore, Movant: Daniel Scott Brown, LEAD ATTORNEY, Daniel Scott Brown Law Offices, Danville, CA.

For West Publishing Corporation, a Minnesota corporation doing business as BAR/BRI, Defendant: Edward A Klein, LEAD ATTORNEY, Heather H Gilhooly, LEAD ATTORNEY, Liner Yankelevitz Sunshine and Regenstreif, Los Angeles, CA; Joanna Shally, Lisl Joanne Dunlop, LEAD ATTORNEY, Shearman and Sterling, New York, NY; Marc D Ashley, LEAD ATTORNEY, Rebecca J Trent, LEAD ATTORNEY, [*3] Wayne D Collins, LEAD ATTORNEY, Alan S Gruber, Steven F Molo, Sherman & Sterling, LLP, New York, NY; Eliot G Disner, LEAD ATTORNEY, Disner Law Corporation, Los Angeles, CA.

For Kaplan Inc, a Delaware corporation, Defendant: Lee S Taylor, LEAD ATTORNEY, Stuart N Senator, LEAD ATTORNEY, Munger Tolles & Olson, Los Angeles, CA; Edward A Klein, LEAD ATTORNEY, Liner Yankelevitz Sunshine and Regenstreif, Los Angeles, CA; Noah E Jussim, McGuirewoods, Los Angeles, CA.

For Thomson Corporation, Defendant: Steven F Molo, Shearman & Sterling, LLP, New York, NY.

For Arcelia Trevino, Objector: Carmine Giardino, LEAD ATTORNEY, Giardino Law firm Inc, The, San Antonio, TX.

For Sindell and Siegel, Objector: Edward F Siegel, LEAD ATTORNEY, Edward F Siegel Co., LPA, Cleveland, OH.

For David Feldman, -, Cameron Gharabiklou, Emily Grant, Jeff Lang, Sarah McDonald, Cara Patton, Rachel Schwartz, Greg Thomas, Objectors: John William Davis, LEAD ATTORNEY, John W Davis Law Offices, San Diego, CA.

For David Oriol, Jason Tingle, Oliver Guiterrez, Unnamed ClassMember, Objectors: Robert C Chojnacki, LEAD ATTORNEY, Robert C Chojnacki Law Offices, Menlo Park, CA.

For Schneider Slomba Puntumapanitch Head and Helfrich, Class [*4] Members, George Schneider, Class Member, Jonathan M Slomba, Class Member, James Puntumapanitch, Class Member, Objectors: J Garrett Kendrick, LEAD ATTORNEY, Kendrick & Nutley, Pasadena, CA.

For Aaron Lukoff, John Prendergast, David Orange, Objectors: Jon M Zimmerman, LEAD ATTORNEY, Jon M Zimmerman Law Offices, Seattle, WA; Joshua R Furman, LEAD ATTORNEY, Attorney at Law, Los Angeles, CA.

For David Harris, Kareem Kamal, Matthew Kavanaugh, Simone Newfield, Jonathan Ricasa, Abigail Treanor, David Zelenski, Objectors: Alan Harris, LEAD ATTORNEY, Harris and Ruble, Los Angeles, CA.

For James Juranek, Unnamed Class Member, Audrey Juranek, Unnamed Class Member, Richard P Le Blanc, III, Unnamed Class Member, Objectors: Charles A Sturm, LEAD ATTORNEY, Steele Sturm, Wells Fargo Plaza, Houston, TX; Ronald D Rosengarten, LEAD ATTORNEY, Rosengarten & Leven LLP, Calabasas, CA.

For Jennifer Brown McElroy, Objector: Joseph Darrell Palmer, LEAD ATTORNEY, Darrell Palmer Law Offices, Solana Beach, CA.

For Daniel M Schafer, Objector: David P Schafer, LEAD ATTORNEY, Law Offices of David P Schafer, San Antonio, TX; Joseph Darrell Palmer, LEAD ATTORNEY, Darrell Palmer Law Offices, Solana Beach, CA.

For Sarah Siegel, [*5] Objector: Edward F Siegel, LEAD ATTORNEY, Edward F Siegel Co., LPA, Cleveland, OH; Joseph Darrell Palmer, LEAD ATTORNEY, Darrell Palmer Law Offices, Solana Beach, CA.

For Evans & Mullinix PA, Objector: Joseph Darrell Palmer, LEAD ATTORNEY, Darrell Palmer Law Offices, Solana Beach, CA; Kenneth E Nelson, LEAD ATTORNEY, Nelson Law firm PC, Kansas City, MO.

For Justin Head, Ryan Helfrich, Objectors: C Benjamin Nutley, LEAD ATTORNEY, J Garrett Kendrick, LEAD ATTORNEY, Kendrick & Nutley, Pasadena, CA.

Robert Gaudet, Jr., Objector, Pro se, Seattle, WA.

