# Exhibit Q
# Part 1

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
TRAVIS E. DOWNS III (148274)
ELLEN GUSIKOFF STEWART (144892)
JEFFREY D. LIGHT (159515)
BENNY C. GOODMAN III (211302)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
travisd@csgrr.com
elleng@csgrr.com
jeffl@csgrr.com
bennyg@csgrr.com
 – and –
SHAWN A. WILLIAMS (213113)
AELISH M. BAIG (201279)
CHRISTOPHER M. WOOD (254908)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
swilliams@csgrr.com
abaig@csgrr.com
cwood@csgrr.com

SCHIFFRIN BARROWAY TOPAZ
  & KESSLER LLP
ERIC L. ZAGAR (250519)
ROBIN WINCHESTER
JAMES A. MILLER
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610/667-7706
610/667-7056 (fax)
ezagar@sbtklaw.com
rwinchester@sbtklaw.com

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re MCAFEE, INC. DERIVATIVE LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS. | Master File No. 5:06-cv-03484-JF <br><br> NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE: October 3, 2008 <br> TIME: 9:00 a.m. <br> COURTROOM: The Honorable Jeremy Fogel |

## TABLE OF CONTENTS

| | Page |
|---|---|
| I. PRELIMINARY STATEMENT | 1 |
| II. THE LITIGATION | 3 |
|    A. Initiation of the Federal Action | 3 |
|    B. Initiation of the State Action | 5 |
|    C. The Settlement Negotiations | 6 |
| III. THE SETTLEMENT TERMS | 7 |
| IV. THE STANDARDS FOR PRELIMINARY APPROVAL OF A DERIVATIVE SETTLEMENT | 18 |
| V. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND ULTIMATELY FINALLY APPROVED AFTER NOTICE TO MCAFEE SHAREHOLDERS | 19 |
| VI. PROPOSED SCHEDULE OF EVENTS | 24 |
| VII. CONCLUSION | 25 |

# TABLE OF AUTHORITIES

Page

**CASES**

Alaska Hotel & Rest. Employees Pension Trust Fund v. Sehat Sutardja,
    No. C-06-03894-RMW, slip op. (N.D. Cal. Aug. 17, 2006)..................................................23

City of Pontiac Gen. Employees' Ret. Sys. v. Langone,
    No. 2006-cv-122302, slip op. (Fulton County Ga. June 10, 2008)....................................24

Cohn v. Nelson,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................................................18, 21

Ellis v. Naval Air Rework Facility,
    87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981)..................................19

Esther Sadowsky Testamentary Trust v. Brendsel,
    No. MDL 1584, slip op. (S.D.N.Y. Jan. 8, 2007)................................................................24

Hensley v. Eckerhart,
    461 U.S. 424, 103 S. Ct. 1933 (1983)..................................................................................23

In re Activision, Inc. S'holder Derivative Litig.,
    No. CV-06-04771-MRP, slip op. (C.D. Cal. July 21, 2008)..................................20, 23, 24

In re Activision, Inc. S'holder Derivative Litig.,
    No. CV-06-04771-MRP(JTLx), slip op. (C.D. Cal. May 13, 2008).....................................25

In re Apollo Group, Inc. Sec. Litig.,
    No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
    (D. Ariz. Aug. 4, 2008).........................................................................................................22

In re Apple Computer, Inc., Derivative Litig.,
    No. CV-06-04128-JF, slip op. (N.D. Cal. Nov. 2, 2006)......................................................23

In re Apple Inc. Derivative Litig.,
    No. C-06-04128-JF, slip op. (N.D. Cal. Sept. 8, 2008).......................................................25

In re BP P.L.C. Derivative Litig.,
    No. 3AN-06-11929CL, slip op.
    (3d Judicial Dist. Anchorage Alaska May 7, 2008)............................................................24

In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
    55 F.3d 768 (3d Cir. 1995)..................................................................................................18

