**Exhibit R**
**Part 1**



| SAN JOSE | 80 North First Street |
| Los Angeles | San Jose, CA 95113 |
| New York | Telephone (408) 287-6262 |
| San Francisco | Facsimile (408) 918-4501 |
| Redwood City | www.ropers.com |
| Boston | |

Michael J. Ioannou
(408) 947-4802

mioannou@rmkb.com

September 17, 2008

**Via Efiling**

The Honorable James Ware
U.S. District Court
Northern District of California
280 S. First Street
San Jose, CA 95113

     Re:    In Re Maxim Integrated Products, Inc. Derivative Litigation
           Case No. C 06-3344 JW

Dear Judge Ware:

    Nominal Defendant Maxim Integrated Products, Inc. wishes to advise Your Honor of the status of the Delaware action, *Ryan, et al. v. Gifford, et al.*, Court of Chancery, State of Delaware, County of New Castle, Case No. 2213-CC.

    A Stipulation of Compromise and Settlement has been entered into among all parties in the *Ryan* case. The parties are waiting for the Delaware Chancery Court to issue a scheduling order, approve the notice to shareholders, and to set the matter for a settlement approval hearing for November 2008. Attached to this letter is a courtesy copy of the Stipulation of Compromise and Settlement filed in the *Ryan* case.

                Sincerely,

                ROPERS, MAJESKI, KOHN & BENTLEY

                Michael J. Ioannou

MJI/nwb

Attachment as indicated

Cc: All counsel (via efiling)

EFiled: Sep 16 2008 6:27PM EDT
Transaction ID 21521556
Case No. 2213-CC

ROSENTHAL, MONHAIT & GODDESS, P. A.
ATTORNEYS AT LAW
SUITE 1401, 919 MARKET STREET
P. O. BOX 1070
WILMINGTON, DELAWARE 19899-1070

JOSEPH A. ROSENTHAL
NORMAN M. MONHAIT
JEFFREY S. GODDESS
CARMELLA P. KEENER
EDWARD B. ROSENTHAL
JESSICA ZELDIN
P. BRADFORD DELEEUW

TELEPHONE (302) 656-4433
FACSIMILE (302) 658-7567

September 16, 2008

**VIA ELECTRONIC FILING**

The Honorable William B. Chandler, III
Court of Chancery
Sussex County Courthouse
34 The Circle
Georgetown, Delaware 19947

Re: **Ryan and Conrad v. John H. Gifford, et al.**
**Del. Ch., Civil Action No. 2213-CC**

Dear Chancellor Chandler:

The parties have today filed a Stipulation of Compromise and Settlement setting forth the terms of the proposed resolution of this action. If these papers meet with the Court's approval, we respectfully request that the Court schedule a hearing on the proposed settlement in mid-November 2008. If Ms. Greenly will provide me with dates available on the Court's calendar, I will be glad to communicate with other counsel to determine a mutually agreeable time for the hearing.

Counsel are of course available should Your Honor have any questions.

Respectfully,

Norman M. Monhait (#1040)

NMM:mst

The Honorable William B. Chandler, III
September 16, 2008
Page 2

**All ccs by electronic filing**

cc:   Peter J. Walsh, Jr., Esquire               Kevin G. Abrams, Esquire
       "J" Jackson Shrum, Esquire              Edward F. Haber, Esquire
       Gregory P. Williams, Esquire          Clinton A. Krislov, Esquire

EFiled: Sep 16 2008 6:27PM EDT
Transaction ID 21521556
Case No. 2213-CC

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

WALTER E. RYAN, JR. and DONNA
CONRAD, In the right of and for the
benefit of MAXIM INTEGRATED
PRODUCTS, Inc.,
          Plaintiffs,

v.

JOHN F. GIFFORD, CARL W. JASPER,
TUNC DOLUCA, MICHAEL J. BYRD,
JAMES R. BERGMAN, B. KIPLING
HAGOPIAN, A.R. FRANK WAZZAN, ERIC
P. KARROS, and M.D. SAMPELS,

          Defendants,

and

MAXIM INTEGRATED PRODUCTS, Inc.,

          Nominal Defendant.

