**Exhibit R
Part 2**

Plaintiff's Counsel and Maxim, and their Related Persons, from any and all of the Released Claims.

3.3    Notwithstanding Paragraphs 3, 3.1 and 3.2, nothing herein is intended to or does release the following claims (the "Reserved Claims"), but without any agreement or acknowledgement of their merits or lack thereof:

3.3.1(a)    Each of Maxim, the Director Defendants, Gifford, and Jasper shall retain and reserve all of their respective claims or rights that may exist for Indemnification and/or for advancement and payment and/or reimbursement to Maxim of fees and costs arising under and pursuant to any Defendant's respective Indemnification Agreement with Maxim, Maxim's by-laws, applicable law, equity or other contract, or any entitlement to insurance coverage or insurance proceeds, and all rights to seek contribution or equitable indemnification from any Related Person, in connection with the Class Action and SEC v. Jasper, and any other litigation, matter, proceeding, or investigation (including any new, additional DOJ, Special Committee, and SEC investigations or proceedings) commenced after the date of this Stipulation; and

3.3.1(b)    Each Defendant shall retain and reserve his respective rights and claims under any Defendant's respective Indemnification Agreement with Maxim, Maxim's by-laws, applicable law, equity or other contract to an advancement of, and to be indemnified for, any remaining fees and costs reasonably incurred after the Effective Date in connection with the DOJ Investigation, the SEC Proceedings (other than SEC v. Jasper, which is addressed in paragraph 3.3.1(a) above), the California Litigations, the Special Committee Review, and any other litigation, matter, proceeding, or investigation (including any new, additional DOJ, Special Committee, and SEC investigations or

proceedings) commenced after the date of this Stipulation, with Maxim retaining and reserving all of its rights and claims under the Indemnification Agreements, Maxim's by-laws, applicable law, equity or other contract as to advancement and/or reimbursement of any such future fees and cost; provided, however, in no event shall Maxim recoup or otherwise seek reimbursement for any fees or costs advanced prior to the Effective Date to any of the Defendants in connection with the DOJ Investigation, the SEC Proceedings or the Special Committee Review except as an offset against affirmative claims by any Defendant seeking to reopen in any way Indemnification directly in connection with the DOJ Investigation, the SEC Proceedings or the Special Committee Review.

    3.3.2  Gifford's Additional Reserved Claim and Rights.

    (a)    Gifford reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options granted on October 27, 1997, or the "goodwill payment," announced by Maxim on October 4, 2007 (the "Gifford Buy-Back Claim"). Maxim continues to deny the Gifford Buy-Back Claim and reserves all available defenses at law or equity to the Gifford Buy-Back Claim. Maxim and Gifford have agreed to an alternative dispute resolution process to resolve the Gifford Buy-Back Claim. At Gifford's election, the Gifford Buy-Back Claim may be resolved either through binding arbitration or through litigation, but in no event shall Gifford withhold performance under Paragraph 2.3 of this Stipulation pending any such alternative dispute resolution, binding arbitration, or litigation.

    (b)    Gifford and Maxim reserve their respective rights as expressly provided in the Memorandum of Understanding, dated January 5, 2007 (the "MoU"), and

the Retirement Agreement, dated January 26, 2007, other than any known or unknown claims relating to (i) payment of deferred compensation (MoU at ¶ 11); (ii) payment of a bonus (MoU at ¶ 8); (iii) accelerated vesting of certain unvested stock options and restricted stock units (MoU at ¶ 6); and (iv) Maxim's alleged wrongful termination of Gifford's part-time employment agreement, which claims are hereby expressly waived and released with prejudice.

     3.3.3  Jasper's Additional Reserved Claim and Rights.

     (a)    Jasper reserves his previously asserted claim against Maxim to receive proceeds, with interest, from the offer by Maxim to buy-back certain then-outstanding and vested stock options, or the "goodwill payment," first announced by Maxim on October 4, 2007 (the "Jasper Buy-Back Claim") except as to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options as set forth in paragraph 2.4(a) above.

     (b)    Jasper and Maxim reserve their respective rights as expressly provided as part of Jasper's January 31, 2007 Severance Agreement other than any known or unknown claims relating to the 97,363 vested, unexercised Maxim stock options that were granted on June 17, 1998 and which Jasper has agreed to surrender and release with prejudice all claims related to those 97,363 options as set forth in paragraph 2.4(a) above.

