UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITEDHEALTH GROUP | ) | Master File No. 06-1216 JMR/FLN |
| INCORPORATED SHAREHOLDER | ) | |
| DERIVITIVE LITIGATION | ) | |
| | ) | |
| | ) | HONORABLE JAMES M. |
| | ) | ROSENBAUM |

## OBJECTIONS TO PROPOSED SETTLEMENT OF CLASS ACTION

NOW COMES S. Michael Scheeringa of 17481 Deepview Drive, Chagrin Falls Ohio 44023 (hereinafter referred to as "Objector") by and through the undersigned counsel, and hereby files these Objections to the Proposed Settlement of this Class Action and, in support thereof, states as follows:

## PROOF OF MEMBERSHIP IN CLASS

Objector is currently a shareholder in UnitedHealth Group and is therefore a member of the Class in this action. Evidence of his ownership is attached hereto as Exhibit A.

## NOTICE OF INTENT TO NOT APPEAR

Objector hereby gives notice that he does not intend to appear at the Fairness Hearing presently scheduled for February 13, 2009 at 11:00 a.m. in United States District Court for the District of Minnesota before the Honorable James M Rosenbaum, but will rest on this pleading.

1

**SUMMARY OF SETTLEMENT**

The Settlement Agreement provides that UnitedHealth Group, Inc. (the "Company") will or has instituted certain governance changes, that it has received some cash, that certain of the officers and directors will forgo previously granted options, and will forgo certain rights under the Company's Supplement Executive Retirement and Executive Savings Plans, and will also forgo certain severance benefits with a fluctuating and indeterminate value.  Only $20.55 million in cash is actually being contributed to the Company. Since this matter is being settled at the same time as the PSLRA litigation, whatever money is awarded to Plaintiff's Counsel as legal fees, beyond the $20.55 million in cash that is being contributed by Mr. Lubbens, could otherwise go to the benefit of the Class in the related litigation or remain an asset of the Company.

**OBJECTIONS**

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

1.  <u>VIOLATION OF FED. R. CIV. P. 23(h)</u>

The Notice provided that any objections to the Settlement were to be filed not later than twenty-one days prior to the Settlement Hearing, <u>Notice of Proposed Settlement of Derivative Lawsuits,</u> ("Notice"), or January 23, 2009.  However, the Fee Petition was not filed until January 30, *one week after the deadline.*  Therefore it was impossible for a class member to object to the Fee Petition since it was not filed until one week after the deadline for objections.  This actually violates Fed. R. Civ. P. 23 (h)(2) by not giving the class members adequate notice of the fee petition which is, in fact, a

motion.  The Objector was in the awkward and impossible position of objecting to a Motion for Fees prior to the time that the motion was filed.  Under Fed. R. Civ. P 23(h)(2), the Motion for Fees should be filed prior to the time of the objection deadline.

>Rule 23(h), Fed.R.Civ.P. provides:
>(h) Attorney's Fees and Nontaxable Costs.
>
>In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
>(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
>(2) A class member, or a party from whom payment is sought, may object to the motion.
>
>(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
>(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

Rule 23 (h) (2) above expressly provides that the class member "may object to the **motion**."  In order to object to the "motion," the class member must first read the motion and thereby understand the asserted factual and legal basis for the legal fees being sought in the motion.  Only then can the class member make a well informed, sensible and usable objection to the actual fees being sought.  In fact, until a class member actually sees the motion for fees, he does not even know the **exact amount** of the fees being sought.  Therefore, it is disingenuous, unfair, unreasonable and unlawful under Rule 23 (h) (2) to require the class members to file their written objections to the attorneys fees at a time when the attorney fee motion has not even been filed.  These objections are filed within fourteen (14) days of the filing of the Motion for Fees and are therefore timely under the Federal Rules of Civil Procedure.

2. ATTORNEYS FEES ARE EXCESSIVE.

In the Notice, Plaintiff's Counsel indicated that they were planning to request up to $47 million in fees and expenses in this case and an additional $17 million in the companion State Court case. This total of $64 million is outrageous and should not be countenanced. The Court should award no more than a reasonable percentage of the $20.55 million that constitutes the actual cash component of the fund. Under the logic of *Swedish Hospital Corporation v. Shalala* 1F.3d 1261 (D.C. Cir 1993) a District Court has the discretion to apply a percentage of the fund only to that part of a fund for which counsel is responsible. This Court must then carefully consider exactly how much monetary value was actually delivered to the Company as a result of Plaintiff's Counsel's efforts. In this regard, *In re: Painewebber Limited Partnerships Litigation,* 999 F. Supp 719, 725 (SDNY, 1998) is also instructive. There, the Court said "while Class Counsel did not necessarily piggyback on the SEC's efforts,…their risk in litigating …claims was substantially reduced by pressure placed on PaineWebber in the SEC Order." The fact that there was a Wall Street Journal story and an SEC investigation is well known to this Court and should be taken into account in determining a "fair, reasonable and adequate" fee.

