FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 07 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CARPENTERS HEALTH &
WELFARE FUND, et al.,

                Plaintiffs,

v.                                                   CIVIL ACTION NO.
                                                     1:00-CV-2838-WBH

THE COCA-COLA COMPANY, et al.,

                Defendants.

## ORDER

This matter is now before the Court for consideration of class counsel's application for attorneys' fees and expenses, including lead Plaintiffs' request for reimbursement of costs and expenses, [Doc. 622], and Plaintiffs' motion for approval of the allocation plan, [Doc. 621].

## Summary

To briefly summarize the current status of this action, Plaintiffs initiated this securities class action lawsuit against The Coca-Cola Company, Inc., ("Coca-Cola") and several Coca-Cola executives in October of 2000. Plaintiffs claimed in their complaint that certain actions of Defendants had improperly and in violation of federal securities law inflated the Coca-Cola share price and that subsequent revelations

AO 72A
(Rev 8/82)

caused the share price to fall. As a result of these actions, Plaintiffs asserted that shareholders who purchased their Coca-Cola shares during the period that the share price was artificially inflated – the members of the class – suffered damages.

After almost eight years of litigating a wide range of issues, the parties reached a settlement in July of this year. Under the terms of the settlement, Coca-Cola will pay $137.5 million into a settlement fund. The settlement fund will pay administrative costs, attorneys' fees and expenses, lead Plaintiffs' expenses, and the remainder will be paid to class members in damages. This Court has now approved the settlement, [Doc. 645], and the remaining issues for determination by this Court are class counsel's request for attorneys' fees and expenses, lead Plaintiffs' request for expenses, and approval of the allocation plan for the settlement fund.

In their request for attorneys' fees, class counsel seek 26.04% of the total $137.5 million dollar settlement fund – or $35,805,000.00 – in addition to $7,230,160.87 in expenses and interest. Two of the lead Plaintiffs seek reimbursement of expenses totalling $7,557.50.

As there has been no objection to lead Plaintiffs' request for expenses and a review of those expenses indicates that they are reasonable, this Court will grant lead Plaintiffs' request.

2

AO 72A
(Rev 8/82)

## Discussion of Class Counsel's Application for Fees and Expenses

There have been two substantive objections to the fees and expenses sought by class counsel. [See docs. 633, 635, 637, 642]. Those objections are addressed in the following discussion.

### A. *Camden I*

"Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78U-4(a)(6). In *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), the Eleventh Circuit announced the rule that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (rejecting the use of lodestar analysis for determination of fees in common fund cases). In determining the appropriate percentage to apply to the common fund, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.; see also id.* at 775 (noting that district courts usually award between 20% and 30% of the common fund and that 25% is

3

AO 72A
(Rev 8/82)

"'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case"). The Eleventh Circuit further noted that the factors used to determine an appropriate percentage are those set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974),[1] as well as the time required to reach a settlement, the existence of substantial objections from class members, the existence of non-monetary benefits of the settlement, and the economics involved in prosecuting a class action. Camden I, 946 F.2d at 775.

Additionally, as the size of the common fund grows, the percentage of the common fund awarded to the attorneys should be reduced. While the Eleventh Circuit in Camden I did not discuss a sliding scale such, it did cite favorably to a report produced by a Third Circuit task force. Court Awarded Attorney Fees, Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), 108 F.R.D. 237 (1985), in which the task force indicated that courts should apply a "sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual

---

[1] The twelve Johnson factors are: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to perform the legal service properly," (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "time limitations imposed by the client or other circumstances," (8) "the amount involved and the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the undesirability," of the case," (11) "the nature and length of the professional relationship with the client," and (12) "awards in similar cases." Johnson, 488 F.2d at 717-20.

4

AO 72A
(Rev 8/82)

circumstances, the percentage will decrease as the size of the fund increases." *Id.* at 256.

