UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
06-CV-1216(JMR/FLN)

In re:  UnitedHealth Group          )
Incorporated Shareholder            )        ORDER
Derivative Litigation               )

After years of zealously contested litigation, this matter is
before the Court on plaintiffs' motion for approval of a final
settlement.   The motion is unopposed.   Plaintiffs also seek an
award of attorney's fees and litigation expenses.  Defendants do
not challenge counsel's right to attorney's fees and expenses, but
argue the requested sums are excessive.

For the following reasons, both motions are granted.   The
settlement is approved, and plaintiffs' counsel are awarded
attorney's fees in the amount of $29,253,853.00, and litigation
expenses of $514,591.78.

I.  Background

The Court need not restate the extensive factual history which
is fully set forth in the Preliminary Approval Order, see In re
UnitedHealth Group, Inc., Shareholder Derivative Litig., 591 F.
Supp. 2d 1023 (D. Minn. 2008), and in multiple other Opinions.

Allegations of corporate financial concupiscence led to
plaintiffs filing their consolidated complaint in September, 2006.
This, in turn, led to massive proceedings in this Court,[1]

_____

[1] The Court's docket sheet for this matter contains more than
400 entries.

Minnesota state courts, and elsewhere.  In May, 2007, following extensive discovery and many motions, plaintiffs, defendants, and UnitedHealth Group Incorporated's Special Litigation Committee ("SLC") commenced settlement discussions.  The discussions culminated in the SLC's December, 2007, recommendation that both state and federal actions be settled.  <u>See</u> Report of the Special Litigation Committee (December 6, 2007) ("SLC Report") [Docket No. 298].  The SLC, joined by all parties, submitted the proposed settlements to this Court and to the Honorable George McGunnigle, Hennepin County District Court, Fourth Judicial District, State of Minnesota (collectively, the "Courts").

The proposed settlements consisted largely of transfers of UnitedHealth Group Incorporated ("UnitedHealth") stock and options. In December, 2007, UnitedHealth shares traded at $54.33, yielding a presumptive settlement value ranging from $499.3 million (Black Scholes) to $495.1 million (intrinsic).[2]  This value has declined due to deteriorating financial and market conditions.  Whatever UnitedHealth's current share price, the Court easily accepts the parties' assertion that the proposed settlements are the largest in the history of shareholder derivative litigation.

In November, 2008, following resolution of a question certified to the Minnesota Supreme Court, the SLC and all parties

---

[2] The "value of the settlement need not be determined with absolute precision."  <u>DeBoer v. Mellon Mortgage Co.</u>, 64 F.3d 1171, 1178 (8th Cir. 1995).

sought preliminary approval of the proposed settlements. The Courts jointly heard and considered the motion, and independently determined that the settlements be preliminarily approved. In December, 2008, the Courts issued a joint Order granting preliminary approval.

Notice has now been sent to UnitedHealth shareholders. A single untimely objection[3] has been filed. The Courts held a joint hearing on February 13, 2009; no further objections were presented. While not objecting to the settlements, certain defendants[4] have filed a memorandum opposing plaintiffs' proposed attorney's fees. [Docket No. 398].

II. <u>Analysis</u>

A. <u>Approval of Settlement</u>

This Court now considers final approval of the proposed settlement in the federal derivative action. In pertinent part, the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provide: "A derivative action may be settled, voluntarily dismissed, or

---

[3] The Notice to Shareholders required objectors to notify the parties of any objections not later than 21 business days prior to the February 13, 2009, hearing. See Proposed Notice to Shareholders, Exhibit 1 to the Order of December 19, 2008 [Docket No. 380]. The single shareholder objection [Docket Nos. 405, 407] was filed the day prior to the hearing.

[4] The memorandum has been filed on behalf of defendants Stephen J. Hemsley; William C. Ballard, Jr.; Richard T. Burke; James A. Johnson; Thomas H. Kean; Douglas W. Leatherdale; Mary O. Mundinger; Robert L. Ryan; Donna E. Shalala; Gail R. Wilensky; Arnold H. Kaplan; David P. Koppe; Thomas M. McDonough; Jeannine M. Rivet; Robert J. Sheehy; R. Channing Wheeler; and Travers H. Wills.

compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). After this guidance, however, Rule 23.1 provides no substantive standard to apply in a derivative settlement. The Rule is procedural, and cannot "abridge, enlarge or modify any substantive right." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991); 28 U.S.C. § 2072(b). The Court, therefore, looks elsewhere to discern the appropriate standard.