Andrea Boggio, Objector, Pro se, Smithfield, RI.

Sandeep Gopalan, Objector, Pro se, Tempe, AZ.

2007 U.S. Dist. LEXIS 74767, *5; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

Elizabeth De Long, Objector, Pro se, Seattle, WA.

For Nikki Love, John Bernitz, Objectors: Robert L Arleo, LEAD ATTORNEY, Robert L Arleo Law Offices, Haines Falls, NY.

**JUDGES:** MANUEL L. REAL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MANUEL L. REAL

**OPINION**

OPINION AND ORDER

## I. Introduction

This is a federal antitrust class action brought by Plaintiffs Ryan Rodriguez ("Rodriguez"), Reena B. Frailich ("Frailich"), Jennifer Brazeal ("Brazeal"), Loredana Nesci ("Nesci"), and Lisa Gintz ("Gintz") (represented by Class Counsel McGuireWoods LLP) and Plaintiffs Kari Brewer ("Brewer") and Lorraine [*6] Rimson ("Rimson") (represented by Class Counsel Finkelstein Thompson LLP and Zwerling, Schachter & Zwerling, LLP, respectively) against Defendants West Publishing Corporation (doing business as BAR/BRI) ("West") (represented by Liner Yankelevitz Sunshine & Regenstreif, LLP and Shearman & Sterling, LLP) and Kaplan, Inc. ("Kaplan") (represented by Jones Day and Munger, Tolles & Olsen, LLP). Plaintiffs sue on behalf of themselves and more than 300,000 class members nationwide who took a full-service bar review course from BAR/BRI between August 1, 1997 and July 31, 2006 ("the Class" or "Class Members"). The operative complaint alleges that: (1) BAR/BRI (now owned by Defendant West) illegally acquired the assets of its direct competitor West Bar in violation of Section 7 of the Clayton Act; (2) Defendant West unlawfully conspired with Defendant Kaplan to restrain trade in the full-service bar review course market in violation of Section 1 of the Sherman Act; and (3) Defendant West wrongfully monopolized the full-service bar review course market in violation of Section 2 of the Sherman Act.

## II. Procedural History

After an extensive pre-filing factual investigation, Plaintiffs Rodriguez and [*7] Frailich ("Initial Plaintiffs") filed the first complaint against Defendants in this Action in April 2005 alleging claims for violation of federal antitrust laws ("Initial Complaint"). The Initial Plaintiffs later filed a First Amended Complaint ("FAC"), in which Plaintiffs Brazeal, Nesci, and Gintz joined. Plaintiffs Brewer and Rimson filed a related action against Defendants in this Court entitled, *Brewer v West Publishing Corp*, Case No. CV-05-06211. The Court consolidated the two actions after motion practice on October 17, 2005.

The FAC, the operative complaint in this action, alleges claims for violation of Sections 1 and 2 of the Sherman Act, and Section 7 of the Clayton Act. The FAC seeks monetary damages and injunctive relief. Defendants answered the FAC in July 2006, raising numerous defenses, including statute of limitations, laches, proximate cause, standing, and *bona fide* business competition.

The action entered the discovery phase in August 2005. Plaintiffs took substantial factual and expert discovery relating to liability, damages, and class certification issues. Plaintiffs reviewed and analyzed over 400,000 pages of documents produced by Defendants and third parties, [*8] conducted one deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), and deposed fourteen fact witnesses. Defendants deposed the seven Plaintiffs, as well as three non-party witnesses. The parties also conducted extensive expert discovery, including eight depositions of five different expert witnesses. Plaintiffs and Defendants had a series of discovery disputes. These discovery disputes resulted in a number of motions to compel before this Court and Special Discovery Master John Francis Carroll.

On March 13, 2006, Plaintiffs filed their Motion for Class Certification. Defendants raised many challenges, including the relevant market definition, antitrust impact, and the existence of a formulaic approach to damages. On May 15, 2006, after comprehensive briefing, including the submission of detailed expert declarations and exhibits as well as extended oral argument, the Court certified a national class defined as: "All persons who purchased a bar review course from BAR/BRI in the United States from 1997 to the present." The Court appointed the seven named plaintiffs as class representatives ("Class Representatives").

On June 29, 2006, after reviewing submissions from Plaintiffs [*9] and Defendants concerning the proposed plan of notice to the Class, the Court issued an Order Re: Class Notice ("Class Notice Order") which approved the

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 5 of 12

2007 U.S. Dist. LEXIS 74767, *9; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

proposed form of notice, and provided for dissemination by: (a) first-class mail; (b) in national publications; and (c) over the internet. In accordance with the Class Notice Order, the Class Action Notice ("Notice") was disseminated in July 2006. The Notice provided Class Members the opportunity to request exclusion from the Class.

Defendants filed a petition with the Court of Appeals for the Ninth Circuit for leave to file an appeal regarding the Class Certification Order. Plaintiffs filed an extensive opposition. The Ninth Circuit denied Defendants' petition on August 11, 2006.