In re Jiffy Lube Sec. Litig.,
    927 F.2d 155 (4th Cir. 1991)...............................................................................................21

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND P&A'S IN SUPPORT THEREOF - 5:06-cv-03484-JF — - ii -

|   |   | Page |
|---|---|---|

*In re Juniper Networks Derivative Litig.*,
    No. 5:06-cv-03396-JW, slip op. (N.D. Cal. Sept. 8, 2008) ............................................. 20, 23, 25

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................................ 22

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................................ 24

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................. 19, 22, 23

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................................ 19

*Wiener v. Roth*,
    791 F.2d 661 (8th Cir. 1986) .............................................................................................. 18

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) .................................................................................................. 21

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) .................................................................................................................................. 3
    §78n(a) ................................................................................................................................. 3
    §78t(a) .................................................................................................................................. 3

California Corporations Code
    §25402 .................................................................................................................................. 3
    §25502.5 ............................................................................................................................... 3

Federal Rules of Civil Procedure
    Rule 9(b) ............................................................................................................................... 4
    Rule 23(e) ........................................................................................................................... 20
    Rule 23.1 ............................................................................................................................ 18
    Rule 23.1(c) ....................................................................................................................... 18

**SECONDARY AUTHORITIES**

Manual for Complex Litigation
    §30.41 (3d ed. 1995) .......................................................................................................... 20

1 TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2     PLEASE TAKE NOTICE that on October 3, 2008, at 9:00 a.m., or as soon thereafter as
3 counsel may be heard, Federal Plaintiffs, Heavy & General Laborers' Locals 472 & 172 Pension &
4 Annuity Funds and Kenneth Dossett, will move before the Honorable Jeremy Fogel, United States
5 District Court Judge, to grant preliminary approval of the Settlement set forth in the Stipulation of
6 Settlement ("Stipulation"),[1] and submitted herewith. Federal Plaintiffs' motion is based on the
7 attached memorandum of points and authorities in support of motion for preliminary approval of
8 derivative settlement, the Stipulation, and such additional evidence or argument as may be required
9 by the Court.

10 **MEMORANDUM OF POINTS AND AUTHORITIES**
11 **I.    PRELIMINARY STATEMENT**

12     This memorandum is submitted by Federal Plaintiffs in support of approval of the settlement
13 ("Settlement") of the derivative claims brought on behalf of McAfee, Inc. ("McAfee" or the
14 "Company") against certain of its current and former officers and directors. The terms of the
15 Settlement are set forth in the Stipulation, submitted herewith. The Settlement resolves the
16 derivative claims pending in this Court as well as in a consolidated derivative action pending in the
17 Santa Clara Superior Court, *In re McAfee, Inc. Derivative Litigation*, No. 1:06-CV-064854 ("State
18 Action") (together, the "Actions"). With approximately $30 million in financial benefits to the
19 Company, this Settlement represents an excellent result. This Settlement is the result of extensive,
20 arm's-length negotiations between the parties overseen by retired United States District Judge
21 Layn R. Phillips ("Mediator"), and is unquestionably fair, reasonable and adequate, and deserves
22 preliminary approval.

23     The Settlement is comprised of several elements, each of which is a substantial benefit to
24 McAfee, on whose behalf these Actions were brought. First, McAfee shall adopt a series of
25 significant industry-leading corporate governance enhancements. These changes are not only

---

[1] All capitalized terms not herein defined shall have the same meaning as set forth in the Stipulation.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE
SETTLEMENT AND P&A'S IN SUPPORT THEREOF - 5:06-cv-03484-JF      - 1 -

1. specifically designed to address the governance shortcomings that contributed to the climate that
2. gave rise to the option backdating alleged in the Actions, but also significantly strengthen McAfee's
3. corporate practices and internal controls generally, which provide substantial and lasting value to
4. McAfee and its shareholders. For example, the Settlement establishes proper procedures for the
5. granting of stock options (which are directly responsive to the allegations of backdating at McAfee)
6. and measures designed to ensure that such conduct does not happen again. Also, the Settlement calls
7. for the implementation of enhanced internal controls and increased levels of independent oversight
8. including shareholder participation in the nomination process of independent directors to the Board;
9. a Company-sponsored resolution calling for declassification of the McAfee Board; the adoption of
10. majority voting for directors; new directors stock ownership guidelines and education requirements;
11. a policy regarding forfeiture of bonuses and profits from stock sales (a compensation "clawback"
12. provision); enhanced director independence standards; and improved insider trading controls.