Civil Action No. 2213-CC

## STIPULATION OF COMPROMISE AND SETTLEMENT

This Stipulation of Compromise and Settlement ("Stipulation") is made and

entered into as of September 16, 2008. The parties to this litigation (the "Parties"), by

and through their undersigned attorneys, have reached an agreement for the settlement of

the matter entitled Walter E. Ryan, Jr., and Donna Conrad, in the right of and for the

benefit of Maxim Integrated Products, Inc. v. John F. Gifford, et al., filed in the Court of

Chancery of the State of Delaware (the "Court"), Civil Action No. 2213-CC, (hereinafter

the "Action") on the terms set forth below and subject to Court approval pursuant to

Court of Chancery Rule 23.1. This Stipulation is intended to fully, finally, and forever

resolve, discharge and settle all claims in the Action.

1

The Parties to this settlement are:

1. Plaintiffs Walter E. Ryan, Jr. ("Ryan") and Donna Conrad ("Conrad") (collectively, the "Plaintiffs");

2. Individual Defendants:

(a) John F. Gifford ("Gifford");

(b) Carl W. Jasper ("Jasper");

(c) Tunc Doluca ("Doluca"), Michael J. Byrd ("Byrd"), James R. Bergman ("Bergman"), B. Kipling Hagopian ("Hagopian"), A.R. Frank Wazzan ("Wazzan"), Eric P. Karros ("Karros"), and M.D. Sampels ("Sampels") (collectively, the "Director Defendants," and together with Gifford and Jasper, the "Individual Defendants"); and

3. Nominal Defendant Maxim Integrated Products, Inc., a Delaware corporation ("Maxim" or "Nominal Defendant," and together with the Individual Defendants, the "Defendants").

WHEREAS:

A. On June 12, 2006, Ryan filed a complaint in the Court derivatively for Maxim's benefit against defendants Gifford, Bergman, Hagopian, Wazzan, Karros, and Sampels.

B. Other Derivative Lawsuits. In addition to this Action, there are currently six other shareholder derivative actions on behalf of Maxim pending in state and federal courts in California (collectively, the "California Litigations"):

(i) four federal derivative actions consolidated under the caption *In Re Maxim Integrated Products, Inc. Derivative Litigation*, United States District Court, Northern District of California, San Jose Division, Case No. 5:06-

2

cv-3344 JW (consolidating *McKinney v. Beck, et al.*, United States District Court, Northern District of California, San Jose Division, No. C-06-3344; *Horkay v. Beck, et al.*, United States District Court, Northern District of California, San Jose Division, No. C-06-3395; *City of Pontiac Policemen's and Firemen's Retirement System v. Gifford, et al.*, United States District Court, Northern District of California, San Jose Division, No. C-06-3754; and *Corey v. Gifford, et al.*, United States District Court, Northern District of California, San Jose Division, No. C-06-3755); and

(ii) two state court derivative actions: *Louisiana Sheriffs' Pension Relief Fund v. Gifford, et al.*, Santa Clara County Superior Court in the State of California, Case No. 107CV065626; and *Beauchamp v. Doluca, et al.*, Santa Clara County Superior Court in the State of California, Case No. 107CV077990.

C.    In June 2006, the Securities and Exchange Commission (the "SEC") commenced an inquiry into Maxim's stock option grant practices, accounting and disclosures from 1997 through 2006 (the "SEC Proceedings"). The SEC Proceedings were subsequently resolved by separate settlements with Maxim and Gifford, but remain pending regarding Jasper.

D.    On or around June 14, 2006, Maxim created a Special Committee of Maxim's Board of Directors (the "Special Committee") to review options-related allegations, including those raised in the Action and the SEC Proceedings. The Special Committee later expanded its review to encompass all option grant practices, accounting, and disclosures from mid-1995 through 2006 (as expanded, the "Special Committee

Review"). Maxim reported the results of the Special Committee Review in a Form 8-K filed with the SEC on February 1, 2007.