     (c)    In connection with Jasper's Additional Reserved Claim as expressly excluded from the release at paragraph 3.3.3(a) and (b), Maxim continues to deny such Reserved Claim and reserves all available defenses at law or equity.

3.4     In granting the Releases herein, the Parties acknowledge that they have read California Civil Code Section 1542, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties expressly waive and relinquish all rights and benefits under Section 1542 and any law or legal principle of similar effect in any jurisdiction with respect to the release of unknown or unsuspected claims, including but not limited to Delaware law. In addition, Plaintiffs and Maxim, by operation of the Judgment, are deemed to have expressly waived and relinquished all rights and benefits under Section 1542 and any law or legal principle of similar effect in any jurisdiction with respect to the release of unknown or unsuspected claims. The Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a material and essential part of this Settlement. The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those which they now know or believe to be true with respect to the claims they have released, and agree that the releases contained in this Stipulation shall be and remain effective in all respects.

3.5     By operation of a Judgment, and upon the Effective Date, the Parties, including Maxim, agree not to institute, maintain or prosecute any and all Released Claims against any and all of the Released Persons, or any Party, or their respective attorneys, and shall be permanently and finally enjoined without the necessity of posting bond from commencing or prosecuting any actions or other proceedings asserting any or

22

all of the Released Claims against any or all of the Released Persons or any Party, or their respective attorneys, subject only to the exclusions specified herein.

## IV. ATTORNEYS' FEES AND EXPENSES

4.1    Plaintiffs' Counsel shall apply to the Court for attorneys' fees of no more than $15,000,000, plus reimbursement of expenses of no more than $500,000 incurred in the prosecution of this Action, both to be paid by Maxim (the "Attorneys' Fee and Expense Award"). Maxim retains the right to object to the amount of the Attorneys' Fee and Expense Award, but agrees to pay the Attorneys' Fee and Expense Award as allowed by the Court. Plaintiffs' Counsel will also apply to the Court for compensation not to exceed $5,000 for each Plaintiff (the "Plaintiffs' Compensation Award") to be paid from the amount awarded for the Attorneys' Fee and Expense Award.

4.2    Final resolution of the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award shall not be a precondition to the dismissal with prejudice of the Action and any application or litigation concerning the Attorneys' Fee and Expense Award or Plaintiffs' Compensation Award may be considered and resolved separately from the Settlement.

4.3    The Parties agree that the Attorneys' Fee and Expense Award will be paid by Maxim to Krislov & Associates, Ltd. and Shapiro, Haber & Urmy, LLP, as receiving agent for Plaintiffs' Counsel, within five calendar (5) days after the Settlement Fund (as defined in the Escrow Agreement) is released to Maxim under the Escrow Agreement. Except as expressly provided herein, Plaintiffs and Plaintiffs' Counsel shall bear their own fees, costs and expenses and no Defendant shall assert any claim for expenses, costs and fees against Plaintiffs or Plaintiffs' Counsel.

4.4    Except as provided herein, Defendants and their respective Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the fee allocation among Plaintiffs' Counsel.

## V.    SCHEDULING ORDER AND SETTLEMENT HEARING

5.1    Within five (5) business days after the execution of the Stipulation, the Parties shall jointly submit the Stipulation together with its related documents to the Court, and shall apply to the Court to enter the Scheduling Order, in the form attached hereto as Exhibit A.

5.2    Maxim shall be responsible for the reproduction and distribution of the Notice, in the form attached hereto as Exhibit B. No later than forty-five (45) days prior to the Settlement Hearing, Maxim shall cause the Notice to be distributed, by First-class Mail, to all persons who are record holders of common stock of Maxim at the respective addresses currently set forth in the Company's stock records. Furthermore, Maxim shall use reasonable efforts to give notice to all beneficial owners of common stock of the Company (a) by providing additional copies of the Notice to any record holder requesting the Notice for the purposes of distribution to such beneficial owners, and by (b) posting a copy of the Notice on Maxim's corporate website. All of the expenses related to the distribution of the Notice shall be paid by Maxim, whether or not the Settlement is approved.