As this Court is well aware, the prosecution of the Derivation Actions (both State and Federal, was led by the Company's Special Litigation Committee ("SLC"). This group did the "heavy lifting" in this case including the factual investigation, legal analysis, mediation and settlement. Plaintiff's Counsel did some work, but it was on the periphery of the case. Much of the work for which they seek compensation was duplicative of work that had already been performed by the SLC. As the honorable P.

4

Kevin Castel of the Southern District of New York remarked "I do not consider a review by one set of class counsel of the work product of another set of class counsel to be recompensable, absent a particularized showing of the value that it added." *In re: AMF Bowling,* 334 F. Supp 2d, 462, 468, (SDNY 2004). A review of the Fee Request indicates quite clearly that not only were many if not most of the hours claimed by Plaintiff's Counsel expended in reviewing another attorney's work, but that this work was done by senior attorneys who billed at an excessive rate for the Twin Cities area. It appears as if they were billing at a blended rate approaching $450 per hour.

In a much more complex multi-district matter, this Honorable Court recently capped the hourly rates for Plaintiffs' counsel at $400 per hour for attorneys and $150 for paralegals, *In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation,* (MDL 05-1708 D. Minn. 2008). Plaintiff's Fee Application contains hundreds of hours billed at $845 and $895 per hour, and hundreds more at $785 per hour. These are not "in line with those charged by lawyers of similar skill and experience in the Twin Cities Area." *Id.* Another example of unnecessary effort that only penalizes the shareholders of the Company, is Plaintiff's Counsel's expenditure of numerous hours summarizing 65 depositions of the Company's personnel conducted in the related PSLRA litigation. The problem with compensating counsel for this time and effort is that these depositions did not even begin until January 2008 which was ***months after*** the Derivative Actions had been already settled. How can this possibly have benefited their clients, the Company and its shareholders. This is one example of unnecessary "padding" of the lodestar.

The SLC spent approximately 20,000 hours for all of their efforts in conducting interviews, reviewing tens of millions of pages of documents, and brokering a global

settlement.  For this work, SLC, its counsel and consultants billed UnitedHealth a total of **$9.2 million**.  Plaintiff's Counsel, on the other hand, who did not even participate in any of the more than 50 interviews conducted, claim to have expended over 42,000 hours and are requesting **$64 million.**  It is hard to comprehend how Plaintiff's Counsel spent over twice as much time and are requesting almost 7 times as much money as the group that really led this case.

Plaintiff's Counsel was well aware that the SLC was conducting a review of all of the documents produced and that Plaintiff's Counsel review of such documents was duplicative and completely unnecessary.  In fact, they did not even gain access to the database of the 16.4 million pages of documents that they claim to have reviewed until July 2007 which was (1) a full year after the SLC had been formed; (2) after the SLC had completed its document review; (3) only a few days before the first mediation session; and (4) after the SLC had begun settlement negations.

The Company appointed an Independent Committee on April 4, 2006 to review certain questionable matters that had come to light in a March 18, 2006 Wall Street Journal article entitled "The Perfect Payday."  In its report on October 15, 2006, it concluded that many of the Company's option grants to officers and other employees were "likely backdated," and UnitedHealth announced that Dr. McGuire and Messrs. Lubben and Spears would leave the Company.  The Board and Company management also instituted an aggressive program to strengthen the Company's stock option practices and to improve other compensation and corporate governance policies and procedures.  Certain of these actions predated the Independent Committee's report and all of them were taken without any input from or involvement of Plaintiffs' Counsel and were independent of the derivative lawsuit.  For Plaintiff's Counsel to claim that it's actions led to these benefits strains credulity.

The Company has also adopted numerous corporate governance changes in response to the discovery of problems in its historical options granting practices. However many of these corporate governance changes were adopted in direct response to the report of the Independent Committee and were formulated and apparently were adopted without significant input from Plaintiffs' Counsel. The additional corporate governance changes that were adopted by the Company resulted from the settlement of the PSLRA class action. These changes are described in Exhibits C and D to the Stipulation of Settlement in that action dated as of November 12, 2008. These corporate governance changes were the product of substantial and lengthy negotiations between UnitedHealth and the lead plaintiff in the PSLRA action (Ca1PERS) and their respective counsel. Apparently, Plaintiffs' Counsel in this action did not participate in any of these negotiations. Therefore, they cannot claim that their actions benefited the Company or its shareholders.