This Court recognizes that the sliding scale (also referred to as the "declining percentage principle") has been criticized because such a fee scale may give "counsel an incentive to settle cases too early and too cheaply." *In re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 303 (3d Cir. 2005). This Court notes, however, that the sliding scale need not reduce the fee award to such a degree that it removes class counsel's incentive to seek a higher settlement. Clearly, ten percent of $100 million is much better than thirty percent of $10 million.

The problem in not adjusting the fee percentage in the face of a very large common fund is that without adjustment, the fee award becomes a windfall rather than just compensation for class counsel's hard work and risk. *See Kenny A. ex rel. Winn v. Perdue,* 532 F.3d 1209, 1230 (11th Cir. 2008) (noting that fee award should be "adequate to attract competent counsel, but which do not produce windfalls to attorneys") (citations and internal quotations omitted).

### B. A Brief Discussion of Class Counsel's Lodestar

Class counsel dedicate a significant portion of their discussion in support of their fee application to their lodestar, and this Court is compelled to note that the

5

AO 72A
(Rev 8/82)

lodestar in this instance is not particularly helpful in determining a reasonable award of attorneys' fees. Class counsel have stated that they billed over 47,000 hours in this matter and have further broken down the total lodestar by providing a lodestar amount for each individual attorney and the rates at which most of the attorneys billed. While class counsel's attorney fee expert, Kenneth M. Moscaret, argues that class counsel's rates are generally commensurate with that of Atlanta lawyers, without going into a great deal of detail, this Court finds those rates to be at the very high end of typical Atlanta rates. It further appears that a substantial majority of the work in this matter was performed by attorneys that tended to bill at higher rates while very little of the work was performed by associates with lower rates. For example, of the 24,914.15 hours billed by Coughlin attorneys, only 1,411.74 was billed by the eleven associates whose rates were $350.00 or less with the remaining attorney time billed by attorneys whose rates were above $350.00 an hour. This Court would find it surprising if only six percent of the work performed in this matter was of the type that could be performed by lower-level associates, and that assumes that a $350.00 rate could be considered a lower-level rate.[2]

_____

[2] As an aside, this Court feels compelled to note the rather surprising fact that one of the firms has included in its lodestar "administrative assistant" time which it bills for, on average, above $100.00 an hour.

6

Moreover, because the determination of attorney fees in this case is not adversarial in nature, no one has reviewed any of the time billed to determine whether the time expended on any given project was reasonable or whether there was any duplication of effort. Indeed, class counsel has provided no assurance that they did not calculate their lodestar by simply totaling the unadjusted, unreviewed, raw billing data from their billing software. Without a fairly detailed analysis of the hours billed — or, at the least, some form of exemplar analysis — the lodestar numbers are not helpful, and this Court will determine attorney fees based solely on what it determines to be a reasonable percentage of the settlement fund.

## C. The *Camden I* / *Johnson* Factors

After reviewing the factors from *Camden I* and *Johnson* discussed above — at least those factors that are relevant — this Court finds that: (1) spanning eight years, this litigation has been protracted, (2) the number of objections from class members has been minuscule in comparison to the size of the class, (3) the economics involved in prosecuting this particular action — requiring amassing evidence from several countries on most of the major continents — are considerable, (4) there are no material non-monetary benefits conferred upon the class, (5) class counsel spent a great deal of time and expended considerable labor in prosecuting this action, (6) while

7

AO 72A
(Rev 8/82)

AO 72A
(Rev 8/82)

8

securities litigation is inherently complex, this Court finds that the legal and accounting issues involved were not highly difficult to understand or present, but they did require extensive discovery and complex data analysis, (7) class counsel is particularly skilled in this area of litigation, and that skill was a major component in securing the favorable outcome, (8) given the considerable discovery required and numerous pleadings filed in this action, class counsel obviously dedicated substantial resources to this action to the likely preclusion of other opportunities, (9) class counsel undertook its representation of the class on a contingent basis, (10) there is no evidence of time limitations imposed by the client or other circumstances, (11) given the difficulty that class counsel would have faced in establishing the class' claims at trial and the paucity of objections by class members, the result obtained was very positive, and (12) this Court has no basis upon which to evaluate the relative "desirability" of the case, but notes that class counsel were clearly not motivated entirely by notions of charity and a pursuit of justice for its own sake.