Plaintiffs urge the Court to find the settlement "fair, reasonable, adequate, and in the best interests of UnitedHealth and its shareholders." See Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement of Derivative Action [Docket No. 389] ("Pl. Mem."), at 12. This approximates the approval standard for class actions in Federal Rule of Civil Procedure Rule 23(e)(2).[5] There is some precedent suggesting this standard can be applied to derivative actions. See Wiener v. Roth, 791 F.2d 661, 662 (8th Cir. 1986) (per curiam) (finding no abuse of discretion in approval of derivative settlement where district court determined settlement was "fair, reasonable, and adequate").

The Eighth Circuit Court of Appeals has identified four factors in determining whether a settlement is fair, reasonable, and adequate:

---

[5] In a class action, Rule 23(e) permits a court to approve a settlement only after a finding that it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23.1, after requiring notice to shareholders and court approval, has no such qualification.

(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.

In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). Of these, the most important is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." Id. at 933.

A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." Id. at 934. The experience and opinion of counsel on both sides may be considered. See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1178 (8th Cir. 1995). A court may consider the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits. See City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996). Lastly, a court also may consider whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved. See DeBoer, 64 F.3d at 1178; D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

The Court finds these factors to be generally appropriate in considering the proposed settlement, and considers each in turn.

1. The Merits of Plaintiffs' Case Balanced Against the Settlement Terms.

An analysis of the first factor - balancing the case's merits against the settlement terms - is complicated by the fact that the

5

settlement reflects an SLC's business judgment.

State law governs an SLC's power to terminate a derivative action.  See Burks v. Lasker, 441 U.S. 471, 486 (1979); see also Smith v. Sperling, 354 U.S. 91, 95 (1957) (holding local law governs the merits in derivative actions).  State law also may be used to address gaps in federal law - such as the lack of an approval standard in derivative settlements.  In such cases, federal courts "should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs."  See Kamen, 500 U.S. at 98 (internal quotations and citation omitted); see also Burks, 441 U.S. at 477-80.  The "presumption that state law should be incorporated into federal common law is particularly strong" in corporate law, where federal securities law "is generally enacted against the background of existing state law."  Kamen, 500 U.S. at 98; Burks, 441 U.S. at 478.

Issues affecting "the allocation of governing powers within the corporation" are presumptively areas where state law should apply.  Kamen, 500 U.S. at 100.  This applies especially to the decisions of special litigation committees, to which states afford varying degrees of power and deference through operation of the business judgment rule.  See id. at 102-03.

Here, the Court finds the settlement embodies the SLC's business judgment.  UnitedHealth's Board of Directors gave its SLC

6

full authority to investigate the matter and control the litigation, as permitted by Minnesota law.  Its exercise of this power is detailed in the Court's Order of December 26, 2007 [Docket No. 316], and in the Minnesota Supreme Court's decision in In re UnitedHealth Group, Inc., Shareholder Derivative Litig., 754 N.W.2d 544 (Minn. 2008) ("UnitedHealth").  In fine, the Court finds the proposed settlement reflects the SLC's judgment that the settlement is in the best interest of the company and its shareholders.  See SLC Report at 74.

The Court, itself, cannot balance the case's merits against the settlement without reviewing the SLC's business decision.  The Minnesota Supreme Court, however, foreclosed this analysis when it held a properly constituted SLC may settle, as well as dismiss, a derivative action.  UnitedHealth, 754 N.W.2d at 559.  When adopting the rule of Auerbach v. Bennett, 47 N.Y.2d 619, 419 N.Y.S.2d 920 (N.Y. 1979), the Minnesota Supreme Court held Minnesota courts are to "defer to an SLC's decision to settle a shareholder derivative action if (1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith."  UnitedHealth, 754 N.W.2d at 559.  The Courts previously considered both questions, and answered both in the affirmative.  See Preliminary Approval Order at 6-11, 591 F. Supp. 2d at 1029-1030.

The UnitedHealth SLC has concluded this settlement is in the company's best interest.  The SLC was independent, and pursued its investigation in good faith using appropriate methodology; ergo, the Court defers to its decision.  Accordingly, this factor weighs in favor of approving the settlement.