On July 17, 2006, Kaplan filed a motion for summary judgment seeking to dismiss Count II of the FAC (the only count against Kaplan). Plaintiffs opposed the Motion and subsequently sought leave to file two supplemental opposition briefs to the Motion, which the Court granted. The Court denied Kaplan's Motion for Summary Judgment on September 18, 2006. Trial was set for February 13, 2007.

After completion of discovery, and with the February trial date approaching, [*10] the counsel for Plaintiffs and Defendants, together with Rodriguez, Nesci, and Gintz, engaged in a formal mediation in New York City on November 29, 2006. The Honorable Daniel Weinstein (Ret.) of JAMS, who has substantial experience in resolving antitrust and class action cases, served as mediator. Plaintiffs were represented by Class Counsel and Defendants were represented by their litigation counsel and their in-house counsel. The record reflects that at all times the negotiations were at arm's-length and hard fought. The parties were unable to reach a resolution on November 29, 2006.

Negotiations continued for the next several weeks with the assistance of the mediator. During this time, the parties continued to prosecute discovery disputes and prepare for trial. After several weeks of negotiations, an agreement was reached on all settlement terms. The Settlement Agreement was executed on February 2, 2007. Plaintiffs Rodriguez, Nesci, and Gintz ("the Objecting Plaintiffs") refused to authorize the execution of the Settlement Agreement on their behalf.

On March 19, 2007, over the objections of the Objecting Plaintiffs, the Court entered an Order Granting Plaintiffs' Motion for Preliminary [*11] Approval of Class Action Settlement and Directing Dissemination of Notice to Class ("Preliminary Approval Order") that, among other things: (a) found that the Settlement Agreement was negotiated in good faith, under the supervision of a well-respected mediator, was the result of extensive arm's length negotiations, was concluded after Class Counsel conducted broad discovery, and was sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to Class Members and holding a full hearing on the Settlement; (b) modified the definition of the previously certified class to: "All Persons who purchased a bar review course from BAR/BRI in the United States from August 1, 1997 through and including July 31, 2006"; (c) found that the proposed forms and methods of notice met the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and all other applicable law; (d) appointed a claims administrator; (e) established procedures for Class Members to object to the Settlement; and (f) established the date for the Final Approval Hearing.

On June 18, 2007 and July 9, 2007, the Court conducted hearings on the fairness, reasonableness, [*12] and adequacy of the Settlement. Twelve groups of Objectors were represented at the first Final Approval Hearing (through counsel). Two of the three Objecting Plaintiffs - Nesci and Rodriguez - were also present. At the Final Approval Hearing on July 9, 2007, after hearing argument from the parties, Objectors and/or their counsel, and Objecting Plaintiffs Nesci and Rodriguez, the Court: (1) granted Plaintiffs' Motion for an Order Granting Approval of the Class Action Settlement; (2) denied Plaintiffs' Motion for Incentive Awards to Class Representatives; and (3) granted Class Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses. This Opinion and Order follows.

### III. The Incentive Agreement and the Requests for Incentive Awards

As part of their Retainer Agreement, the five Class Representatives represented by Class Counsel Van Etten Suzumoto & Becket LLP (the predecessor to Class Counsel McGuireWoods LLP) entered into an "Incentive Agreement" with their counsel. [1] Each of the five Class Representatives represented by McGuireWoods signed the Incentive Agreement prior to entering the lawsuit. Under the section entitled "Incentive/Compensation to Clients" the contingency fee-type [*13] contract obligates Class Counsel to seek payment for each of the

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 6 of 12

2007 U.S. Dist. LEXIS 74767, *13; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

Class Representatives in an amount that adjusts based on the end settlement or litigated victory amount. If the settlement or litigated victory was greater than or equal to $ 500,000, Class Counsel would seek a $ 10,000 award per Class Representative. For $ 1.5 million or more, Class Counsel would seek a $ 25,000 award. For $ 5 million or more, Class Counsel would seek $ 50,000 and for $ 10 million or more, Class Counsel would seek $ 75,000. The five Class Representatives who signed the Incentive Agreement all aver that they were never promised that they would receive an incentive award and that any award was contingent on court approval. Such a promise is not necessary to securing an award that is quickly becoming the grist of the class action money mill.