13. In addition, the Settlement includes a direct financial benefit to McAfee with an intrinsic
14. value of approximately $30 million, based on the freeze and cancellation of approximately 1,729,792
15. vested, in-the-money options held by certain defendants. The Settlement further provides for the
16. assignment to McAfee of claims against defendants George Samenuk ("Samenuk"), Kent Roberts
17. ("Roberts") and Kevin M. Weiss ("Weiss") which will not be released and may be pursued by
18. McAfee, and thus may yield further value for the Company.

19. In sum, the Settlement confers substantial benefits upon McAfee and its shareholders and is
20. an excellent resolution for McAfee of a case of substantial complexity. As a result of the
21. comprehensive benefits obtained in the Settlement, McAfee and its shareholders are positioned to
22. reap the long-term benefits of strong corporate governance by virtue of these new robust processes,
23. and the Company has recouped substantial monetary value to compensate the Company for the loss
24. of value caused by the manipulation of historical stock option grants to McAfee insiders.

25. After negotiation of the material terms of the Settlement, Plaintiffs and McAfee, with the
26. assistance of Judge Phillips negotiated the amount of attorneys' fees that McAfee would pay
27. Plaintiffs' Counsel. As a result of those arm's-length negotiations, McAfee, via its Board of
28.

Directors, has agreed to pay a total of $13.75 million to Plaintiffs' Counsel in both Actions in recognition of the substantial benefits conferred upon by the Company by Plaintiffs' Counsel.

Federal Plaintiffs ask the Court to enter the [Proposed] Order Preliminarily Approving Derivative Settlement and Providing for Notice, which provides for: (a) granting preliminary approval of the Settlement, (b) directing that notice be given to McAfee shareholders, and (c) scheduling a hearing at which the Court will consider final approval of the Settlement, including the agreed-to amount of Plaintiffs' Counsel's attorneys' fees and expenses. In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Settlement should be provided to McAfee shareholders and that a hearing be scheduled for final settlement approval. As discussed in detail herein, the Settlement easily meets this standard and therefore the Court should preliminarily approve the Settlement.

## II.     THE LITIGATION

### A.     Initiation of the Federal Action

On May 31, 2006 and thereafter, several shareholder derivative actions were filed in or transferred to this Court on behalf of McAfee (the "Federal Action"). The actions were consolidated, and lead plaintiffs and co-lead counsel were appointed pursuant to an order dated July 13, 2006.

Federal Plaintiffs asserted claims on behalf of McAfee against several current and former directors, officers and employees of the Company, claiming, against some or all defendants: violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"); §14(a) of the Exchange Act; breach of fiduciary duties and aiding and abetting breach of fiduciary duty; corporate waste, gross mismanagement; unjust enrichment, abuse of control; insider trading and misappropriation of information; violation of California Corporations Code §§25402 and 25502.5; rescission and for an accounting. The Federal Plaintiffs alleged that McAfee's top insiders caused the Company to issue false and misleading financial results and other Securities and Exchange Commission ("SEC") reports which omitted the fact that they were granting themselves and others excessive, unlawful compensation via the grant of in-the-money stock option awards, in violation of

the Company's shareholder-approved stock option plans. The Federal Plaintiffs further alleged that this misconduct caused severe harm to McAfee, including government investigations, potential civil penalties and/or criminal prosecution.