     E.     On or around June 28, 2006, the Department of Justice ("DOJ") commenced an investigation into Maxim's stock options practices.

     F.     On August 2, 2006, Individual Defendants Gifford, Bergman, Hagopian, Wazzan, Karros, and Sampels filed a motion to dismiss or stay this Action, in which Maxim joined.

     G.     On February 6, 2007, the Court denied defendants' Motion to Dismiss or Stay, but dismissed without prejudice all claims arising before the April 11, 2001 date when Ryan became a Maxim shareholder.

     H.     On March 23, 2007, Ryan filed a motion for leave to amend, seeking, inter alia, to add Conrad as a plaintiff in this Action, and to add Frederick G. Beck ("Beck"), Alan Hale ("Hale"), Richard C. Hood ("Hood"), Jasper, Pirooz Parvarandeh ("Parvarandeh"), Charles G. Rigg ("Rigg") and Vijay Ullal ("Ullal"), as defendants in this Action.

     I.     On May 1, 2007, the Court granted Ryan's motion to add parties and for leave to file a First Amended Derivative Action Complaint ("Amended Complaint").

     J.     On May 7, 2007, Jasper, Beck, Hale, Hood, Parvarandeh, Rigg and Ullal moved to dismiss the Amended Complaint under Del. Ch. R. 12(b)(2) for lack of personal jurisdiction over them. On November 21, 2007, the Court determined that it lacked personal jurisdiction over Beck, Hale, Hood, Parvarandeh, Rigg and Ullal under 10 Del. C. §3114(b) and dismissed those defendants, but denied the motion as to Jasper.

K.     The Amended Complaint alleged, inter alia, that between 1997 to 2006, the Individual Defendants breached their fiduciary duties and were unjustly enriched by the granting of stock options that were misdated in various respects in contradiction of Maxim's shareholder-approved stock option plans filed with the SEC, which plans generally prohibited, with some exceptions, the granting of stock options with exercise prices less than the fair market value of Maxim's common stock, measured by the publicly traded closing price of Maxim stock on the date of the grant.

L.     Plaintiffs and their counsel, Krislov & Associates, Ltd.; Shapiro, Haber & Urmy, LLP; and Rosenthal, Monhait & Goddess, P.A. (collectively, "Plaintiffs' Counsel") continued their investigation and conducted discovery related to Maxim's stock option grant practices. Their review included, among other things: consultation with outside experts and consultants; review of information from the SEC Proceedings; review of hundreds of thousands of documents produced by Maxim, the Individual Defendants, the Special Committee's counsel, and other third parties; depositions of certain defendants and of other Maxim employees; and other discovery procedures. Plaintiffs' Counsel's review of this extensive discovery has been integral to their assessment of the claims and defenses, and to the fashioning of an appropriate settlement.

M.     In or around May 2007, the Parties began a dialogue that would eventually lead to settlement negotiations. Throughout the remainder of 2007 and into 2008, the Parties discussed the possibility of settling the Action on numerous occasions, including mediation efforts before three different mediators. A fourth mediation was scheduled for April 12, 2008, before the Honorable Daniel Weinstein (Ret.) of JAMS, a highly experienced mediator of complex disputes. After the April 12, 2008 mediation, the

Parties continued to have additional settlement discussions among themselves and with Judge Weinstein, including a further mediation on May 8, 2008, and they eventually reached agreement on the terms reflected in this Stipulation.

N.      Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Action have merit and that Plaintiffs' investigation supports the claims asserted. Plaintiffs and Plaintiffs' Counsel have taken into account the uncertain outcome and the risk of any litigation, especially in complex shareholder litigation such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Plaintiffs' Counsel also are mindful of inherent problems of proof associated with, and possible defenses to, the violations asserted in the Action. In addition, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Individual Defendants through trial and appeals. Based upon these considerations, among others, and having been informed by the extensive discovery, together with legal and expert analyses, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of the Stipulation confer substantial benefits upon and are in the best interests of Maxim, and all record and beneficial owners of Maxim common stock as of the date of this Stipulation ("Current Maxim Stockholders").