## VI.    STANDSTILL AGREEMENT AND STAY OF PROCEEDINGS

6.1    Except as provided herein, pending the final determination of whether the Settlement should be approved, all Parties to this Action (including, Plaintiffs, Individual Defendants and Maxim) agree not to institute, commence, prosecute, continue, or in any way participate in, whether directly, representatively, individually, derivatively on behalf

24

of Maxim, or in any other capacity, any action or other proceeding asserting any Released Claims.

6.2     Within thirty (30) days after the Court enters the Scheduling Order, or as otherwise agreed with Plaintiffs' Counsel, Maxim and the Individual Defendants, shall move to stay the California Litigations, and any other non-governmental or non-regulatory litigation arising from or related to the Released Claims.  All counsel shall use their reasonable best efforts, and cooperate with each other, to secure a stay of the California Litigations.

## VII.    DISMISSAL OF ACTIONS

7.1     If the Settlement is approved by the Court, the Parties shall promptly request the Court to enter the Judgment in the form attached hereto as Exhibit C.

7.2     Within thirty (30) days after the Effective Date, or as otherwise agreed with Plaintiffs' Counsel, Maxim and the Individual Defendants shall move to dismiss with prejudice each of the California Litigations, and any other non-governmental or non-regulatory litigation arising from or related to the Released Claims, based on the doctrine of res judicata, collateral estoppel, the effect of the releases provided by this Stipulation, or any similar theory.  Maxim and the Individual Defendants shall take all necessary steps (including seeking reconsiderations and/or appeals of any contrary decisions or actions) to obtain the dismissals, with prejudice, of each of the California Litigations.

## VIII.    EFFECTIVE DATE OF SETTLEMENT, OR TERMINATION, OR VOIDABILITY

8.1     This Settlement shall become effective on the Effective Date.

8.2     In the event that the Settlement is not approved by the Court, or vacated or modified on appeal, or if the Judgment is not entered by the Court or does not become

25

Final, or if any other conditions necessary for this Settlement to become effective fail to occur, then any of the Parties may terminate the Stipulation and withdraw from the Settlement by providing written notice of such action to undersigned counsel for all of the Parties within thirty (30) calendar days after the failure of such condition, in which case, the Stipulation, including the Releases, shall be voided and all monies deposited in escrow pursuant to paragraphs 2.1, 2.2(a), 2.3(a) or 2.3(c) above shall be returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions.

8.3     If either (a) the United States District Court for the Northern District of California or the Santa Clara County Superior Court, after Maxim and the Individual Defendants have moved to dismiss each of the California Actions pursuant to paragraph 7.2 above, declines or refuses to enter the dismissal sought from it and all reasonable efforts to obtain interlocutory review reversing said order(s) are unsuccessful, or (b) any of the California Dismissals are reversed on appeal, then this Stipulation, including the Releases, may be voided by any of the Parties by providing written notice of such action within thirty (30) days of such event. If this Stipulation is voided pursuant to this paragraph, all monies deposited into escrow pursuant to paragraphs 2.1, 2.2(a), 2.3(a) and 2.3(c) above, shall be returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions, and all Parties shall be obligated to jointly move the Court to vacate the Judgment pursuant to Del. Ch. R. 60. In the event this Stipulation is voided pursuant to this paragraph, the return of monies deposited into escrow pursuant to paragraphs 2.1, 2.2(a),

26

2.3(a) and 2.3(c) shall be made pursuant to the terms of the Escrow Agreement and shall not be contingent on first obtaining relief from the Judgment.

8.4     If prior to the funding of the escrow as provided in paragraph 2.1. above, one or more D&O Carriers makes an assignment for the benefit of creditors, or if a receiver of any such party's property shall be appointed, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against any such party, then this Stipulation, including the Releases, shall be voidable at the sole option of the Plaintiffs.

8.5     In the event that the Settlement is terminated pursuant to paragraph 8.2 or voided pursuant to paragraph 8.3, and all monies deposited in escrow or otherwise for the settlement of the Action have been returned to the Party or Parties and D&O Carriers that contributed said monies, together with accrued interest attributable to their respective contributions, the Settlement and any actions taken in connection therewith shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (i) shall be without prejudice to the rights of any Party hereto; (ii) shall not be deemed to be or construed as evidence of, or an admission by any Party of any fact, matter or thing; and (iii) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in the Action or any other action or proceeding. The Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of the Stipulation, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if the Stipulation and any related orders had not been entered.