Plaintiffs' Counsel undertook this case for the benefit of the Company. They therefore owed a fiduciary duty to the Company. They failed to comport their litigation strategy with that duty. In fact, instead of working in the best interests of the Company, their Fee Applications only erode the substantial benefit to the Company delivered by the Derivative Settlements. Plaintiffs' Counsel's lack of prudence — which contravenes the interests of those they purportedly sought to benefit — should not be rewarded. See, e.g., In re Cendant Corp. Litig., 264 F.3d 201, 272 (3d Cir. 2001) (stating that "lead counsel who seek an 'excessive' fee may have breached their fiduciary duties to the class").

### 3. THE LODESTAR CALCULATION IS UNREASONABLE

Under both federal and Minnesota law, the starting point in determining the reasonableness of the requested fee is to arrive at a lodestar figure by multiplying "the number of hours *reasonably* expended on the litigation" by "a *reasonable* hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added); *Milner Farmers Ins. Exch.,* 748 N.W.2d 608, 620-621 (Minn. 2008). The Court must exclude hours not "reasonably expended," as well as "excessive, redundant, or otherwise unnecessary" hours. *Hensley,* 461 U.S. at 434; see also *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998); *AMF Bowling, infra..*

It is apparent from Plaintiffs' Counsel's submission that a substantial number of the hours expended were unreasonable, excessive, and unnecessary. Plaintiff's Counsel request lodestar amounts of approximately $15 million, reflecting 34,737 hours of purported work. State Counsel claims a lodestar amount of approximately $3.5 million, reflecting 7,719 hours of alleged work. These staggering numbers cannot be reconciled with the fact that Plaintiff's Counsel in both matters played a subordinate and subsidiary role. The "heavy lifting" was done by the SLC and the Independent committee.

### 3. CONTRACT ATTORNEYS

Two issues that must be carefully scrutinized are (1) the use of contract, staff or temporary attorneys and (2) the inclusion of the time of support staff in lodestar calculations.  There is a growing trend among Class Action plaintiffs firms to employ large number of contract attorneys to perform various tasks including many that are

ministerial or clerical in nature. The firms often pay employment agencies some minimal hourly rate ($50 to $75/hr) for each temporary/contract attorney, and bill the time out at hourly rates in the $300+ range. In the instant case, Shapiro Haber & Urby is requesting $510 per hour for such workers to which it asks the Court to apply a significant multiplier of almost 3. These contract attorneys are billed to the Class at almost $820,0000. Therefore, Plaintiff's Counsel is asking this Court to approve a total payment of almost **$2.5 million** for contract attorneys, at a rate (with multiplier) of almost $1500 per hour. This is unconscionable! Chestnut & Cambronne and Bernstein, Litowitz also claim rates of $300 or $375/hour for their contract and staff attorneys . The total lodestar they report is $436,638. Applying the requested multiplier yields over **$1.3 million**. The Declarations contain no evidence to indicate how much the contract attorneys were actually paid. The only evidence was the amount charged to the class. Time expended by these individuals should **not** be included in the lodestar calculation because the firm does not have to incur any additional overhead expenses, or incur any risk, for these people. They are paid by the hour for work actually performed. They receive no health benefits, no overtime, no other fringe benefits. They have no job security and no assurance that they will be employed after the close of business on any given day. The concept behind a multiplier is to compensate a firm for its risk because the firm has to incur certain expenses for its partners and associates whether they have any work to do or not. However, in the case of contract attorneys, there are no additional expenses incurred by the firm and no added risk at all. Therefore, the firm should not be entitled to a multiplier and contract attorney time should not be included in the lodestar calculation. It could, however, be included in reimbursable expenses. Plaintiff's Counsel in this case certainly

should not be allowed to recover over **$3.8 million** for such services.  Instead, they should receive their actual out of pocket expense, or twice that amount if the Court wishes to allow them to make a profit on the Contract Attorneys.

The reported lodestar of contract attorneys can easily be inflated.  Contract attorneys have filed declarations and affidavits in several other cases including *Tyco International Securities Litigation,* (MDL Docket 02-1335, D.N.H.2007) and *Carlson v. Xerox* (00-1621 D.Conn. 2008).  Each one paints a similar picture: Contract Attorneys often work out of their own homes, on their own schedule, with no support and little, if any, supervision.  Even worse is the complaint that they spend much of their time doing "objective coding" and other work that could as easily be performed by data-entry or other non-lawyer personnel.