Having presided over this case for eight years and considering the actual amount of time devoted to this case by class counsel, the complexity and duration of this litigation, the experience and ability of the attorneys involved, this Court finds that the class members were well served by experienced attorneys who, through considerable time and effort, obtained a significant recovery. Class counsel undertook

AO 72A
(Rev 8/82)

this complex litigation on a contingent basis and advanced considerable funds with

scant assurance of a recovery. They actively litigated this case for almost eight years

before reaching a settlement. Discovery involved taking more than 70 depositions of

fact and expert opinion witnesses, reviewing countless documents, and consulting

with numerous experts in the fields of accounting, economics, loss causation, and

valuation. As was made clear to the Court in many hearings and conferences, class

counsel thoroughly analyzed the relevant laws and the facts relevant to their clients'

claims. Based on the foregoing, this Court concludes that class counsel is entitled to

a fee award commensurate with that awarded in similar cases.

D. Fee Awards in Similar Cases

This Court has identified nineteen securities class actions where the settlement

fund or recovery ranged from $100 million to $298 million.[3] In those cases the total

[3] In re Cendant Corp. PRIDES Litig., 243 F.3d 722 (3d Cir. 2001) (7.8% of $298 million); In re 3Com Corp. Sec. Litig., Case No. 97-CV-21083 (N.D. Cal. Mar. 9, 2001) (18% of $259 million); In re Am. Continental/Lincoln Savings, MDL Case No. 834 (D. Ariz. July 24, 1990) (25.6% of $250 million); In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) (18-19% of $245 million); Waste Management Inc. Sec. Litig., Case No. 97-CV-7709 (N.D. Ill. Oct. 18, 1999) (20% of $220 million); In re Home-Stake Prod. Co. Sec. Litig., MDL Case No. 153 (N.D. Okla. Jan. 2, 1990) (30% of $185 million); In re Dollar General Corp. Sec. Litig., Case No. 3:01-CV-0388 (M.D. Tenn. May 24, 2002) (20.9% of $162 million); In re Microstrategy Inc. Sec. Litig., 172 F. Supp. 2d 778 (E.D. Va. 2001) (18% of $153.5 million); In re Charter Communications, Inc. Sec. Litig., MDL Case No. 1506, Civil

9

recovery was $3.0585 billion and counsel were awarded a total of $661 million in fees or approximately 21.6%. This Court has also found mega-fund non-securities class actions where the award was below – sometimes significantly below – the 20% threshold. *E.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) (affirming 5% of $687 million common fund); *In re Microstrategy, Inc.*, Sec. Litig., 172 F. Supp. 2d 778 (E.D. Va. 2001) (awarding 18% of $153.5 million common fund); *In re PaineWebber Ltd. P'ships Litig.*, 999 F. Supp. 719 (S.D.N.Y. 1998) (awarding 13% of $200 million common fund); *Walco Invests., Inc. v. Thenen*, 975 F. Supp. 1468 (S.D. Fla. 1997) (awarding 15% of $141 million common fund); *In re Salomon, Inc. Sec. Litig.*, 1994 WL 265917 (S.D.N.Y. June 15, 1994) (awarding 15% of $64.1 million settlement); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (awarding 5.25% of $305 million); *In re Corrugated*

No. 4:02-CV-1186 (E.D. Mo. 2005) (20% of $146 million); *Informix Corp. Sec. Litig.*, Case No. 97-CV-1289-CRB (N.D. Cal. Nov. 2, 1999) (30% of $132 million); *In re Kurzweil v. Philip Morris Cos., Inc.*, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) (30% of $123 million); *In re Conseco, Inc. Sec. Litig.*, Case No. 4:00-CV-0585 (S.D. Ind. Aug. 7, 2002) (15% of $120 million); *In re Deutsche Telekom AG Sec. Litig.*, Case No. 00-CV-9475-NRB (S.D.N.Y. 2005) (28% of $120 million); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (30% of $111 million); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323 (S.D. Fla. 2001) (25% of $110 million); *In re Prudential Sec., Inc., Ltd. P'ships Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) (27% of $110 million); *In re Prison Realty Sec. Litig.*, 2001 U.S. Dist. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) (30% of $104 million); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) (21.25% of $100 million).