2.   Defendants' Financial Condition.

Defendants McGuire, Lubben, Spears and other UnitedHealth executives voluntarily agreed to surrender and reprice certain options in 2006.  Their duty under the settlement largely derives from further cancellation, surrender, and repricing of their UnitedHealth options.  In December, 2007, the combined value of these steps approximated $900 million (intrinsic), and some $658 million (Black Scholes) - or $718 million (intrinsic) as of January 30, 2009, subject to market fluctuations.

The Court finds defendants can meet their settlement obligations.  While one or more defendants could possibly pay more, "this fact, standing alone, does not render the settlement inadequate."  Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1152 (8th Cir. 1999).  The benefit to the company is substantial. Accordingly, the Court finds the defendants' financial condition weighs in favor of approval.

3.   The Complexity and Expense of Further Litigation.

Nearly three years have passed, with huge expenditures of labor, since the first complaint was filed.  Motions were made and opposed, discovery was sought and resisted, orders were issued and

8

appealed.   The adversary process has been robust, with no hint of collusion.   When this Court certified a question to the Minnesota Supreme Court, the parties were obliged to litigate there as well.

The parties have managed the case efficiently, particularly in light of its novelty and complexity.   The Court has no doubt that continued litigation would be complex, costly, and long-lasting. There would unquestionably be cross-motions for summary judgment, motions to exclude expert testimony, and other motions in limine, all leading to a lengthy trial, post-trial motions, and eventual appeal.

Counsel for lead plaintiffs and the respective defendants are well-experienced in securities litigation.   They commenced settlement talks in the summer of 2007, more than a year after the case was filed.   The proposed settlement was forged in arm's length negotiations and aided by an experienced, independent mediator. Discovery has been extensive; the parties are fully informed of the merits of their claims.   "Where sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'Ship Co., 100 F.3d at 1043.

The nature of the litigation to date, and the certainty of continued complex and expensive proceedings, counsels in favor of approval.

    4.   Opposition to the Settlement.

Finally, a complete absence of negative shareholder reaction,

after thousands of notices - save and except a single objection[6] to potential attorney's fees - favors approval. Ultimately, the overwhelming majority of investors, including institutional investors having the largest stake in the outcome, have offered no objection. This factor weighs in favor of the settlement. Wireless, 396 F.3d at 933; Petrovic, 200 F.3d at 1152; DeBoer, 64 F.3d at 1178.

After considering the relevant factors, the Court finds the settlement entitled to final approval.

B.   Application for Attorney's Fees.

Plaintiffs seek $47 million in attorney's fees and reimbursement of $803,591.78 in litigation-related expenses. The Court will grant an award of attorney's fees and expenses, but in a reduced sum.

There are two generally accepted methods of calculating attorney fees: the lodestar method, and the percentage-of-the-fund approach. The choice of method is committed to the Court's discretion. Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 246 (8th Cir. 1996).

In this derivative action, the Court opts for the lodestar method. The Eighth Circuit has identified four factors in setting a reasonable fee using the lodestar method:  (1) the number of

---

[6] See Objections to Proposed Settlement of Class Action ("Objection") [Docket Nos. 405, 407]. The objection is not a model of clarity. As it is also untimely, the Court does not consider its merits.

hours spent by counsel; (2) counsel's "reasonable hourly rate"; (3) the contingent nature of success; and (4) the quality of the attorneys' work.  <u>See</u> <u>Grunin v. Int'l House of Pancakes</u>, 513 F.2d 114, 127 (8th Cir. 1975).  The Court must first exclude hours not reasonably expended or inadequately documented, <u>see</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).  It then multiplies "the hours reasonably expended" by "a reasonable hourly rate."  <u>Id.</u> at 433. Counsel, for their part, are expected to exercise "billing judgment" in their fee application, making a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  <u>Id.</u> at 434.

Here, plaintiffs claim 34,737.40 hours of work at a blended rate of $451 per hour, yielding a lodestar of $15,669,964. Pl. Mem. At 24.  Defendants claim these rates are too high, and criticize plaintiffs' counsel for not delegating enough work to lower-paid associates, paralegals, and contract attorneys.[7] Defendants ask the Court to compare plaintiffs' counsel's fees to those of UnitedHealth's SLC, which billed something in excess of 20,000 hours, at a cost of $9.2 million.