1   The section entitled "Incentive/Compensation to Clients" states in full: "In consideration for the services Clients will be providing, and as an incentive to Clients for their participation as Class representatives here and to compensate them for all the burdens accruing therefrom, VSB agrees to seek payment for each Client in the following amounts: 1. The sum of $ [*14] 10,000 if the West case ends by settlement or litigated victory with the payment to the Class a sum greater than or equal to five hundred thousand dollars ($ 500,000) in cash or anything of comparable value; 2. In supplement to the sum identified in paragraph 1 directly above, an additional $ 15,000 (for a sum total of $ 25,000) will be paid to each client if the West case ends by settlement or litigated victory with the payment to the Class a sum greater than or equal to one million five hundred thousand dollars ($ 1,500,000) in cash or anything of comparable value; 3. In supplement to the sum identified in paragraph 2 directly above, an additional $ 25,000 (for a sum total of $ 50,000) will be paid to each client if the West case ends by settlement or litigated victory with the payment to the Class a sum greater than or equal to five million dollars ($ 5,000,000) in cash or anything of comparable value; and 4. In supplement to the sum identified in paragraph 3 directly above, an additional $ 25,000 (for a sum total of $ 75,000) will be paid to each client if the West case ends by settlement or litigated victory with the payment to the Class a sum greater than or equal to ten million [*15] ($ 10,000,000) in cash or anything of comparable value. 5. Such payments listed above shall be subject to the following conditions: a. Clients have reasonably provided the assistance sought in paragraphs 1-3 under section "Services to be Rendered by Clients;" and b. any required Court approval is first obtained, which VSB agrees to seek, as need be, at the pertinent time." (June 11, 2007 Kanazawa Decl. Ex. 1 at 2-3.)

The Class was never advised of the Incentive Agreement. The Court was made aware of the Incentive Agreement only after the Preliminary Approval Hearing, when the incentive payment requests were made. Apparently, however, Defendants obtained a copy of the Incentive Agreement in April 2006.

The case settled for $ 49,000,000. Thus, per the Incentive Agreement, McGuireWoods is contractually obligated to seek $ 75,000 for each Class Representative as an incentive payment. However, in the Settlement Agreement entered into on February 2, 2007, Defendants would only agree not to oppose requests for incentive awards less than or equal to $ 25,000 for each Class Representative. After the Settlement was reached, McGuireWoods communicated with the five Class Representatives it represents [*16] about the incentive awards. Two of the five (Plaintiffs Brazeal and Frailich) agreed that McGuireWoods would seek only $ 25,000 on their behalf. The three Objecting Plaintiffs refused to agree to the lower amount and, as a result, McGuireWoods seeks $ 75,000 each for Plaintiffs Rodriguez, Nesci, and Gintz pursuant to the terms of the Incentive Agreement. Class Counsel seeks these awards on behalf of the Class Representatives despite the minimal assistance the Class Representatives contributed to the prosecution of the litigation and the conflict of interests the contingency fee-type agreement created between the Class Representatives and the Class Members.

The two other named plaintiffs, Plaintiffs Brewer and Rimson, who were represented by Class Counsel Finkelstein Thompson LLP and Zwerling, Schachter & Zwerling, LLP, respectively, made no ex-ante incentive award agreement with their clients. Plaintiffs Brewer and Rimson had no agreement regarding any amount that would be requested as an incentive award on their behalf. Their counsel maintain that they independently determined that $ 25,000 was an appropriate incentive award amount for each of their Class Representatives.

2007 U.S. Dist. LEXIS 74767, *16; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

### IV. [*17] Jurisdiction

This Court has jurisdiction over Class Members' claims because Plaintiffs have alleged violations of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 18. 28 U.S.C. 1331.

This Court can also exercise personal jurisdiction over all absentee Class Members because Class Members received proper notice of the action. The Notice informed potential Class Members of the pendency of this Action and provided them with the opportunity to exclude themselves from the Class. The Notice also informed Class Members of their opportunity to object to the Settlement and to be heard at the Final Approval Hearing. As discussed further below, such notice satisfies the due process requirements of the Fifth Amendment. *Brown v. Ticor Title Inc.*, 982 F2d 386, 392 (9th Cir. 1992).

### V. Settlement Terms

#### A. The Settlement Fund

Consistent with the terms of the Settlement Agreement, Defendants paid forty-nine million dollars ($49,000,000) into an interest-bearing account for the benefit of the Class, which amount, plus interest ("Gross Settlement Fund"), has or will be used to pay for the costs of notice, settlement administration, taxes and attorneys' fees and expenses pursuant to the orders [*18] of this Court. After such payments from the Gross Settlement Fund, the balance will be distributed to the Class ("Net Settlement Fund") pursuant to the Plan of Allocation.

#### B. Plan of Allocation

Under the terms of the Plan of Allocation, the Net Settlement Fund will be distributed *pro rata* based on the amount each Class Member who submits a timely and valid Claim Form ("Authorized Claimant") paid BAR/BRI for the bar review course in relation to the amounts paid by all other Authorized Claimants. For example, if the amount paid for a bar review course by an Authorized Claimant equals 1/100,000 of the aggregate of such amounts paid by all other Authorized Claimants, then the Authorized Claimant will receive 1/100,000 of the Net Settlement Fund. The maximum amount of payment that any Authorized Claimant shall be entitled to receive from the Net Settlement Fund, however, shall not exceed thirty-percent (30%) of the amount the Authorized Claimant paid for the bar review course ("Maximum Payment").