On July 27, 2006, McAfee announced results of the internal review conducted by a Special Committee of the Board ("Special Committee") into the Company's historical stock option granting practices, admitting that stock options had been backdated. McAfee not only announced that it would restate the Company's previously reported financial results, but that the Company's financial statements should no longer be relied upon. McAfee further announced that it would be required to restate its financial statements on Forms 10-K for fiscal years 2002-2005 and for the first quarter of fiscal 2006. On December 21, 2007, the Company filed its Form 10-K for 2006 announcing the results of the Special Committee's investigation and $137.4 million non-cash restatement.

On September 28, 2006, the Federal Plaintiffs filed their First Amended Consolidated Verified Shareholder Derivative Complaint (the "Complaint"). Subsequently, the Complaint asserted 14 claims for violations of the federal securities and state corporation laws, alleging violations between 1996 and 2006 that damaged McAfee. It identified allegedly backdated stock option awards and numerous false and misleading financial statements and proxy statements issued by defendants and detailed each defendant's role in the granting of backdating options, including the Compensation Committee members' knowledge of the backdating at McAfee.

On January 22, 2007, McAfee filed a motion to dismiss the Complaint. The motions argued that dismissal was proper because, among other things, the Federal Plaintiffs had failed to properly plead that a pre-suit demand on McAfee's Board of Directors would have been futile and was, therefore, excused.

In response, Federal Plaintiffs commenced preparation of a detailed opposition to the motion to dismiss. Based on the applicable law, Federal Plaintiffs intended to show that a pre-suit demand on the McAfee Board was futile; the Complaint pleaded backdating with sufficient particularity; and stated facts sufficient to overcome the business judgment rule. Moreover, Federal Plaintiffs intended to demonstrate that their federal and state claims were actionable, timely and not time-barred, and that the Company had suffered damages as a result of the alleged misconduct. However, before

filing the opposition, and to facilitate the parties' ongoing settlement discussions, the parties to the Federal Action requested that that Court continue the deadline for filing Federal Plaintiffs' opposition to and continuing the hearing on McAfee's motion to dismiss. The Court agreed to continue the briefing and hearing from time-to-time thereafter, and ultimately on October 9, 2007, stayed the Federal Action pending a mediation scheduled for December 11, 2007, before the Honorable Layn R. Phillips, a retired United States District Judge with substantial experience in mediating complex cases.

### B. Initiation of the State Action

On June 2, 2006 and thereafter, three shareholder derivative actions were filed in the Superior Court of the State of California, County of Santa Clara (the "State Court") on behalf of McAfee against certain of its directors and officers asserting claims under California and Delaware law for alleged backdating of stock options and granting of options in violation of shareholder approved stock option plans (the "State Action").

On September 18, 2006, the State Court consolidated all three of the state derivative actions as *In re McAfee, Inc. Derivative Litigation*, No. 1:06-CV-064854, appointed Fred Greenberg and Natalie Gordon as lead plaintiffs and appointed Robbins Umeda & Fink LLP, Gardy & Notis LLP and Faruqi and Faruqi LLP as co-lead counsel for the State Plaintiffs.

On December 8, 2006, the State Plaintiffs filed a First Amended Consolidated Verified Derivative Shareholder Derivative Complaint (the "State Complaint"). The State Complaint alleged a pattern of backdating stock option grants at McAfee, that the McAfee Board breached its fiduciary duties by issuing stock options with exercise prices contrary to the operative stock option plans in effect at the time of the issuance as well as McAfee's violations of Generally Accepted Accounting Principles, SEC rules and regulations, and claims against the individual defendants for insider trading.

On June 26, 2006, McAfee filed a motion to dismiss the State Action based on the pendency of the first-filed Federal Action. On January 9, 2007, the State Plaintiffs submitted a substantive opposition to the motion. Following oral argument, on September 18, 2006, the State Court, the

Honorable James P. Kleinberg presiding, denied the motion to dismiss but stayed the State Action in favor of the Federal Action.