O.      This Stipulation shall not be construed or deemed to be evidence of, or an admission or concession on the part of any Party with respect to the validity or infirmity of any claim of, any fault or liability or wrongdoing or damage whatsoever, or of any and all defenses asserted in the Action or any related derivative or class action involving or in any way relating to Maxim's stock option practices or related issues. Defendants have

6

denied and continue to deny that they have committed any act or omission giving rise to any breach of fiduciary duty, liability, and/or violation of law, and state that they are entering into this Stipulation to eliminate the burden and expense of further litigation.

P.    The Parties acknowledge that the Action is being voluntarily settled with each Party advised by counsel, and believe that the terms of the Settlement are fair, adequate, reasonable and in the best interests of Maxim.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, BY AND AMONG THE PARTIES TO THIS STIPULATION, subject to the approval of the Court pursuant to Court of Chancery Rule 23.1, that all Released Claims (as defined in paragraph 1.13 below) shall be and hereby are compromised, settled, discontinued and dismissed with prejudice and without costs (except as defined herein), as to all Released Persons (as defined in paragraph 1.14 below), including Nominal Defendant Maxim, upon the following terms and conditions:**

## I.    DEFINITIONS

1.    In addition to the terms defined above, the following additional terms shall have the meanings specified below:

1.1    "California Dismissals" means the orders dismissing each of the California Litigations with prejudice.

1.2    The "California Dismissal Date" shall be the date the last of the California Dismissals become Final.

1.3    "Class Action" means the pending class action lawsuit currently entitled, *Allan Query v. Maxim Integrated Products, Inc., et al.,* United States District Court, Northern District of California, San Jose Division, Case No. C-08-00832 PVT, and any other class action(s) arising out of or relating to Maxim's options grant practices, accounting, or disclosures.

1.4    "Complaint" means the Amended Complaint and all other complaints filed in the Action.

1.5    "DOJ Investigation" means the investigation by the DOJ referenced in
paragraph E above, but does not include any further additional investigation commenced
or separate litigation (if any) filed, by the DOJ after the date of this Stipulation.

1.6    "Effective Date" means the date the Judgment, which approves in all
material respects the releases provided for in the Stipulation and dismisses the Action
with prejudice, becomes Final.

1.7    "Final" means no longer subject to review upon appeal or review in
connection with a Petition for Writ of Certiorari or other similar writ, whether by
exhaustion of any possible appeal, lapse of time or otherwise.

1.8    "Indemnification" means any and all rights of Maxim, Defendants, or any
others, or arising under the written Indemnity Agreements between Maxim and certain
Defendants, including Gifford and Jasper, Maxim's by-laws, applicable law, equity or
other contract, to be indemnified and made whole comparatively, partially or completely
by the indemnifying party for any and all losses, liabilities, damages, claims, all related
costs and expenses (including legal fees and disbursements and costs and expenses of
investigation and litigation, and costs of settlement, judgment, interest, and penalties),
and all expenditures paid or payable to a third party.

1.9    "Judgment" means the Order and Final Judgment entered by the Court
dismissing this Action with prejudice, substantially in the form attached as Exhibit "C."

1.10    "Notice" means the Notice of Pendency and Settlement of Action,
substantially in the form attached as Exhibit "B."

1.11    "Person" means a natural person, individual, corporation, partnership,
limited partnership, limited liability partnership, limited liability company, association,

8

joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative, or assign of any of the foregoing.

1.12 "Related Persons" means, with respect to any Person, such Person's past or present spouse or other members of their immediate families, or any trust of which any Person is the settling party or which is for the benefit of such Person and/or member of his or her family, and each of a Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, officers, directors, employees, agents, representatives, insurers, reinsurers, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns.