8.6    In the event this Stipulation is terminated under paragraph 8.2 or voided under paragraphs 8.3 or 8.4, paragraphs 8.2 through 8.5 shall survive.

## IX.    MISCELLANEOUS PROVISIONS

9.1    Cooperation of the Parties.  The Parties acknowledge that it is their intent to consummate this Settlement, and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2    Acknowledgment of Adequate Consideration.  The Parties acknowledge, represent and warrant to each other that the terms of the Settlement are such that each of the Parties is to receive adequate consideration in exchange for consideration given.

9.3    No Admissions.  Neither the Stipulation nor the Settlement, nor any provision contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of the validity or lack of validity of any Released Claims, or any reserved claims, or any wrongdoing or liability of the Parties or any of their Related Persons; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties or any of their Related Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may be alleged or mentioned so as to contravene clause (a) above in any litigation or other action unrelated to the enforcement of the Stipulation. Notwithstanding the foregoing, on or after the Effective Date, Maxim and any of the Individual Defendants may file the Stipulation or any judgment or order of the Court related hereto in the California Litigations, or any other action that may be brought

28

against them in order to support a defense or a counterclaim based on res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim; and on or after the date the Scheduling Order is entered, Maxim and any of the Individual Defendants may file the Stipulation of Settlement in any of the California Litigations in order to effectuate the stay(s) set forth in Paragraph 6.2 above.

9.4     Costs. Except as otherwise expressly provided herein, the Parties shall bear their own costs.

9.5     Entire Agreement. The Stipulation and all documents executed pursuant hereto constitute the entire agreement between the Parties, with respect to the Settlement of the Action and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to the Settlement of the Action.

9.6     Amendment. This Stipulation may be amended or modified only by a written instrument signed by counsel to all Parties.

9.7     Counterparts. The Stipulation may be executed in one or more counterparts, and all such counterparts together shall be deemed to be one and the same instrument.

9.8     Binding Effect. The Stipulation shall be binding upon, and inure to the benefit of all Parties, their successors and assigns. The Stipulation is not intended, and shall not be construed, to create rights in or confer benefits on any other Persons, and there shall not be any third-party beneficiaries hereto, except as expressly provided hereby with respect to such aforementioned Persons who are not Parties hereto.

9.9    Judicial Enforcement.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation and the Settlement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation and Settlement.

9.10    Choice of Law.  The Stipulation shall be governed by the laws of the State of Delaware, without regard to Delaware's conflicts of law principles.

9.11    Warranty of Authority.  Each counsel or person executing the Stipulation or any of the related documents on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.12    Waiver of Breach.  The Parties may not waive or vary any right hereunder except by an express written waiver or variation. Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right. The waiver by one Party of any breach of the Stipulation by another Party shall not be deemed a waiver of any other prior or subsequent breach of the Stipulation.

9.13    Fair Construction.  The Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it is recognized as the result of arm's length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of the Stipulation.

9.14    No Assignment of Claims.  Plaintiffs hereby represent and warrant that they have not assigned any rights, claims, or causes of action that were asserted or could

have been asserted in connection with, under or arising out of any of the claims being settled or released herein.

9.15  No Party or its counsel shall make any application for sanctions, pursuant to Rule 11 of the Court of Chancery Rules or other court rule or statute, with respect to any claims or defenses in this Action. The Defendants and Maxim will not assert that the litigation was filed in violation of Rule 11, and they agree that the litigation is being settled voluntarily by the Defendants and Maxim after consultation with competent legal counsel and after discovery into the underlying facts and strength of the derivative claims which has been integral to the fashioning of an appropriate settlement.

9.16  Press Release. Any Party may issue a press release announcing the Settlement so long as such release is consistent with the terms of this Stipulation. Any Party issuing a press release that makes reference to any other Party will give the referenced Party a courtesy copy of the portion of the press release which references that Party 48 hours in advance of the issuance of the press release. No Party is obligated to modify its press release after giving that notice.