Many Courts have recognized the correctness of this position.  "The hourly rate for attorneys should not be applied to clerical, secretarial or administrative work, since these are part of office overhead. *Reyes v. Spur Discount Store No. 4*, Civ. A. No. 07-2717, 2007 WL 2571905, *3 & nn.19-20 (E.D. La. Aug. 31, 2007); *Abrams*, 805 F.2d at 536 (court should consider whether the work performed was "'legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer."), *quoting Johnson v. Georgia Highway Express*, 488 F.2d at 717. ""[Investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available . . . may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id.* at 535. Work by paralegals may only be recovered to the extent that it is similar to that typically performed by attorneys; otherwise it is an unrecoverable overhead expense. *Coleman*,

10

202 F.3d 264, *citing Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982). ( Docket 6206, TR 41-42).

Bernstein Litowitz also asks the Court to include Case Managers, Investigators, Director of Financial, Financial Analysts and Project Associates at rates ranging from $195 to $375/hr in the lodestar calculation. These persons have a total lodestar of over $1.1 million. Applying the multiplier yields almost **$3.4 million**. These charges should be disallowed since they are a part of overhead. Judge Willis B. Hunter Jr. in *Carpenters v The Coca Cola Company Carpenters Health & Welfare Fund v. The Coca-Cola Company* (ND Ga, 1:00-CV-2838) decided November 7, 2008 (Copy attached as Exhibit B) found that Class Counsel in that case could **NOT** include the time of office staff and in-house experts in the lodestar calculation. This Court should apply the same logic.

5. EXPENSES

Expenses being requested by Class Counsel should also be carefully scrutinized. Slightly more than $175,000 is being requested for legal research and $16,00 for "on-line factual research." Several courts have found that this is a part of overhead. To award reimbursement is akin to paying the firm for maintaining their law library. See *Friskney v. American Park and Play, Inc (2007 US Dist. LEXIS 14619, SD Fl. 2000)* wherein the Court found that "expenses for computerized legal research are part of the general overhead of a law firm and are **not** compensable. (emphasis added).(Copy attached as Exhibit C). See also *U.S. v. Merritt Meridian Constr. Corp.,* 95 F. 3d 153, 173 (2d Cir. 1996) (holding district court did not abuse discretion in denying in full request for Westlaw costs, since "computer research is merely a substitute for an attorney's time… and is not a separately taxable cost"); *Weinberger v. Great Northern Nekoosa Corp.* 801

F. Supp. 804, 827-29 (D. Me. 1992)(Disallowing all computerized research expenses, which is "properly an item[*9] attributed to firm overhead").  As stated by one court:

> To accept the proposition that Lexis charges or any other computer research charges are compensable, one should also then conclude that the cost of acquisition of the lawyer's library and the cost of maintaining the library, even possibly, the depreciation of the law books would also be compensable.  No one has ever urged such a proposition yet, but of course, if one should, it would be clearly rejected as being without any justification.
> *In re: Bicoastal Corp.* 121 B.R. 653, 656 (Bkrtcy. M.D. Fla. 1990).

Other Circuits have come to similar conclusions.  In *Standley v. Chilhowee R-IV School Dist.,* 5 F. 3d 319, 325 & n. 7 (8th Cir. 1993) (citing *Leftwich v. Harris-Stowe State College*, 702 F. 2d 686, 695 (8th Cir. 1983)), the Eighth Circuit held that computer costs are part of the attorneys' fees and not to be taxed separately.  See also *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 38 F. 3d 1429, 1440-41 (7th Cir. 1994); cf *Jones v. Unisys Corp.,* 54 F. 3d 624, 633 (10th Cir. 1995) (computer research costs not statutorily authorized under 28 U.S.C. § 1920).  This argument was also recently adopted by the court in the Northern District of Georgia in *Coke.*

6. Objector respectfully adopts and incorporates into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

7. The Class members have a legally protectable interest in this litigation.  That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

8. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objector.  All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

>Respectfully submitted,
>
>__/s/ Randall D.B. Tigue_____
>Randall D.B.Tigue
>Randall Tigue Law Office
>205 Golden Valley Office Center
>810 N. Lilac Drive
>Golden Valley MN 55422
>(763) 529-9211
>(763) 592-8215 fax
>tiguelaw@msn.com
>
>/s/ Edward F. Siegel_____
>EDWARD F. SIEGEL (Ohio Bar No. 0012912)
>27600 Chagrin Blvd. #340
>(216) 831-3424
>(216) 831- 6584 fax
>E-mail        efsiegel@efs-law.com
>(pro hac vice pending)
>
>_____/s/ Edward W. Cochran_____
>Edward W. Cochran (Ohio 0032942)
>20030 Marchmont Rd.
>Cleveland Ohio 44122
>Tel: (216) 751-5546
>Fax: (216) 751-6630 (fax)
>edwardcochran@adelphia.net

## CERTIFICATE OF SERVICE

      I certify that on February __12__, 2009, these objections were filed electronically with the Court and were by the court's system served on all other counsel of record.

                                                                  /s/ Randall D.B.Tigue
                                                              Randall D.B. Tigue