AO 72A
(Rev 8/82)

Container Antitrust Litig., 1983 WL 1872 (S.D. Tex. 1983) (awarding 9% in attorneys' fees and expenses of a $366 million class recovery); In re Folding Carton Antitrust Litig., 84 F.R.D. 245 (N.D.Ill.1979) (awarding attorneys' fees of 6.6% of $200 million settlement).

As is discussed above, this Court finds that as the size of the common fund increases, the percentage of that fund awarded to class counsel should decrease. Not all courts, however, share this view which will tend to skew the average percentage of awards in mega-fund cases higher than what this Court would consider reasonable. Accordingly, this Court finds that an award of 21% of the settlement fund is a more than adequate award in comparison to similar cases. In light of this Court's findings above regarding class counsel's admirable performance, this Court further finds that 21% of the fund is appropriate as compensation for class counsel's efforts and as reward for the level of risk involved.

E. Class Counsel's Expenses

Although Camden I did not provide much guidance regarding expenses, class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed. See Waters v. Intern. Precious Metals Corp., 190 F.3d 1291, 1298 (11th Cir. 1999). This Court's responsibility is to scrutinize the costs for which reimbursement is requested

11

AO 72A
(Rev 8/82)

to assure that (1) the expenses are reasonable and (2) class counsel has established that the expenses were truly out-of-pocket and is not a backdoor attempt to "obtain[] a secret or unintended profit." Id.

With the foregoing in mind, this Court has reviewed the exhibits attached to class counsel's fee application setting forth their expenses.  Each of four firms, Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin"), Chitwood Harley Harnes LLP ("Chitwood"), Whatley Drake & Kallashas ("Whatley"), and Gergosian & Gralewski LLP ("Gergosian") claimed expenses.

### 1. Coughlin's Expenses

Coughlin claims itemized expenses of $6,863,986.54.  [Doc. 623-4 at 3].  This Court has reviewed those expenses and concludes that the following items must be disallowed because Coughlin has not established that the amount claimed represent actual out-of-pocket expenses rather than what they would bill a client as an additional source of profit.

First, Coughlin has not established that it is entitled to $93,960.67 in "Lexis, Westlaw, Online Library Research."  This Court is of the opinion that charging separately for use of a research service is akin to charging for the use of a case law reporter. That is, the research service is a tool, much like a computer or a pen, and this Court considers the use of such a service part of a firm's overhead.

12

AO 72A
(Rev 8/82)

"[C]omputer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." Lefwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir. 1983). Moreover, this Court is aware that many firms pay a flat rate to Lexis and Westlaw regardless of their usage, and class counsel cannot claim such flat rate payments as an out-of-pocket expense.

This Court will also disallow Coughlin's claims for in-house forensic accountants ($3,684,596.25), in-house economic/damage analysts ($145,698.75), in-house investigators ($107,537.50), and in-house MIS ($3,863.75). Class counsel confirmed at the fairness hearing that these individuals (hereinafter "In-House Professionals") are firm employees. While this Court understands that the use of In-House Professionals might save money, as is noted above, this Court will reimburse counsel for out-of-pocket expenses only, and class counsel has not demonstrated, for example, that it paid its accountant employees in excess of $3 million solely for the work performed in this action.

Moreover, in response to the argument that the use of the in-house resources saves money for the class, this Court notes that the efforts of the In-House Professionals also enhanced the amount of the settlement, and much like the billable

13

hours of the attorneys, the billable hours of the In-House Professionals is reflected in

the settlement fund.