Defendants' proposed analogy is inapt.  The SLC did not spring fully formed, as from the mind of Zeus; its birth was midwifed, in no small part, by plaintiffs' counsel's initiating the present action.  Beyond this, the SLC never had to fight to maintain its

---

[7] The untimely objection raises virtually identical concerns.

own existence.   However independent, the SLC is UnitedHealth's child.   It did not have to fight to obtain discovery, or survive motions seeking to marginalize or eliminate it from the entire proceeding.   These facts show plaintiffs and the SLC are not properly analogous.

Finally, all parties must acknowledge plaintiffs' counsel's efforts to facilitate settlement, the upshot of which is that former UnitedHealth officers surrendered, repriced, and returned money and their backdated stock options.   This represents a substantial benefit to the company.   The Court easily finds plaintiffs' counsel have materially contributed to the realization of this benefit. Defendants arguments to the contrary are hollow.[8]

The Court concludes plaintiffs' counsel's claimed hours and rates should properly be discounted, but not to the level of the SLC.   The SLC's rates are a floor, not a ceiling.   The Court considers time spent preparing this case, responding to defendants' motions, and overcoming defendants' resistance to discovery to be reasonable.   At the same time, the Court will not approve time spent reviewing other attorneys' work, nor time billed at rates far

---

[8]   It is fair to say the Court nearly choked when UnitedHealth's counsel suggested plaintiffs' counsel "fomented" this litigation.   It was not, after all, plaintiffs' counsel who - for years - backdated the company's stock options, bestowed these options on UnitedHealth's officers and directors, and lavished extraordinarily generous executive compensation upon corporate officers and directors, much of which will now be returned to the company.   Lawyers who pursued claims against such a corporation and its officers have hardly fomented litigation.

exceeding those charged in the Twin Cities area.  In short, while plaintiffs' counsel have provided a benefit to the company and are entitled to compensation, the Court finds their "billing judgment" is wanting.

Rather than exercise a line-item veto over plaintiffs' submissions, the Court finds it efficient and appropriate to recalculate the lodestar.  In the Twin Cities area, the Court finds a reasonable hourly rate for partner time to be $500; for other attorneys - whether counsel, associate, or contract attorneys - to be $200; and for paralegal time to be $100.  The Court considers time spent by any other staff to be properly counted as overhead. Reviewing counsel's submissions with these values in mind, the Court finds counsel have collectively billed 13,692.05 partner hours, 17,506.65 other attorney hours, and 2,904.10 paralegal hours, for a total of 34,102.80 hours.  Applying the rates set forth above, this produces a lodestar fee of $10,637,765.

Next, the Court considers whether counsel are entitled to a multiplier of the lodestar.  Counsel may be entitled to a multiplier to reward them for taking on risk, and for high-quality work.  Here, counsel seek a fee of $47 million, which would reflect an approximately 4.4 multiplier of the Court's lodestar.

Applying the third and fourth <u>Grunin</u> factors, the Court finds a multiplier of 2.75 appropriate.  Counsel took the case on a contingent basis, working without pay for three years and assuming the risk of a null recovery.  As they rightly point out, in the

options backdating context, that risk was both real and significant. Counsel also worked effectively with the other participants in this, and parallel, litigations to achieve the settlement. When this Court certified a question to the Minnesota Supreme Court, plaintiffs' counsel appeared in that forum. To reflect counsel's high quality work in the face of considerable risk and uncertainty, a 2.75 time enhancement of the lodestar is warranted, resulting in a fee of $29,253,853.00.

Finally, plaintiffs' counsel requested expense reimbursement amounting to $803,591.78. Defendants do not object. The shareholder objector takes issue with including $175,000 in computer research, which he argues is firm overhead. The objection is overruled. Computerized legal research that may be attributed to an individual case or client is appropriately billed to that client, and thus, included as a cost.

The Court, however, declines to reimburse counsel for their buy-in to the plaintiffs' litigation fund. These costs - termed on most submissions as "assessment" - are simply counsel's advances to cover litigation expenses. Counsel now ask the Court to reimburse those same expenses. If the Court reimbursed counsel for funds advanced and also awarded sums to pay the same litigation costs, it would amount to a double recovery. The Court declines to do so.

Accordingly, the Court subtracts $289,000 in assessments, leading to total reimbursable costs of $514,591.78, which sum is awarded to plaintiffs' counsel.

III.   <u>Conclusion</u>

Plaintiffs' motion for final approval of the settlement and an award of fees and expenses [Docket No. 387] is granted.  Plaintiffs are awarded attorney's fees of $29,253,853, and litigation expenses of $514,591.78.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 1, 2009

<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States District Judge