Class Members also have the option of donating their portion of the Net Settlement Fund to the National Legal Aid and Defender Association ("NLADA"), for the purpose of providing training opportunities [*19] for young lawyers nationwide. NLADA, founded in 1911, is the oldest and largest national, nonprofit membership organization devoted to advocating equal access to justice for all.

Defendants are not entitled to a reversion of any money remaining in the Net Settlement Fund after distribution of the Maximum Payments to all Authorized Claimants. If any funds remain in the Net Settlement Fund after distributing the Maximum Payments to all Authorized Claimants, Class Counsel will make an application to the Court for a *cy pres* distribution of the residual amount of the Net Settlement Fund.

#### C. Provisions to Promote Competition in the Bar Review Market

For purposes of Settlement, BAR/BRI and Kaplan agreed to terminate the marketing agreement that Plaintiffs allege is unlawful and has allowed BAR/BRI to maintain a monopoly and Defendants to divide the market. Further, for a period of five years following the Effective Date, BAR/BRI will include the following statement on the forms it uses to enroll law students into its review courses:

> NOTE: By signing this Enrollment Form and making an initial payment to BAR/BRI, you are not committing yourself to taking the BAR/BRI Bar Review course or making [*20] full payment to BAR/BRI for such course.

Finally, in the Settlement Agreement, BAR/BRI expressly states "that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade Commission Act and similar laws, regulations and rules."

#### D. Release

The Settlement Order provides that all Class Members (including any of their past, present or future officers, directors, agents, employees, legal

Page 6

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 8 of 12

2007 U.S. Dist. LEXIS 74767, *20; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

representatives, trustees, parents, associates, affiliates, licensees, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns), with the exception of those who exercised their right to opt out (identified in Exhibit A to the Settlement Order), whether or not he, she, or it objects to the Settlement and whether or not he, she, or it makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity, ever had, now has or hereafter can, shall or may have concerning or relating to any conduct alleged in the FAC in this Action, and including without limitation all claims that have been asserted or could have been asserted in any litigation against the Released Parties [*21] or any of them for any conduct alleged in the FAC in this Action (collectively with all claims referenced in the next paragraph, the "Released Claims"), are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or other proceeding against any or all Released Parties, or order in any jurisdiction entered against any or all Released Parties that is based upon, arises out of, or relates to any Released Claims.

Notwithstanding the foregoing, the Released Claims shall not include claims asserted against the named defendants as of February 2, 2007, in the putative class actions, entitled *Park v. Thomson Corp., et al.*, Case No. 05 Civ. 2931 (WHP) and *Arendas v. Thomson Corp., et al.*, Case 6:06-cv-1113-Orl-28JGG, currently pending in the United States District Court, Southern District of New York ("New York Actions").

### VI. Notice and Dissemination Was Adequate

Notice to the Class of the Settlement satisfied all applicable requirements, including due process. Proper notice should provide: (a) the material terms of the proposed settlement; (b) disclosure [*22] of any special benefit to the class representatives; (c) disclosure of the attorneys' fees provisions; (d) the time and place of the final approval hearing and the method for objecting to the settlement; (e) an explanation regarding the procedures for allocating and distributing the settlement funds; and (f) the address and phone number of class counsel and the procedures for making inquiries. *See, e.g., Marshall v. Holiday Magic*, 550 F.2d 1173, 1177-78 (9th Cir.1977); *In re Aetna Inc. Sees. Litig.*, MDL No. 1219, 2001 WL 20928 at * 5, 2001 U.S. Dist. LEXIS 68, at *16 (E.D. Pa. Jan. 4, 2001) (holding that the notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (quoting *Mullane v Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (citation omitted)). The Notice here met all of these requirements and, thus, was adequate.

The Notice dissemination also satisfied all applicable requirements, including due process. The Notice was mailed by first class mail to each Class Member identified from Defendants' records. The Notice was also made available [*23] on a variety of internet sites - including that of the Claims Administrator and Class Counsel. In addition, the Summary Notice describing the principal terms of the Settlement Agreement and providing information on how a more detailed description of the Settlement Agreement could be obtained was published in *The National Law Journal* (twice), *Lawyers Weekly USA* (three times) and *USA Today* (once). The Summary Notice was sent by first-class mail to the largest 200 law firms in the United States, as listed in *American Lawyer.* These publications and the mailing to the 200 largest law firms specifically targeted the Class. Thus, the Notice dissemination was adequate. *See, e.g., Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994) (approving notice sent by first class mail as the "best notice practicable"); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the Notice requirement of both Fed. R. CIV. 23 and the due process clause.") (citations omitted); *Montgomery v. Beneficial Consumer Disc. Co.*, No. 04- 2114, 2005 WL 497776, at *6, 2005 U.S. Dist. LEXIS 3249, at *19 (E.D. Pa. Mar. 2, 2005) [*24] (individual mailing accompanied by publication in *USA Today* was best practicable notice under the circumstances; "[d]ue process does not require actual notice, but rather a good faith effort to provide actual notice") (quoting Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:53 (4th ed. 2002) ("*Newberg*").