### C. The Settlement Negotiations

Beginning in early 2007, the parties to the Federal Action agreed to commence formal settlement negotiations. Between February 2007 and December 2007, counsel for Federal Plaintiffs and McAfee engaged in extensive arm's-length negotiations over the terms of a resolution, including corporate governance reform measures to be adopted by the Company as part of any resolution of the Federal Action. Counsel for Federal Plaintiffs, McAfee and the Special Committee also engaged in extensive discussions concerning the findings of the Special Committee's investigation. Moreover, in furtherance of their settlement negotiations, Plaintiffs, McAfee and the Special Committee engaged in the exchange of certain information necessary to evaluate the parties' respective claims and defenses.

The parties engaged in extensive negotiations over several months regarding a potential settlement of the Actions. These negotiations included, among other things, the amount of financial contributions by certain individual defendants, as well as numerous corporate governance reforms, including, among other things, procedures for consideration of shareholder-nominated director candidates; board compositions, structure and practices; new director stock ownership and education requirements; executive compensation policies and procedures; insider trading controls; and proper stock option granting procedures.

On December 11, 2007, the parties to the Actions conducted confidential mediation sessions before the Judge Phillips. Attending the mediation session were counsel for Plaintiffs in the Actions, defendants Samenuk, Roberts, Weiss and certain other defendants, McAfee, and the Special Committee. In the course of those confidential settlement discussions, counsel for McAfee continued the discussion with Plaintiffs' Counsel of the Special Committee's investigation and its findings and conclusions pursuant thereto. Plaintiffs' Counsel also obtained from McAfee documents relevant to the parties' dispute.

## III. THE SETTLEMENT TERMS

The Settlement obtained by Plaintiffs in the Actions is an excellent result, reached after extensive, arm's-length negotiations overseen by Judge Phillips. Pursuant to the Settlement, McAfee will obtain a direct financial benefit of approximately $30 million as a result of the freeze and cancellation of approximately 1,729,792 vested, in-the-money McAfee stock options held by certain defendants. *See* Stipulation, ¶3.1. In addition, and just as significant, Plaintiffs successfully negotiated numerous reforms targeted not only at restructuring the Company's option granting practices to address many of the root causes which led to the issues alleged in the Actions, but also at implementing significant measures to strengthen McAfee's corporate governance generally, which will yield positive changes in many areas of McAfee's operations and will have long-lasting effects on McAfee that go far beyond its executive compensation practices.[2] In sum, the reforms detailed below and in the Stipulation confer a substantial benefit on McAfee and its shareholders by: (1) eliminating the possibility that stock options will be backdated in the future; and (2) even more importantly, making McAfee's Board members more effective representatives of shareholders.[3]

### A. Compensation Practices

#### 1. Policies and Procedures

(a) The Board of Directors ("Board") or the Compensation Committee of the Board shall maintain a reasonable and responsible set of assumptions, policies and procedures for determining Section 16 executive officer compensation (*e.g.*, Company compensation levels should be compared to similar-sized businesses in similar industries or with similar operating profiles).

---

[2] In addition, Plaintiffs have assigned to McAfee claims against defendant Samenuk, Roberts and Weiss, which will not be released and may be pursed by McAfee in accordance with ¶3.1(d) of the Stipulation.

[3] While not detailed below, the Settlement provides for corporate governance reforms related to McAfee's accounting practices and procedures, corporate ethics and legal compliance, as well as a requirement that the Company's CFO provide financial reports at each Board meeting. *See* Stipulation ¶3.1(e)(I), (J), (L) and (O).

        (b)    Transparent, objective measures for Section 16 executive officer compensation shall be maintained for all cash variable and non-cash variable compensation, including bonuses, stock options, restricted share grants and benefits.

        (c)    Stock option grants, restricted share grants and other forms of equity incentives made to Section 16 executive officers shall be disclosed as required by the rules and regulations promulgated under the Securities Exchange Act of 1934, as amended.