1.13 "Released Claims" means any and all claims of any nature or description under state or federal law (including but not limited to claims arising under Delaware law, California law, and the federal securities laws, any rules or regulations promulgated thereunder, or otherwise), liabilities, obligations, causes of action, expenses, damages, losses, or any other matters, whether known or unknown, foreseen or unforeseeable, certain or contingent, which relate in any manner to or arise out of the allegations, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, omissions or any other matter, thing or cause whatsoever, or any series thereof, that: (1) have been or could have been asserted in the Action or any of the California Litigations; (2) were recited, described or referenced in the Action, the California Litigations, the SEC Proceedings, or the Special Committee Review; or (3) otherwise arise out of or

9

relate to Maxim's stock option practices or any matters alleged in the Complaints; provided, however, that the Released Claims shall not include the claims asserted in the Class Action, the Reserved Claims, or any claims that may arise out of a breach of the Stipulation.

1.14 "Released Persons" means each and all of the Individual Defendants, and each and all of the current and former officers, directors, and employees of Maxim, and each and all of their respective Related Persons. For the avoidance of doubt, "Released Persons" also includes all current or former officers, directors or employees of Maxim that were, are, or could have been named in this Action, the California Litigations or any related action.

1.15 "Releases" means the releases set forth in paragraphs 3.1 – 3.5 below.

1.16 "Reserved Claims" means the claims reserved under paragraph 3.3 below.

1.17 "Scheduling Order" means an order scheduling a hearing on the Settlement and approving the form of Notice and method of giving notice, substantially in the form attached hereto as Exhibit "A." ·

1.18 "SEC v. Jasper" means the action entitled *Securities and Exchange Commission v. Jasper*, Case Number CV 07 6122 filed in the Northern District of California, San Jose Division, on December 4, 2007.

1.19 "Settlement" means the settlement and compromise of the Action and related matters as provided for in this Stipulation.

1.20 "Settlement Hearing" means the hearing or hearings at which the Court will review the adequacy, fairness, and reasonableness of the Settlement, and the

appropriateness and amount of the award of Attorneys' Fee and Expense Award and the
Plaintiffs' Compensation Award (as set forth in paragraph 4.1 below).

## II.    TERMS OF SETTLEMENT

2.    Nominal Defendant Maxim will receive the following substantial benefits
in connection with the settlement of the Action, without any admission of any Defendant
of having caused any harm to Maxim:

A.    Benefits and Recoveries:

2.1    Insurance Contributions.  Within sixty (60) days after the Court enters the
Scheduling Order, Defendants shall cause Maxim's Directors & Officers insurance
carriers ("D&O Carriers") to severally pay on behalf of the Released Persons and for the
benefit of Maxim, each D&O Carriers' respective portion of Twenty-One Million Dollars
($21,000,000) (the "Insurance Contributions").  The Insurance Contributions shall be
made in accordance with a separate insurance agreement between Defendants and their
D&O Carriers (the "Insurance Agreement") and shall be deposited into an interest-
bearing escrow account with a third party escrow company pursuant to an escrow
agreement that is consistent with the terms of this Stipulation and exhibits to the
Insurance Agreement (collectively "Escrow Agreement").  The Escrow Agreement shall
provide that within five (5) business days following the receipt of a payment instruction
evidencing the occurrence of both the Judgment and the California Dismissal Date the
Escrow Agent shall distribute to Maxim the Insurance Contributions and all interest
accrued thereon from the Effective Date to the date of distribution.