9.17  Facsimile and Scanned Signatures. Any signature to the Stipulation, to the extent signed and delivered by means of a facsimile machine or electronically scanned and sent via email, shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of a Party to the Stipulation, any other Party to the Stipulation so executing and delivering this document by means of a facsimile machine or via email shall re-execute original forms thereof and deliver them to the requesting Party. No Party to the Stipulation shall raise the use of a facsimile

31

machine or email to deliver a signature or the fact that any signature or agreement was transmitted or communicated through the use of facsimile machine as a defense to the formation or the enforceability of the Stipulation and each such Person forever waives any such defense.

9.18    Extensions of Time. Without further order of the Court, the Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation. The Parties have caused the Stipulation to be duly executed and delivered by their counsel of record.

9.19    The following exhibits are attached hereto and incorporated herein by reference:

        (a)     Exhibit A:  Scheduling Order

        (b)     Exhibit B:  Notice

        (c)     Exhibit C: Judgment; and

        (d)     Exhibit D: Corporate Governance and Therapeutic Reforms

IT IS HEREBY AGREED by the undersigned as dated below.

Dated: _September 11_, 2008    KRISLOV & ASSOCIATES, LTD.

By _Clint Krislov_
Clinton A. Krislov
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008    SHAPIRO, HABER & URMY, LLP

By_____
Edward F. Haber
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _September 15_, 2008    ROSENTHAL, MONHAIT & GODDESS, P.A.

By _Norman M Monhait_
Norman M. Monhait (#1040)
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008    QUINN EMANUEL URQUHART OLIVER &
HEDGES LLP

By_____
John M. Potter
Attorneys for Individual Defendants James R.
Bergman, B. Kipling Hagopian, A.R. Frank
Wazzan, Michael J. Byrd, Tunc Doluca, Eric
Karros, M.D. Sampels

Dated: _____, 2008    POTTER ANDERSON & CORROON LLP

By_____
Peter J. Walsh (#2437)
Attorneys for Individual Defendants Tunc
Doluca, Michael J. Byrd, James R. Bergman,
B. Kipling Hagopian, A.R. Frank Wazzan,
Eric Karros, M.D. Sampels

33

Dated: _____, 2008    KRISLOV & ASSOCIATES, LTD.


By_____
Clinton A. Krislov
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _9/18/08_____, 2008    SHAPIRO, HABER & URMY, LLP


By_____
Edward F. Haber
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008    ROSENTHAL, MONHAIT & GODDESS, P.A.


By_____
Norman M. Monhait (#1040)
Attorneys for Plaintiffs Walter E. Ryan, Jr.,
and Donna Conrad

Dated: _____, 2008    QUINN EMANUEL URQUHART OLIVER &
HEDGES LLP


By_____
John M. Potter
Attorneys for Individual Defendants James R.
Bergman, B. Kipling Hagopian, A.R. Frank
Wazzan, Michael J. Byrd, Tunc Doluca, Eric
Karros, M.D. Sampels

Dated: _____, 2008    POTTER ANDERSON & CORROON LLP


By_____
Peter J. Walsh (#2437)
Attorneys for Individual Defendants Tunc
Doluca, Michael J. Byrd, James R. Bergman,
B. Kipling Hagopian, A.R. Frank Wazzan,
Eric Karros, M.D. Sampels

33

Dated: _____, 2008   KRISLOV & ASSOCIATES, LTD.


By_____
    Clinton A. Krislov
    Attorneys for Plaintiffs Walter E. Ryan, Jr.,
    and Donna Conrad

Dated: _____, 2008   SHAPIRO, HABER & URMY, LLP


By_____
    Edward F. Haber
    Attorneys for Plaintiffs Walter E. Ryan, Jr.,
    and Donna Conrad

Dated: _____, 2008   ROSENTHAL, MONHAIT & GODDESS, P.A.