Finally, this Court will not allow Coughlin to claim $0.25 per copy (or

$255,716.50) for in-house copying. Paper, copier toner, wear and tear on a copier, and

administrative assistant time are overhead costs that this Court will not reimburse.

Moreover, Coughlin's out-of-pocket costs for copies could not have come close to

reaching $0.25 per page.

Additionally, this Court finds it necessary to reduce the amount of Coughlin's

$405,587.79 claim for travel expenses.   According to its declaration, Coughlin

employees took 122 trips, fourteen of which were overseas.  [Doc. 623-4 at 11-21].

Coughlin has not itemized the cost of each trip, but this Court has analyzed the

information that Coughlin has provided and finds as follows: The fourteen overseas

trips were generally six or seven days in length, and if this Court concedes that the

fourteen overseas trips were very expensive, costing $6,000.00 each,[4] that leaves

$321,587.79 for the remaining 108 domestic trips, or $2,977.66 per trip. Of those 108

_____

[4] Using Orbitz.com, this Court searched for a round trip flight from Atlanta to
Tokyo (leaving the next day) and lodging for six nights in a Tokyo hotel. The prices,
including airfare and lodging, ranged from $1,749 to $5,242. Airfare and lodging for
six nights at either the Hilton Tokyo or Grand Hyatt Tokyo was under $4,000. Using
the $6,000.00 figure and assuming that airfare and lodging cost $4,000.00, that would
leave the traveler $285.71 per day (seven days) for food and transportation.

14

AO 72A
(Rev 8/82)

trips, only one involved traveling to more than one city – Dennis Herman's five-day trip to New York and Philadelphia. The 108 trips involved 156 overnight stays.[5]

Using the very high average of $1,000.00 per domestic round trip airfare (and adding $500.00 for the lone two-city trip) that would mean that Coughlin spent $108,500.00 on airfare, leaving $213,087.79 for lodging and food for the 156 nights or $1,365.95 per person, per night, which is either excessive, or it indicates that something is wrong with Coughlin's figures. This Court is not troubled by the apparent fact that Coughlin attorneys seek high comfort on their journeys, but neither should the class finance such a lifestyle. This Court finds that a client could reasonably expect to pay $300.00 per night for his attorney's food and lodging on domestic trips, and that is the level at which this Court will reimburse Coughlin for its travel. Accordingly, Coughlin's request for travel expenses will be reduced by $1,065.95 per night for the 156 overnight stays or $166,287.79 in total.

The remainder of Coughlin's expenses appear to be reasonable and legitimate out-of-pocket expenses and are approved. In summary, of Coughlin's claimed expenses of $6,863,986.54, this Court has disallowed $93,960.67 for computer assisted research costs, $3,684,596.25 for in-house forensic accountants, $145,698.75 for in-house economic/damage analysts, $107,537.50 for in-house investigators,

[5] On only two trips, the travelers did not stay overnight.

15

AO 72A
(Rev 8/82)

$3,863.75 for in-house MIS, and $255,716.50 for in-house copies. This Court further

has reduced Coughlin's request for travel expenses by $166,287.79. In total, this

Court will reduce Coughlin's expense request by $4,457,661.21 and award

$2,406,325.33 in expenses.

## 2. Chitwood's Expenses

Chitwood claims expenses of $286,448.68. [Doc. 623-5 at 3]. As with

Coughlin's expenses, this Court will disallow Chitwood's request of $24,083.28 for

computer assisted research costs, and $27,137.40 for in-house photocopying. The

remainder of Chitwood's expenses appear to be reasonable and legitimate out-of-

pocket expenses and are approved.[6]

Accordingly, this Court will reduce Chitwood's expense request of $286,448.68

by $51,220.68 and award Chitwood $235,228.00 in expenses.

## 3. Whatley's Expenses

Whatley claims expenses of $61,041.18. As with Coughlin and Chitwood, this

Court will disallow Whatley's request of $134.04 for computer assisted research costs,

and $8,077.00 for in-house photocopying. The remainder of Whatley's expenses

---

[6] Applying the same math to Chitwood's travel expenses as this Court used to
calculate the Coughlin travel expenses, it appears that Chitwood attorneys spent, on
average, $330.81 per night per person for lodging and food which is close enough to
reasonable to be permissible.