### VII. The Settlement Is Fair

#### A. The Settlement Agreement Enjoys a Presumption of Fairness

In the Ninth Circuit, a court affords a presumption of

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 9 of 12

2007 U.S. Dist. LEXIS 74767, *24; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Newberg* at § 11.41; *Young v. Polo Retail*, 2006 WL 3 050861, at *5, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006). As described above, the Settlement was reached only after extensive discovery had been conducted. Settlement negotiations occurred at arm's length for three months with the assistance of a mediator and the Settlement Agreement was not reached until the eve of trial. Both Class Counsel and Defendants' counsel are experienced in class actions, including antitrust [*25] class actions. Moreover, only a small fraction of the Class objected to the Settlement. Thus, the Settlement Agreement enjoys a presumption of fairness.

**B. The Settlement Agreement is Fair, Adequate, and Reasonable**

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court may not delete, modify, or rewrite particular provisions of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.* The Ninth Circuit has articulated eight factors to evaluate a settlement's fairness, adequacy, and reasonableness:

(1) The strength of plaintiffs' case;

(2) The risk, expense, complexity, and likely duration of further litigation;

(3) The risk of maintaining class action status throughout the trial;

(4) The amount offered in settlement;

(5) The extent of discovery completed, and the stage of the proceedings;

(6) The experience and views of counsel;

(7) The presence of a governmental participant; [2] and

(8) The reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026. All [*26] the applicable factors favor a finding of fairness, adequacy, and reasonableness in this case. The Court also finds that the conflict of interest between the Class Representatives and the Class Members does not disturb the Court's finding that the Settlement is fair, adequate, and reasonable.

2   There was no governmental presence with respect to the claims set forth in the action.

**(1) The Strength of Plaintiffs' Case**

Although Plaintiffs prevailed on Kaplan's Motion for Summary Judgment and believe they would prevail on any motion for summary judgment filed by BAR/BRI, defeating these motions does not mean that Plaintiffs established Defendants' *prima facie* liability; whether they would obtain a favorable, unanimous jury verdict as required by Federal Rule of Civil Procedure 48 is far from guaranteed. *See, e.g., In re Airline Ticket Com'n Antitrust Litig.*, 953 F.Supp. 280, 283 (D. Minn. 1997) (approving a settlement although it did not provide a full recovery of the potential losses and noting that objectors failed to appreciate that on summary judgment, the court only decided that defendants did not prevail as a matter of law, not that plaintiffs had a winning case). Claims for violation [*27] of federal antitrust laws are notoriously difficult to prove. *See Palmer v. BRG*, 498 U.S. 46, 48, 111 S. Ct. 401, 112 L. Ed. 2d 349 (1990). The Court's ruling on Kaplan's Motion for Summary Judgment was simply a recognition that there were material facts still in dispute. Accordingly, this factor weighs in favor of approving the Settlement.

**(2) The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The risk, expense, complexity and duration of continued litigation also favored settlement. These factors consider "the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002). In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg* at § 11:50 at 155). Indeed, settlement is encouraged in class actions where possible. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 10 of 12

2007 U.S. Dist. LEXIS 74767, *27; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

950 (9th Cir.1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly [*28] true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."). Further, this action is complex and, if not settled, is likely be enormously expensive and very lengthy. Antitrust class actions "are notoriously complex, protracted, and bitterly fought" and "arguably the most complex actions to prosecute." *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989)). Additionally, the litigation would most likely take several years to finally resolve, considering the length of trial and appeals. Accordingly, avoiding a trial and inevitable appeals in this complex, antitrust suit strongly weigh in support of approval of the Settlement, rather than prolonged and uncertain litigation. *See DIRECTV*, 221 F.R.D. at 527 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation"). Accordingly, this factor weighs in favor of approving the Settlement.

**(3) The Risk of Maintaining [*29] Class Action Status Throughout the Trial**

As for the risk of maintaining class action status throughout the trial, this Court certified a nationwide Class. Although Plaintiffs believe it is unlikely, there is no guarantee that Defendants would not move for and obtain decertification of the Class before or during trial. *See In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). As noted by one court, if "insurmountable management problems were to develop at any point, class certification can be revisited at any time under Fed. R. Civ. P. 23(c)(1)." *Id.* Further, even if the Class remained certified throughout the trial and Plaintiffs prevailed, Defendants would surely challenge class certification on appeal. If at any point the Class were decertified or certification were reversed on appeal, the Class would recover nothing. Thus, this factor also weighs in favor of approving the Settlement.