        (d)    Repricing of stock options to Section 16 executives shall be prohibited, absent prior specific shareholder approval unless necessary to correct any incorrectly dated grants or in connection with any tender offer for mispriced options.

        (e)    The Compensation Committee shall set, in writing, annual performance goals for each Section 16 executive officer of the Company in collaboration with the CEO. The Compensation Committee shall, in collaboration with the CEO (except with respect to the CEO), at least annually evaluate each executive officer's performance against such goals and recommend compensation (including cash bonuses, stock options, restricted shares, performance shares, or other performance-based compensation) in view of whether the goals have been achieved.

        (f)    At least once per year for the next three years the Compensation Committee shall select and retain an independent compensation consultant to conduct a comparative study of the Company's Section 16 executive officer compensation policies, practices, and procedures relative to other public companies and prepare and submit a report to the Compensation Committee.

        (g)    Unless otherwise necessary to appropriately staff board committees, no more than two directors who serve on the Compensation Committee shall simultaneously serve on the Audit Committee.

        (h)    No director shall serve on the Compensation Committee for more than five consecutive years (commencing in 2007 and counting forward).

**Stock Option Plans and Agreements**

        (a)    All stock option agreements shall clearly define the exercise price, the grant date and the exercise price of option grants. Except for the Company's employee stock purchase plan, in no event shall the exercise price of a stock option be determined by reference to the fair

market value of the Company's stock on a day other than the grant date of the award. The fair market value of the Company's stock on an option grant date shall be the closing price for a share of the Company's common stock on such day as reported on the New York Stock Exchange ("NYSE") (or any such other nationally recognized exchange on which the Company's common stock may be listed). If a grant is made on a date the NYSE (or such other exchange) is closed, then the closing price of the last trading day will be used.

(b) The Compensation Committee shall maintain a policy to the effect that, and all subsequent stock option plans shall include the following phrase, whether subject to stockholder approval or not: "The date of grant of an option shall, for all purposes, be the date on which the Board or Compensation Committee makes the determination granting such option or, in the event that the Compensation Committee meeting takes place during a period in which the trading window is closed, on such future date as the Board specifies at that time (*e.g.*, three days after the Company's next public earnings announcement). Notice of the determination shall be given to each individual to whom an option is so granted promptly but in no event more than three weeks after the date of such grant. Determination shall be defined as including at a minimum, the number of options granted to each individual and the terms of such options."

(c) The Company's stock option plans (excluding any employee stock purchase plan awards or any stock options granted pursuant to an agreed-to exchange ratio in an acquisition transaction) shall not permit the granting of stock options at below fair market value on the date of grant.

(d) The Company shall maintain appropriate documentation for proper disclosure and accounting, and shall comply with applicable legal requirements for accounting and disclosure of equity incentive compensation.

**B. Granting of Stock Option Awards**

(a) Authority to grant stock option awards shall be limited to the full Board or the Compensation Committee and shall not be delegated to any other person or body.

...

    (i)  Both the full Board and the Compensation Committee shall be comprised of an independent majority meeting the independence standards as required by the Securities and Exchange Commission ("SEC") and the NYSE, as applicable.

    (ii)  To the extent that the rules of the NYSE (or such other exchange, if applicable) require specific expertise for Compensation Committee members, the Company shall comply with such rules.

  (b)  All grants shall be made only at a meeting of the Compensation Committee or the Company's Board and not by unanimous written consent. Corporate counsel shall attend any and all meetings where options are granted and shall promptly prepare minutes of the meeting.

  (c)  periodically, and at least once annually, the independent members of the Board of Directors shall review the actions of the Compensation Committee to monitor compliance with this Corporate Governance reform.

  (d)  The body authorized to grant stock options shall be specified in the Compensation Committee Charter and any new or subsequent equity incentive plan, whether subject to stockholder approval or not.