2.2    Director Defendants' Contributions:

(a)    Defendants Wazzan, Bergman and Hagopian shall each make cash
contributions sufficient to remediate excess gains each such director incorrectly received

11

due to allegedly misdated stock option grants, as follows:  Differences in the amounts specified arise from the different sale prices and/or number of options attained by each such director.  Within sixty (60) days after the Court enters the Scheduling Order, (i) Wazzan shall pay a total of Two Hundred Sixty-Six Thousand, Seven Hundred and Fifty-Eight Dollars ($266,758) for the benefit of Maxim; (ii) Bergman shall pay a total of Three Hundred Seventy-Nine Thousand, Nine Hundred and Twenty-Nine Dollars ($379,929) for the benefit of Maxim; and (iii) Hagopian shall pay a total of Six Hundred Twenty-Seven Thousand, Nine Hundred and Thirty-One Dollars ($627,931) for the benefit of Maxim.  Further, within one hundred and eighty (180) days after the Court enters the Scheduling Order, Wazzan shall pay an additional total of Two Hundred and Thirty Thousand, Eight Hundred and Fifty-Five Dollars ($230,855) for the benefit of Maxim (together with all contributions listed in this paragraph, collectively, the "Director Defendants' Cash Contributions").  The Director Defendants' Cash Contributions shall be deposited into an interest-bearing escrow account pursuant to the Escrow Agreement, consistent with the terms of this Stipulation.  The Escrow Agreement shall provide that within five (5) business days following the receipt of a payment instruction evidencing the occurrence of both the Judgment and the California Dismissal Date the Escrow Agent shall distribute to Maxim the Director Defendants' Cash Contributions and all interest accrued thereon from the Effective Date to the date of distribution.

(b)    Director Defendants incorrectly received vested and unexercised stock options which allegedly were misdated and shall be repriced as indicated in the following table.  Within five (5) business days following the California Dismissal Date,

12

Wazzan's, Bergman's, and Hagopian's vested and unexercised Maxim stock options,

which allegedly were misdated, shall be repriced as follows:

| Name | Option Number | Grant Date | Original Exercise Price | Number of Shares Granted | Number of Shares Unexercised & Vested | New Exercise Price |
|------|------|------|------|------|------|------|
| Wazzan | 973342 | 4/6/2001 | $35.45 | 12,000 | 12,000 | $46.55 |
| Bergman | 12169 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Hagopian | 12170 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Wazzan | 12172 | 10/1/2001 | $34.06 | 12,000 | 12,000 | $52.33 |
| Bergman | 19047 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Hagopian | 19048 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Wazzan | 19050 | 10/9/2002 | $21.35 | 12,000 | 12,000 | $41.02 |
| Wazzan | 23364 | 6/25/2003 | $33.85 | 8,000 | 8,000 | $36.19 |

(c)     The stock options subject to re-pricing pursuant to paragraph

2.2(b) above shall not be exercised, transferred or assigned until six (6) business days

after the earlier of (i) the California Dismissal Date, or (ii) the date this Stipulation is

terminated or voided under paragraphs 8.2 – 8.5 below.

2.3     Defendant Gifford's Contributions.

(a)     Within sixty (60) days after the Court enters the Scheduling Order,

Gifford shall pay Six Million Dollars ($6,000,000) for the benefit of Maxim ("Gifford's

Cash Contribution"). Gifford's Cash Contribution shall be deposited into an interest-

bearing escrow account pursuant to the Escrow Agreement, consistent with the terms of

this Stipulation. The Escrow Agreement shall provide that within five (5) business days

following the receipt of a payment instruction evidencing the occurrence of both the

Judgment and the California Dismissal Date the Escrow Agent shall distribute to Maxim

Gifford's Cash Contribution and all interest accrued thereon from the Effective Date to

the date of distribution.

13

(b)     Within five (5) business days following the California Dismissal

Date, all of Gifford's currently vested and unexercised Maxim stock options shall be

cancelled by Maxim, as specifically identified below:

| Option Number | Grant Date | Exercise Price | Number of Shares Granted | Number of Shares Unexercised & Vested | Expiration Date |
|---|---|---|---|---|---|
| 966145 | 5/25/99 | $24.59 | 1,035,934 | 1,035,934 | 5/25/09 |
| 967543 | 5/15/00 | $57.81 | 1,729 | 1,729 | 5/15/10 |
| G971468 | 9/18/00 | $75.00 | 53,333 | 53,333 | 9/18/10 |
| I973289 | 1/30/01 | $58.13 | 1,720 | 1,720 | 1/30/11 |
| 010716 | 9/27/01 | $33.68 | 2,969 | 2,969 | 9/27/11 |
| 010717 | 9/27/01 | $33.68 | 797,031 | 567,031 | 9/27/11 |
| 016114 | 4/26/02 | $48.19 | 600,000 | 500,000 | 4/26/12 |
| 021584 | 5/12/03 | $39.82 | 800,000 | 730,000 | 5/12/13 |
| 025682 | 1/29/04 | $51.00 | 200,000 | 200,000 | 1/29/14 |

(c)     The stock options subject to cancellation pursuant to paragraph

2.3(b) above shall not be exercised, transferred or assigned until the earlier of (i) the date

they are cancelled under this Stipulation upon which such options cannot be exercised,

transferred or assigned and are extinguished, or (ii) the date this Stipulation is terminated

or voided under paragraphs 8.2 - 8.5 below. In the event any of the stock options subject

to cancellation under paragraph 2.3(b) would expire before the California Dismissal Date

(the "Expiring Options"), Gifford shall retain the right to assert a claim against Maxim,

with respect to each of such Expiring Options. Maxim reserves all rights under law and

equity to bar any such claim by Gifford including the extent and value of any claim. In

the event that Maxim accepts some or all of Gifford's claim, any monies that Maxim

agrees should be paid toward the claim shall be deposited, as soon as practicable after the

expiration of the Expiring Options, into the same interest-bearing escrow account

pursuant to the Escrow Agreement, consistent with the terms of this Stipulation, that will

14

hold Gifford's Cash Contribution, and will be distributed to Maxim pursuant to the same instructions contained in the Escrow Agreement that will govern Gifford's Cash Contribution, as described in paragraph 2.3(a) above, and will not be distributed to Gifford unless this Stipulation is terminated or voided under paragraphs 8.2- 8.5 below. In the event that Gifford's Cash Contribution is distributed to Maxim pursuant to the Escrow Agreement, all reserved claims contained in this section shall be included in paragraphs 3.1 and 3.2 and released with prejudice.

2.4    Defendant Jasper's Contributions.

(a)    Jasper has previously asserted a claim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options, or the "goodwill payment," first announced by Maxim on October 4, 2007 (the "Jasper Buy-Back Claim"). Within five (5) business days after the California Dismissal Date, Jasper will surrender, without any further action by Jasper, a portion of the Jasper Buy-Back Claim, represented by 97,363 vested, unexercised stock options that were granted to Jasper on June 17, 1998 (as a portion of Option Number 963906) and carried an exercise price of $14.0625. At such time, any claims Jasper has against Maxim concerning those 97,363 options shall be released with prejudice.

(b)    Plaintiffs, Jasper, and Maxim also acknowledge that the pendency and prosecution of the Action were substantial and material causal factors contributing to Mr. Jasper's decision to surrender voluntarily his rights to certain unvested options, restricted stock units, and other employee benefits in January 2007, which the parties agree had a value of approximately $2.5 million.

15

2.5     Any attempt to exercise, transfer or assign the stock options to be cancelled or re-priced pursuant to paragraphs 2.2(b) or 2.3(b) above, other than as provided in paragraphs 2.2(c) or 2.3(c) above, shall result in their automatic forfeiture.

2.6     In the event that Maxim common stock is affected by any stock dividend, stock split, reverse stock split, recapitalization, reorganization, merger, consolidation, split-up, spin-off, combination, repurchase or exchange of Maxim common stock, or other distribution (collectively, "Recapitalization or Reorganization") before the California Dismissal Date, the number of shares to be re-priced pursuant to paragraph 2.2(b) above and the new exercise price will be subject to a proportional adjustment to prevent dilution or amplification of the value of such re-priced shares. The number of shares to be cancelled pursuant to paragraph 2.3(b) will also be subject to proportional adjustment for any Recapitalization or Reorganization to ensure cancellation of all shares affect by or resulting from such a Recapitalization or Reorganization.