By_____
    Norman M. Monhait (#1040)
    Attorneys for Plaintiffs Walter E. Ryan, Jr.,
    and Donna Conrad

Dated: _____, 2008   QUINN EMANUEL URQUHART OLIVER &
    HEDGES LLP


By_____
    John M. Potter
    Attorneys for Individual Defendants James R.
    Bergman, B. Kipling Hagopian, A.R. Frank
    Wazzan, Michael J. Byrd, Tunc Doluca, Eric
    Karros, M.D. Sampels

Dated: _____, 2008   POTTER ANDERSON & CORROON LLP


By_____
    Peter J. Walsh (#2437)
    Attorneys for Individual Defendants Tunc
    Doluca, Michael J. Byrd, James R. Bergman,
    B. Kipling Hagopian, A.R. Frank Wazzan,
    Eric Karros, M.D. Sampels

Dated: _____, 2008    ROPERS, MAJESKI, KOHN & BENTLEY


By_____
    Michael J. Ioannou
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _____, 2008    ARCHER & GREINER, P.C.


By_____
    "J" Jackson Shrum (#4757)
    Attorneys for Nominal Defendant Maxim
    Integrated Products, Inc.

Dated: _9_/_11_____, 2008    IRELL & MANELLA LLP


By_____
    David Siegel
    Attorneys for Defendant John F. Gifford

Dated: _____, 2008    RICHARDS, LAYTON & FINGER


By_____
    Gregory P. Williams (#2168)
    Attorneys for Defendant John F. Gifford

Dated: _____, 2008    LATHAM & WATKINS LLP


By_____
    David M. Friedman
    Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008    ABRAMS & LASTER LLP


By_____
    Kevin G. Abrams (#2375)
    Attorneys for Defendant Carl W. Jasper

34

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

                            By_____
                               Michael J. Ioannou
                               Attorneys for Nominal Defendant Maxim
                               Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

                            By_____
                               "J" Jackson Shrum (#4757)
                               Attorneys for Nominal Defendant Maxim
                               Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

                            By_____
                               David Siegel
                               Attorneys for Defendant John F. Gifford

Dated: *September 11*, 2008   RICHARDS, LAYTON & FINGER

                            By_____
                               Gregory P. Williams (#2168)
                               Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP

                            By_____
                               David M. Friedman
                               Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP

                            By_____
                               Kevin G. Abrams (#2375)
                               Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY


By_____
Michael J. Ioannou
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.


By_____
"J" Jackson Shrum (#4757)
Attorneys for Nominal Defendant Maxim
Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP


By_____
David Siegel
Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER


By_____
Gregory P. Williams (#2168)
Attorneys for Defendant John F. Gifford

Dated: ___9/15___, 2008   LATHAM & WATKINS LLP


By_____
David M. Friedman
Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP


By_____
Kevin G. Abrams (#2375)
Attorneys for Defendant Carl W. Jasper

34

Dated: _September 16_, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

By _Michael J. Ioannou_
     Michael J. Ioannou
     Attorneys for Nominal Defendant Maxim
     Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

By_____
     "J" Jackson Shrum (#4757)
     Attorneys for Nominal Defendant Maxim
     Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

By_____
     David Siegel
     Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER

By_____
     Gregory P. Williams (#2168)
     Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP

By_____
     David M. Friedman
     Attorneys for Defendant Carl W. Jasper

Dated: _September 15_, 2008   ABRAMS & LASTER LLP

By _____
     Kevin G. Abrams (#2375)
     Attorneys for Defendant Carl W. Jasper

34

Dated: _____, 2008   ROPERS, MAJESKI, KOHN & BENTLEY

By_____
   Michael J. Ioannou
   Attorneys for Nominal Defendant Maxim
   Integrated Products, Inc.

Dated: _____, 2008   ARCHER & GREINER, P.C.

By_____
   "J" Jackson Shrum (#4757)
   Attorneys for Nominal Defendant Maxim
   Integrated Products, Inc.

Dated: _____, 2008   IRELL & MANELLA LLP

By_____
   David Siegel
   Attorneys for Defendant John F. Gifford

Dated: _____, 2008   RICHARDS, LAYTON & FINGER

By_____
   Gregory P. Williams (#2168)
   Attorneys for Defendant John F. Gifford

Dated: _____, 2008   LATHAM & WATKINS LLP

By_____
   David M. Friedman
   Attorneys for Defendant Carl W. Jasper

Dated: _____, 2008   ABRAMS & LASTER LLP

By_____
   Kevin G. Abrams (#2375)
   Attorneys for Defendant Carl W. Jasper

34