16

appear to be reasonable and legitimate, out-of-pocket expenses and are approved.[7]

Accordingly, this Court finds that Whatley is entitled to recover $52,830.14 in

expenses.

### 3. Gergosian's Expenses

Gergosian claims expenses of $18,684.17.   Again, this Court will disallow

Gergosian's claim of $451.93 for computer assisted research services and $4,250.70

for in-house photocopying.   This Court further finds that Gergosian's claim for

$13,137.41 in travel expenses is insufficient for this Court to make any judgment

regarding whether those costs were reasonable, and this Court will disallow those

expenses without prejudice to Gergosian filing with this Court, within ten days, a

more detailed account of its travel, most notably the number of days spent on each

trip.  The remainder of Gergosian's expenses appear to be reasonable and legitimate,

out-of-pocket expenses and are approved.

---

[7] In the case of Whatley's travel expenses – again, using the same math as
applied to Coughlin's travel – it appears that Whatley attorneys spent approximately
$230.00 per night for lodging and food which is reasonable.

17

AO 72A
(Rev 8/82)

AO 72A
(Rev. 8/82)

## Plan of Allocation

In order to determine how much of the settlement fund each class member will receive, class counsel, in concert with a damages expert, lead Plaintiffs, and the public, have crafted an allocation plan. Under the terms of the plan, which is set forth in more detail in the Notice, class members who timely submit a valid proof of claim will receive a cash distribution from the settlement fund, the amount of which will be based upon the timing of the class member's purchase of his or her Coca-Cola shares and the number of shares so purchased.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court finds that due and adequate notice was directed to all class members, advising them of the Plan of Allocation and of their right to object thereto, and this Court has received no substantive objections to the allocation plan.

Having reviewed the allocation plan, this Court finds that the formula for the calculation of the payments to class members from the settlement fund provides a fair and reasonable basis upon which to allocate the fund. This Court concludes that the plan is fair and reasonable to all members of the class and represents the best and fairest method of allocating the settlement fund among the various class members. Accordingly, the plan will be approved.

18

AO 72A
(Rev 8/82)

## Conclusion

For the reasons discussed above,

IT IS HEREBY ORDERED that Plaintiffs' motion for attorney's fees and expenses, [Doc. 622], is GRANTED IN PART AND DENIED IN PART. Lead Plaintiff Carpenters Health and Welfare Fund of Philadelphia and Vicinity is AWARDED $2,557.50 in expenses from the settlement fund.

IT IS FURTHER ORDERED that Lead Plaintiff 1199 SEIU Greater New York Pension Fund is AWARDED $5,000.00 in expenses from the settlement fund.

IT IS FURTHER ORDERED that class counsel is AWARDED 21% of the $137.5 million settlement fund or $28,875,000 in attorney's fees.

IT IS FURTHER ORDERED that Coughlin is AWARDED $2,406,325.33 in expenses from the settlement fund.

IT IS FURTHER ORDERED that Chitwood is AWARDED $235,228.00 in expenses from the settlement fund.

IT IS FURTHER ORDERED that Whatley is AWARDED $52,830.14 in expenses from the settlement fund.

IT IS FURTHER ORDERED that Gergosian is AWARDED $844.13 in expenses from the settlement fund. Further, Gergosian is permitted to renew its

19

request for travel expenses by providing a more detailed account of such expenses so long as it does so within ten days of the date of this Order.

All of the foregoing awards of fees and expenses include interest earned thereon at the same rate and for the same period as earned on the settlement fund since its inception.

IT IS FURTHER ORDERED that Plaintiffs' motion for approval of the plan of allocation, [Doc. 621], is GRANTED.

IT IS SO ORDERED, this ___ day of _____, 2008.

WILLIS B. HUNT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

20