**(4) The Amount Offered in the Settlement**

The relief offered in the Settlement also supports a finding that the Settlement is fair, adequate, and reasonable. The Settlement includes a Settlement Fund of $ 49 million, as well as valuable non-monetary relief. The $ 49 million represents [*30] approximately thirty-percent (30%) of Plaintiffs' damages, estimated by their expert to be in the range of $ 158 million to $ 168 million, and seven times Defendants' expert's estimate of damages. "[S]ettlement is about compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Warfarin*, 212 F.R.D. at 257-58 (finding settlement amount representing 33% of maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements). Accordingly, this factor weighs in favor of approving the Settlement.

**(5) The Extent of Discovery Completed and the Stage of the Proceedings**

The extent of protracted and contentious discovery supervised by Special Master John Francis Carroll completed and the stage of the proceedings when the parties reached the Settlement also supports final approval of the Settlement. *See DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair"). What is required is that "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Newberg* at § 11:41. Here, [*31] Class Counsel conducted extensive discovery regarding each of the relevant issues in the case, deposing more than a dozen witnesses and reviewing more than 400,000 pages of produced documents. When the parties reached the Settlement Agreement, they had already engaged in numerous discovery disputes and Kaplan's Motion for Summary Judgment had already been decided by the Court. Thus, this factor weighs in favor of approving the Settlement.

**(6) The Experience and Views of Counsel**

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re*

Case 0:06-cv-01216-JMR-FLN Document 399-20 Filed 02/04/09 Page 11 of 12

2007 U.S. Dist. LEXIS 74767, *31; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

*Pacific Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995). [*32] Indeed, when evaluating a proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel. *See Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975); *Hanrahan v. Britt,* 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (finding that a presumption of correctness applies to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery, citing the *Manual for Complex Litigation* § 30.41 (2nd ed. 1985)). Here, Class Counsel have considerable experience in litigating antitrust matters, class actions, and other complex litigation. Class Counsel concluded that the Settlement terms are fair, adequate, and reasonable and in the best interests of the Class as a whole, and recommended that it be granted final approval. This factor weighs in favor of approving the Settlement.

**(8) The Reaction of the Class Members to the Proposed Settlement**

Finally, the fact that the Settlement Agreement enjoys overwhelming support from the Class supports a/finding that the Settlement Agreement is fair, adequate, and reasonable. *DIRECTV,* 221 F.R.D. at 529 ("It is established that [*33] the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). The Notice was delivered by first class U.S. mail to approximately 376,000 Class Members. As of August 2007, more than 52,000 claims were filed. In contrast, only 54 Class Members submitted Objections; less than a thousandth of a percent of the Class. The relatively low number of objectors supports a finding that the Settlement is adequate. *See, e.g., Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate). Regardless, in any class action of significant size, the absence of any objections would be "extremely unusual." *See In re Anthracite Coal Antitrust Litig.,* 79 F.R.D. 707, 712-13 (M.D. Pa. 1978). Accordingly, this factor weighs in favor of approving the Settlement.

**C. Objections to the Settlement Agreement Are Overruled**

**(1) The Adequacy of the Settlement Does Not Depend on the Individual Desires of the Objecting Plaintiffs**

The Court rejects the arguments by four Objectors [*34] or groups of Objectors that the Settlement should not be approved because the Objecting Plaintiffs object to the terms of the Settlement. To the contrary, "agreement of the named plaintiffs is not essential to approval of a settlement which the trial court finds to be fair and reasonable." *Parker v. Anderson,* 667 F.2d 1204, 1211 (5th Cir. 1982); *see also Lazy Oil Co. v. Witco Co.,* 95 F. Supp. 2d 290, 333-34 (W.D. Pa. 1997) (approving a settlement and noting same). Multiple courts have approved class action settlements notwithstanding the objections of the class representatives. *See, e.g., Officers for Justice v. Civil Serv. Com.,* 688 F.2d 615, 631 (9th Cir. 1982); *Parker,* 667 F.2d at 1204 (affirming the approval of a settlement of an employment discrimination class action over the objections of 10 of the 11 named plaintiffs); *Maywalt v. Parker & Parsley Petroleum,* 864 F. Supp. 1422 (S.D.N.Y. 1994), *aff'd* 67 F.3d 1072 (2d. Cir. 1995) (granting final approval of a securities fraud class action over some 2,700 objections, including certain of the class representatives); *Boyd,* 485 F. Supp. at 624 (approving a consent decree in an employment discrimination class action despite the fact [*35] that "[a]pproximately sixteen percent of the class, including three of the four named plaintiffs, have filed some opposition to the settlement"); *Olden v. LaFarge Corp.,* 472 F. Supp. 2d 922, 2007 U.S. Dist. LEXIS 5954, at *40-41 (E.D. Mich. Jan. 29, 2007) (approving settlement without the support of any of the class representatives). Plainly, "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed to maximize the value of the veto rather than the settlement value of the claims.'" *Maywalt,* 864 F. Supp. at 1430, quoting *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1366 (2d Cir. 1991).