  (e)  Written documentation identifying grantees, amounts, and prices of all stock options and equity awards granted on a particular date shall be complete on the date of grant and recorded in minutes of the Compensation Committee prepared by counsel promptly following the date of grant and shall be transmitted to the Company's legal and accounting departments as soon thereafter as is reasonably practicable (but, in any case, within three weeks of the Compensation Committee action).

  (f)  The Company shall comply with the SEC's requirements for specific disclosure of grants of equity incentives to Section 16 executive officers.

  (g)  The Company shall maintain all records relating to all stock option grants until at least six years after the expiration of the pertinent stock options.

C. **Timing of Option Grants**

(a) Stock options granted to all officers, directors, consultants and employees shall be granted only on regularly scheduled dates, which shall be set by the Compensation Committee.

(b) The Compensation Committee shall maintain an equity incentive policy pursuant to which the Compensation Committee shall generally make grants quarterly at meetings of the Compensation Committee, with such grants to become effective on the date of the meeting or promptly upon the opening of trading windows in the event that the Compensation Committee meeting occurs during a period in which the trading window is closed.

(c) Exceptions to Sections IV.C(a) and IV.C(b) above shall be stock options awarded in connection with the hiring of a new employee and instances in which the Board or Compensation Committee determines that it is in the best interests of the Company to grant an equity award outside of a regularly scheduled meeting (*e.g.*, equity awards that the Board or Compensation Committee believes are necessary for employee retention; equity awards in connection with acquisitions or similar transactions).

(d) The grant date shall be the same date the Board or the Compensation Committee takes action to grant the option or, in the event that the Compensation Committee meeting occurs during a period in which the trading window is closed, on such future date as the Board specifies at that time (*e.g.*, three days after the Company's next public earnings announcement).

(e) Section 16 executive officers shall be prohibited from determining the grant date of any stock option award.

**Shareholder-Nominated Director**

D. **Nomination Procedures**

(a) The Board shall establish a procedure, to be conducted by the Governance and Nominations Committee of the Board, to elicit, receive and consider nominations for the Board from each individual or entity holding more than five percent of the Company's common stock.

1     (b)    The procedure for identifying and nominating these directors shall be as
2 detailed below:

3     (i)    The Company's website will provide information regarding how each
4 individual or entity holding more than five percent of the Company's common stock may contact the
5 Secretary of the Company, who, after qualifying the communication, shall promptly forward the
6 name(s) of candidates for the Board from such shareholder(s) to the Governance and Nominations
7 Committee.

8     (ii)   The Governance and Nominations Committee will annually contact
9 shareholders which own greater than five percent of the Company's outstanding common stock (as
10 evidenced by Schedule 13D or 13G filings as of a date certain prior to the commencement of the
11 annual process of eliciting and/or receiving shareholder recommendations for candidates for the
12 Board). The Nominations and Governance Committee shall consult with the Plaintiffs or their
13 representatives in connection with the initial preparation and description of this process.

14     (iii)  An appropriate review, including background information and
15 interviews of prospective candidates, will be conducted and qualified candidates will be sent to the
16 Governance and Nominations Committee for review.

17     (iv)   The Governance and Nominations Committee shall consider in good
18 faith any potential director recommended pursuant to the foregoing procedure.

19     (c)    At least annually, the Nominations and Governance Committee will discuss,
20 with five percent or greater shareholders which recommended candidates, the nomination process
21 and why recommended candidates were included or not included in the Company's slate of
22 nominated directors.

23     (d)    At the Company's annual meeting for 2009, the Company shall submit a
24 proposal to its shareholders requesting approval of an amendment to the Company's certificate of
25 incorporation to gradually eliminate the current staggered Board of Directors, such that the Board of
26 Directors shall be declassified over three years.

27
28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE
SETTLEMENT AND P&A'S IN SUPPORT THEREOF - 5:06-cv-03484-JF                        - 12 -