2.7     All Defendants (including Nominal Defendant Maxim) represent that Maxim and the D&O Carriers have not indemnified (or agreed to otherwise reimburse or compensate, including in the form of "make whole" payments or increases in future remuneration), Defendants Wazzan, Bergman, Hagopian or Gifford with respect to any of the above cash contributions set forth in paragraphs 2.2(a) and 2.3(a) above, and all Defendants agree that Maxim and the D&O Carriers shall not do so in the future.

2.8     In the event that any of the D&O Carriers fail to fund their Insurance Contribution as provided for in paragraph 2.1 above, then Defendants shall reasonably pursue all rights available to them against the breaching D&O Carrier under the Insurance Agreement to enforce the Settlement.

16

2.9    In the event that any of the Director Defendants, Gifford, or Jasper fail to make their contributions as provided for in paragraphs 2.2 through 2.4 above, such breaching Defendant agrees to pay Plaintiffs and Maxim, all costs and expenses of enforcing the Settlement, including, without limitation, reasonable attorneys' fees and legal expenses, incurred or paid by Plaintiffs or Maxim, to the extent permitted by law.

2.10    The interest accrued on the Insurance Contributions, the Director Defendants' Cash Contributions and Gifford's Cash Contribution starting on the date such contributions are deposited in the interest-bearing escrow account until the Effective Date will accrue for the benefit of the D&O Carriers, Wazzan, Bergman, Hagopian and Gifford in proportion to each of these parties' contributions to the escrow account. Within five (5) business days after the Effective Date, the parties to the Escrow Agreement shall jointly notify the escrow agent of the Effective Date, attaching a copy of the Judgment, and request a written investment report setting forth the accrued interest on the contributions to the escrow account until the Effective Date. Based on the amount of accrued interest, the escrow agent shall calculate the amount of accrued interest due to each contributor to the escrow account in proportion to the amount initially contributed by each contributor to the escrow account. The parties to the Escrow Agreement will then further instruct the escrow agent in writing to disburse within five (5) days of receipt of such joint instructions, to each contributor to the escrow account, its portion of the interest accrued through the Effective Date.

2.11    Maxim agrees that it shall provide Plaintiffs' Counsel with copies of all Notices or other documents or information received by Maxim pursuant to the Escrow Agreement within 24 hours of Maxim's receipt of such Notices. Maxim also agrees that

17

with respect to any actions which Maxim may take pursuant to the Escrow Agreement, that prior to taking such actions it will confer with Plaintiffs' Counsel who will in good faith agree and consent to Maxim's contemplated actions as long as such action are consistent with the terms of this Stipulation.

      B.     Corporate Governance and Therapeutic Reforms.

      2.12    In addition to the benefits and recoveries set forth in Section 2(A) above, the Company and Defendants acknowledge that the remedial measures and changes set forth in Exhibit D hereto were either specifically agreed to as part of the settlement of this action or that the pendency and prosecution of this Action was a motivating factor in their enactment.

## III.   SCOPE OF SETTLEMENT & RELEASES

      3.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all related claims as to any settling party or former party to this Action, or party that could have been named in this Action or any related action, including the California Litigations.

      3.1    Upon the Effective Date, except as provided in paragraph 3.3 and its subparagraphs below, Plaintiffs, (on their own behalf and derivatively on behalf of Maxim), Plaintiffs' Counsel, Maxim, and each and every Maxim shareholder claiming by, through, in the right of, derivatively, or on behalf of Maxim, shall and hereby do fully, finally, and forever release, relinquish, and discharge the Released Persons from any and all of the Released Claims.

      3.2    Upon the Effective Date, except as provided in paragraph 3.3 and its subparagraphs below, each of the Director Defendants, Gifford and Jasper, shall and hereby do fully, finally, and forever release, relinquish, and discharge the Plaintiffs,