**(2) The Bifurcation Motion Is Improper, Lacks Merit and Is Denied**

Bifurcating the Section 7 claim from the Sherman Act claims, as requested by the Objecting Plaintiffs, would create further obstacles and be a waste of time and resources. The moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144

Case 0:06-cv-01216-JMR-FLN   Document 399-20   Filed 02/04/09   Page 12 of 12

2007 U.S. Dist. LEXIS 74767, *35; 2007-2 Trade Cas. (CCH) P75,927
Fed. Sec. L. Rep. (CCH) P95,718

F.R.D. 99, 101 (N.D. Cal. 1992); [*36] *see also eBay, Inc. v. Bidder's Edge, Inc.*, 2000 U.S. Dist. LEXIS 13326, 2000-2 Trade Cases P 73,039, 56 U.S.P.Q.2d 1856, at *4 (C.D. Cal. July 25, 2000); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598 (D. Mont. 2003). That burden cannot be met, as bifurcation belies judicial economy here. The only difference between the Section 7 and Sherman Act claims is the damages. Bifurcation would result in a duplication of time and effort that squanders judicial resources determining unimportant differences.

### (3) Courts Do Not Evaluate Settlements in Light of the Treble Damages that Might Be Available After a Successful Trial

The Court rejects the Objecting Plaintiffs' argument that the monetary portion of the Settlement is inadequate because the Section 7 claim is worth $ 360 million. Objecting Plaintiffs arrive at this figure by trebling Plaintiffs' expert's estimated damages of $ 146 million since 2001 and then multiplying that figure by their estimated chances of winning at trial. This analysis is flawed because it presupposes that Plaintiffs will succeed at trial. Evaluating the Settlement in light of the treble damages available at the end of a successful trial is purely speculative. Courts do not consider [*37] such damages when calculating a reasonable range of recovery. *See, e.g., Detroit v. Grinnell Corp.*, 495 F.2d 448, 458 (2d Cir. 1974) ("[T]he vast majority of courts which have approved settlements in this type of case . . . have given their approval to settlements which are traditionally based on an estimate of single damages only."); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *24; 2005 U.S. Dist. LEXIS 27011, at *69-70 (D.N.J. Sept. 13, 2005) ("In order to evaluate the propriety of an antitrust class action settlement's monetary component, a court should compare the settlement to the estimated single damages."); *In re Warfarin*, 212 F.R.D. 231, 257 (D. Del. 2002) (citing *In re Lorazaepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 376 (D.D.C. 2002)).

### (4) The Lack of Provisions Prohibiting Future Misconduct or Dissolution Do Not Render the Settlement Inadequate

The Court rejects the argument by certain Objectors that the non-monetary relief is either illusory or insufficient because it does not prohibit Defendants from engaging in anticompetitive or unlawful conduct in the future. Courts are reluctant to sustain such objections, finding that the "best assurance against [*38] future antitrust violations by defendants is the persistent threat of litigation by any class member." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 337 (N.D. Ga. 1993) (approving a settlement as fair, reasonable, and adequate despite the absence of injunctive relief prohibiting the defendant from engaging in future misconduct). Furthermore, this objection was promoted by a competitor in one of Defendant West's operating areas.

The Settlement requires Defendants to terminate the agreement Plaintiffs allege is unlawful. BAR/BRI is also required to provide a clear statement to initial enrollees that they are not contractually obligated to pay the full amount for a BAR/BRI course should they choose not to take such a course upon graduation from law school. Since many law students enter into a contract with BAR/BRI in their first year of law school, Plaintiffs have argued that the obligation to pay the full amount for the course serves as a powerful hold on these students, thereby locking-up a substantial portion of the market for a three-year period. Thus, this provision removes a significant barrier to entry into the market by competitors, who would otherwise face the potentially [*39] overwhelming obstacle of trying to compete in a market with few available customers for several years after entry. Furthermore, BAR/BRI has stated that it is committed to accurate advertising as required by the Lanham Act, the Federal Trade Commission Act, and similar laws.

Other Objectors criticize the Settlement because it does not provide for the break-up of BAR/BRI. According to the Objecting Plaintiffs, "a significant number of class members are directly interested in the future" of the bar review industry and believe that BAR/BRI would be broken up if Plaintiffs instead went to trial and prevailed on the Section 7 claim. First, the overwhelming majority of Class Members are in favor of the Settlement and have not filed any objection arguing that the Settlement should be rejected because there are no provisions for dissolution. Second, there is no guarantee that Plaintiffs would prevail at trial and obtain an order breaking-up BAR/BRI. Even if Plaintiffs did prevail at trial, any verdict in their favor, including divestiture, would be subject to appeal, thereby delaying any recovery to the Class. Regardless, neither Class Counsel nor the Court can force competitors to enter the [*40] market.